TREG R. TAYLOR
ATTORNEY GENERAL

Christopher A. Robison (Alaska Bar No. 2111126)
Assistant Attorney General, Alaska Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Telephone: (907) 269-5275/Facsimile: (907) 276-3697
Email: chris.robison@alaska.gov
Attorney for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Jeremiah M., Hannah M. and Hunter M. by their next friend Lisa Nicolai; Mary B. and Connor B. by their next friend Charles Ketcham; David V., George V., Lawrence V., Karen V., and Damien V. by their next friend Merle A. Maxson; Rachel T., Eleanor T. and Gayle T. by their next friend Rebecca Fahnestock; and Lana H. by her next friend Melissa Skarbek individually and on behalf of all other similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>ADAM CRUM, Director, Alaska Department of Health and Social Services, in his official capacity; KIM GUAY, Director, Office of Children's Services, in her official capacity; ALASKA DEPARTMENT OF HEALTH AND SOCIAL SERVICES; and ALASKA OFFICE OF CHILDREN'S SERVICES,<br><br>Defendants. | Case No. 3:22-cv-00129-JMK |

## DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

I. SUMMARY OF THE MOTION ........................................................................ 1

    A. Threshold Problems ........................................................................ 1

        i. *Younger* Abstention ........................................................ 1

        ii. *O'Shea* Abstention ........................................................ 2

        iii. The *Rooker-Feldman* Doctrine ...................................... 2

        iv. The *Pennhurst* Doctrine ................................................ 3

        v. Areas of Traditional State Authority ............................... 3

        vi. Lack of Standing/Subject Matter Jurisdiction ................ 3

    B. Pleading Deficiencies ..................................................................... 4

        i. Improper Requests for Injunctive Relief .......................... 4

        ii. Failure to Adequately Plead Constitutional Claims .......... 5

        iii. No Recognized Private Right of Action Under the Indian Child Welfare Act (ICWA) ................................................ 5

        iv. No Obligation to Make Maintenance Payments to Unlicensed Caregivers Under 42 U.S.C. § 672(a) ............... 5

        v. Failure to State Claims Under the ADA and Rehabilitation Act. ..... 6

II. BACKGROUND FACTS ............................................................................... 6

    A. The Office of Children's Services ..................................................... 6

    B. Overview of Abuse-and-Neglect Proceedings in Alaska ................... 8

        i. Child in Need of Aid (CINA) Cases .................................. 8

        ii. The Role of Alaska Superior Courts in CINA Cases ....... 12

        iii. Alaska Law Provides a Forum and Means for Parties to Hold OCS Accountable ..................................................... 13

III. STANDARD OF REVIEW ........................................................................... 14

A.    Motion to Dismiss a Putative Class Action ................................ 14

B.    Motion to Dismiss for Lack of Subject Matter Juridiction ........................ 15

IV.    ARGUMENT AND AUTHORITIES .................................................... 16

A.    The Court Should Abstain from Exercising Jurisdiction Over Plaintiffs' Claims ........................................................................ 16

i.    The *Younger* Doctrine Requires the Court to Abstain. .................... 16

a.    <u>Step 1</u>: *Younger* Applies to State Abuse-and-Neglect Cases, and here, each Named Plaintiff is a Party to a State Court Abuse-and-Neglect Proceeding ............................................................... 18

b.    <u>Step 2</u>: Alaska CINA Cases Satisfy the Three *Middlesex* Factors ................................................ 21

1.    Alaska's CINA Proceedings Implicate Important State Interests ............................ 21

2.    Alaska's CINA Proceedings Provide an Adequate Opportunity for Plaintiffs to Raise the Issues Raised in this Federal Action ................... 22

3.    The Relief Plaintiffs Seek Would Interfere with Ongoing CINA Proceedings ............................ 24

4.    Neither the Ninth Circuit's Decision in *L.H. v. Jamieson* nor any of the Execptions to *Younger* Apply in This Case. ...................................... 31

ii.    Abstention is Also Appropriate under Principles Corollary to the *Younger* Doctrine. .................................. 33

a.    *O'Shea* Abstention .................................................. 33

b.    Areas of Traditional State Authority ...................................... 34

c.    The *Rooker-Felmann* Doctrine Bars Plaintiffs' Challenge to Decisions Already Litigated in Superior Court ...................................................... 35

1.    The *Rooker-Feldman* Doctrine, Generally ............... 35

                    2.      The *Rooker-Feldman* Doctrine Applies Here ........... 36

B.      Plaintiffs Lack Standing to Bring What Few Claims are Not Subject to
        Abstention Doctrines ........................................................................... 38

        i.      Element No.1: Injury ........................................................................ 39

                a.      When a Plaintiff Seeks Injunctive Relief, Past Injuries are
                        Insufficient to Satisy the Injury Requirement ....................... 39

                b.      Plaintiffs Failed to Allege a Likelihood of Repeated Injury or
                        Future Harm ......................................................................... 41

        ii.     Element No. 2: Causation ............................................................. 42

                a.      The Plaintiff's Injury Must be Fairly Traceable to the
                        Defendant's Conduct ........................................................... 42

                b.      Plaintiffs' Complaint Fails to Plead a Causal Link Between
                        the Challenged Conduct and the Injuries sustained by the
                        Named Plaintiffs .................................................................. 43

        iii.    Element No. 3: Redressability .......................................................... 44

                a.      Redressability turns on *Younger* Abstention ......................... 44

                b.      Here, All of the Relief Plaintiffs Request is Either: (1)
                        Available in Superior Court; or (2) Beyond the Court's
                        Jurisdiction .......................................................................... 46

C.      The *Pennhurst* Doctrine Bars Plaintiffs' Request for an Order Requiring
        Defendants to Comply with State Law. .................................................... 47

D.      Plaintiffs' Requests for Injunctive Relief Fail as a Matter of Law ............ 48

E.      Plaintiffs Fail to State Claims on Which Relief May be Granted .............. 50

        i.      Plaintiffs' Substantive Due Process Claim (Count I) Fails as a Matter
                of Law ............................................................................................. 51

        ii.     The "Right to Family Association" Claim (Count II) Fails as a
                Matter of Law .................................................................................. 57

        iii.    The Indian Child Welfare Act Claim (Count IV) Fails as a Matter of
                Law ................................................................................................. 58

a.     The Indian Child Welfare Act (ICWA), Generally...............58

b.     Private Rights of Action Under ICWA ................................59

c.     Plaintiffs Failed to Plead a Viable ICWA Claim .................60

iv.     The 42 U.S.C § 672(a) Claim (Count V) Fails as a Matter of Law . 64

v.     The ADA and Rehabilitation Act Claims (Count VI and VII) Fail as a Matter of Law ................................................................................65

# I.    SUMMARY OF THE MOTION

Institutional reform cases have been described as "extravagant uses" of judicial power at odds with the Constitution.[1] As Justice Thomas put it:

> Federal courts should pause before using their inherent equitable powers to intrude into the proper sphere of the States…A structural reform decree eviscerates a State's discretionary authority over its own program and budgets and forces state officials to reallocate state resources and funds…at the expense of other citizens, other government programs, and other institutions not represented in court.[2]

Here, Plaintiffs ask the Court to set budgetary and administrative policy by, among other things, dictating worker caseloads, ordering Alaska's Office of Children's Services (OCS) to "recruit and/or retain" more "qualified and appropriately trained workers," and requiring OCS to "ensure that an adequate array of community-based therapeutic services are available." But those are "things that courts, in order to remain courts, cannot and should not do."[3] For the reasons set forth below, the Court should dismiss the Complaint.[4]

## A.    Threshold Problems.

i.    ***Younger* Abstention**. The *Younger*[5] doctrine instructs federal courts to abstain from exercising jurisdiction when it would interfere with ongoing state court

---

[1]     *Missouri v. Jenkins*, 515 U.S. 70, 126 (1995) (Thomas, J., concurring).

[2]     *Id*. at 131 (internal citations omitted).

[3]     *Cf. id*. at 132. The federalism concerns here are even greater than they were in *Missouri*, which was a desegregation case. Unlike the aggrieved students in *Missouri*, every Named Plaintiff here is a party to a live proceeding pending before an Alaska state court. By entertaining the relief Plaintiffs request, the Court would not only intrude upon the prerogatives of Alaska's executive and legislative branches, but also its judicial branch.

[4]     References to the Complaint herein refer to the Amended Class Action Complaint," Dkt. 16 ("Am. Compl.").

[5]     *Younger v. Harris*, 401 U.S. 37 (1971).

*Jeramiah M. et al. v. Adam Crum et al.*                                          3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 1 of 71
Case 3:22-cv-00129-JMK    Document 23    Filed 08/26/22    Page 6 of 76

proceedings. Here, Plaintiffs' sweeping, one-size-fits-all requests for relief would require the Court to interfere with ongoing Child in Need of Aid (CINA) cases pending in Alaska's state superior courts. That is precisely the scenario the *Younger* doctrine prohibits.

    ii.    **O'Shea Abstention**. *O'Shea*[6] abstention applies when the plaintiff seeks an injunction that is effectively a federal audit of ongoing or future state court proceedings. Here, Plaintiffs' requests for relief would require the Court to regularly review and audit superior court decisions in CINA cases. Thus, they are prohibited by *O'Shea*.[7]

    iii.    **The *Rooker-Feldman* Doctrine**. *Rooker-Feldman*[8] precludes collateral attacks on state court decisions in federal court, and it applies to all claims that could have been brought in the state court action. Here, the bulk of the Named Plaintiffs'[9] claims relate to their placements, but superior courts have already ███████████████ with respect to the Named Plaintiffs. Thus, the Named Plaintiffs' claims will require the Court to review Alaska superior court orders and issues that are inextricably intertwined with those orders, which *Rooker-Feldman* prohibits.

---

6    *O'Shea v. Littleton*, 414 U.S. 488 (1974).

7    *See, e.g.*, *Native Village of Tununak v. State*, 334 P.3d 165 (Alaska 2014) (deviation from ICWA preference and adoption/placement of child with non-native family); *In re Adoption of Sara J.*, 123 P.3d 1017 (Alaska 2005) (Native Village of Kasigluk intervened in OCS proceeding and opposed non-native's adoption of children; Alaska Supreme Court affirmed trial court finding of good cause to deviate from ICWA preferred placements).

8    *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

9    As set forth below, the *only* allegations that matter at this juncture are those of the Named Plaintiffs. The Court should not consider the Amended Complaint's class-wide allegations, or allegations related to unnamed Plaintiffs. *See* Part III.a, *infra*.

*Jeremiah M. et al. v. Adam Crum et al.*    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support    Page 2 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 7 of 76

iv. **The *Pennhurst* Doctrine.** *Pennhurst*[10] prohibits federal courts from awarding forward-looking injunctive relief based on state law. Indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."[11] Here, Plaintiffs seek an injunction "[r]equir[ing] Defendants to assist unlicensed kinship caregivers in obtaining foster care licenses to take care of members of the Kinship Subclass."[12] But the only legal basis Plaintiffs cite that might support that relief is an Alaska *state* law.[13] Accordingly, Plaintiffs' request is barred by *Pennhurst*.

v. **Areas of Traditional State Authority**. Federal courts should abstain when hearing a case "risks a serious federalism infringement."[14] Here, federalism concerns are high. Child welfare is an area of core state authority, and the intrusion Plaintiffs would have the Court make into that arena is substantial. Accordingly, the Court should abstain.

vi. **Lack of Standing/Subject Matter Jurisdiction**.[15] After *Younger*, *O'Shea*, *Rooker-Feldman*, and *Pennhurst* channel nearly all of Plaintiffs' complaints into superior court CINA proceedings (because that is where they can, should, and routinely are raised), what remains are a few aspirational requests for relief that the Court lacks subject matter

---

[10]    *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984).

[11]    *Id.* at 106.

[12]    Am. Compl., p. 93 (request for injunctive relief "m").

[13]    *See id.*; *see also* AS 47.14.115 (requiring OCS to assist certain kinship providers in seeking and obtaining licensure under state law, whenever possible, and to help them to obtain variances so long as these variances do not implicate the safety of foster children).

[14]    *J.B. v. Woodward*, 997 F.3d 714, 723 (7th Cir. 2021).

[15]    Article III standing is a necessary component of subject matter jurisdiction.

*Jeremiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                          Page 3 of 71
Case 3:22-cv-00129-JMK    Document 23    Filed 08/26/22    Page 8 of 76

jurisdiction to address. For example, any causal link between the alleged system-wide problems identified in the Complaint (*e.g.*, alleged worker shortage) and the injuries to the Named Plaintiffs themselves is conjectural and attenuated. More importantly, it is entirely speculative whether any of the system-wide relief Plaintiffs request would actually redress the injuries to the Named Plaintiffs themselves.[16] Accordingly, lack of subject matter jurisdiction disposes of what little of the Complaint is not subject to abstention doctrines.

## B.    Pleading Deficiencies.

If the Court declines to abstain and finds it has subject matter jurisdiction, many of Plaintiffs' claims should still be dismissed.

i.    **Improper Requests for Injunctive Relief**. Some of Plaintiffs' requests for injunctive relief fail to satisfy Rule 65. For instance, Plaintiffs ask the Court to order OCS to maintain case worker caseloads "at accepted professional standards as developed by either the COA [Council on Accreditation] and/or the CWLA [Child Welfare League of America]," two non-profits. Plaintiffs would also have the Court require OCS to "recruit and/or retain enough qualified and appropriately trained workers…as set by the COA and/or CWLA." Both requests violate Rule 65 because they fail to describe the acts required of OCS with certainty – instead, they refer to standards set by third parties that

---

[16]     *Ashley W. v. Holcomb*, 34 F.4th 588, 592 (7th Cir. 2022) (Easterbrook, J.) (motion for rehearing and *en banc* denied June 15, 2022).

*Jeramiah M. et al. v. Adam Crum et al.*                                      3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 4 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 9 of 76

could be changed at any time. Notably, requests nearly identical to the ones made here have been struck down for over-breadth.[17]

      ii.     **Failure to Adequately Plead Constitutional Claims**. Plaintiffs' substantive due process claim fails because the Complaint does not allege the Named Plaintiffs have been deprived of "basic human needs." Instead, they assert a litany of rights that are not *constitutionally* mandated. The Complaint also fails to meet the Ninth Circuit's "deliberate indifference" standard because it fails to identify any policies, practices, or actions that were deliberately indifferent to the Named Plaintiffs' rights of personal safety and security.

     iii.    **No Recognized Private Right of Action Under the Indian Child Welfare Act (ICWA)**. Section 1914 is the only provision in ICWA enforceable through a private cause of action. Here, Plaintiffs have not pleaded a Section 1914 claim. Instead, Plaintiffs' claims center around Section 1915 of ICWA. But the Ninth Circuit has never recognized a private right of action under that Section, and several federal courts have expressly rejected one. Accordingly, Plaintiffs' ICWA claim should be dismissed.

     iv.    **No Obligation to Make Maintenance Payments to Unlicensed Caregivers Under 42 U.S.C. § 672(a).** Plaintiffs complain that unlicensed relative or kinship caregivers have not received foster care maintenance payments from OCS, and they request injunctive relief enjoining OCS from withholding maintenance payments from eligible, unlicensed kinship caregivers. That claim should be dismissed because the Complaint fails

---

[17]    *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 273-74 (5th Cir. 2018) (striking down injunctive relief setting caseload for over-breadth and describing the trial court's injunction as "too blunt a remedy for a complex problem").

*Jeramiah M. et al. v. Adam Crum et al.*                      3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support        Page 5 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 10 of 76

to allege that any of the caregivers at issue are actually *approved* as meeting the standards established for licensing. And there is no legal basis for requiring Defendants to make payments to caregivers who are not approved as meeting the licensing standards.

v.      **Failure to State Claims Under the ADA and Rehabilitation Act.** Plaintiffs' ADA and Rehabilitation Act claims should be dismissed because the Complaint fails to allege Plaintiffs were excluded from participation or otherwise denied benefits *because of their disabilities*. Plaintiffs' claims under *Olmstead v. L.C. ex rel. Zimring* also fail because the Complaint does not allege the unjustified isolation of any Named Plaintiff. In fact, according to the Complaint, every named Plaintiff who is a member of the putative ADA Subclass is currently living ███████████████. Finally, nothing in the ADA or the Rehabilitation Act requires states to ensure sufficient providers in all areas of a state.

## II.      BACKGROUND FACTS

### A.      The Office of Children's Services.

Alaska's Office of Children's Services (OCS) is charged with the complex task of ensuring the safety, permanency, and well-being of Alaska's most vulnerable children. In fulfilling its duties, OCS collaborates with Tribes, community partners, superior courts, and other state divisions to better serve children and families.

OCS also strives for transparency and accountability. As the Complaint notes, several areas were identified as not meeting substantial conformity in the 2017 Child and Family Services Review (CFSR). What Plaintiffs fail to credit are OCS's extensive efforts to address the CFSR findings.

After every CFSR, states develop a Program Improvement Plan to address

*Jeramiah M. et al. v. Adam Crum et al.*                                      3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 6 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 11 of 76

deficiencies. Had Plaintiffs contacted the State before filing their lawsuit, they would have learned about OCS's initiatives and Program Improvement Plan. For instance, the 2017 Assessment recognized workforce challenges. But shortly thereafter, House Bill 151 (the "Children Deserve a Loving Home Act") was signed into law. The act established average caseload limits for OCS frontline workers and added training requirements for caseworkers. Caseloads of new workers are now capped at six family cases, total, for the first four months on the job. The act also provided additional staff positions to help OCS reduce caseloads. And OCS now tracks vacancy and turnover rates quarterly and provides annual reports to the Legislature. The act further requires the State to assist family members and friends in applying for foster care licenses, and it provides for children of at least 14 years of age to be involved in their own case planning.

In 2017, the State of Alaska and 18 Native Tribes and Tribal Organizations signed the "Alaska Tribal Child Welfare Compact," a one-of-a-kind landmark agreement developed to ensure improved compliance with ICWA, reduce the rate of out of home placement, and improve the well-being of Alaskan children and families.

In 2019, the State established Emergency Relief Payments to help relatives with upfront placement costs. Payments are provided for two months while the Department assists relatives with the foster care licensing or referral to the Alaska Temporary Assistance Program or Tribal Assistance for Native Families program. The State also implemented a Program Improvement Plan, which included 65 strategies and a two-year implementation timeframe. To date, the majority of the Plan has been completed and approved by the Children's Bureau, a federal agency focused on improving child welfare.

*Jeremiah M. et al. v. Adam Crum et al.*                                                          3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                                   Page 7 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 12 of 76

One of OCS's highest priorities is to stabilize the workforce and reduce caseloads. Alaska has actively confronted those issues through expansion of higher salaried case carrying staff, development of safety and mentoring programs, and educational stipends. OCS also successfully advocated for additional funds to address its staffing challenges.

**B.     Overview of Abuse-and-Neglect Proceedings in Alaska.**

**i.     Child in Need of Aid (CINA) Cases.**

In Alaska, the State's intervention begins with a report of suspected child abuse or neglect. Upon receipt of a report, the Alaska Department of Family and Community Services, (Department) Office of Children's Services (OCS), initiates an investigation of the allegation (called an assessment).[18] If OCS is able to substantiate the allegation of abuse or neglect, it may then initiate a Child in Need of Aid (CINA) proceeding by filing a Petition for Adjudication of a Child in Need of Aid and for Temporary Custody.[19]

In the case of an emergency (when the child has been removed from the parent's home upon filing of the petition), superior courts are required to hold an initial hearing within 48 hours.[20] When the child remains in the home, the superior court is required to hold the hearing within five business days following the filing of a petition.[21]

During the initial hearing, the parents are advised of their rights, including the right to have an attorney represent them; parents are granted a continuance if they wish to talk

---

[18]     *See* AS 47.17.010 *et seq.*

[19]     *See* AS 47.10.030.

[20]     AS 47.10.142.

[21]     CINA Rule 10 (effective October 1, 2022).

*Jeramiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                          Page 8 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 13 of 76

with an attorney.[22] But even if the court grants a continuance, the court must make a preliminary determination as to whether continued placement with the parent is contrary to the welfare of the child. If the court finds that placement with the parent is not contrary to the welfare of the child, the child is returned to the custody of the parent pending the temporary custody (or "adjudication") hearing, where the court determines if there is probable cause to believe the child could be a "child in need of aid" or "CINA."[23]

Absent good cause for delay, an adjudication hearing to determine whether the child is a child in need of aid is required to be held within 120 days of a finding of probable cause.[24] If the court finds the child is a child in need of aid, it sets a dispositional hearing for a time agreed to by all parties, generally around 60 days from the adjudication finding.[25]

During the dispositional hearing, the superior court decides whether the child should remain in OCS custody or be returned to the custody of the parent(s), and it reviews the child's case plans and services, considering the best interests of the child, the ability of the state to take custody and care for the child to protect the child's best interests under AS 47.10.005-47.10.142, and the potential harm to the child caused by the removal of the child from the home and family environment.[26] The superior court may also consider mandatory reports filed by the child or the children's guardian ad litem and OCS.[27]

---

[22]     AS 47.10.142; CINA Rule 12.

[23]     AS 47.10.142(d), (e).

[24]     AS 47.10.080.

[25]     AS 47.10.08(c); CINA Rule 17.

[26]     AS 47.10.082; CINA Rule 17.

[27]     AS 47.10.081.

*Jeremiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                      Page 9 of 71

Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 14 of 76

In the dispositional hearing, the court reviews the child's placement to determine if it is consistent with state and federal placement preferences, including ICWA.[28]

After the court enters the dispositional order, it periodically reviews the case to ensure that the child's case plan, services, and placement continue to serve the child's best interests at a permanency hearing.[29] The court takes into account a host of considerations, including whether and when the child should be returned to the parent and if not, what other permanency goal is appropriate; whether the department has made reasonable efforts – or in the case of an ICWA case, active efforts – to offer services to reunify the family and facilitate the permanency goal; whether the parent has made substantial progress to remedy the issues that caused the child to be a child in need of aid; and if the permanent plan is out of home care, whether the placement is necessary and appropriate. The State's compliance with State and ICWA placement preferences is also reviewed.[30] In practice, courts hold far more frequent status hearings, often every 3-6 months.

CINA cases remain open until the child is safely reunified with the family or another permanent living arrangement has been made. If reunification is not a viable option, the State may initiate a termination of parental rights (TPR) proceeding; parental rights are *not* terminated at the initial removal hearing.[31]

In a CINA case, Alaska law entitles the child's parents to counsel as a matter of

---

[28] AS 47.4.100; 25 U.S.C. § 1915 (ICWA); CINA Rule 10, 10.1.

[29] AS 47.10.080(l); CINA Rule 19.

[30] CINA Rule 10, 10.1.

[31] *See, e.g.*, AS 47.10.088.

*Jeramiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                          Page 10 of 71
Case 3:22-cv-00129-JMK    Document 23    Filed 08/26/22    Page 15 of 76

right.[32] As of October 2022, the child also has a right to court appointed counsel in a number of situations, including when the child does not consent to placement in a secure residential treatment center, when the child does not agree to the administration of psychotropic medications, or when the child would benefit from having a confidential relationship with an attorney.[33] In addition, all children are represented by a Guardian ad Litem (GAL), a Court Appointed Special Advocate (CASA), or both.[34] Indeed, one of the first things superior courts do upon the filing of a CINA petition is to appoint a guardian ad litem "as soon as possible after the CINA petition is filed."[35]

Placement in a secure residential treatment facility requires the State to prove by clear and convincing evidence that (1) the child is gravely disabled or suffering from a mental illness and as a result, is likely to harm themselves or others, (2) that there is no reasonably less restrictive alternative for the child's treatment or that less restrictive alternatives have been tried and failed, and (3) that there is reason to believe that the child's mental condition would be improved by the course of treatment or would deteriorate if left untreated. The court's findings are reviewed every 90 days.[36]

Placement review hearings, where parties or adult family members or family friends challenge the state's placement decision are frequent and governed by AS 47.14.100, 25

---

[32]     AS 47.10.050; CINA Rule 12.

[33]     CINA Rule 12, 12.1.

[34]     CINA Rule 11.

[35]     CINA Rule 12.

[36]     AS 47.10.087(a) and (b).

*Jeremiah M. et al. v. Adam Crum et al.*                                      3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 11 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 16 of 76

U.S.C. § 1915 (ICWA), CINA Rule 10.1 and CINA Rule 19.1(b).

### ii. The Role of Alaska Superior Courts in CINA Cases.

Alaska superior courts are courts of general jurisdiction; they are able to hear federal claims and award injunctive relief.[37] They also preside over CINA cases. In fact, CINA cases comprise nearly 12% of all cases filed in superior court, trailing only probate and domestic relations on superior courts' civil dockets.[38] "CINA cases are often handled by a single judge, and by the time of termination, that judge is intimately familiar with the history of the case and has typically presided over many hearings."[39]

CINA cases are governed by a comprehensive statutory scheme – AS 47.10.005 *et seq*.[40] Alaska Statutes govern the proceedings from beginning[41] to end.[42] CINA cases also have their own rules of procedure, the "Child in Need of Aid Rules of Procedure."[43] As the Alaska Supreme Court has recognized, "[superior court] Judges are well situated to make reliable findings in CINA cases, given their knowledge of and familiarity with the

---

[37]    AS 22.10.020(a), (c).

[38]    http://www.courts.alaska.gov/admin/docs/fy20-statistics.pdf, at p. 35 (last visited August 3, 2022).

[39]    *Carla W. v. State, Dep't of Health & Soc. Servs., Off. of Children's Servs.*, No. S-12991, 2008 WL 5352295, at *8 (Alaska Dec. 24, 2008).

[40]    *See* AS 47.10.005 ("The provisions of this chapter shall be *liberally construed* to achieve the end that a child…may receive the care, guidance, treatment, and control that will promote the child's welfare and the parent's participation in the upbringing of the child to the fullest extent consistent with the child's best interests.").

[41]    AS 47.10.020 ("Investigation and Petition").

[42]    *Id.* at 47.10.111 ("Petition for Adoption or Guardianship of a Child in State Custody").

[43]    *See, e.g.*, CINA Rule 1(b) ("These rules govern practice and procedure in trial courts in all phases of child in need of aid proceedings brought under AS 47.10.010(a).").

*Jeremiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 12 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 17 of 76

controlling law and the prior proceedings of the case."[44]

### iii. Alaska Law Provides a Forum and Means for Parties to Hold OCS Accountable.

Consistent with Alaska's statutory goal of promoting child welfare,[45] CINA cases incorporate substantial protections for parents, children, and other third parties.[46] And to implement those protections, Alaska law liberally allows interested parties – *e.g.*, parents, foster parents, relatives, family friends, Indian tribes, and children – to participate in the case, and when appropriate, hold OCS accountable in superior court.

For example, placement of a child is addressed in CINA Rule 19.1(b), which allows *any party* opposed to the transfer to seek relief from the court:

> *At any time in the proceeding*, a party who is opposed to the Department transferring a child from one *placement* to another may move the court for a review hearing at which the requesting party must prove by clear and convincing evidence that the transfer would be contrary to the best interests of the child. In the case of an Indian child, the court must consider the placement preferences as set forth in 19 U.S.C. § 1915.[47]

The rule also addresses instances when placement with an adult family member or friend is denied. In that scenario, the rule expressly allows the family member or friend to participate in a hearing concerning the denial of the placement.[48]

---

[44]     *Alyssa B. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 165 P.3d 605, 613 (Alaska 2007).

[45]     AS 47.10.005(1).

[46]     *See, e.g., Karen L. v. State, Dep't of Health & Soc. Servs., Div. of Fam & Youth Servs.*, 953 P.2d 871, 877 (Alaska 1998) (declining to impose liability on social workers and noting: "…CINA proceedings already incorporate substantial protections for parents and children.").

[47]     CINA Rule 19.1(b).

[48]     *Id*. at 19.1(e).

*Jeramiah M. et al. v. Adam Crum et al.*                                   3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                          Page 13 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 18 of 76

Alaska's CINA rules further allow parties to litigate visitation issues:

> *At any time in a proceeding*, a parent or guardian who has been denied *visitation*, or the child's guardian ad litem, may move the court for a review hearing at which the Department must show by clear and convincing evidence that visits are not in the child's best interest.[49]

But the superior court's role isn't limited to placement and visitation. For situations not expressly covered by other subparts, Rule 19.1(d) contains a catch-all provision that allows *any interested party* to bring matters concerning the child's welfare to the superior court's attention *at any time*: "At any time in a proceeding, the court may review matters not otherwise covered by these rules upon motion of a party or on its own motion."[50]

## II.     STANDARD OF REVIEW

### A.     Motion to Dismiss a Putative Class Action.

Rule 12's pleading requirements apply with equal force to putative class actions – the plaintiff's pleading requirements are not diminished by bringing claims on behalf of a putative class or making class-wide allegations.[51]

Moreover, "[o]n a motion to dismiss a putative class action complaint, courts may *only* consider the allegations of the named plaintiffs, and *not* the generalized allegations of

---

[49]     *Id*. at 19.1(a).

[50]     *Id*. at 19.1(d).

[51]     *See, e.g., Kamath v. Robert Bosch LLC*, 2014 WL 2916570, 13-08540, 2014 WL 29146570, at *8, n. 4 (C.D. Cal. June 26, 2014) ("The Court does not consider allegations pertaining to putative class members. This is so because, at the motion to dismiss stage, the Court only considers allegations pertaining to the named plaintiff because a putative class action cannot proceed unless the named plaintiff can state a claim for relief himself.").

*Jeramiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 14 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 19 of 76

unnamed plaintiffs or putative class members."[52] Accordingly, each Named Plaintiff must satisfy Rule 12; generalized allegations related to unnamed class members are irrelevant.

## B. Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Federal courts are courts of limited jurisdiction, and the confines of federal jurisdiction should not be disregarded or evaded.[53] Courts evaluate subject matter jurisdiction under Rule 12(b)(1),[54] and "[t]he plaintiff has the burden of [pleading and] proving that jurisdiction exists."[55] While the court must take the well-pleaded factual allegations as true, the court "is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."[56]

In a putative class action, the court should consider whether each named plaintiff has standing; if none of the named plaintiffs have standing, then the case must be dismissed,

---

[52]     *Tatum v. Chrysler Grp. LLC*, No. 10- 4269, 2012 WL 6026868, at *4 (D.N.J. Dec. 3, 2012) (emphasis added); *Accord v. Anderson Co.*, No. 21-00077, 2021 WL 6135691, at *3 (M.D. Tenn. Dec. 28, 2021) ("The necessity of Plaintiff alleging *his own* standing is not somehow diminished by his bringing this action on behalf of a putative class.") (emphasis in original); *Pinzon v. Pepperdine Univ.*, No. 20-4928, 2021 WL 3560782, at *2 (C.D. Cal. Aug. 5, 2021) ("At the motion to dismiss stage, what matters is the allegations relevant to the named Plaintiffs, not the scope of an uncertified putative class.").

[53]     *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "When faced with a challenge to its subject matter jurisdiction under Rule 12(b)(1), the court must resolve that issue before determining whether the complaint states a claim under Rule 12(b)(6)." *Laborers' Int'l Union of N. Am., Loc. 341 v. Main Bldg. Maint., Inc.*, 435 F. Supp. 3d 995, 999 (D. Alaska 2020).

[54]     *Hodges v. Seward Ship's Ace Hardware & Marine*, No. 3:19-CV-00059-JMK, 2020 WL 10319253, at *1 (D. Alaska Nov. 18, 2020).

[55]     *Id.*

[56]     *Id.*

*Jeremiah M. et al. v. Adam Crum et al.*                                          3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 15 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 20 of 76

regardless of the allegations related to unnamed class members.[57]

## IV.    ARGUMENT AND AUTHORITIES.

### A.    The Court Should Abstain From Exercising Jurisdiction Over Plaintiffs' Claims.

Abstention doctrines are rooted in principles of comity and federalism, and they reflect "a strong federal policy against federal-court interference with state court judicial proceedings, absent extraordinary circumstances."[58]

Here, the Named Plaintiffs would have the Court override or second-guess decisions made in their individual state court CINA proceedings, and much worse, dictate future decisions in their cases and others. But as the Alaska Supreme Court has explained, CINA proceedings are "the proper forum for addressing complaints about foster care placement and treatment."[59] As set forth below, the exercise of federal jurisdiction would directly interfere with ongoing CINA proceedings; thus, abstention is appropriate under the *Younger* doctrine, the *Rooker-Feldman* doctrine, and other abstention principles.

#### i.    The *Younger* Doctrine Requires the Court to Abstain.

In a line of cases beginning with *Younger v. Harris*[60] and extending through *Moore*

---

[57]    *Accord*, 2021 WL 6135691, at * 3-4.

[58]    *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982); *see also Herrera v. City of Palmdale*, 918 F.3d 1037, 1043 (9th Cir. 2019) (explaining that abstention stems from "the constraints of equity jurisdiction and the concerns for comity in our federal system'") (quoting *Gilbertson v. Albright*, 381 F.3d 965, 970 (9th Cir. 2004)).

[59]    *Karen L. v. DHHS*, 953 P.3d 871, 878 (Alaska 1998).

[60]    401 U.S. 37 (1971).

*Jeremiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 16 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 21 of 76

*v. Sims* (*Moore*),[61] *NOPSI v. Council of City of New Orleans* (*NOPSI*),[62] *Sprint Commc'ns, Inc. v. Jacobs* (*Sprint*),[63] and *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n* (*Middlesex*),[64] the Supreme Court has instructed federal courts to abstain from exercising jurisdiction over certain federal actions that would interfere with ongoing state court proceedings.

The *Younger* analysis is a two-step process. First, the court should determine whether the ongoing state court lawsuit is the *type of case* to which *Younger* abstention applies.[65] If it is, then abstention is required when the case satisfies the three factors set forth in *Middlesex*:

(1)    the state court proceeding implicates important state interests;

(2)    the state proceeding provides an "adequate opportunity" for the federal plaintiff to raise the issues raised in the federal action, and

(3)    the federal action would interfere with the ongoing state proceeding.[66]

As several courts of appeals have concluded, *Younger* precludes federal courts from hearing cases, like this one, in which plaintiffs seek systemic injunctive relief that would

---

[61]    442 U.S. 415 (1979).

[62]    491 U.S. 350 (1989).

[63]    571 U.S. 69 (2013).

[64]    457 U.S. 423 (1982).

[65]    *See*, *e.g.*, *Sprint Comm'n,* 571 U.S. at 79-80; *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 953 F.3d 655, 657 (9th Cir. 2020).

[66]    *Middlesex*, 457 U.S. at 432; *see also Citizens for Free Speech*, 953 F.3d at 657-58.

*Jeramiah M. et al. v. Adam Crum et al.*                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support          Page 17 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 22 of 76

interfere with ongoing state abuse-and-neglect proceedings.[67]

     a.    **Step 1**: *Younger* **Applies to State Abuse-and-Neglect Cases, and here, each Named Plaintiff is a Party to a State Court Abuse-and-Neglect Proceeding.**

In *NOPSI* and *Sprint*, the Supreme Court recognized three categories of "exceptional" cases in which federal court abstention based on ongoing state proceedings is appropriate: (1) state criminal prosecutions; (2) state "civil enforcement proceedings;" and (3) "civil proceedings involving certain orders…uniquely in furtherance of the state courts' ability to perform their judicial functions."

The Court has explained that "civil enforcement proceedings" involve cases in which "a state actor is routinely a party to the state proceeding and often initiates the action."[68] As an example of a civil enforcement proceeding to which *Younger* applies, the Supreme Court cited, in both *NOPSI* and *Sprint*, its previous holding in *Moore v. Sims*.[69]

In *Moore*, three children and two parents who were parties to an ongoing state court abuse-and-neglect proceeding brought a "broad constitutional challenge" to a state statute governing child welfare procedures.[70] The Court held that the district court should have abstained under *Younger* because the state was a party to the state court abuse-and-neglect proceeding, and that proceeding involved the removal of a child "in aid of and closely

---

[67]    *See Ashley W. v. Holcomb*, 34 F.4th 588, 591 (7th Cir. 2022); *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 610 (8th Cir. 2018); *31 Foster Children v. Bush*, 329 F.3d 1255 (11th Cir. 2003); *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002).

[68]    *Sprint*, 571 U.S. at 592.

[69]    *See id*. at 579; *NOPSI*, 491 U.S. at 368.

[70]    442 U.S. at 415.

*Jeramiah M. et al. v. Adam Crum et al.*       3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support      Page 18 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 23 of 76

related to criminal statutes" relating to child abuse.[71]

Since the Court's 2013 holding in *Sprint,* the majority of circuit courts that have considered the issue (including the Seventh Circuit in its May 2022 opinion in *Ashley W.*) have followed *Moore* and held that state abuse-and-neglect proceedings are the type of proceedings to which *Younger* applies.[72]

The post-*Sprint* majority view is consistent with two pre-*Sprint* circuit court decisions – issued after *NOPSI* first articulated the three categories of cases to which *Younger* applies – holding that federal courts should abstain under *Younger* from hearing

---

[71]  *Id.* at 423 (internal quotation marks omitted).

[72]  *See Ashley W.*, 34 F.4th at 591 (holding that Supreme Court concluded in *Moore* that "state-initiated child-welfare litigation" is the type of state civil proceedings to which *Younger* applies); *Oglala Sioux Tribe*, 904 F.3d at 610 (relying on *Moore* and holding that state abuse-and-neglect proceedings are "civil enforcement" proceedings); *Vaughn:Douce v. N.J. Div. of Child Protection and Permanency*, No. 21-1596, 2021 WL 3403670 (3d Cir. Aug. 4, 2021) (unpublished); *see also A.A. v. Buckner*, No. 21-cv-367, 2021 WL 5042466, at *5- *6 (M.D. Ala. Oct. 29, 2021) (unpublished) (same). Only one circuit has held abuse-and-neglect proceedings are not "civil enforcement" proceedings; that case was wrongly decided and is distinguishable. *See Jonathan R. v. Justice*, No. 21-1868, 2022 WL 2821968, *8 (4th Cir. July 20, 2022). First, the court misinterpreted *Moore* as applying only to *initial* removal proceedings, but not *ongoing* hearings in the same case. Nothing in *Moore* hints at such a distinction. Second, the court drew a line between the plaintiff-children in its case and "the abusive parents in *Moore*." But neither *Moore* nor *Sprint* held that culpability is relevant to whether *Younger* applies. The court also ignored that the federal plaintiffs in *Moore included* the abused children.[72] Third, the decision is inconsistent with the principles underlying *Younger* because it allows a child to run to federal court to enjoin potentially adverse state court rulings. Finally, in CINA cases, there is no distinction between "*initial* child-removal proceedings" and "*ongoing* individual hearings…that serve to protect the children." All CINA hearings are part of the same proceeding driven by the goal of "protect[ing] the children." *See Alyssa B.*, 165 P.3d at 612 (Alaska 2007) (explaining that a termination proceeding is a "*procedural continuation of the earlier proceedings* in the existing CINA case;" it does not initiate a new proceeding) (emphasis added); *OCS v. Michelle P.*, 411 P.3d 576, 584 (Alaska 2018) ("[T]he court is required in all CINA proceedings to consider and act in the child's best interests.").

*Jeramiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 19 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 24 of 76

putative class claims brought by foster children against state agencies that would interfere with ongoing state abuse-and-neglect cases.[73] In total, five circuits – the Third (*Vaughn:Douce*), Seventh (*Ashley W.*), Eighth (*Oglala Sioux Tribe*), Tenth (*Joseph A. ex rel. Wolfe*), and Eleventh (*31 Foster Children*) – have held *Younger* applies to state abuse-and-neglect proceedings.[74]

Here, like the proceedings in *Moore*, and like the state proceedings in the three post-*Sprint* circuit court cases in which courts found abstention was appropriate.[75] CINA proceedings arise from an abuse or neglect investigation initiated by the state.[76] All CINA proceedings are likewise "in aid of and closely related to criminal statutes"[77] pertaining to

---

[73] *See, e.g.*, *31 Foster Children v. Bush*, 329 F.3d 1255 (11th Cir. 2003), *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002); *see also Zimmerman v. Gregoire*, No. 99-1367, 18 Fed. App'x 599, 601 (9th Cir. Sept. 4, 2001) (unpublished); *J.B. v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999); *Sam M. v. Chafee*, 800 F. Supp. 2d 263 (D.R.I. 2011); *Carson P. v. Heineman*, 240 F.R.D. 456, 511-12 (D. Neb. 2007); *Laurie Q. v. Contra Costa Cnty.*, 304 F. Supp. 2d 1185, 1204 (N.D. Cal. 2004).

[74] *See supra* notes 72, 73. District courts are more divided on the question of whether *Younger* applies to these types of cases. *Compare, e.g.*, *A.A. v. Buckner*, 21-367, 2021 WL 5042466, at *5- *6 (M.D. Ala. Oct. 29, 2021); *Sam M. v. Chafee*, 800 F. Supp. 2d 263 (D.R.I. 2011), *Carson P. v. Heineman*, 240 F.R.D. 456, 511-12 (D. Neb. 2007), and *Laurie Q. v. Contra Costa Cnty.*, 304 F. Supp. 2d 1185, 1204 (N.D. Cal. 2004), *with, e.g.*, *Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142 (D. Mass. 2011); *Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 288 (2003). However, most of those decisions were not appealed (sometimes because the cases settled), and when the question has been appealed, federal circuit courts have nearly universally held that *Younger* applies to ongoing state abuse-and-neglect proceedings (with one exception, discussed in footnote 72, *supra*)

[75] *Ashley W.*, 34 F.4th at 591; *Oglala Sioux Tribe*, 904 F.3d at 610; *Vaughn:Douce*, 2021 WL 3403670.

[76] *See* AS 47.10.020, CINA Rule 6(a); CINA Rule 7.

[77] *Moore*, 442 U.S. 423.

*Jeremiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                          Page 20 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 25 of 76

the abuse and neglect of children.[78] Accordingly, CINA proceedings are civil enforcement proceedings to which *Younger* applies.

Even if CINA cases were not "civil enforcement proceedings" (which they are), they would fall into another category of state cases to which *Younger* abstention applies: "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions."[79] As explained in Part II.b, superior courts often issue orders about placement, services and other issues, which they then oversee through regularly held status hearings and other proceedings.[80]

     **b.**     <u>**Step 2**</u>**: Alaska CINA Cases Satisfy the Three *Middlesex* Factors.**

          **1.**     **Alaska's CINA Proceedings Implicate Important State Interests.**

There can be no dispute that Alaska's CINA proceedings implicate the State's historical and compelling interest in ensuring the safety of, and proper care, for children placed in its custody.[81]

---

[78]    *See* AS 11.51.100 (endangering the welfare of a child in the first degree); AS 11.51.110 (endangering the welfare of a child in the second degree); AS 11.51.120 (criminal nonsupport).

[79]    *See Sprint*, 571 U.S. at 79-80.

[80]    *Cf. Juidice v. Vail*, 430 U.S. 327, 335-36 (1977) (holding that *Younger* applies to civil proceedings involving a state court's contempt power).

[81]    *See, e.g.*, *Santosky v. Kramer*, 455 U.S. 745, 766 (1982) ("State has an urgent interest in the welfare of the child…the State's goal is to provide the child with a permanent home."); *Moore*, 442 U.S. at 435 ("Family relations are a traditional area of state concern.").

*Jeramiah M. et al. v. Adam Crum et al.*          3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support          Page 21 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 26 of 76

2. **Alaska's CINA Proceedings Provide an Adequate Opportunity for Plaintiffs to Raise the Issues Raised in this Federal Action.**

A plaintiff opposing abstention bears the burden to show the state court proceedings do not offer an "adequate opportunity" to raise the issues raised in the federal action,[82] and if the plaintiff "has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."[83] Further, "the relevant question is not whether the state courts can do all that Plaintiffs wish they could," but rather, whether the remedies available through the state proceedings are "adequate."[84] Courts have generally concluded that state abuse-and-neglect proceedings satisfy this requirement for *Younger* abstention.[85]

Here, Plaintiffs' Complaint does not allege they "attempted to present [their] federal

---

[82]     *Moore*, 442 U.S. at 425-26.

[83]     *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987); *see also Middlesex*, 457 U.S. at 424 ("Where vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the [federal or] constitutional claims.").

[84]     *31 Foster Children*, 329 F.3d at 1279 (internal quotation marks omitted).

[85]     *See, e.g.*, *Moore*, 442 U.S. at 430-31; *Ashley W.*, 34 F.4th at 593; *31 Foster Children*, 329 F.3d at 1279-82; *Joseph A.*, 275 F.3d at 1274; *J.B.*, 186 F.3d at 1292-93; *Laurie Q.*, 304 F. Supp. 2d at 1206-08. *But see Jonathan R.*, 2022 WL 2821968, at *12-16 (dicta); *LaShawn A.*, 990 F.2d 1319. The analysis may vary depending on the unique features of the state's court system, and several federal courts have held that a state abuse-and-neglect proceeding does not provide an adequate opportunity to litigate the issues raised in the federal action when the state court lacks the power to overrule a decision of the state child welfare agency (which is not a concern here). *See, e.g.*, *Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 155-56 (D. Mass. 2011) (unlike in Alaska, state court lacked authority to enter a placement order based on "a child's best interests"); *Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 288 (2003) (unlike in Alaska, state court orders about a child's placement "are merely exhortatory and not binding on" the state agency).

*Jeremiah M. et al. v. Adam Crum et al.*                                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                              Page 22 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 27 of 76

claims in related state-court proceedings," and Plaintiffs cannot point to any "unambiguous authority" that they are unable to do so. Nor could they. In CINA cases, superior courts have the authority to make decisions about placements and services that bind OCS (*see* Section II(A) *supra*), and superior courts are courts of general jurisdiction able to hear federal claims and issue injunctive relief.[86] Indeed, superior courts routinely address complex issues of federal law in CINA proceedings.[87]

Further, decisions in CINA proceedings are appealable to the Alaska Supreme Court, which regularly reviews those decisions with respect to both state and federal law.[88]

---

[86] *See* AS 22.10.020(a) ("The superior court is the trial court of general jurisdiction, with original jurisdiction in all civil and criminal matters, including probate and guardianship of minors and incompetents."); AS 22.10.020(c) ("The superior court and its judges may issue injunctions, writs of review, mandamus, prohibition, habeas corpus, and all other writs necessary or proper to the complete exercise of its jurisdiction."); AS 47.10.080(l)(6) ("[I]f the court finds . . . that the department is not making reasonable efforts to find a permanent placement for the child, the court shall order the department to make reasonable efforts to find a permanent placement for the child unless the current placement is in the best interests of the child"); CINA Rule 17.2(g) ("The court may make appropriate orders to ensure timely implementation of the permanency plan."); CINA Rule 10.1(a)(2), (b)(2) (providing that court may order the Department to comply with obligation to exercise active or reasonable efforts and may impose appropriate sanctions if the Department fails to do so); CINA R. 17.2(e)(5) ("in the case of a child who has attained age 16," the court must make findings about "the services needed to assist the child to make the transition from foster care to independent living or adult protective services").

[87] *See, e.g.*, *Cora C. v. State*, No. S-16798, 2018 WL 2979472 (Alaska. June 13, 2018) (unpublished) (reviewing whether the superior court complied with ICWA); *Danielle A. v State, DHHS, OCS*, 215 P.3d 349, 356 (Alaska 2009) (same).

[88] *Cf. Clevenger v. Dresser*, No. 17-17136, 746 Fed. App'x 645, 646 (9th Cir. 2018) (unpublished) (explaining that the Ninth Circuit has held California attorney disciplinary proceedings provide an adequate forum to litigate federal issues "because the litigant can seek review by the California Supreme Court" (citing *Canatella v. California*, 404 F.3d 1106, 1111 (9th Cir. 2005); *Hirsh v. Justices of Sup. Ct. of Cal.*, 67 F.3d 708, 713 (9th Cir. 1995))); *see also, e.g.*, *Cora C.*, *supra*.

*Jeramiah M. et al. v. Adam Crum et al.*                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support          Page 23 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 28 of 76

Finally, CINA proceedings include numerous protections that ensure children have an adequate opportunity to be heard. For example, all children are represented by a qualified guardian ad litem to "represent and advocate for the best interests of the child in light of federal and state law,"[89] and the superior court *must* appoint counsel for a child if "the interests of justice require the appointment of an attorney."[90] Moreover, effective October 17, 2022, appointment of counsel for a child will become mandatory for any child age 10 or older in one of six delineated circumstances, including when "[t]he child does not consent to placement in a psychiatric hospital or residential treatment center."[91]

### 3. The Relief Plaintiffs Seek Would Interfere with Ongoing CINA Proceedings.

As the Ninth Circuit has explained, if "the federal action would effectively enjoin the state proceedings," the federal court should abstain under *Younger*.[92]

Here, the vast majority of the relief that Plaintiffs seek would limit superior courts' authority to make the fact-intensive decisions they make every day in CINA cases. Accordingly, the relief Plaintiffs request would effectively enjoin superior courts from

---

[89] CINA Rule 11.

[90] CINA Rule 12(b)(3) (repealed eff. Oct. 17, 2022); *see also* Ex. A (███████████████ ███).

[91] CINA Rule 12.1 (eff. Oct. 17, 2022). That children in CINA cases are not automatically entitled to counsel does not mean they lack an adequate opportunity to raise the issues presented here. The Constitution does not entitle every child to counsel in abuse-and-neglect proceedings. *See Ashley W.*, 34 F.4th at 593. As the Seventh Circuit explained, "the absence of automatic counsel at public expense for every child in a proceeding does not permit a federal court to deem all [such] proceedings defective and bypass the state judiciary." *See id.*

[92] *See Citizens for Free Speech*, 953 F.3d at 657.

*Jeramiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                   Page 24 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 29 of 76

issuing orders or providing any relief inconsistent with the requested injunction.[93]

For example, Plaintiffs seek an injunction requiring that: (1) all foster children be placed "in placements that are safe, appropriate, and in the least restrictive environment that best suits their individual needs;" (2) members of the putative Alaska Native Subclass be placed "with ICWA-compliant caregivers;" (3) no foster child be placed "in a congregate care setting based on the unavailability of foster home resources;" and (4) all foster children with disabilities be placed in "family foster homes with supportive services" "in as many instances as is required by reasonable professional standards."[94]

But if awarded, that relief would effectively enjoin superior courts from making their own case-by-case placement decisions based on the specific facts of each case, a task they are uniquely qualified to perform.[95] It would also subject superior court decisions to periodic and ongoing review for compliance with the Court's injunction.[96]

Moreover, Alaska law provides a foster child may only be placed in certain residential facilities pursuant to a superior court order,[97] and all other placement decisions may be challenged by any party – including the child – "[a]t any time."[98] Thus, superior courts *routinely* assess whether a child's placement is appropriate and in the child's best

---

[93] The relief seeking generalized changes to OCS practice would violate Federal Rule of Civil Procedure 65 and/or would not remedy the alleged harms suffered by the Named Plaintiffs; thus, they lack standing to pursue such relief. *See* Parts IV.B, D, *infra*.

[94] Compl. at 86-88.

[95] *Alyssa B.*, 165 P.3d at 613.

[96] *See* Part IV.A.ii.a, *infra* (discussing *O'Shea* abstention).

[97] *See* AS § 47.10.087; *Cora G. v. DHHS,* 461 P.3d 1265, 1279 n.34 (Alaska 2020).

[98] CINA Rule 19.1(b), (d).

*Jeramiah M. et al. v. Adam Crum et al.*　　　　　　　　　　　　　　3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support　　　　　　　　Page 25 of 71
Case 3:22-cv-00129-JMK　Document 23　Filed 08/26/22　Page 30 of 76

interests.[99] That exercise necessitates an intensive review of each child's individual circumstances and a complex balancing of interests.

On the other hand, the relief Plaintiffs request – a one-size-fits-all solution that uniformly favors one type of placement over another – would strip superior courts of their authority to conduct those fact intensive reviews. For example, in *DHHS v. Zander B.*, the superior court found OCS's decision to move a child from his foster family to his grandmother was an abuse of discretion because the child had "'significant mental, social, and physical needs,'" and the grandmother "had 'neither the understanding of [the child's] conditions nor the capacity to beneficially address them.'"[100] Thus, the superior court

---

[99]   *See also, e.g.*, *Celia W. v. DHHS, OCS*, No. S-17954, 2021 WL 4191436 (Alaska Sept. 15, 2021) (affirming superior court's decision, made after a five-day placement review hearing, that OCS did not err in denying a child with foster family instead of his grandparents); *Dylan J. v. State*, No. S-14641, 2012 WL 4840768 (Alaska October 10, 2012) (affirming superior court's decision that OCS appropriately denied placement of children with their maternal great-grandparents); *In re J.D.S.*, No. S-10383, 2002 WL 1183536 (Alaska May 29, 2002) (holding the foster child's guardian ad litem "was entitled to challenge the placement [with a particular foster family] under the provisions of CINA Rule 19.1(b)," and that the superior court erred in denying the guardian ad litem a hearing on that challenge); *S.S.M. v. State*, 3 P.3d 342 (Alaska 2000) (holding that sister of a foster child was a party able to object to placement; holding that a "placement decision is ultimately a matter for superior court review"; vacating decision of superior court denying motion to overturn OCS's placement decision); *Brynna B. v. State, DHHS, DFYS*, 88 P.3d 527 (Alaska 2004) (holding that superior court properly upheld decision to refuse to place foster child with her aunt, because the aunt had proved unwilling to work with the State on implementing the case plan); *Irma E. v. State*, 312 P.3d 850 (Alaska 2013) (holding superior court erred in not granting grandmother a hearing to review OCS's decision to deny her request to place foster children with her because AS 47.14.100(m) "provides that when OCS 'denies a request for placement with an adult family member or a family friend, the department shall inform the adult family member or family friend of the basis for the denial and the right to request a hearing to review the decision'").

[100]   474 P.3d at 1162.

*Jeremiah M. et al. v. Adam Crum et al.*                                      3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                     Page 26 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 31 of 76

ordered the child remain with his foster parents, and the Alaska Supreme Court affirmed.[101]

Plaintiffs' requested relief that members of the putative Alaska Native Subclass be placed "with ICWA-compliant caregivers" would similarly strip superior courts of their authority. Both federal and state law provide preferences for the placement of Indian children.[102] That issue is *routinely* litigated in CINA proceedings and appealed to the Alaska Supreme Court.[103] Nevertheless, Plaintiffs plead for an across-the-board injunction that would effectively enjoin state courts from departing from ICWA preferences for good cause based on the facts of each child's case.

Alaska case law again provides a good example of how Plaintiffs' requested relief would effectively enjoin superior courts. In *Cora C. v. State* the Alaska Supreme Court reviewed the placement of a child with kidney failure with a non-native foster family that did not meet the ICWA placement preferences.[104] The court affirmed the placement, finding there was good cause to deviate from the ICWA placement preferences and that it was in the child's best interest to remain with her foster family because the foster family lived in Anchorage, where the State's only pediatric nephrologist practiced.[105]

Further, several of the Named Plaintiffs' own ████████ – which they now challenge as being inconsistent with the Constitution and/or federal law – were ████████

---

[101]      *See id*.

[102]      *See* 25 U.S.C. § 1915(g); CINA Rule 10.1(b)(1)(A).

[103]      *See, e.g.*, *Cora C. v. State*, No. S-16798, 2018 WL 2979472 (Alaska June 13, 2018) (unpublished); *Danielle A. v State, DHHS, OCS*, 215 P.3d 349, 356 (Alaska 2009).

[104]      2018 WL 2979472 (Alaska June 13, 2018).

[105]      *Id.* at 4-5.

*Jeramiah M. et al. v. Adam Crum et al.*          3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support          Page 27 of 71
Case 3:22-cv-00129-JMK    Document 23    Filed 08/26/22    Page 32 of 76

[REDACTED][106]

In addition to placements, Plaintiffs seek extensive injunctive relief relating to the planning, assessments, and evaluations of foster children; the services provided to children and their parents; the facilitation of adoption; and support for kinship caregivers.[107]

Again, all of that relief could be awarded by the superior court in each of the Named Plaintiffs' individual CINA proceedings. As noted above, the CINA Rules liberally allow any party – including the child or the guardian ad litem – to raise by motion any matter "[a]t any time in the proceeding."[108] Accordingly, a child or the guardian ad litem may, "at any time in the proceeding," ask the court to find that the case planning (including transition planning), family services, assessments, evaluations, services, adoption, and support for kinship caregivers do not comply with state or federal law.[109]

---

[106]    See, e.g., Ex. B ([REDACTED]; Ex. C ([REDACTED]); Ex. D ([REDACTED]); Ex. E ([REDACTED]); Ex. F ([REDACTED]); Ex. G ([REDACTED]); Ex. H ([REDACTED]); Ex. I ([REDACTED]).

[107]    See Am. Compl., pp. 90-94 (requests for declaratory and injunctive relief).

[108]    CINA Rule 19.1(d).

[109]    See CINA Rule 19.1(d); see also AS 47.10.086 (OCS "shall make timely, reasonable efforts to provide family support services to the child and to the parents or

Jeramiah M. et al. v. Adam Crum et al.                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                        Page 28 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 33 of 76

Indeed, superior courts are currently evaluating – or have evaluated and issued findings and/or orders regarding – ███████████████ in the Named Plaintiffs' ongoing CINA proceedings.[110] For example, in the case of ██████, ██████, and

_____

guardian of the child that are designed to prevent out-of-home placement of the child or to enable the safe return of the child to the family home, when appropriate, if the child is in an out-of-home placement"); CINA Rule 17.2(f)(1) (during the permanency hearing, "the court shall also make written findings related to…whether the Department has made reasonable efforts required under AS 47.10.086 or, in the case of an Indian child, whether the Department has made active efforts to provide remedial services and rehabilitative programs as required by 25 U.S.C. § 1912(d)"); CINA Rule 17.2(g) (providing that "[t]he court may make appropriate orders to ensure timely implementation of the permanency plan," and "[t]he court shall hold a hearing to review the permanency plan at least annually until successful implementation of the plan"); CINA Rule 17.2(f)(4) (during permanency hearing, "[t]he court shall also make written findings related to" and "whether the Department has made reasonable efforts to finalize the permanency plan that is in effect (whether the plan is reunification, adoption, legal guardianship, placement with a fit and willing relative, or placement in another planned permanent living arrangement)"); *see also, e.g. Cordelia P v. State*, No. S-17989, 2021 WL 5502923, 5 (Alaska Nov. 24, 2021) (explaining that "[t]erminating parental rights also requires a finding by clear and convincing evidence that OCS made reasonable efforts to reunify the family," which "entail[s] identifying services for the parent; actively offering and referring the parent to those services; and documenting the Department's actions"); *Kiva O. v. DHHS*, 408 P.3d 1181 (Alaska 2018) (reviewing superior court's decision in proceedings to grant OCS's request to provide medication for a child, over the biological mother's objection); *Kylie L. v. State DHHS*, 407 P.3d 442, 450-51 (Alaska 2017) (holding the trial court did not err in finding OCS failed to demonstrate reasonable efforts, even though OCS had provided regular therapy for the child and her mother, safety plans, referrals a substance abuse assessment, and assistance with stress management and housing); *Moira M. v. State*, 370 P.3d 595, 601-03) (Alaska 2016) (rejecting biological mother's argument that OCS failed to provide her with sufficient services in compliance with AS § 47.10.086(a)).

[110]    *See, e.g.*, Ex. D ██████████████████ ███████████ (finding that, ████████████████ ████████████████████████████ ); Ex. F (███████████ ████████ ) (finding that █████



, the superior court has ███████████████████████████████████████████ [111] ████████

████████████████████████████████████████████████████████████████

████████████ [112]

The relief the Plaintiffs seek in this case would short-circuit, and effectively enjoin, the state court litigation that covers all of these complex, individualized issues. As the Ninth Circuit has held, even federal actions that "could substantially delay" a state proceeding "hav[e] the practical effect of enjoining" that state proceeding.[113] This case goes much further, as Plaintiffs seek to effectively limit and impose parameters on the discretion of state superior courts. Accordingly, *Younger* abstention is appropriate.[114]

---

██████████████████████████████████████████████████████████████
███████████████████████████████████████; Ex. J (
██████████████████████████████████████████████████████)
████████████); Ex. K (
████████████████████████; Ex. L (
████████████████████████████████████████████████████
████).

[111]  *See* Ex. B (
████████████████████████; Ex. C
████████████████████████████████████).

[112]  Ex. M
████████████████████████████████████████.

[113]  *Citizens for Free Speech*, 953 F.3d at 957.

[114]  *See, e.g.*, *Ashley W.*, 34 F.4th at 593 (holding that a federal action interferes with ongoing state court proceedings if the relief sought in the federal action could be "provided by the judge in [an ongoing state abuse-and-neglect] proceeding"); *31 Foster Children*, 329 F.3d at 1278-79 (explaining that a federal injunction in a putative class action relating to ongoing state abuse-and-neglect proceedings would result in "conflicting orders about what is best for a particular plaintiff, such as whether a particular placement is safe or appropriate or whether sufficient efforts are being made to find an adoptive family"); *Laurie Q.*, 304 F. Supp. 2d at 1204-05 (applying *Younger* abstention to a case seeking

*Jeramiah M. et al. v. Adam Crum et al.*                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support          Page 30 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 35 of 76

#### 4. Neither the Ninth Circuit's Decision in *L.H. v. Jamieson*, nor any of the Exceptions to *Younger* Apply in This Case.

Over 40 years ago, in *L.H. v. Jamieson*, the Ninth Circuit found *Younger* abstention was not warranted in an action brought by foster children in Arizona because the case did not meet what the court viewed as the "two principal characteristics" for *Younger* abstention: (1) plaintiffs seeking "to enjoin the continuation of a state proceeding or sought to enjoin state officials from enforcing a state statute"; and (2) "the basis for federal relief could have been raised as a complete or partial defense to a pending or ongoing state enforcement action during the normal course of the state proceeding."[115] *L.H.* does not preclude abstention in this case for two reasons.

First, the case is no longer good law. Since *L.H.* was decided, the Supreme Court has clarified the *Younger* doctrine three times (in *Middlesex*, *NOPSI* and *Sprint*). As a result, the Ninth Circuit now applies a more relaxed test – it no longer requires that the plaintiff in the federal action actually "seek to enjoin the continuation of a state proceeding." Instead, if the relief would "effectively enjoin" a state proceeding,[116] as Plaintiffs are seeking to do here, then *Younger* applies. That alone makes *L.H.* irrelevant. Indeed, the Ninth Circuit has cited *L.H.* in only one published decision since *NOPSI* was decided in 1989, and it has not relied on or even cited *L.H.* in any abstention decisions

---

systemic reform because "[w]ere this court to assume the role plaintiffs intend, it would be forced to pass judgment upon the Juvenile Court's approval (or disapproval) of certain case plans"). *But see Jonathan R.*, 2022 WL 2821968, at *11-12 (dicta).

[115]     643 F.2d 1351, 1352-53 (9th Cir. 1981).

[116]     *See, e.g.*, *Citizens for Free Speech*, 953 F.3d at 657-58.

*Jeramiah M. et al. v. Adam Crum et al.*     3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support     Page 31 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 36 of 76

since *Sprint* was decided in 2013.

Second, *L.H.* is distinguishable. There, the plaintiffs sought only to "require the state to reimburse private child-caring agencies for their full cost of care," which would not "have the wholly disruptive consequences associated with enjoining a state judicial proceeding."[117] Accordingly, the plaintiffs' "claim [was] not of a sort that would be presented during the normal course of a state proceeding."[118] The state court "[had] completed its work once it [] made its initial placement decision" and therefore "a juvenile wishing to invoke the [state] court's jurisdiction [had to] act functionally as a plaintiff to revive the state court's active jurisdiction."[119]

Here, in contrast, Plaintiffs seek relief (*e.g.*, changes in placements and services) that is *precisely* the type of relief ordered in CINA cases.[120] Thus, Plaintiffs' claims are unquestionably "of a sort that would be presented during the normal course of" a CINA proceeding.[121] Further, superior courts retain jurisdiction and oversee CINA cases for the entirety of the child's time in state custody;[122] thus, a child wishing to raise a complaint can simply file a motion under CINA Rule 19.1(d). Unlike in *L.H.*, a child in Alaska would not need to "act functionally as a plaintiff to revive the state court's active jurisdiction."

---

[117]    *L.H.*, 643 F.2d at 1354-55

[118]    *Id*. at 1354.

[119]    *Id.* at 1354-55.

[120]    *See, e.g.*, Part II.B, *supra*.

[121]    *See L.H.*, 643 F.2d at 1354.

[122]    *See, e.g.*, AS 47.10.100; *In re J.D.S.*, Nos. S-10383, 1080, 2002 WL 1183536 (Alaska May 29, 2002).

*Jeremiah M. et al. v. Adam Crum et al.*                                                3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                        Page 32 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 37 of 76

Finally, the Complaint does not suggest that any of the narrow exceptions to *Younger* – "such as a bad faith, harassment, or flagrant violation of express constitutional prohibitions by the state or local actor" – apply here.[123]

### ii. Abstention is Also Appropriate Under Principles Corollary to the *Younger* Doctrine.

Even if the case did not meet the specific requirements for *Younger* abstention (which it does), abstention is still appropriate under corollary abstention principles.

### a. *O'Shea* Abstention.

Under *O'Shea v. Littleton*, federal courts should abstain from hearing any claim – regardless of whether the specific requirements for *Younger* are satisfied – when the plaintiff seeks "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of" ongoing or future state court proceedings, such that the relief the plaintiff seeks is effectively an "ongoing federal audit" of the state proceedings.[124] Unlike *Younger* abstention, application of *O'Shea* is not limited to certain categories of state court proceedings.[125]

Here, Plaintiffs ask the Court to issue an injunction that would control future decisions made by superior courts, including decisions relating to placements and services. If issued, the injunction would "place the district court in the position of conducting an

---

[123]    *Citizens for Free Speech*, 953 F.3d at 657-58.

[124]    *See* 414 U.S. 488, 500 (1974); *see, e.g.*, *Oglala Sioux Tribe*, 904 F.3d at 611-12 (citing *O'Shea*, 414 U.S. 488); *Disability Rights N.Y. v. New York*, 916 F.3d 129, 134-35 & n.3 (2d Cir. 2019); *E.T. v. Cantil-Sakauye*, 682 F.3d 1121, 1123 (9th Cir. 2012).

[125]    *Disability Rights N.Y.*, 916 F.3d at 134-35 and n.3.

ongoing 'federal audit' of" superior courts to ensure their orders complied with the injunctive relief Plaintiffs request.[126]

For example, Plaintiffs seek an injunction requiring that all placements be "appropriate," "in the least restrictive environment," and "ICWA-compliant."[127] To ensure compliance and enforce that injunction, the Court would need to review the hundreds of placement decisions issued annually by superior courts. And superior courts would be stripped of their responsibility for determining if placements are in the child's best interest. They would also be subject to ongoing federal court oversight and second-guessing.

Plaintiffs even seek relief that would expressly require Defendants, in future CINA cases, to "file and proceed with a timely petition to free a child for adoption" in certain circumstances.[128] As the Eighth Circuit has explained, *O'Shea* prohibits claims in which "[t]he relief requested would interfere with the state judicial proceedings by requiring the defendants to comply with numerous procedural requirements."[129] Accordingly, in the event the Court finds *Younger* does not apply, abstention under *O'Shea* is appropriate.

### b.   Areas of Traditional State Authority.

As an alternative to abstaining under *Younger* and *O'Shea*, courts may abstain from

---

[126]     *Oglala Sioux Tribe*, 904 F.3d at 612 (abstaining under *O'Shea* because the relief requested would "place the district court in the position of conducting an ongoing 'federal audit' of [the state's] temporary custody proceedings"); *E.T. v. Cantil-Sakauye*, 682 F.3d at 1124 (abstaining under *O'Shea* because "potential remediation might involve examination of the administration of a substantial number of individual cases").

[127]     *See* Am. Compl., p. 91 (request for injunctive relief "c").

[128]     *Id*. at p. 92 (request for injunctive relief "h").

[129]     *Oglala Sioux Tribe*, 904 F.3d at 612.

*Jeramiah M. et al. v. Adam Crum et al.*                                                3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                        Page 34 of 71

Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 39 of 76

hearing a case when to do otherwise "risks a serious federalism infringement."[130]

For example, in *J.B. v. Woodard*, the Seventh Circuit abstained from exercising jurisdiction over a parent's lawsuit that would have interfered with an ongoing custody proceeding, because it would "threaten interference with and disruption of local family law proceedings – a robust area of law traditionally reserved for state and local government – to such a degree as to all but compel the federal judiciary to stand down."[131]

The same is true here: issuing an injunction that would cabin state court decisions with respect to the placement, planning and care of foster children in the state's custody would constitute such an intrusion in an area of traditional state authority as "to all but compel the federal judiciary to stand down."

### c. The *Rooker-Feldman* Doctrine Bars Plaintiffs' Challenge to Decisions Already Litigated in Superior Court.

#### 1. The *Rooker-Feldman* Doctrine, Generally.

The *Rooker-Feldman* doctrine[132] applies to "cases brought by state court losers complaining of injuries caused by state-court judgments,"[133] and it prohibits federal district courts from reviewing state court decisions or entertaining claims that are "inextricably intertwined" with state court decisions, unless Congress has specifically authorized it.[134]

---

[130]   *J.B. v. Woodard*, 997 F.3d 714, 723 (7th Cir. 2021).

[131]   *Id.*

[132]   The doctrine derives its name from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[133]   *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[134]   *Feldman*, 460 U.S. at 482-84 n.16; *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003.

*Jeremiah M. et al. v. Adam Crum et al.*                                          3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 35 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 40 of 76

*Rooker-Feldman* also applies regardless of whether the claim brought in federal court was made in state court, so long as the claim *could have been brought* in state court.[135]

### 2. The *Rooker-Feldman* Doctrine Applies Here.

Though the allegations in Plaintiffs' Counts are entirely divorced from the specific facts pleaded about the Named Plaintiffs themselves, the Complaint appears to allege the placements of the Named Plaintiffs violated constitutional and statutory mandates.[136]

But superior courts have already ███████████████████████████████ ████████████:

- A state court ███████████████████████████████████████████████ ███████████████████████████████████████████████ [137]

- A state court ███████████████████████████████████████████ ███████████████████████████████████████████████ ██████.[138] In addition the state court ███████████████ ██████████████████████████████████████ [139]

- A state court ███████████████████████████████████████ ███████████████████████████████████████████████

---

[135]  *See, e.g.*, *Guess v. Bd. of Med. Exam'rs of State of N.C.*, 967 F.2d 998, 1002-03 (4th Cir. 1992).

[136]  *See, e.g.*, Am. Compl. ¶¶ 269(a), 279(a), 282, 288, 290.

[137]  *See* Ex. B (███████████████████████████████████████ ████████████████████ ; Ex. C ███████████████████████████ ██████████████████████████).

[138]  Ex. D (███████████████████████████████████████████ █████████████ .

[139]  *Id.*

*Jeramiah M. et al. v. Adam Crum et al.*                                   3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                        Page 36 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 41 of 76



- A state court ███████████████████████████████████████ In addition, the court ████████████████████████████████████████████ .[141]

- A state court ████████████████████████████████████████████[142]

To the extent Named Plaintiffs complain about ████████████████████████████████████████████████████████████████████████████████. Accordingly, *Rooker-Feldman* requires the Court to abstain from hearing any claims based on allegations that ███████████████████████████████████████████████████████████████, since those claims could have been raised in superior court.[143]

Accordingly, even if Plaintiffs declined to assert their federal claims in superior court, *Rooker-Feldman* still applies because superior courts are courts of general

---

[140] Ex. F (███████████████████████████████████).

[141] Ex. E (██████████████████████████████████████); *see also* Ex. G (███████████████████████████████████████████).

[142] Ex. I (███████████████████████████████████ ██████); *see also* Ex. K ██████ ; Ex. L (███████████████████████ ██████).

[143] *Cf., e.g.*, *Miller v. Nichols*, 586 F. 53, 59 (1st Cir. 2009) (holding *Rooker-Feldman* applies to parents' effort to prevent adoption of their child after a state court terminated their parental rights in a state abuse-and-neglect proceeding); *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 713-18 (S.D.N.Y 2006) (holding that parents bringing due process claim "lost in state court" when the court removed their child from their home).

*Jeremiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 37 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 42 of 76

jurisdiction able to hear federal claims.[144] Thus, the Plaintiffs *could* have raised their federal claims in those proceedings.[145]

Finally, the Named Plaintiffs cannot evade *Rooker-Feldman* simply because they bring claims on behalf of a putative class. A class has not been certified; thus, the only relevant allegations are those of the Named Plaintiffs.[146]

## B. Plaintiffs Lack Standing to Bring What Few Claims are Not Subject to Abstention Doctrines.

After most of Plaintiffs' claims are channeled into superior court by the abstention doctrines discussed above (resulting in dismissal), lack of standing disposes of the rest.[147]

Article III standing is a component of subject matter jurisdiction, which courts have an independent obligation to review throughout the proceeding.[148] The elements of standing are: (1) injury in fact; (2) causation; and (3) redressability.[149]

In a putative class action, allegations of unnamed, putative class members are irrelevant for purposes of subject matter jurisdiction.[150] As the Supreme Court explained,

---

[144]    *See* Part II.B, *supra*.

[145]    *See, e.g., Guess*, 967 F.2d at 1002-03 (*Rooker-Feldman* applies even if the claim is not presented to the state court, as long it could have been brought in the state court action).

[146]    S*ee* Part III, *supra*.

[147]    *See, e.g.*, *Ashley W.* 34 F.4th at 592.

[148]    *In re Palmdale Hills Property, LLC*, 654 F.3d 868, 873 (9th Cir. 2011); *United States v. Taylor*, 796 F.3d 788, 791 (7th Cir. 2015) ("Nevertheless, we must fulfill our independent obligation to ensure that federal courts have subject-matter jurisdiction throughout the proceedings.").

[149]    *Id*. "[The] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

[150]    *See* Part III.B, *supra*.

*Jeremiah M. et al. v. Adam Crum et al.*                                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                              Page 38 of 71
Case 3:22-cv-00129-JMK    Document 23    Filed 08/26/22    Page 43 of 76

*each* named plaintiff must establish their own standing independently of any putative class:

> [T]he doctrine of standing to sue is not a kind of gaming device that can be surmounted merely by aggregating the allegations of different kinds of plaintiffs, each of who may have claims that are remote or speculative taken by themselves. Instead, the basic inquiry, for *each* party seeking to invoke the authority of the federal courts, is whether that party alleges injury that is fairy traceable to the challenged conduct and likely to be redressed by the requested relief.[151]

Here, the Named Plaintiffs failed to meet the three standing requirements.

**i.    Element No. 1: Injury.**

   **a.    When a Plaintiff Seeks Injunctive Relief, Past Injuries are Insufficient to Satisfy the Injury Requirement.**

To establish an injury, the plaintiff must allege some threatened or actual injury resulting from the conduct complained about.[152] When a plaintiff seeks injunctive relief (as opposed to damages), "[p]ast exposure to illegal conduct does not in itself show a present case or controversy...if unaccompanied by any *continuing, present adverse effects*."[153] In other words, past harms do not satisfy the injury requirement;[154] instead, plaintiffs must demonstrate a likelihood of *repeated injury or future harm* absent an injunction.[155]

For example, in *City of Los Angeles v. Lyons*, the plaintiff was improperly placed in a deadly choke hold by the police.[156] He sought monetary damages and an injunction

---

[151]   *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615-616 (1989) (emphasis in original).

[152]   *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973).

[153]   *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) (emphasis added).

[154]   *Stack v. City of Hartford*, 170 F. Supp. 2d 288, 293 (D. Conn. 2001) (quoting *Deshawn E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998).

[155]   *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011); *Whitaker v. Garcetti*, 11 F. App'x 921, 922 (9th Cir. 2001).

[156]   461 U.S. 95, 105–106 (1983).

Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 44 of 76

preventing the police from using choke holds without determining whether a suspect posed a risk to an officer's safety.[157] The Supreme Court held that while the plaintiff had standing to seek damages, he lacked standing to pursue injunctive relief because he failed to allege not only that he would have another encounter with the police, but also that (1) all police officers in Los Angeles choke all citizens they encounter, or (2) the city ordered or authorized police officers to act in such a manner.[158]

The Seventh Circuit reached a similar result in *Ashley W.*[159] There, the court found the named plaintiffs lacked standing to complain about how child welfare cases are handled *before* court proceedings begin because they were already in those proceedings:

> Much of the relief proposed by plaintiffs' complaint and briefs concerns how child-welfare investigations are handled before CHINS proceedings begin. Yet *both of the remaining plaintiffs* (indeed, all ten original plaintiffs) *were already in CHINS proceedings when the case began. They do not have any current interest in how pre-litigation investigations are conducted.*[160]

In short, while prior injuries might support standing to seek monetary damages, mere exposure to past illegal conduct, without more, is not enough for injunctive relief.[161]

---

[157]     *Id.*

[158]     *Id.* at 106.

[159]     *Ashley W. v. Holcomb*, 34 F.4th 588, 593 (7th Cir. May 16, 2022) (Easterbrook, J.) (motion for rehearing and *en banc* denied June 15, 2022).

[160]     *Id.*

[161]     *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) ("While past injury supplied a predicate for compensatory damages, it did not ... supply one for equitable relief since the fact that such practices had been used in the past did not translate into a real and immediate threat of injury to [the plaintiff].") (interpreting *Lyons, supra*).

*Jeramiah M. et al. v. Adam Crum et al.*                                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                              Page 40 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 45 of 76

### b. Plaintiffs Failed to Allege a Likelihood of Repeated Injury or Future Harm.

Here, the Named Plaintiffs make a host of allegations that, if taken as true, might establish "past exposure to illegal conduct."[162] But Plaintiffs' requests for injunctive relief are entirely divorced from the illegal conduct they were allegedly exposed to. In fact, not one of the 18 requests for injunctive relief references ongoing or threatened harm to a Named Plaintiff, much less puts a stop to a specific ongoing harm.[163]

The allegations related to the Named Plaintiffs illustrate the point. For example, Plaintiffs Jeremiah M., Hannah M, and Hunter M. complain that OCS caseworkers failed to return phone calls from their maternal grandmother.[164] But even if the allegation is true, the Complaint fails to allege any ongoing or imminent harm as a result of the caseworker's conduct. And Plaintiffs do not ask the Court to order the particular case worker to return the grandmother's calls more promptly.

Similarly, Rachel T. and Eleanor T. complain that OCS failed to provide medical consent forms to their foster parents in August 2020, but they subsequently admit the forms were provided a month or so later in "September or October 2020."[165] The Complaint does not allege the forms were later taken away, or that the children are suffering any ongoing

---

[162] *O'Shea*, 414 U.S. at 495-95.

[163] This highlights that the litigation is really directed at overhauling Alaska's OCS system, not improving the plight of any particular Named Plaintiff (as noted below, there is an Alaska superior court ready, willing, and able to address any specific complaints the Named Plaintiffs might have about OCS).

[164] Am. Compl. ¶ 48.

[165] *Id*. at ¶ 104.

harm as a result of OCS's one month delay in providing the forms. And like the example above, Plaintiffs do not ask the Court to order OCS to provide Rachel T. or Eleanor T.'s medical records to their foster parents.

**ii.** **Element No. 2: Causation.**

**a.** **The Plaintiff's Injury Must be Fairly Traceable to the Defendant's Conduct.**

To demonstrate causation, the plaintiff must allege facts showing that the injury is causally linked or "fairly traceable" to the defendant's alleged misconduct, and not the result of misconduct of some third party not before the court.[166]

"The line of causation between the defendant's action and the plaintiff's harm must be *more than attenuated*."[167] "[W]here the causal chain involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries...the causal chain is too weak to support standing."[168]

While the question arose in a different context (*i.e.* whether or not to impose a common law duty of care on social workers), the Alaska Supreme Court held in *Karen L. v. State* that the superior courts' involvement in CINA proceedings breaks any causal link between OCS's conduct and the placement and treatment of children in Alaska's foster care system.[169] The Court explained that CINA cases "incorporate substantial protections

---

[166]    *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013).

[167]    *Id.* (emphasis added); *see also* Part II.B.ii, *supra* (discussing CINA Rule 19.1).

[168]    *Id.* at 1142 (quoting *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir.2012), *cert denied*, -- U.S. --, 133 S.Ct. 2390, 185 L.Ed.2d 1116 (2013)).

[169]    *Karen L. v. State, Dep't of Health & Soc. Servs., Div. of Fam & Youth Servs.*, 953 P.2d 871, 877 (Alaska 1998) (emphasis added).

*Jeremiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                          Page 42 of 71
Case 3:22-cv-00129-JMK    Document 23    Filed 08/26/22    Page 47 of 76

for parents and children," and the Court the found any causal connection between the social worker's conduct and the mother's alleged injury was "remote" because the child's removal and placement was "the result of a court order," which itself was "the product of an adversarial CINA proceeding."[170] Moreover, the court explained that the superior court's approval of temporary placement decisions "further *attenuates* any connection between the social worker defendants' conduct and the injury."[171]

> b. **Plaintiffs' Complaint Fails to Plead a Causal Link Between the Challenged Conduct and the Injuries Sustained by the Named Plaintiffs.**

The Named Plaintiffs assert a host of high-level complaints about OCS's historical challenges, including objections to high caseworker caseloads, turnover, number of available foster homes, and OCS case planning, among other things. They also include various facts about the experiences of the Named Plaintiffs themselves, most of which relate to placements. The Complaint then seeks sweeping, system-wide injunctive relief purportedly designed to address their high-level complaints about OCS.

But missing are specific allegations linking OCS's alleged historical problems to the circumstances of the Named Plaintiffs themselves. In other words, the Complaint fails to plausibly demonstrate, through any reasonably specific allegations, that even if OCS had lower caseloads, less turnover, more placements, better case planning etc., things would have turned out differently for the Named Plaintiffs.

---

[170]     *Id*.

[171]     *Id*. at 878.

*Jeramiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 43 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 48 of 76

Even allegations that are subject to abstention doctrines lack the requisite causal link. For example, Plaintiff ███████ alleges she was mistreated at ███████████████ facility, which is apparently associated with the ███████████████.[172] First of all, her complaint could have been raised in superior court. But in addition, there is no allegation that ███████████ is run or controlled by OCS, nor does the Complaint allege OCS knew or should have known ███████ might be mistreated if she was placed there. In short, the Complaint establishes no causal link between OCS's conduct and the injuries ███████ suffered at the ███████████.

### iii.    Element No. 3: Redressability.

Redressability is the third element of standing, and it is the most problematic one for the Plaintiffs here. To establish redressability, a plaintiff must show that it is *likely*, as opposed to merely *speculative*, that its injury will be redressed by a favorable decision.[173]

### a.    Redressability Turns on *Younger* Abstention.

The Seventh Circuit addressed the relationship between redressability and *Younger* in *Ashley W.*[174] Reviewing allegations strikingly similar to those made here, the court explained that redressability turns on the threshold question of whether the plaintiff's

---

[172]    Am. Compl. ¶ 117-119.

[173]    *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 869 (9th Cir. 2002) (citing *Laidlaw*, 528 U.S. at 181). In the context of a putative class action, only harms that are likely to occur to a *named plaintiff* are relevant in assessing standing; prospective harms to potential members of a putative class cannot be considered. *See, e.g.*, *Otero v. Dart*, No. 12 C 3148, 2012 WL 5077727, at *5 (N.D. Ill. Oct. 18, 2012) ("Otero also cannot attain standing to seek equitable relief based on the harms that may occur to potential members of an alleged class that has not been certified and may never be.").

[174]    *Ashley W.*, 34 F.4th at 592.

*Jeramiah M. et al. v. Adam Crum et al.*                                                            3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                                      Page 44 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 49 of 76

complaints could be resolved in a pending state court abuse-and-neglect proceeding:

> Indiana contends that the plaintiffs lack standing. The district judge replied, in essence, that *of course* the plaintiffs have standing – as litigants in CHINS proceedings, they are vitally concerned with questions such as the size and training of the Department's staff,[175] whether the Department does its utmost to prevent siblings from being sent to different foster homes,[176] how often CHINS reviews occur,[177] and so on. It is hard to disagree with that view in the abstract – but also hard to accept that standing should be resolved in the abstract. *The question is whether issues such as the ones we have mentioned...matter to these plaintiffs in a way that a court could redress. And the answer to that question depends on whether Younger channels some or all of plaintiffs' contentions into CHINS proceedings.*[178]

If the answer is "yes, the plaintiff's claims *can* be resolved in a state court proceeding," then the court must abstain because "[d]isputes that can be resolved in a CHINS [or CINA] case must be resolved there."

If the answer is "no, the claim *cannot* be resolved in a state court proceeding[,]" then the question becomes whether a federal court can provide effective equitable relief within the confines of its jurisdiction. The Seventh Circuit explained:

> So it becomes important to know just what relief the two children with live claims want that could not be provided by the judge in a CHINS proceeding.
>
> …
>
> Counsel contended at argument that many placements are too slow – in part because there aren't enough people willing to serve as foster parents – or are made less than optimally. Counsel asserted that bureaucracy moves sluggishly and makes too many mistakes. But what can a federal court do about these things that a CHINS judge could not?...We could imagine, as a potential response, a contention that the state must increase the payments

---

[175]    Plaintiffs make the same allegations here. *See, e .g.,* Am. Compl., ¶¶ 155-56, 261.

[176]    Plaintiffs make the same allegations here. *See, e.g.*, Am. Compl., ¶¶ 60, 170.

[177]    Plaintiffs make the same allegations here. *See, e.g.*, Am. Compl., ¶¶ 183, 189.

[178]    *Ashley W.*, 34 F.4th at 592 (emphasis added, italics in original).

*Jeramiah M. et al. v. Adam Crum et al.*                                                      3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                                Page 45 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 50 of 76

offered to people willing to be foster parents, or that the Department needs money to hire more social workers so that the caseload of each may be reduced, but counsel for the plaintiffs disclaimed any argument that a federal court could or should increase the agency's budget. *Yet, short of ordering the state to come up with more money, it is hard to see what options are open to a federal court but closed to a CHINS court.*[179]

In *Ashley W.*, the Seventh Circuit held it could not provide any equitable relief with respect to the few claims not subject to *Younger* because the court lacked subject matter jurisdiction. As noted above, the court balked at the notion that it could force the State of Indiana to hire more workers, find more foster families, or speed up placements.[180] Accordingly, the Seventh Circuit concluded the case should be dismissed.[181]

> **b.** **Here, <u>All</u> of the Relief Plaintiffs Requests are Either: (1) Available in Superior Court; or (2) Beyond the Court's Jurisdiction.**

This case is no different than *Ashley W.* Twelve of Plaintiffs' 18 requests for injunctive relief relate to complaints that can, and should, be raised in the Named Plaintiffs' CINA cases.[182] Those requests are disposed of by the abstention doctrines described above.

Four of the requests – "a," "b," "p," and "q" – are the type of aspirational requests with which the Seventh Circuit found a redressability problem. For example, request "a" asks the Court to set OCS case worker caseloads. Request "b" would have the Court force OCS to hire more workers. And requests "p" and "q" ask for an injunction requiring OCS to find more therapeutic service providers and therapeutic foster homes.

---

[179]     *Id.* at 593-94 (internal citations omitted).

[180]     *Id.*; *see also* discussion of *M.D. by Stukenberg*, *infra*.

[181]     *Id.*

[182]     Requests "c," "d," "e," "f," "g," "h," "i," "j," "k," "n," "o," and "r" could all be addressed by superior courts.

*Jeremiah M. et al. v. Adam Crum et al.*                                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                          Page 46 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 51 of 76

But it is entirely speculative whether that relief would actually improve the plight of any Named Plaintiff.[183] More importantly, as explained in *Ashley W.*, the relief requested in "a," "b," "p," and "q" is simply not available from a federal court.[184]

The last two remaining requests – "l" and "m" – ask for relief that is unavailable as a matter of law (*see* Parts IV.C and IV.E.v, *supra*).

## C. The *Pennhurst* Doctrine Bars Plaintiffs' Request for an Order Requiring Defendants to Comply with State Law.

Under the *Pennhurst* doctrine, federal courts lack jurisdiction over claims seeking forward-looking relief based on state law.[185] The Supreme Court put it bluntly: "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court

---

[183]     *See*, *e.g.*, *Conner B. ex rel. Vigurs v. Patrick*, 985 F.Supp.2d 129, 144 (D. Mass. 2013) (acknowledging that "neither bolstering the administrative ranks nor obtaining the requisite number of foster homes will resolve the ongoing placement challenges related to ensuring a child's unique fit with a prospective placement, a consideration which rightly figures prominently in placement decisions.").

[184]     *Ashley W.*, 34 F.4th at 593-94; *see also* Part IV.D, *infra* (discussing the limits on injunctive relief); *see also*, *e.g.*, *Missouri*, 515 U.S. at 131 ("When district courts seize complete control…they strip state and local governments of one of their most important governmental responsibilities, and thus deny their existence as independent governmental entities…State and local [] officials not only bear the responsibility for [] decisions, they also are better equipped than a single federal judge to make the day-to-day policy...Federal courts simply cannot gather sufficient information to render an effective decree, have limited resources to induce compliance, and cannot seek political and public support for their remedies.") (Thomas, J., concurring).

[185]     *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Seldovia Native Ass'n, Inc. v. Lujan*, 904 F.2d 1335, 1349–50 (9th Cir. 1990); *Hale v. State of Arizona*, 967 F.2d 1356, 1369 (9th Cir. 1992), *affirmed on reh'g*, 993 F.2d 1387 (9th Cir. 1993) ("the Eleventh Amendment deprives federal courts of jurisdiction to order state actors to comply with state law").

*Jeremiah M. et al. v. Adam Crum et al.*                                          3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 47 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 52 of 76

instructs state officials on how to conform their conduct to state law."[186]

Here, at least one of Plaintiffs' requests for relief violates *Pennhurst*. For instance, Plaintiffs seek an injunction "[r]equir[ing] Defendants to assist unlicensed kinship caregivers in obtaining foster care licenses to take care of members of the Kinship Subclass."[187] But the only legal basis Plaintiffs cite that might support the requested injunction is Alaska state law:

> State law requires OCS to assist appropriate and willing kinship providers in seeking and obtaining licensure under state law, whenever possible, and to help them to obtain variances so long as these variances do not implicate the safety of foster children. *See* ALASKA STAT. § 47.14.115 (2021).[188]

Accordingly, Plaintiffs' request for injunctive relief "m" is barred by *Pennhurst*.

## D. Plaintiffs' Requests for Injunctive Relief Fail as a Matter of Law.

Rule 65 sets the requirements for injunctions and restraining orders.[189] It provides that any injunction must "describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required."[190]

Case law further restricts injunctive relief in institutional reform cases. To begin with, institutional reform injunctions are disfavored because they raise sensitive federalism

---

[186]  *Pennhurst*, 465 U.S. at 106. Similarly, while the *Ex Parte Young* doctrine permits some suits otherwise barred by the Eleventh Amendment where the relief sought is declaratory or injunctive, it is inapplicable to state law claims. *Id.*

[187]  Am. Compl., p. 93 (request for injunctive relief "m").

[188]  Am. Compl., p. 70 (¶ 235).

[189]  FED. R. CIV. PRO. 65(d).

[190]  *Id* at 65(d)(1)(C).

*Jeramiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 48 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 53 of 76

concerns, and they commonly involve areas of core state responsibility.[191] Accordingly, remedies "must directly address and relate to the constitutional violation itself."[192]

"[F]ederal court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate the Constitution or does not flow from such a violation."[193] Orders that go beyond what is minimally required to comport with the Constitution's prohibition on arbitrary deprivation of substantive due process rights are likewise prohibited.[194] Finally, injunctions must be "narrowly tailor[ed]...to remedy the specific action which gives rise to the order."[195] Here, four of the requests for relief run afoul of Rule 65 and the case law.

First, requests "a" and "b" blatantly violate Rule 65 because they fail to describe, in reasonable detail, the acts restrained or required. They would require OCS to (1) "maintain caseloads...as developed by either the COA and/or the CWLA;" and (2) "recruit and/or retain enough qualified and appropriately trained workers...as set by the COA and/or CWLA." Not only are the requests vague, they also refer to standards set by third parties that are not before the court, and which could be changed at any time. Accordingly, requests "a" and "b" are improper under Rule 65.

Requests "p" and "q" suffer the same flaw. They would have the Court require OCS

---

[191]    *Horne v. Flores*, 557 U.S. 433, 448 (2009).

[192]    *Milliken v. Bradley*, 433 U.S. 267, 282 (1977).

[193]    *Id.*

[194]    *Gates v. Collier*, 501 F.2d 1291, 1303 (5th Cir. 1974).

[195]    *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 586 (5th Cir. 2013) (internal quotation omitted).

*Jeremiah M. et al. v. Adam Crum et al.*                                          3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 49 of 71

Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 54 of 76

to develop an "adequate array" of community-based therapeutic services, foster homes, and placements. But "adequate array" is vague and undefined, and the relief depends upon the willingness of third parties not before the court to provide services or serve as caregivers.[196] As a result, requests "p" and "q" are likewise improper under Rule 65.

In addition to their Rule 65 problems, requests nearly identical to those made by the Plaintiffs here have been rejected for over-breadth. For example, in *M.D.*, the Fifth Circuit overturned injunctive relief setting case worker caps and requiring the state to recruit and hire more workers; the court explained:

> One of the most controversial injunction items is the district court's designation of a "caseload cap."…While caseload caps strike at the heart of the workload problem, we agree with the State that they are *too blunt a remedy* for a complex problem. They constitute "relief *beyond what [is] minimally required*" to remedy the constitutional violation.[197]

> In sum, requests "a," "b," "p," and "q" fail to satisfy Rule 65; they also run afoul of

the restrictions on equitable relief set forth in the case law cited above.

### E. Plaintiffs Fail to State Claims on Which Relief May be Granted.

Even if the Court does not abstain or dismiss the case for lack of jurisdiction, none

---

[196]    *See M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 268 (5th Cir. 2018) ("Importantly, the availability of foster homes, particularly those that provide the most 'home-like,' 'least restrictive' environments, is something *uniquely out of the State's control*.") (emphasis added). In striking down injunctive relief related to placement array and group foster homes, the court further stated: "These provisions are not calculated to remedy an identified constitutional violation. T*hey may reflect 'best practices' or the personal policy preferences of the district court, but they are not necessary to achieve constitutional compliance.* Moreover, many of these provisions only increase caseworkers' administrative burdens." *Id* at 283 (emphasis added).

[197]    *M.D.*, 907 F.3d at 273–74 (emphasis added). ("In short, mandatory caps are not only an extreme remedy, they are imprecise.").

*Jeremiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 50 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 55 of 76

of the counts state a claim for which relief can be granted.

### i. Plaintiffs' Substantive Due Process Claim (Count I) Fails as a Matter of Law.

Count I takes "aspirational statutory, regulatory, and private standards as to a variety of topics within the overall complex of foster child care" and attempts to "convert each of them to constitutional requirements."[198] But Plaintiffs' standards are not within scope of Fourteenth Amendment Substantive Due Process protections.[199]

As the Ninth Circuit explained, "the Fourteenth Amendment's Due Process clause generally does not confer any affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests."[200] However, in certain circumstances, when "the state assumes wardship of a child, the state owes the child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child."[201]

To survive a motion to dismiss on a Substantive Due Process claim, including a claim that the State violated substantive due process in its treatment of children in foster care, a plaintiff must allege facts that show: (1) deprivation of a cognizable constitutional

---

[198]    *Connor B. ex rel. Vigurs v. Patrick*, 774 F.3d 45, 55 (1st Cir. 2014).

[199]    *See id.* ("The district court correctly rejected that attempt, as do we."); *Wyatt B. v. Brown*, 2021 WL 4434011, at *8 (D. Or. Sept. 27, 2011) ("The weight of authority clearly demonstrates that the rights secured by the Fourteenth Amendment, though significant, are strictly limited in scope.").

[200]    *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011) (citing *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 196 (1989)).

[201]    *Lipscomb v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992) (citing *DeShaney*, 489 U.S. at 199-200; *Youngberg v. Romeo*, 457 U.S. 307, 315-16 (1982); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).

*Jeremiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                      Page 51 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 56 of 76

right; (2) the defendants' policies and practices about which the plaintiffs complain "shocked the conscience" and constituted "deliberate indifference"; and (3) the defendants' conscious-shocking deliberate indifference caused the constitutional deprivation.[202]

Plaintiffs Complaint fails to meet that standard. With respect to the first prong, in the context of foster care, a child has the right to "basic human needs"; that is, once a State takes a child into custody, the State becomes responsible for providing "basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety."[203]

Alaska state law and policy appropriately provide that Defendants supply foster children with much more than their "basic human needs," and Defendants are devoted to doing so. However, the *constitutional* protections of substantive due process apply only to the narrow band of "basic human needs."

Here, Plaintiffs' Complaint does not allege that they have been deprived of "basic human needs." Instead, they assert a litany of rights, purportedly secured by the U.S. Constitution, to a certain type or length of custodial arrangement or placement,[204] and to

---

[202]    *See, e.g.*, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-50 (1998); *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 422-24, 426-27 (5th Cir. 2006) (citing *Collins v. City of Harker Heights*, 503 U.S. 115 (1992)); *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1149 (3d Cir. 1995)).

[203]    *DeShaney,* 489 U.S. at 200.

[204]    *See, e.g.*, Compl. ¶¶ 251(d); 251(f); 251(g) ("the right to conditions and duration of foster care reasonably related to the purpose of government custody"; "the right not to be maintained in custody longer than is necessary to accomplish the purpose to be served by taking a child into government custody"; "the right to receive or be reunited with an appropriate permanent home and family within a reasonable period").

*Jeremiah M. et al. v. Adam Crum et al.*                                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                               Page 52 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 57 of 76

certain types of social services.[205] While many of the asserted "rights" might arguably amount to sound policy – indeed, many reflect the laws and policies of Alaska – they are not *constitutionally* mandated rights of children in state custody.

The Supreme Court has rejected the notion that Substantive Due Process extends to the type of placement decisions forming the crux of the Complaint. In *Reno v. Flores*, detained migrant children asserted a substantive due process right to be placed with a non-relative custodian, rather than a child-care institution.[206] In rejecting the claim, the Court expressly addressed the consequences a contrary holding would have for state child welfare systems:

> If there exists a fundamental right to be released into what respondents inaccurately call a "noncustodial setting,"…we see no reason why it would apply only in the context of government custody incidentally acquired in the course of law enforcement. It would presumably apply to state custody over orphans and abandoned children as well, giving federal law and federal courts a major new role in the management of state orphanages and other child care institutions…The mere novelty of such a claim is reason enough to doubt that "substantive due process" sustains it[.][207]

Not surprisingly, a number of courts have similarly rejected Substantive Due Process claims that the type and duration of foster care placement is subject to review under Substantive Due Process principles.[208]

---

[205]   *See, e.g.*, Am. Compl. ¶¶ 269(c); 269(e) ("the right to services necessary to prevent unreasonable risk of harm in the least restrictive environment"; "the right to treatment and care consistent with the purpose and assumptions of government custody").

[206]   507 U.S. 292, 302 (1993).

[207]   *Id.*

[208]   *See, e.g.*, *K.H. Through Murphy v. Morgan*, 914 F.2d 846, 853 (7th Cir. 1990) (rejecting substantive due process claim to a "stable foster-home environment"); *see Wyatt B.*, 2021 WL 4434011, at *9 ("The right to substantive due process does not … extent to

*Jeramiah M. et al. v. Adam Crum et al.*                                           3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                          Page 53 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 58 of 76

As for the Plaintiffs' claims that the Constitution entitles them to certain services, the Supreme Court has concluded that Substantive Due Process requires the State to provide only the "minimally adequate care and treatment" required to assure personal safety.[209] "Even then a State necessarily has considerable discretion in determining the nature and scope of its responsibilities," and the Court has cautioned that a State need not "choose between attacking every aspect of a problem or not attacking the problem at all."[210]

Applying that standard to state child welfare putative class actions, courts have rejected the argument that a State can be constitutionally liable for the "alleged failure to provide [an] array of social services."[211]

Only two of the seven purported Substantive Due Process "rights" that the Plaintiffs

---

placement in an optimal or least-restrictive setting, or to the availability of an array of placement options."); *Clark K. v. Guinn*, 2007 WL 1435428, at *11 (D. Nev. 2007) (no right "to placement in the least restrictive, most family-like setting"); *Charlie H. v. Whitman*, 83 F. Supp. 2d 476, 507 (D.N.J. 2000) (no "substantive due process right to 'not remain in state custody unnecessarily,' or 'be housed in the least restrictive, most appropriate and family-like placement while in state custody" (citations omitted)); *Eric L. By and Through Schierberl v. Bird*, 848 F. Supp. 303, 307 (D.N.H. 1994) (rejecting substantive due process claim to placement stability); *B.H. v. Johnson,* 715 F. Supp. 1387, 1397-987 (N.D. Ill. 1989) (substantive due process does not extend to "stable placements in the least restrictive setting").

[209]     *Youngberg v. Romeo,* 457 U.S. 307, 319 (1982).

[210]     *Id.* at 317.

[211]     *Mark G. v. Sabol*, 717 N.E.2d 1067 (N.Y. 1999); *see also Baby Neal v. Casey,* 821 F. Supp. 320, 335-39 (E.D. Pa. 1993) (no right to broad array of foster care services), *rev'd on other grounds*, 43 F.3d 48 (3d Cir. 1994); *B.H.*, 715 F. Supp. at 1397 (rejecting due process claim of entitlement to "family reunification" services, "parental and sibling visitation," and "adequate caseworkers").

*Jeramiah M. et al. v. Adam Crum et al.*            3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support        Page 54 of 71

assert even arguably relate to a "basic human need" of physical safety.[212] But even for those, the allegations fail to satisfy the second and third prongs of the Substantive Due Process test because the Plaintiffs have not alleged facts sufficient to show the Defendants' policies and practices constitute "deliberate indifference" that is "conscience shocking" and caused a constitutional deprivation with respect to the Named Plaintiffs.[213]

The Ninth Circuit has explained that the deliberate indifference standard, as applied in the context of foster care, requires the plaintiff to show "(1) that there was an objectively substantial risk of harm; (2) the [State] was subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed; and (3) the [State] either actually drew that inference or a reasonable official would have been compelled to draw that inference."[214] The State's duty does not extend to protection against unknown harm or dangers.[215] Nor does the Constitution "require that the defendants instantly fix all deficiencies in the foster care system."[216]

The Complaint does not allege facts that support a finding that the State was aware, or should have been aware of, "an objectively substantial risk of harm," or that the State ignored such a risk of harm. As a general matter of *policy*, every injury or act of

---

[212]     *See* Am. Compl. ¶¶ 269(a); 269(c) ("the right to freedom from the foreseeable risk of maltreatment"; the right to services "necessary to prevent unreasonable risk of harm").

[213]     *See Lewis*, 523 U.S. at 850.

[214]     *Momox-Caselis v. Donohue*, 987 F.3d 835, 845 (9th Cir. 2021) (citing *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 844-47 (9th Cir. 2010)).

[215]     *Id.* at 846 ("The [State] could not be deliberately indifferent to a situation of which it had no knowledge.").

[216]     *Connor B.*, 774 F.3d at 56.

*Jeremiah M. et al. v. Adam Crum et al.*                                                            3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                                      Page 55 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 60 of 76

maltreatment for a child in state custody – including those that are unknown, infrequent, incidental, or negligent – is unacceptable. But as a matter of constitutional *law*, Plaintiffs' Complaint fails to identify a single policy, practice, or action that resulted in Defendants making foster care placement or service decisions that were deliberately indifferent to the Named Plaintiffs' right to personal safety and security.[217]

Plaintiffs' generic and conclusory allegations – *e.g.*, Defendants' "long-standing and well-documented actions and inactions substantially depart from accepted professional judgement and constitute deliberate indifference to the harm, risk of harm, and violations of Plaintiffs' legal rights"[218] – are not sufficient to survive a motion to dismiss. As the Supreme Court has explained, "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." [219]

The Complaint also makes boilerplate allegations that the State's "actions and inactions, policies, patterns, customs, and/or practices" harmed the Plaintiffs by failing "to protect them from harm and risk of harm while in [the Defendants' care] by failing to properly provide for their service and medical needs."[220] But Plaintiffs do not identify a

---

[217]  *See M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 251 (5th Cir. 2018) ("Incidental psychological injury that is the natural, if unfortunate consequence of being a ward of the state does not give rise to the level of a substantive due process violation.").

[218]  Am. Compl. ¶ 32.

[219]  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Papasan v. Allain*, 478 U.S 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

[220]  Am. Compl. ¶ 140.

*Jeremiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                        Page 56 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 61 of 76

single specific action, inaction, policy, pattern, custom, or practice by a single Defendant that could possibly establish "deliberate indifference" to the basic needs of the Named Plaintiffs, or to children in foster care generally, that "shocks the conscience." Plaintiffs' allegations fall short of showing the "plausible entitlement to relief" required to survive a motion to dismiss.[221] Accordingly, the substantive due process claims should be dismissed.

### ii. The "Right to Family Association" Claim (Count II) Fails as a Matter of Law.

Plaintiffs also assert a vague right to "familial association" purportedly granted by the First, Ninth and Fourteen Amendments. These claims too should be dismissed.

The Ninth Amendment "has never been recognized as independently securing any constitutional right, for the purposes of pursuing a civil rights claim."[222] And while the First and Fourteenth Amendments may protect some aspects of the parent-child relationship, courts in the Ninth Circuit have been hesitant to expand these protections to other—even close—kinship relationships.[223]

---

[221]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (1985).

[222]    *Strandberg v. City of Helena*, 791 F.2d 744, 748-49 (9th Cir. 1986); *see also, Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013); *Johnson v. Tex. Bd. of Crim. Just.*, 281 Fed. App'x 319, 320 (5th Cir. 2008); *Crossley v. California*, No. 20-0284, 2020 WL 4747723 (S.D. Cal. Aug. 17, 2020); *Menefee v. Tacoma Pub. Sch. Dist. No. 10*, No. C17-6037, 2018 WL 1532773, at *4 (W.D. Wash. Mar. 29, 2018).

[223]    *J.P. ex. rel. Villanueva v. Cnty. of Alameda*, 803 F. App'x 106, 109 (9th Cir. 2020) ("No viable loss-of-familial-association claim exists for siblings under the First Amendment."); *Olvera v. Cnty. of Sacramento*, 932 F. Supp. 2d 1123, 1148 (E.D. Cal. 2013) ("Relying only vaguely on the 'emotional attachments' between siblings, plaintiffs do not cite a single case in support of their theory that siblings have a liberty interest protected by the Due Process Clause."); *Miller v. California*, 355 F.3d 1172 (9th Cir. 2004) (holding noncustodial grandparents do not possess substantive due rights to family integrity or association with their grandchildren, even if they are the children's "de facto

*Jeremiah M. et al. v. Adam Crum et al.*                                        3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 57 of 71
Case 3:22-cv-00129-JMK    Document 23    Filed 08/26/22    Page 62 of 76

Further, while Defendants' goal is to find a stable home for all children, there is no affirmative constitutional right to a "permanent home and family."[224] Nor is there a constitutional right to "all reasonable efforts toward fostering familial association."[225]

While the Complaint here alleges OCS made it "difficult" for the Named Plaintiffs to see their families, none of the conduct complained about amounts to a constitutional violation. Accordingly, Plaintiffs' right to familial association claim should be dismissed.

### iii. The Indian Child Welfare Act Claim (Count IV) Fails as a Matter of Law.

#### a. The Indian Child Welfare Act (ICWA), Generally.

Congress enacted ICWA in 1978 to establish "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster

---

parents"); *Ragan v. Cnty. of Humboldt Dep't of Health & Hum. Servs.*, No. 16-CV-05580-RS, 2017 WL 878083, at *6 (N.D. Cal. Mar. 6, 2017) (citing *Huk v. Cnty. of Santa Barbara*, 650 F. App'x 365, 367 (9th Cir. 2016)) ("[T]he Ninth Circuit recently held in an unpublished opinion that . . . [foster parents] could not demonstrate that their custody of their foster child was a liberty interest protected by the due process clause.").

[224] Am. Compl., ¶ 271; *see Mullins v. Oregon*, 57 F.3d 789, 794 (9th Cir. 1995) ("A negative right to be free of governmental interference in an already existing familial relationship does not translate into an affirmative right to create an entirely new family unit out of whole cloth.").

[225] Am. Compl., ¶ 275; *Marisol A. ex rel. Forbes v. Giuliani*, 929 F. Supp. 662, 676 (S.D.N.Y. 1996) (quoting *Dixey v. Jewish Child Care Assoc.*, 522 F. Supp. 913, 916 (S.D.N.Y.1981)) ("[P]lantiffs 'do not have a constitutional right to rely on an agency to strengthen and reunite their families even if that agency has a statutory duty to do so.'"); *see Charlie H. v. Whitman*, 83 F. Supp. 2d 476, 513-14 (D.N.J. 2000) ("The so-called right to family integrity will not be extended to situations where a plaintiff…alleges limited familial contact, as compared to no contact."); *B.H. v. Johnson*, 715 F. Supp. 1387, 1397 (N.D. Ill. 1989) (finding that the state has no constitutional obligation "to provide training necessary to reunite them [children in foster care] with their families, to ensure parental and sibling visitation, stable placement in the least restrictive setting possible, and an adequate number of follow-up case workers.").

*Jeramiah M. et al. v. Adam Crum et al.*                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 58 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 63 of 76

or adoptive homes which will reflect the unique values of Indian culture."[226]  To that end, ICWA sets forth specific jurisdictional and procedural requirements applicable to Indian children, their families, and their tribes.

Specifically, Section 1911 provides for a dual jurisdictional scheme in cases involving the foster care placement and termination of parental rights for Indian children, including, among other things, that the Indian child's tribe has a right to intervene at any point in a state court proceeding.[227]

Section 1912 sets forth certain rules for state court child welfare proceedings, including that the child's tribe must be notified and given the right to intervene (§ 1912(a)); that parents must be provided court-appointed counsel (§ 1912(b)); that no child can be removed unless "active efforts" have been made to provide remedial services and rehabilitative programs and these efforts have proved unsuccessful (§ 1912(d)); and that any removal of a child must be supported by "clear and convincing evidence" that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child ( § 1912(e)).

Section 1913 provides parental protections in the case of a parent or Indian guardian's voluntary consent to a foster care placement or termination of parental rights.

### b.    Private Rights of Action Under ICWA.

Section 1914 is the only provision of ICWA that creates a private right of action. It

---

[226]    25 U.S.C. § 1902; *see also Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36-37 (1989).

[227]    25 U.S.C. § 1911(c).

*Jeramiah M. et al. v. Adam Crum et al.*                                           3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 59 of 71

*Jeramiah M. et al. v. Adam Crum et al.*                                           3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 59 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 64 of 76

or adoptive homes which will reflect the unique values of Indian culture."[226]  To that end, ICWA sets forth specific jurisdictional and procedural requirements applicable to Indian children, their families, and their tribes.

Specifically, Section 1911 provides for a dual jurisdictional scheme in cases involving the foster care placement and termination of parental rights for Indian children, including, among other things, that the Indian child's tribe has a right to intervene at any point in a state court proceeding.[227]

Section 1912 sets forth certain rules for state court child welfare proceedings, including that the child's tribe must be notified and given the right to intervene (§ 1912(a)); that parents must be provided court-appointed counsel (§ 1912(b)); that no child can be removed unless "active efforts" have been made to provide remedial services and rehabilitative programs and these efforts have proved unsuccessful (§ 1912(d)); and that any removal of a child must be supported by "clear and convincing evidence" that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child ( § 1912(e)).

Section 1913 provides parental protections in the case of a parent or Indian guardian's voluntary consent to a foster care placement or termination of parental rights.

### b.    Private Rights of Action Under ICWA.

Section 1914 is the only provision of ICWA that creates a private right of action. It

---

[226]    25 U.S.C. § 1902; *see also Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36-37 (1989).

[227]    25 U.S.C. § 1911(c).

*Jeramiah M. et al. v. Adam Crum et al.*                                           3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 59 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 64 of 76

provides that any Indian child, parent, or tribe may "petition any court of competent jurisdiction to invalidate [a state] action upon a showing that such action violated any provision of sections 1911, 1912, and 1913."[228]

The Ninth Circuit has held that Section 1914 creates a private cause of action to petition a federal court to "invalidate a state court foster care placement or termination of parental rights if it is in violation of [Sections] 1911, 1912, or 1913."[229] The court has also recognized a limited implied right of action to recognize the full faith and credit of tribal courts in adoption proceedings, pursuant to the provision in Section 1911(d) giving full faith and credit to tribal court decisions in child custody proceedings.[230]

### c. Plaintiffs Failed to Plead a Viable ICWA Claim.

Here, Plaintiffs fail to plead any violations of the ICWA provisions that fall within Section 1914's cause of action. Plaintiffs do not allege state courts have improperly exercised jurisdiction over the removal of Indian children or the termination of parental rights of Indian parents.[231] Plaintiffs do not allege that when a CINA case involves an Indian child, OCS fails to notify or involve the child's tribe.[232] And Plaintiffs do not plead that OCS fails to employ "active efforts" before removing an Indian child from his or her home, or that OCS removes Indian children without finding clear and convincing evidence

---

[228] 25 U.S.C. § 1914.

[229] *Doe v. Mann*, 415 F.3d 1038, 1047 (9th Cir. 2005).

[230] *See Native Village of Venetie v. Alaska*, 944 F.2d 548, 553-54 (9th Cir. 1991).

[231] 25 U.S.C. § 1911(a).

[232] *See id.* § 1912(a).

*Jeremiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 60 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 65 of 76

that continued custody is likely to result in severe emotional or physical harm.[233] In fact, Plaintiffs do not even allege they are "Indian child[ren]" entitled to ICWA's procedures.[234]

Instead, Plaintiffs' claims center on Section 1915 of ICWA, which provides that if an Indian child is taken into state custody, the agency must place the child "in the least restrictive setting which most approximates a family and in which his special needs, if any, may be met," and "a preference shall be given, in the absence of good cause to the contrary, to a placement with":

(1) A member of the Indian child's extended family;

(2) A foster home licensed, approved, or specified by the Indian child's tribe;

(3) An Indian foster home licensed or approved by an authorized non-Indian licensing authority; or

(4) An institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs.[235]

But Section 1915 is **not** one of the procedural protections identified in Section 1914 for which the Ninth Circuit has recognized a cause of action.[236]  In fact, several federal courts—including the district court in the decision preceding the Ninth Circuit's decision in *Doe v. Mann*—have held that there is no private cause of action under Section 1915.[237]

---

[233]  *See id.* § 1912(d)-(e).

[234]  *See id.* § 1903(4) (defining "Indian" as "any person who…is an Alaska Native and a member of a Regional Corporation as defined in section 1606 of Title 43"); *see also Umtuch v. Hoyt*, 163 F.3d 609 (9th Cir. 1998) (holding ICWA inapplicable when children were not "Indian child[ren]").

[235]  *Id.* § 1915(b).

[236]  *See Mann*, 415 F.3d at 1047.

[237]  *See Doe v. Mann*, 285 F. Supp. 2d 1229, 1240 (N.D. Cal. 2003) ("There is no evidence in the text of section 1915, the structure of ICWA or the legislative history that Congress intended to create a cause of action for such violations."); *Jumping Eagle v.*

*Jeramiah M. et al. v. Adam Crum et al.*                                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                              Page 61 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 66 of 76

Accordingly, Plaintiffs' claims that their placements did not follow Section 1915's order of preferences fail as a matter of law and should be dismissed.[238]

Moreover, Plaintiffs failed to plead any facts showing OCS violated Section 1915, which sets certain placement preferences, any of which may be overridden for good cause.[239] While Plaintiffs made vague allegations that OCS failed to place some children in an ICWA-preferred setting (which Plaintiffs refer to, inaccurately, as "ICWA-compliant homes," *see, e.g.*, First Amended Compl. ¶¶ 80, 259), they did not allege any specific placement decision of the Named Plaintiffs (or any other Indian child) departed from ICWA's placement preferences without good cause in violation of Section 1915(b).

Further, contrary to Plaintiffs' insinuations, ICWA permits, and in some cases *requires*, that an Indian child be placed in a placement that does not follow the typical order of preferences. For example, if an Indian child has medical needs that require him to be placed in a home near a medical center, and the only available placement near the center is a non-Indian licensed foster home, ICWA permits the child to be placed in the lesser-

---

*Warren*, 18-4131, 2021 WL 462644 (D.S.D. Feb. 9, 2021) ("§ 1915 does not create a separate cause of action"); *Collins v. Bern*, 04-4182, 2006 WL 8453547 (D.S.D. Aug. 30, 2006) ("ICWA, however, does not provide a private right of action for alleged violations of § 1915.").

[238]    *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (explaining that a plaintiff seeking redress in federal court "must assert the violation of a federal right, not merely a violation of federal law").

[239]    *See* 25 U.S.C. § 1915(b) (providing that an Indian child must be placed in a setting "in which his special needs, if any, may be met" and that the preferred order need not be followed upon a showing of "good cause").

*Jeramiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 62 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 67 of 76

preferred foster home. In fact, that very fact scenario has played out in superior courts.[240]

In short, Plaintiffs' claims amount to no more than a disagreement with some of the individual placement decisions that Alaska superior courts have made in cases involving Indian children.  As long as the state agency and state courts followed the procedures set forth in Sections 1911, 1912, and 1913, however, the Ninth Circuit has made clear that ICWA does not provide an avenue for federal court review of those decisions.[241]

Finally, while Section 1915 sets forth certain placement preferences to be applied by state courts on a case-by-case basis, there is nothing in the statute that would support Plaintiffs' allegations that ICWA *requires* States to maintain a certain number of "licensed ICWA foster homes," *see* First Amended Compl., at ¶ 256; furnish maintenance payments to unlicensed kinship caregivers, *id.* at ¶ 257; limit the number of children who can be placed in an institutional setting, *id.* at ¶ 258; seek and identify all potential placement options, *see id.* at ¶ 259; or "consistently review" a child's placement to see "how to move the child to a legally preferred placement," *see id.* at ¶ 290.

Rather, Section 1915 requires only that States place Indian children in the most

---

[240]    *See Cora C. v. State*, No. S-16798, 2018 WL 2979472 (Alaska June 13, 2018); *see also Adoptive Couple v. Baby Girl*, 570 U.S. 637, 642 (2013) (holding that ICWA's placement preferences do not bar a particular placement "when no other eligible candidates have sought to adopt the child").

[241]    *See Mann*, 415 F.3d at 1041-43 (noting that Section 1914 functions as a "limited" exception to *Rooker-Feldman*'s jurisdictional bar by granting "federal courts authority to invalidate a state court foster care placement or termination of parental rights if it is in violation of [Sections] 1911, 1912, or 1913."); *cf. Oglala Sioux Tribe v. Fleming*, 904 F.3d 603 (8th Cir. 2018) (abstaining from hearing a challenge brought under ICWA § 1922 under *Younger* abstention principles).

*Jeramiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 63 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 68 of 76

preferred placement option available and suited to the child's needs. To the extent Plaintiffs

believe OCS or a superior court failed to comply with that provision, the proper recourse

is a state court appeal, as Congress has not provided a right of action in federal court.

### iv.    The 42 U.S.C. § 672(a) Claim (Count V) Fails as a Matter of Law.

Citing 42 U.S.C. § 672, Plaintiffs complain that unlicensed relative or kinship

caregivers do not receive foster care maintenance payments; instead, they are eligible for

Emergency Relief Support payments or assistance under Alaska's Temporary Assistance

Program, which offer less money than regular maintenance payments.[242]

Plaintiffs then request injunctive relief "[e]njoin[ing] Defendants from withholding

foster care maintenance payments from eligible *unlicensed* kinship caregivers of members

of the Kinship Subclass."[243] Plaintiffs' request fails as a matter of law.

To begin with, there is no legal basis for requiring Defendants to make maintenance

payments to these **un**licensed caregivers. Federal law only requires states to provide

maintenance payments if "the child has been placed in a foster family home or child-care

institution."[244] The statute defines "foster family home" to mean a "home for children

which is *licensed by the State* in which it is situated or has been approved, by the agency

of such State having responsibility for licensing homes of this type, *as meeting the*

---

[242]    Am. Compl., pp. 66-68, ¶¶ 224-227.

[243]    *Id*. at 93 (request for injunctive relief "l") (emphasis added).

[244]    42 U.S.C. § 672(a)(2)(C).

*Jeramiah M. et al. v. Adam Crum et al.*                                          3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                       Page 64 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 69 of 76

*standards established for such licensing*."[245]

In other words, there are two categories of foster families to whom the states must make maintenance payments: (1) licensed foster parents; and (2) state-approved foster homes that meet the standards for licensing. Thus, there is no legal basis for requiring Defendants to make maintenance payments to unlicensed caregivers unless OCS has approved the caregiver "as meeting the standards established for such licensing."

But the Complaint fails to allege Defendants *approved* a home as meeting the licensing standards, then failed to make maintenance payments to it.[246] Accordingly, Plaintiffs' request for injunctive relief "l" should be dismissed as a matter of law.

> **v.     The ADA and Rehabilitation Act Claims (Counts VI and VII) Fail as a Matter of Law.**

Counts VI and VII should be dismissed because the facts alleged do not constitute discrimination and thus fail to state a cause of action for which relief can be granted under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.*

Title II of the ADA prohibits public entities from discriminating on the basis of disability.[247]  Section 504 similarly prohibits disability discrimination by recipients of

---

[245]     *Id.* § 672(c)(emphasis added); *see also*, *e.g.*, *D.O. v. Glisson*, 847 F.3d 374, 382-83 (6th Cir. 2017) (explaining Kentucky's procedure for "approval" included a background check and home evaluation, which are also required for licensed foster parents).

[246]     In fact, just the opposite. *See, e.g.*, Am. Compl., p. 18, ¶ 47 (admitting Ms. S. was never licensed); pp. 21-22, ¶ 64 (admitting Ms. Y filled out licensing applications, but "need[ed] a variance" in order to become approved).

[247]     42 U.S.C. § 12132.

*Jeramiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 65 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 70 of 76

federal funds.[248] The two laws are interpreted coextensively because "there is no significant difference in the analysis of rights and obligations created by the two Acts."[249]

To state a prima facie Title II claim, "a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability."[250] The elements of a Section 504 claim are similar, with the additional requirement that the plaintiff show "the program receives federal financial assistance."[251]

Here, Plaintiffs do not assert they were excluded from participation in or otherwise denied the benefits of Alaska's child welfare program on the basis of their disabilities. Rather, Plaintiffs assert they have a variety of health conditions and allege OCS has or has not taken various actions related in some way to the treatment of those conditions.

For example, the Complaint alleges OCS did not "provide information about any of the children's medical needs and failed to provide the children's medical consent forms to foster parents" for one set of siblings (¶102); has "lagged in paying for services…including treatment for a staph infection…and surgery" for another set of siblings (¶103); failed to

---

[248]   29 U.S.C. § 794.

[249]   *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729 (9th Cir. 2021); *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1098 (9th Cir. 2013).

[250]   *Townsend v. Quasim*, 328 F.3d 511, 517 (9th Cir. 2003) (quoting *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)).

[251]   *Id.* (citation omitted).

*Jeramiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 66 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 71 of 76

secure timely parental consent for non-routine behavioral medication for Rachel T. (¶105); did not assist Gayle T. in getting treatment after she injured her back at work; and told Jeremiah M.'s foster parent that the "nonverbal diagnosis assessment and specific treatment of autism" he needs was available only in Anchorage, four hours away (¶ 48). There are also three general allegations that David V., George V. and Lawrence V. have "not been receiving any services" while in OCS custody. These allegations, even if accepted as true, do not constitute a claim of *discrimination* on the basis of disability.

The Supreme Court has emphasized the ADA does not "impose[ ] on the States a standard of care for whatever medical services they render" or "require States to provide a certain level of benefits to individuals with disabilities."[252] And the Ninth Circuit has confirmed the ADA prohibits only discrimination "because of disability," not "inadequate treatment for disability."[253] In short, a Title II claim "survives only if it truly alleges a 'discriminatory denial of services' and must be dismissed if it instead concerns the

---

[252]     *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999); *Alexander v. Choate*, 469 U.S. 287, 305-06 (1985) (under Rehabilitation Act, state "is not required to assure that its handicapped Medicaid users will be as healthy as its nonhandicapped users.").

[253]     *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016). *Simmons* is consistent with the opinions from other Courts of Appeals that "the disabilities statutes do not guarantee any particular level of medical care for disabled persons, nor assure maintenance of service previously provided." *See*, *e.g.*, *Cercpac v. Health & Hosps. Corp.,* 147 F.3d 165, 168 (2d Cir. 1998); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (concluding that the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners").

*Jeremiah M. et al. v. Adam Crum et al.*                                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                              Page 67 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 72 of 76

'adequacy' of the services provided."[254]

Here, to the extent that Plaintiffs assert complaints regarding the *adequacy* of the health care services they receive through the State, even if true, those claims do not state a cause of action under the ADA and must be dismissed.

Plaintiffs also allege OCS violated a Department of Justice regulation providing that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities," 28 C.F.R. § 35.130(d), and the Supreme Court's decision in *Olmstead*, which held that "unjustified isolation of persons with disabilities is a form of discrimination."[255]

But the Complaint does not allege any facts to support a claim of "unjustified isolation" of any Named Plaintiff. In fact, according to the Complaint, every single Named Plaintiff who is a member of the putative ADA Subclass is currently living in a community setting, despite their serious disabilities.[256] While the Complaint alleges ██████████ ████████████████████████████████████████████████████████████ ████████████████████████████.[257]

---

[254]  *Lane v. Kitzhaber*, 841 F. Supp. 2d 1199, 1207 (D. Or. 2012) (quoting *Buchanan v. Maine*, 469 F.3d 158, 174-75 (1st Cir. 2006)).

[255]  527 U.S. at 597.

[256]  *See* Am. Compl. ████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████

[257]  *Id.* ████████████████████████████

*Jeramiah M. et al. v. Adam Crum et al.*                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                Page 68 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 73 of 76

The mere fact that temporary inpatient services may have been necessary for children and youth who are alleged to have serious emotional disturbances is not in itself a violation of the ADA. As the Supreme Court held in *Olmstead,* only "unjustified" isolation in institutions constitutes discrimination under the ADA. This means, among other things, that "the State's treatment professionals have determined that community placement is appropriate" and that the community placement "can be reasonably accommodated."[258]

Here, the Complaint does not allege "the State's treatment professionals ha[d] determined that community placement is appropriate" at the time ██████████████ ████████ were temporarily placed in psychiatric treatment centers. In fact, children in Alaska may only be placed in a secure residential psychiatric treatment center if a superior court determines the placement is justified and in the child's best interest. Specifically, the superior court must find, "based on the testimony of a mental health professional," that:

> (1)    the child is gravely disabled or is suffering from mental illness and, as a result, is likely to cause serious harm to the child or to another person;
>
> (2)    there is no reasonably available, appropriate, and less restrictive alternative for the child's treatment or that less restrictive alternatives have been tried and have failed; and
>
> (3)    there is reason to believe that the child's mental condition could be improved by the course of treatment or would deteriorate if untreated.[259]

Further, placements in all other residential treatments are approved by superior courts in CINA cases as "appropriate" and in the "best interests" of the child, and all such

---

[258]    *Olmstead*, 527 U.S. at 587.

[259]    AS 47.10.087 (2016).

*Jeramiah M. et al. v. Adam Crum et al.*                                      3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                    Page 69 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 74 of 76

placements can be challenged by the child or any other party in the CINA proceeding.[260]

Given that superior courts review and assess all placements under these procedures – and the Complaint does not allege these procedures were not followed in the case of the three Named Plaintiffs who spent some period of time in residential treatment (or in any of the other Named Plaintiffs' cases) – the Plaintiffs have failed to allege facts to support a claim that any alleged isolation or institutionalization was "unjustified."

Finally, to the extent Plaintiffs argue the State should ensure there are more physicians, psychologists, and providers of specialized community mental health services in often remote parts of Alaska for all state residents, including foster children, **nothing** in the ADA or the Rehabilitation Act requires the State to ensure sufficient providers across the State. Moreover, creating more providers of specialized community mental health services in often remote parts of Alaska for all state residents, including foster children, is not something that OCS or this Court can reasonably do. Having alleged neither discriminatory denial of services nor unjustified institutional isolation, Plaintiffs' ADA and Rehabilitation Act claims should be dismissed for failure to state a cause of action.

## V.    CONCLUSION

For the reasons set forth above, Defendants request the Court dismiss the Complaint.

---

[260]    *See* Part II.A-B, *supra*.

*Jeramiah M. et al. v. Adam Crum et al.*                                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                          Page 70 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 75 of 76

Dated: August 26, 2022.

Respectfully submitted,

TREG R. TAYLOR
ATTORNEY GENERAL

*/s/ Christopher A. Robison*
Christopher A. Robison
Alaska Bar No. 2111126
Assistant Attorney General
Alaska Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
T: (907) 269-5275/F: (907) 276-3697
Email: chris.robison@alaska.gov
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

A true and correct copy of this motion was served on counsel of record for the

Plaintiffs via the CM/ECF and electronic mail on August 26, 2022.

*/s/ Christopher A. Robison*
Christopher A. Robison

*Jeramiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Defendants' Motion to Dismiss and Brief in Support                          Page 71 of 71
Case 3:22-cv-00129-JMK   Document 23   Filed 08/26/22   Page 76 of 76