Marcia Robinson Lowry (*admitted pro hac vice*)
mlowry@abetterchildhood.org
Julia K. Tebor (*admitted pro hac vice*)
jtebor@abetterchildhood.org
Jonathan G. Borle (*admitted pro hac vice*)
jborle@abetterchildhood.org
**A BETTER CHILDHOOD**
355 Lexington Avenue, Floor 16
New York, NY 10017
Telephone: (646) 795-4456
Facsimile: (212) 692-0415

Danielle M. Ryman, AK Bar No. 9911071
dryman@perkinscoie.com
Elena M. Romerdahl, AK Bar No. 1509072
eromerdahl@perkinscoie.com
Michael O'Brien, AK Bar No. 0311084
mobrien@perkinscoie.com
**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, AK 99501
Telephone: (907) 279-8561
Facsimile: (907) 276-3108

James J. Davis, Jr., AK Bar No. 9412140
jdavis@njp-law.com
Nicholas Feronti, AK Bar No. 2106069
nferonti@njp-law.com
Savannah V. Fletcher, AK Bar No. 1811127
sfletcher@njp-law.com
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
Telephone: (907) 308-3395
Facsimile: (866) 813-8645

Mark Regan, AK Bar No. 8409081
mregan@dlcak.org
Patrick D. Stocks, AK Bar No. 1505032
pstocks@dlcak.org
**DISABILITY LAW CENTER OF ALASKA**
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
Telephone: (907) 565-1002
Facsimile: (907) 565-1000

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Jeremiah M., Hannah M. and Hunter M. by their next friend Lisa Nicolai; Mary B. and Connor B. by their next friend Charles Ketcham; David V., George V., Lawrence V., Karen V., and Damien V. by their next friend Merle A. Maxson; Rachel T., Eleanor T. and Gayle T. by their next friend Rebecca Fahnestock; and Lana H. by her next friend Melissa Skarbek individually and on behalf of all other similarly situated<br><br>      Plaintiffs,<br><br>  v.<br><br>ADAM CRUM, Director, Alaska Department of Health and Social Services, in his official capacity; KIM GUAY, Director, Office of Children's Services, in her official capacity; ALASKA DEPARTMENT OF HEALTH AND SOCIAL SERVICES; and ALASKA OFFICE OF CHILDREN'S SERVICES,<br><br>      Defendants. | Case No. 3:22-cv-00129-JMK<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>ORAL ARGUMENT REQUESTED |

*Jeremiah M. et al. v. Adam Crum et al.*         3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 2 of 93

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................ 1

II. BACKGROUND ................................................................ 3

III. ARGUMENT ................................................................... 7

    A.    This Court Has Subject Matter Jurisdiction and the *Younger*, *O'Shea*, and *Rooker-Feldman* Doctrines Do Not Bar This Court From Exercising Jurisdiction Over This Case ............................... 7

        1.    Abstention Under *Younger* Is Inappropriate .................................. 10

            a.    *Younger* Abstention is Inappropriate Because Plaintiffs Ask the Court to Review Executive Action, not Judicial Action .............................. 10

            b.    *Younger* Abstention is Inappropriate Because the Hearings at Issue Are Not Quasi-Criminal ......................... 12

            c.    *Younger* Abstention is Inappropriate Because This Case Does Not Involve Civil Proceedings Involving Certain Orders Uniquely in Furtherance of the State Courts' Ability to Perform Their Judicial Function ............. 18

        2.    This Case Does Not Satisfy The *Middlesex* Factors ...................... 200

            a.    The Relief Sought in This Case Does Not Interfere with an Ongoing State Court Enforcement Proceeding. ......................................................... 200

            b.    Alaska's CINA Proceedings Do Not Provide an Adequate Forum For Claims Alleging Systemic Constitutional and Federal Statutory Violations ................ 255

            c.    This Suit Does Not Implicate an Important State Interest for *Younger* Purposes. .................................. 29

        3.    *O'Shea* Abstention Is Inappropriate ................................................ 31

        4.    *Rooker-Feldman* Does Not Apply To This Case ............................. 35

*Jeremiah M. et al. v. Adam Crum et al.*    -i-        3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 3 of 93

B.      Plaintiffs Have Adequately Alleged Standing to Bring Their
        Claims ........................................................................................ 38

        1.      Plaintiffs Have Adequately Alleged an Injury-In-Fact ................. 388

        2.      Plaintiffs Have Adequately Alleged Causation ............................... 41

        3.      Plaintiffs Have Adequately Alleged Redressability ........................ 42

C.      Defendants' Arguments About the Appropriateness of Injunctive
        Relief Are Premature .................................................................. 43

D.      Plaintiffs Have Adequately Stated Claims on Which Relief May be
        Granted ........................................................................................ 46

        1.      Plaintiffs Have Adequately Alleged Substantive Due
                Process Claims ........................................................................ 46

        2.      Plaintiffs Have Adequately Alleged Violations of Their
                Right to Family Association Under the First, Ninth, and
                Fourteenth Amendments ............................................................ 522

        3.      Plaintiffs Have Adequately Alleged Violations of the Indian
                Child Welfare Act ..................................................................... 566

        4.      Plaintiffs Have Adequately Alleged Violations of 42 U.S.C.
                § 672(a) ................................................................................... 600

        5.      Plaintiffs Have Adequately Alleged Discrimination by
                Denial of a Reasonable Accommodation and Violations of
                the Integration Mandate in Contravention of the Americans
                with Disabilities Act and the Rehabilitation Act ........................... 633

                a.      Plaintiffs Have Adequately Alleged Discrimination
                        under the ADA and the Rehabilitation Act, Partly
                        Because Defendants Have Not Made Reasonable
                        Modifications to their Programs to Avoid
                        Discrimination .................................................................. 644

                b.      Plaintiffs Have Adequately Alleged Discrimination
                        in Violation of the ADA and the Rehabilitation Act
                        Resulting from Defendants' Failure to Offer
                        Reasonable Modifications to Existing Foster Care
                        Programs ........................................................................... 655

*Jeremiah M. et al. v. Adam Crum et al.*      -ii-                           3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1
Case 3:22-cv-00129-JMK    Document 30    Filed 09/30/22    Page 4 of 93

  c. Plaintiffs Have Adequately Alleged Violations of the Integration Mandate Based on a Risk of Future Placement in Institutions or Other Overly Restrictive Settings.............................................................................. 677

**IV. CONCLUSION**.................................................................................... **700**

*Jeremiah M. et al. v. Adam Crum et al.* -iii-   3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK Document 30 Filed 09/30/22 Page 5 of 93

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*31 Foster Children v. Bush*,
329 F.3d 1255 (11th Cir. 2003) ............................................................. 14, 15

*A.A. v. Buckner*,
No. 21-cv-367, 2021 U.S. Dist. LEXIS 209247
(M.D. Ala. Oct. 29, 2021) ....................................................................... 14, 16

*Alyssa B. v. State*,
165 P.3d 605 (Alaska 2007) ................................................................... 17, 23

*AmerisourceBergen Corp. v. Roden*,
495 F.3d 1143 (9th Cir. 2007) ..................................................................... 29

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,
824 F.3d 858 (9th Cir. 2016) ...................................................................... 43

*Ashley W. v. Holcomb*,
34 F.4th 588 (7th Cir. 2022) ............................................................. 15, 16, 42

*B.K. v. Snyder*,
922 F.3d 957 (9th Cir. 2019) ......................................................... 39, 41, 43, 50

*Bano v. Union Carbide Corp.*,
361 F.3d 696 (2d Cir. 2004) ....................................................................... 45

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 46

*Bianchi v. Rylaarsdam*,
334 F.3d 895 (9th Cir. 2003) ...................................................................... 36

*Blair v. Shanahan*,
38 F.3d 1514 (9th Cir. 1994) ...................................................................... 38

*Blessing v. Freestone*,
520 U.S. 329 (1997) ............................................................................ 57, 58

*Brian A. ex rel. Brooks v. Sundquist*,
149 F. Supp. 2d 941 (M.D. Tenn. 2000) ................................................... passim

*Jeremiah M. et al. v. Adam Crum et al.*     -iv-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 6 of 93

*Brokaw v. Weaver,*
    305 F.3d 668 (7th Cir. 2002) ................................................................................ 28

*Brown v. Alexander,*
    No. 13-cv-01451, 2013 U.S. Dist. LEXIS 175357
    (N.D. Cal. Dec. 13, 2013) .................................................................................... 27

*Brown v. Lexington Cty.,*
    No. 17-cv-1426, 2018 U.S. Dist. LEXIS 113976
    (D.S.C. July 9, 2018) ........................................................................................... 20

*Carson P .v. Heineman,*
    240 F.R.D. 456 (D. Neb. 2007) ........................................................................... 16

*Carten v. Hartford Life & Accident Ins. Co.,*
    No. 10-cv-04019, 2010 U.S. Dist. LEXIS 115468
    (N.D. Cal. Oct. 21, 2010) .................................................................................... 45

*Castro v. Cty. of L.A.,*
    833 F.3d 1060 (9th Cir. 2016) ....................................................................... 50, 51

*Celebrity Chefs Tour, LLC v. Macy's, Inc.,*
    16 F. Supp. 3d 1159 (S.D. Cal. 2014) ................................................................. 44

*Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.,*
    21 F. Supp. 3d 620 (W.D. Va. 2014) .................................................................. 45

*Citizens for Free Speech, LLC v. Cty. Of Alameda,*
    953 F.3d 655 (9th Cir. 2020) ................................................................................. 9

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ......................................................................................... 38, 40

*Clark K. v. Guinn,*
    No. 06-cv-1068, 2007 U.S. Dist. LEXIS 35232
    (D. Nev. May 9, 2007) .................................................................................. passim

*Clouthier v. Cty. of Contra Costa,*
    591 F.3d 1232 (9th Cir. 2010) ............................................................................. 51

*Collins v. Bern,*
    2006 U.S. Dist. LEXIS 108634 (D.S.D. Aug. 30, 2006) ..................................... 58

*Colo. River Water Conservation Dist. v. U.S.,*
    424 U.S. 800 (1976) ............................................................................................... 7

*Jeremiah M. et al. v. Adam Crum et al.*    -v-    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 7 of 93

*Conley v. Gibson*,
   355 U.S. 41 (1957) ................................................................................................ 45

*Connor B. v. Patrick*,
   771 F. Supp. 2d 142 (D. Mass. 2011) ................................................................. passim

*Connor B. v. Patrick*,
   985 F. Supp. 2d 129 (D. Mass. 2013) ........................................................................ 53

*Crawford v. Uber Techs., Inc.*,
   No. 17-cv-02664, 2018 U.S. Dist. LEXIS 33778
   (N.D. Cal. Mar. 1, 2018) ............................................................................................ 42

*Crossley v. Cal.*,
   479 F. Supp. 3d 901 (S.D. Cal. 2020) ........................................................................ 55

*D.G. v. Yarbrough*,
   No. 08-cv-074, 2011 U.S. Dist. LEXIS 145775
   (N.D. Okla. Dec. 16, 2011) .......................................................................................... 8

*D.O. v. Beshear*,
   No. 15-cv-048, 2016 U.S. Dist. LEXIS 37651
   (E.D. Ky. Mar. 23, 2016) ............................................................................................ 63

*D.O. v. Glisson*,
   847 F.3d 374 (6th Cir. 2017) ........................................................................ 60, 62, 63

*Davis v. Shah*,
   821 F.3d 231 (2d Cir. 2016) ....................................................................................... 68

*Dep't of Health and Soc. Servs. v. A.C.*,
   682 P.2d 1131 (Alaska Ct. App. 1984) ....................................................................... 28

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
   489 U.S. 189 (1989) .................................................................................................... 48

*DG v. Devaughn*,
   594 F.3d 1188 (10th Cir. 2010) .................................................................................. 44

*Disability Rights N.Y. v. New York*,
   916 F.3d 129 (2d Cir. 2019) ................................................................................. 33, 34

*Doe v. Mann*,
   285 F. Supp. 2d 1229 (N.D. Cal. 2003) ..................................................................... 58

*Jeremiah M. et al. v. Adam Crum et al.*     -vi-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 8 of 93

*Doe v. Mann*,
   415 F.3d 1038 (9th Cir. 2005) ................................................................. 59

*Doe v. N.Y.C. Dep't of Soc. Servs.*,
   649 F.2d 134 (2d Cir. 1981) .................................................................... 51

*Doe v. N.Y.C. Dep't of Soc. Servs.*,
   709 F.2d 782 (2d Cir. 1983) .................................................................... 52

*Dwayne B. v. Granholm*,
   No. 06-cv-13548, 2007 U.S. Dist. LEXIS 28265
   (E.D. Mich. Apr. 17, 2007) ............................................................. passim

*E.T. v. Cantil-Sakauye*,
   682 F.3d 1121 (9th Cir. 2012) ........................................................... 33, 34

*Ernst v. Child and Youth Servs. of Chester Cnty*,
   108 F.3d 486 (3d Cir. 1997) .................................................................... 28

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
   544 U.S. 280 (2005) ................................................................. 35, 36, 37

*Feldman v. McKay*,
   No. 15-cv-04892, 2015 U.S. Dist. LEXIS 159741
   (C.D. Cal. Nov. 25, 2015) ....................................................................... 36

*Fisher v. Oklahoma Health Care Auth.*,
   335 F.3d 1175 (10th Cir. 2003) ............................................................... 68

*Fowler v. Aetna Life Ins. Co.*,
   No. 08-cv-03463, 2008 U.S. Dist. LEXIS 95174
   (N.D. Cal. Nov. 13, 2008) ....................................................................... 45

*Fry v. Napoleon Cmty. Sch.*,
   580 U.S. 154 (2017) ................................................................................ 65

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002) ................................................................................ 57

*Goodpaster v. City of Indianapolis*,
   736 F.3d 1060 (7th Cir. 2013) ................................................................ 55

*Guess v. Bd. of Med. Exam'rs of State of N.C.*,
   967 F.2d 998 (4th Cir. 1992) .................................................................. 37

*Jeremiah M. et al. v. Adam Crum et al.*    -vii-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 9 of 93

*Harris v. Olszewski*,
442 F.3d 456 (6th Cir. 2006) ................................................................ 58

*Henry A. v. Willden*,
678 F.3d 991 (9th Cir. 2012) ............................................ 46, 47, 49, 50

*Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*,
380 F.3d 872 (5th Cir. 2004) ........................................................ 47, 52

*Hodges v. Seward Ship's Ace Hardware & Marine*,
No. 19-cv-00059, 2020 U.S. Dist. LEXIS 256891
(D. Alaska Nov. 18, 2020) ........................................................................ 7

*Hoptowit v. Spellman*,
753 F.2d 779 (9th Cir. 1984) ............................................................... 47

*Huffman v. Pursue, Ltd.*,
420 U.S. 592 (1975) ............................................................................ 12

*In re B.L.J.*,
717 P.2d 376 (Alaska 1986) ................................................................ 23

*In re Necessity for the Hospitalization of April S.*,
499 P.3d 1011, 1014 (Alaska 2021) ............................................... 69, 70

*Iqbal v. Patel*,
780 F.3d 728 (7th Cir. 2015) ............................................................... 36

*J.B. v. Woodward*,
997 F.3d 714 (7th Cir. 2021) ............................................................... 37

*J.B. ex rel. Hart  v. Valdez*,
186 F.3d 1280 (10th Cir. 1999) ........................................................... 16

*J.P. v. Cty of Alameda*,
803 F. App'x 106 (9th Cir. 2020) ........................................................ 55

*Jackson v. Carey*,
353 F.3d 750 (9th Cir. 2003) ............................................................... 46

*Jewel v. NSA*,
673 F.3d 902 (9th Cir. 2011) ............................................................... 38

*Johnson v. Tex. Bd. of Criminal Justice*,
281 F. App'x 319 (5th Cir. 2008) ........................................................ 55

*Jeremiah M. et al. v. Adam Crum et al.*    -viii-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 10 of 93

*Jonathan R. v. Justice*,
    41 F.4th 316 (4th Cir. 2022) ................................................................ passim

*Joseph A. v. Ingram*,
    275 F.3d 1253 (10th Cir. 2002) ........................................................... 14, 15

*Joseph ex rel. Wolfe v. N.M. Dep't of Human Servs.*,
    No. 80-cv-623, 2003 U.S. Dist. LEXIS 29996 (D.N.M. Jan. 16, 2003) .................... 15

*Juidice v. Vail*,
    430 U.S. 327 (1977) ..................................................................... 19, 23, 30

*Juliana v. U.S.*,
    947 F.3d 1159 (9th Cir. 2020) ................................................................ 42

*Jumping Eagle v. Warren*,
    No. 18-cv-4131, 2021 U.S. Dist. LEXIS 24621 (D.S.D. Feb. 9, 2021) .................... 58

*K.H. v. Morgan*,
    914 F.2d 846 (7th Cir. 1990) ............................................................... 42, 48

*Karen L. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth
Servs.*, 953 P.2d 871 (Alaska 1998) ........................................................ 10, 41

*Kenny A. ex rel. Winn v. Perdue*,
    218 F.R.D. 277 (N.D. Ga. 2003) ......................................................... passim

*Kenny A. ex rel. Winn v. Perdue*,
    No. 02-cv-1686, 2004 U.S. Dist. LEXIS 27025
    (N.D. Ga. Dec. 11, 2004) ................................................................... 53, 54

*Kimes v. Stone*,
    84 F.3d 1121 (9th Cir. 1996) ................................................................. 46

*Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*,
    809 F. Supp. 2d 754 (N.D. Ohio 2011) ....................................................... 49

*L.H. v. Jamieson*,
    643 F.2d 1351 (9th Cir. 1981) ............................................................ passim

*Lahey v. Contra Costa Cty. Dep't of Children & Family Servs.*,
    No. 01-cv-1075, 2004 U.S. Dist. LEXIS 18292
    (N.D. Cal. Aug. 31, 2004) .................................................................... 27

*Jeremiah M. et al. v. Adam Crum et al.*    -ix-            3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 11 of 93

*Lane v. Kitzhaber*,
841 F. Supp. 2d 1199 (D. Or. 2012) ........................................................................... 68

*LaShawn A. by Moore v. Kelly*,
301 U.S. App. D.C. 49 (1993) ............................................................................. 25, 26

*Laurie Q. v. Contra Costa Cnty*,
304 F. Supp. 2d 1185 (N.D. Cal. 2004) ...................................................................... 16

*Lipscomb v. Simmons*,
962 F.2d 1374 (9th Cir. 1992) ............................................................................ 46, 49

*Logan v. U.S. Bank Nat'l Assn.*,
722 F.3d 1163 (9th Cir. 2013) .................................................................................. 30

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................................................................................................. 38

*M.D. ex rel. Stukenberg v. Perry*,
675 F.3d 832 (5th Cir. 2012) ..................................................................................... 13

*M.D. v. Abbott*,
152 F. Supp. 3d 684 (S.D. Tex. 2015) .................................................................. 47, 50

*M.D. v. Abbott*,
907 F.3d 237 (5th Cir. 2018) ........................................................................ 39, 44, 52

*M.D. v. Perry*,
799 F. Supp. 2d 712 (S.D. Tex. 2011) ................................................................. passim

*M.R. v. Dreyfus*,
697 F.3d 706 (9th Cir. 2012) ............................................................................... 68, 69

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .................................................................................. 46

*Marisol A. v. Giuliani*,
929 F. Supp. 662 (S.D.N.Y. 1996) ....................................................................... 8, 47

*Mark G. v. Sabol*,
93 N.Y.2d 710 (1999) ............................................................................................... 50

*Mark H. v. Lemahieu*,
513 F.3d 922 (9th Cir. 2008) .................................................................................... 65

*Jeremiah M. et al. v. Adam Crum et al.*      -x-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 12 of 93

*Marshall v. Wash. State Bar Ass'n*,
   No. 11-cv-5319, 2012 U.S. Dist. LEXIS 71932
   (W.D. Wash. May 23, 2012) ................................................................................ 36

*McCartney v. Cansler*,
   608 F. Supp. 2d 694 (E.D.N.C. 2009) ................................................................ 29

*McGary v. City of Portland*,
   386 F.3d 1259 (9th Cir. 2004) ..................................................................... 64, 65

*Menefee v. Tacoma Pub. Sch. Dist. No. 10*,
   No. 17-cv-6037, 2018 U.S. Dist. LEXIS 53674
   (W.D. Wash. Mar. 29, 2018) ............................................................................. 55

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*,
   457 U.S. 423 (1982) ................................................................................... passim

*Miller v. Cal. Dep't of Soc. Servs.*,
   355 F.3d 1172 (9th Cir. 2004) ........................................................................... 55

*Miller v. Nichols*,
   586 F.3d 53 (2009) ............................................................................................ 37

*Momox-Caselis v. Donohue*,
   987 F.3d 835 (9th Cir. 2021) ............................................................................. 51

*Montana v. Blackfeet Tribe of Indians*,
   471 U.S. 759 (1985) .......................................................................................... 59

*Moore v. Sims*,
   442 U.S. 415 (1979) ................................................................................... passim

*New Orleans Public Serv., Inc. v. Council of City of New Orleans*,
   491 U.S. 350 (1989) ..................................................................................... 9, 10

*Noel v. Hall*,
   341 F.3d 1148 (9th Cir. 2003) ..................................................................... 36, 37

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ................................................................................... passim

*OCS v. Michelle P.*,
   411 P.3d 576 (Alaska 2018) .............................................................................. 17

*Jeremiah M. et al. v. Adam Crum et al.*    -xi-          3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 13 of 93

*Oglala Sioux Tribe v. Fleming*,
   904 F.3d 603 (8th Cir. 2018) ................................................................ 14, 15, 33, 34

*Olivia Y. v. Barbour*,
   351 F. Supp. 2d 543 (S.D. Miss. 2004) ...................................................... 8, 21, 47, 50

*Olivia Y. v. Barbour*,
   No. 04-cv-251, slip op. (S.D. Miss. Aug. 29, 2006)................................................ 21

*Olvera v. Cnty. of Sacramento*,
   932 F. Supp. 2d 1123 (E.D. Cal. 2013) ...................................................................... 55

*Papasan v. Allain*,
   478 U.S. 265 (1986) ..................................................................................................... 42

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ...................................................................................... 47

*Pashby v. Delia*,
   709 F.3d 307 (4th Cir. 2013), *abrogated on other grounds by Winter v.*
   *Natural Resources Defense Council, Inc.,* 555 U.S. 7 (2008) .................................... 68

*Payan v. Los Angeles Cmty. Coll. Dist.*,
   11 F.4th 729 (9th Cir. 2021) ....................................................................................... 64

*Pennhurst State School & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ....................................................................................................... 61

*Pennzoil Co. v. Texaco, Inc.*,
   481 U.S. 1 (1987) ........................................................................... 19, 24, 26, 30

*People United for Children, Inc. v. City of New York*,
   108 F. Supp. 2d 275 (S.D.N.Y. 2000) ................................................................... 8, 26

*Phillips v. City of New York*,
   453 F. Supp. 2d 690 (2006) ........................................................................................ 37

*Pierce v. County of Orange*,
   526 F.3d 1190 (9th Cir. 2008) ...................................................................................... 3

*Planned Parenthood Fedn. of Am., Inc. v. Ctr. For Med. Progress*,
   735 F. App'x. 241 (9th Cir. 2018).............................................................................. 60

*Potrero Hills Landfill, Inc. v. County of Solano*,
   657 F.3d 876 (9th Cir. 2011) ............................................................................... 30, 31

*Jeremiah M. et al. v. Adam Crum et al.*      -xii-                          3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 14 of 93

*Powell v. Illinois*,
  No. 18-cv-6675, 2019 U.S. Dist. LEXIS 168209
  (N.D. Ill. Sept. 30, 2019) ...................................................................... 40

*Presta v. Peninsula Corridor Joint Powers Bd.*,
  16 F. Supp. 2d 1134 (N.D.Cal.1998) ...................................................... 64

*Pruitt v. Cheney*,
  963 F.2d 1160 (9th Cir. 1991) ................................................................ 45

*Ragan v. County of Humboldt Dep't of Health & Hum. Servs.*,
  No. 16-cv-05580, 2017 U.S. Dist. LEXIS 31560
  (N.D. Cal. Mar. 6, 2017) ......................................................................... 55

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
  754 F.3d 754 (9th Cir. 2013) ............................................................ 24, 30

*Reno v. Flores*,
  507 U.S. 292 (1993) ................................................................................ 49

*Roberts v. United States Jaycees*,
  468 U.S. 609 (1984) .......................................................................... 53, 55

*S. Cal. Edison Co. v. Lynch*,
  307 F.3d 794 (9th Cir. 2002) .................................................................. 36

*Sam M. ex rel. Elliott v. Chafee*,
  800 F. Supp. 2d 363 (D.R.I. 2011) .................................................... 16, 26

*Santosky v. Kramer*,
  455 U.S. 745 (1982) ................................................................................ 29

*Scheuer v. Rhodes*,
  416 U.S. 232 (1974) ................................................................................ 46

*Shain v. Ellison*,
  356 F.3d 211 (2d Cir. 2004) .................................................................... 40

*Sierakowski v. Ryan*,
  223 F.3d 440 (7th Cir. 2000) .................................................................. 40

*Sprint Commc'ns., Inc. v. Jacobs*,
  571 U.S. 69 (2013) ........................................................................... passim

*Jeremiah M. et al. v. Adam Crum et al.*    -xiii-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1
Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 15 of 93

*Stack v. City of Hartford,*
    170 F. Supp. 2d 288 (D. Conn. 2001)........................................................... 40

*Stanley v. Illinois,*
    405 U.S. 645 (1972) ..................................................................................... 53

*State v. E.E.,*
    912 P.2d 1 (Alaska Ct. App. 1996).............................................................. 22

*Steimel v. Wernert,*
    823 F.3d 902 (7th Cir. 2016) ....................................................................... 68

*Strandberg v. City of Helena,*
    791 F.2d 744 (1986) ..................................................................................... 55

*Summit Tech., Inc. v. High–Line Med. Instruments, Co.,*
    933 F. Supp. 918 (C.D.Cal.1996) ................................................................ 44

*T.F. v. Hennepin County,*
    No. 17-cv-1826, 2018 U.S. Dist. LEXIS 25841
    (D. Minn. Feb. 16, 2018)............................................................................. 33

*Tamas v. Dep't of Soc. & Health Servs.,*
    630 F.3d 833 (9th Cir. 2010) .............................................. 46, 50, 51, 52

*Taylor v. Ledbetter,*
    818 F.2d 791 (11th Cir. 1987) ..................................................................... 51

*Tennessee v. Lane,*
    541 U.S. 509 (2004) ..................................................................................... 65

*Tinsley v. McKay,*
    156 F. Supp. 3d 1024 (D. Ariz. 2015) ................................................ passim

*Trainor v. Hernandez,*
    431 U.S. 434 (1977) ..................................................................................... 12

*Umtuch v. Hoyt,*
    No. 96-cv-35000, 1998 U.S. App. LEXIS 22699
    (9th Cir. Sep. 17, 1998) ............................................................................... 57

*Updike v. Multnomah County,*
    870 F.3d 939 (9th Cir. 2017) ....................................................................... 65

*Jeremiah M. et al. v. Adam Crum et al.*   -xiv-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 16 of 93

*Vaughn:Douce v. N.J. Div. of Child Prot. & Permanency*,
No. 21-cv-1596, 2021 U.S. App. LEXIS 23069 (3d Cir. Aug. 4, 2021) ..................... 16

*Venetie I.R.A. Council v. Alaska*,
944 F.2d 548 (9th Cir. 1991) ................................................................. 59

*Verizon Md., Inc. v. Pub. Serv. Comm'n*,
535 U.S. 635 (2002) ............................................................................. 36

*Wash. Envtl. Council v. Bellon*,
732 F.3d 1131 (9th Cir. 2013) .............................................................. 41

*White Mountain Apache Tribe v. Bracker*,
448 U.S. 136 (1980) ............................................................................. 59

*Wyatt B. v. Brown*,
No. 19-cv-00556, 2022 U.S. Dist. LEXIS 147091
(D. Or. Aug. 17, 2022) ................................................................... 8, 38

*Wyatt B. v. Brown*,
No. 19-cv-00556, 2021 U.S. Dist. LEXIS 184389 (D. Or. Sep. 27, 2021) .......... passim

*Youngberg v. Romeo*,
457 U.S. 307 (1982) ...................................................................... 48, 52

*Younger v. Harris*,
401 U.S. 37 (1971) ......................................................................... passim

*Zimmermann v. Gregoire*,
18 F. Appx. 599 (9th Cir. 2001) ........................................................... 16

**CONSTITUTIONAL AMENDMENTS**

U.S. Const. amend. IX ................................................................... 53, 55

U.S. Const. amend. XI ......................................................................... 43

U.S. Const. amend. XIV .................................................................. passim

**STATUTES**

25 U.S.C. § 1902 ................................................................................. 59

25 U.S.C. § 1914 ................................................................................. 58

25 U.S.C. § 1915 ........................................................................... passim

*Jeremiah M. et al. v. Adam Crum et al.*  -xv-    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 17 of 93

29 U.S.C. § 701 *et seq.* ................................................................................................ passim

42 U.S.C. § 672 .............................................................................................................. 17, 60

42 U.S.C. § 675 ..................................................................................................................... 30

42 U.S.C. § 1983 ............................................................................................................... passim

42 U.S.C. §§ 12101–12132 ..................................................................................................... 64

ARS 8-824 ........................................................................................................................... 17

ARS 8-844 ........................................................................................................................... 17

ARS 8-845 ........................................................................................................................... 17

ARS 8-847 ........................................................................................................................... 17

ARS 8-862 ........................................................................................................................... 17

AS 12.62 .............................................................................................................................. 63

AS 47.10.80 ......................................................................................................................... 17

AS 47.10.82 ......................................................................................................................... 17

AS 47.10.086 ............................................................................................................... 22, 23, 34

AS 47.10.087 ................................................................................................................... 69, 70

AS 47.10.088 ....................................................................................................................... 63

AS 47.10.090 ....................................................................................................................... 27

AS 47.10.093 ....................................................................................................................... 27

AS 47.10.100 ....................................................................................................................... 34

AS 47.10.142 ................................................................................................................... 17, 22

AS 47.14.010 ....................................................................................................................... 35

AS 47.14.100 ............................................................................................................... 35, 63, 66

AS 47.14.112 ....................................................................................................................... 35

AS 47.14.115 ............................................................................................................... 34, 35, 61

*Jeremiah M. et al. v. Adam Crum et al.*    -xvi-                           3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 18 of 93

AS 47.18.310 ................................................................................................ 35

AS 47.18.320 ................................................................................................ 35

AS 47.20.070 ................................................................................................ 35

AS 47.32.010 ................................................................................................ 35

AS 47.32.032 ................................................................................................ 61

AS 47.32.900 ................................................................................................ 69

ORS 419B.183 .............................................................................................. 17

ORS 419B.185 .............................................................................................. 17

ORS 419B.305 .............................................................................................. 17

ORS 419B.325 .............................................................................................. 17

ORS 419B.449 .............................................................................................. 17

**RULES**

CINA Rules of Procedure ..................................................................... 22, 27, 30

District of Alaska Local Civil Rules ............................................................. 3, 7

Federal Rules of Civil Procedure ............................................................... passim

**REGULATIONS**

28 C.F.R. § 325.130 ..................................................................................... 69

**OTHER AUTHORITIES**

2 ARTHUR WALLACE CALHOUN, A SOCIAL HISTORY OF THE AMERICAN
  FAMILY FROM COLONIAL TIMES TO THE PRESENT 23 (1917) .................................... 55

POLICY MANUAL, Office of Children's Services -- Publications (2022),
  http://dpaweb.hss.state.ak.us/training/OCS/cps/index.htm#t=CPS_Polic
  y_Manual.htm (last visited Sept. 15, 2022) .......................................... 66, 67

RALPH NORTH, TREATISE ON THE LAW AND PRACTICE OF THE PROBATE
  COURTS OF MISSISSIPPI 258 (1845) ...................................................... 55

*Jeremiah M. et al. v. Adam Crum et al.*    -xvii-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 19 of 93

Stephen B. Presser, *The Historical Background of the American Law of Adoption*, 11 J. FAM. L. 443 (1972) .............................................................. 55

*Jeremiah M. et al. v. Adam Crum et al.*   -xviii-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 20 of 93

## I. INTRODUCTION

Entering the child welfare system and being separated from a parent or guardian is already traumatic for any child, particularly when combined with the potential trauma that those children have already experienced because of potential abuse or neglect. But to add insult to injury, Alaska's child welfare system continues to harm the very children it is meant to protect, the approximately 3,000 children in the State's foster care system. Alaska's seriously dysfunctional child welfare system leaves caseworkers overburdened and overworked with caseloads that are "more than 3x the national average" and that "exceed what is safely manageable." ¶¶155, 162.[1] As both a cause and effect of these high caseloads, caseworker turnover is at an "all time high of 59.4%." ¶160.

In addition, Alaska has the second lowest percentage of caseworkers making federally mandated visits, which is necessary to ensure children's safety, and ranks as the fifth worst state for reunification of foster children with their family in under 12 months. ¶¶167, 198. Alaska's child welfare system also fails to provide necessary services to foster children, including to Alaska Native children who make up approximately two-thirds of the child welfare population. ¶¶203-15. The system is plagued by deficient and delayed case planning and placements that are often inadequate and inappropriate. ¶¶174-92. Children are often required to stay in homeless shelters, Office of Children's Services ("OCS") offices, hotels, or overly restrictive facilities. ¶175.

---

[1] References to "¶" or to "Paragraph(s)" are references to those in Plaintiffs' Amended Complaint (the "Complaint") dated July 15, 2022 (ECF No. 16).

*Jeremiah M. et al. v. Adam Crum et al.*                                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.                Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 21 of 93

Defendants also fail foster children with disabilities—arguably the most vulnerable of populations—by discriminating against them on account of their disabilities and placing them at risk of unnecessary isolation from their communities, thus violating the Americans with Disabilities Act and Rehabilitation Act. Defendants repeatedly violate the Indian Child Welfare Act ("ICWA") and fail to maintain foster children's connections with their Native communities. This is especially egregious given that ICWA was enacted because "an alarmingly high percentage of Indian families were broken up by removal, often unwarranted, of their children from them[.]" ¶245.

In their Motion to Dismiss (ECF No. 23), Defendants attempt to skirt responsibility not by arguing with any of the facts—indeed they cannot at this stage of the litigation—but with arguing foremost that federal courts must abstain from hearing Plaintiffs' claim. However, Defendants fail to address the fact that abstention is well-settled in the Ninth Circuit and numerous courts have found that claims almost identical to Plaintiffs' claims can be heard by federal courts because, as here, Plaintiffs are bringing claims against state executives—not the courts. Plaintiffs' claims and the relief that they seek will not interfere with or alter any court processes in the Child in Need of Aid ("CINA") cases, even if Plaintiffs were able to litigate these claims in the CINA proceedings, which they are not.

Plaintiffs instead seek to compel Defendants to comply with their constitutional and federal statutory duties, including duties under the Adoption Assistance and Child Welfare Act of 1980, the Indian Child Welfare Act, the Americans with Disabilities Act, and the Rehabilitation Act. Plaintiffs illustrate the myriad ways in which Defendants are violating

*Jeremiah M. et al. v. Adam Crum et al.*     -2-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.    Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 22 of 93

their duties and request systemic changes to repair Alaska's deeply flawed child welfare system. Defendants' motion should be denied in its entirety.

## II.    BACKGROUND

Defendants' factual statement completely ignores Plaintiffs' allegations of widespread systemic deficiencies that cause great harm to children in the State's care. Instead, Defendants attempt to turn their motion into one for summary judgment, citing to numerous "facts" that are not in the record about how they have made "extensive efforts" to address the numerous inadequacies that Alaska's child welfare system has faced.[2] For example, Defendants state that "[o]ne of OCS's highest priorities is to stabilize the workforce and reduce caseloads." D. Br. at 8.[3] Defendants do not provide any citations for such a statement, which is directly contrary to the facts alleged in the Complaint. *See, e.g.,* ¶¶152-63. Moreover, Defendants' declared intent to reform is irrelevant at the motion to dismiss stage and not evidence of the actual status of the child welfare system. *See Pierce v. County of Orange*, 526 F.3d 1190, 1223 (9th Cir. 2008).

Defendants ignore the allegations in the Complaint that show the severity of the issues and the harm to Alaska foster children. Specifically, the Complaint alleges that caseworkers have unsupportable caseloads (as discussed above) and that turnover is at an all-time high of 59.4%—up 11.8% from the previous year with OCS typically operating at

---

[2] Defendants' "Background Facts" on pages 6-8 of their motion do not reference any documents—nor can Defendants do so in connection with a motion to dismiss.

[3] Cites to "D. Br." are to Defendants' Unredacted Motion to Dismiss and Brief in Support (ECF No. 23). While Plaintiffs are aware of L. Civ. R. 7.4, Defendants have not filed their unredacted brief with the ECF System and, therefore, all citations are to Defendants' page numbers.

*Jeremiah M. et al. v. Adam Crum et al.*      -3-                3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.                   Case 3:22-cv-00129-JMK    Document 30    Filed 09/30/22    Page 23 of 93

a 50% caseworker vacancy rate. ¶¶160, 162. OCS has admitted that "[h]igh staff turnover

and high caseload[s] . . . overburden the child welfare system's ability to . . . achieve safe

and timely exits of children from foster care." ¶164. Defendants also admit that "[t]he long-

lasting and pervasive negative impact on children and families involved in the child welfare

system due to the lack of a stable and sufficient workforce cannot be overstated." ¶165.

Such effects include a lack of caseworker visits with parents and children, resulting in poor

case planning and ongoing assessments of safety and needs.[4] ¶165. Indeed, 2019 data

indicated that Alaska had the second lowest percentage of caseworker visits to children, a

federally mandated requirement, in the country. ¶167. OCS is stretched so thin, it has

instructed some offices not to respond to Priority 3 reports (or reports of neglect or

marginally safe situations). ¶166.

   In contravention of federal law and widely accepted professional standards, OCS

has also failed to recruit and maintain adequate foster homes so that it can place each child

in the most appropriate and least restrictive placement that best suits their needs.[5] ¶¶174-

75. This leads to foster children spending time overnight in OCS offices or languishing in

locked facilities. ¶175. Placement instability also continues to plague the Alaska child

---

[4] As of 2021, only 60% of case plans were current, and OCS recently noted that it actively involved foster children and their families in only 52% of cases as of 2020. ¶¶184, 186.

[5] For example, in 2021, OCS maintained only 1,026 non-specific foster homes, despite having around 3,000 foster children in custody.

*Jeremiah M. et al. v. Adam Crum et al.*          -4-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss

welfare system. OCS admitted it fell "well below the national standard" in placement stability, with OCS moving children far more than the national average.[6] ¶172.

Alaska's foster children also wait longer than most foster children to find permanency.[7] ¶¶193-201. Children languish in care and are not provided necessary services. ¶¶203-15. OCS acknowledged that "[t]he array of services is not fully functioning, and there are many services that are not available in all communities of Alaska," which means that its "capacity to provide timely, appropriate levels of support to avoid institutional placement is limited."[8] ¶¶205, 207. This issue is especially aggravated for children with disabilities, as OCS is more likely to place these children in facilities, rather than providing services in their own homes or foster homes. ¶211. OCS has often left disabled children in hospitals or homeless shelters for days and sometimes weeks. *Id.*

The problems within Alaska's child welfare system are reflected in the stories of the Named Plaintiffs. OCS has placed Lana H. in 17 placements in approximately four years, including being placed in North Star Behavioral Health System five different times. ¶¶124-39. She has spent the majority of her time in OCS custody in facilities that repeatedly

---

[6] In 2019, 58.4% of children who had been in care at least 24 months had three or more placements, 34.6% of children in foster care between 12 months and 24 months had three or more placements, and 21.8% of children in care under 12 months had three or more placements. ¶173.

[7] For example, in 2019, Alaska ranked as the fifth worst state in the country for its rate of reunifications in under 12 months, and nearly 20 percent of children who aged out had been in foster care since age 12 or younger. ¶¶198-99.

[8] As OCS has further acknowledged "[t]he lack of timely and available resources in communities where families reside, makes the success of timely reunification with parents and children much less likely." ¶206.

*Jeremiah M. et al. v. Adam Crum et al.*     -5-          3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.  Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 25 of 93

restrained and sedated her, and that lacked services sufficient to meet her mental health needs. ¶143. Her current OCS placement is a homeless shelter that does not have the capacity to provide her with required services. ¶136.

Gayle T. has been in and out of institutions, where she was physically restrained, sedated against her will, and sexually abused by another resident. ¶¶113-19.

Under OCS custody, siblings David. V., George V., Lawrence V., Karen V., and Damien V., have changed placements 40 times, collectively. ¶76. The siblings have been separated the majority of those placements, which have included adult homeless shelters. ¶¶76, 86. OCS is supposed to hold Team Decision Making meetings before any placement change, but it has not done so because the meetings are "a waste of time and resources." ¶76. The children have moved frequently due to Defendants' lack of permanency planning, failure to provide support or training to foster parents, and failure to provide necessary services to the children. *See, e.g.*, ¶¶81-83, 85-89, 96. Additionally, even though the case plan for the children calls for reunification, OCS cut off all in-person visitation between the children and their mother in April of 2022 until therapeutic visitation—for which there are long waiting lists—could be scheduled. ¶77.

OCS initially placed Jeremiah M., Hannah M., and Hunter M., and Mary B. with kinship family members but provided no support, financial or otherwise, to those family members, causing those placements to disrupt. ¶¶47-52, 61-65. In the case of Jeremiah, Hannah, and Hunter M., OCS placed the children in a home where the foster family's child has a record of sexual abuse. ¶55. Similarly, Defendants have provided almost no support

*Jeremiah M. et al. v. Adam Crum et al.*      -6-                         3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.        Case 3:22-cv-00129-JMK    Document 30    Filed 09/30/22    Page 26 of 93

to Rachel T. and Eleanor T.'s kinship foster family, providing little to no support in obtaining necessary services. ¶¶105-09.

## III.  ARGUMENT

### A.  This Court Has Subject Matter Jurisdiction and the *Younger*, *O'Shea*, and *Rooker-Feldman* Doctrines Do Not Bar This Court From Exercising Jurisdiction Over This Case

As the Supreme Court has recognized, "federal courts have a 'virtually unflagging' obligation to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976).[9] "Only in *unusual* instances do principles of comity in relation to state courts warrant federal court abstention." *Tinsley v. McKay*, 156 F. Supp. 3d 1024, 1030 (D. Ariz. 2015) (citing *Younger v. Harris*, 401 U.S. 37 (1971)) (emphasis added).[10] The Supreme Court has further noted that abstention under *Younger* is "exceptional" and that federal courts have a duty to "entertain and resolve on the merits [actions] within the scope of a jurisdictional grant." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013); *see also Jonathan R. v. Justice*, 41 F.4th 316, 321 (4th Cir. 2022) ("principles of federalism not only do not preclude federal intervention, they compel it. Plaintiffs brought federal claims, and federal courts 'are obliged to decide' them in all but

---

[9] *See also id.* ("Abstention from the exercise of federal jurisdiction is the exception, not the rule.").

[10] Defendants cite to *Hodges v. Seward Ship's Ace Hardware & Marine*, No. 3:19-cv-00059-JMK, 2020 U.S. Dist. LEXIS 256891 (D. Alaska Nov. 18, 2020) for the proposition that a court "is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." D. Br. at 15 n.54. However, this proposition pertains to a case where the complaint fails to allege any basis for federal jurisdiction. *Hodges* involved pure state law tort and contract claims. There was no federal admiralty jurisdiction because the incident occurred on dry land and the relevant contract was not maritime in nature.

*Jeremiah M. et al. v. Adam Crum et al.*      -7-      3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss

'exceptional' circumstances"). A pending state court action "is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Sprint*, 571 U.S. at 73 (citations and internal quotation marks omitted). This case is not the "unusual circumstance" in which the Court should abstain.

The law regarding abstention is well-settled in the Ninth Circuit, and district courts within the Ninth Circuit and elsewhere have denied nearly identical motions to abstain.[11] In both *Tinsley* and *Wyatt B.*,[12] a class of foster children sued executive agencies in charge of the state's child welfare system for violations of their constitutional and statutory rights. The defendants in both cases made almost identical abstention arguments to those made by Defendants here. 156 F. Supp. 3d at 1032; 2021 U.S. Dist. LEXIS 184389, at *9. The *Tinsley* and *Wyatt B.* courts rejected the abstention arguments and held that they had subject matter jurisdiction to hear the cases. 156 F. Supp. 3d at 1044; 2021 U.S. Dist. LEXIS 184389, at *17-19. Similarly, in *Jamieson*, the Ninth Circuit found *Younger* inapplicable

---

[11] *See, e.g., L.H. v. Jamieson*, 643 F.2d 1351, 1352-54 (9th Cir. 1981) ("*Jamieson*"); *Wyatt B. v. Brown*, No. 6:19-cv-00556, 2021 U.S. Dist. LEXIS 184389 (D. Or. Sep. 27, 2021); *Tinsley*, 156 F. Supp. 3d at 1030-41; *Jonathan R.*, 41 F.4th at 334; *Connor B. v. Patrick*, 771 F. Supp. 2d 142, 153-58 (D. Mass. 2011); *D.G. v. Yarbrough*, No. 08-CV-074, 2011 U.S. Dist. LEXIS 145775 (N.D. Okla. Dec. 16, 2011); *Dwayne B. v. Granholm*, No. 06-13548, 2007 U.S. Dist. LEXIS 28265, at *17-27 (E.D. Mich. Apr. 17, 2007); *Olivia Y. v. Barbour*, 351 F. Supp. 2d 543, 565-70 (S.D. Miss. 2004); *Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 285-89 (N.D. Ga. 2003); *Brian A. ex rel. Brooks v. Sundquist*, 149 F. Supp. 2d 941, 957 (M.D. Tenn. 2000); *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 289-92 (S.D.N.Y. 2000); *Marisol A. v. Giuliani*, 929 F. Supp. 662, 688-89 (S.D.N.Y. 1996).

[12] *Tinsley*, 156 F. Supp. 3d at 1026; *Wyatt B.*, 2021 U.S. LEXIS 18439; *see also Wyatt B. v. Brown*, No. 19-cv-00556, 2022 U.S. Dist. LEXIS 147091, at *3-7 (D. Or. Aug. 17, 2022) (certifying a general class of all children who are or will be in foster care and several subclasses.).

*Jeremiah M. et al. v. Adam Crum et al.*          -8-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 28 of 93

to cases involving claims by foster children unless they were seeking to enjoin []state proceeding," or seeking to "enjoin state officials from enforcing [] state law."[13] 643 F.2d at 1354. Plaintiffs here do not seek either of these remedies. *Younger* thus does not apply.

Courts within the Ninth Circuit have rejected abstention because of the high standard a defendant must clear. First, Defendants must prove the requested relief involves review of judicial rather than executive action. *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989) ("NOPSI"). Second, following the Supreme Court's decision in *Sprint*, *Younger* abstention is only applicable if Defendants can show that the judicial proceedings at issue fall into one of three "exceptional" circumstances. *Sprint*, 571 U.S. at 77 (quoting NOPSI, 491 U.S. at 368). Defendants must show that the proceedings are either "criminal prosecutions," "certain civil enforcement proceedings" (often discussed as "quasi-criminal proceedings"), or "civil proceedings

---

[13] The Ninth Circuit dismissed *Jamieson* on grounds unrelated to the *Younger* abstention, which are not at issue in this action. Defendants incorrectly claim that *Jamieson* is "no longer good law" because "the Ninth Circuit no longer requires that the plaintiff "seek to enjoin" a state proceeding but only need to "effectively enjoin" a state proceeding. D. Br. at 31. Defendants point to one Ninth Circuit case, *Citizens for Free Speech, LLC v. County of Alameda*, 953 F.3d 655 (9th Cir. 2020), but there is no discussion in the case—nor evidence to support—that the Ninth Circuit meant to create a different test that somehow implicitly overturns *Jamieson*. Furthermore, not only has this case not been overturned, but it has also been cited by courts that have refused to abstain under *Younger* in similar factual circumstances. *See e.g.*, *M.D. v. Perry*, 799 F. Supp. 2d 712 (S.D. Tex. 2011). Defendants also make a meritless attempt to distinguish *Jamieson* on the basis that the plaintiffs in *Jamieson* sought to require the state to reimburse private child-caring agencies and that this claim was "not of a sort that would be presented during the normal course of a state proceeding." D. Br. at 32. But, as discussed in Section III(A)(2)(b), this case is no different in that respect. Last, Defendants claim that *Jamieson* is not relevant because Plaintiffs have not pled "bad faith, harassment or flagrant violation of express constitutional prohibitions by a state or local actor." D. Br. at 33. But *Jamieson* did not rely on such a finding nor is such a finding required.

*Jeremiah M. et al. v. Adam Crum et al.*       -9-       3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss

involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions."[14] *Sprint*, 571 U.S. at 78.

Third, *if and only if*, Defendants establish that Plaintiffs' claims implicate ongoing quasi-criminal proceedings, they must also show that the claims meet three additional factors enumerated in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Here, Defendants fail to meet the three additional factors discussed below.

  1. <u>Abstention Under *Younger* Is Inappropriate</u>

    a. *Younger Abstention is Inappropriate Because Plaintiffs Ask the Court to Review Executive Action, not Judicial Action*

*Younger* abstention is inappropriate where Plaintiffs ask a court to review "legislative or executive action" as opposed to judicial action.[15] *NOPSI*, 491 U.S. at 368 (*Younger* does not "require[] abstention in deference to a state judicial proceeding reviewing legislative or executive action. Such a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal

---

[14] Even before the 2013 *Sprint* decision in which the Supreme Court narrowed *Younger* abstention considerably to apply to just the three exceptional categories noted above, the "overwhelming majority of cases" had "rejected *Younger* abstention" in "lawsuits challenging foster care systems." *M.D.*, 799 F. Supp. 2d at 723.

[15] Defendants' citation to *Karen L. v. State, Department of Health & Social Services, Division of Family & Youth Services*, 953 P.2d 871, 877 (Alaska 1998) (D. Br. at 13 n.46) is misleading. Defendants cite this case for the proposition that the Alaska Supreme Court has found that state courts are the "proper forum for addressing complaints about foster care placement and treatment." But, in that case, the Alaska Supreme Court dismissed claims against the social workers on the basis that the social workers owed no duty of care to the *mother* in a CINA case. Defendants cite to no case where children were able to successfully bring actions such as the one here in Alaska state courts—nor can they.

*Jeremiah M. et al. v. Adam Crum et al.* -10-  3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1 Case 3:22-cv-00129-JMK Document 30 Filed 09/30/22 Page 30 of 93

to decide a case in deference to the States."). Defendants here provide extensive background information on the role of CINA courts in abuse and neglect proceedings, but they do not (nor can they) point to any allegation or request for relief concerning the processes, operations, or rulings of CINA courts.[16] Numerous courts have rejected Defendants' same argument that Plaintiffs' claims against executive branch defendants implicate judicial action. *See, e.g., Tinsley*, 156 F. Supp. 3d at 1043-44 (finding abstention improper where plaintiffs "do not allege any statutory or constitutional violations in the procedure or administration of the juvenile courts. Nor is Plaintiffs' suit an indictment of the juvenile courts for failing to address these constitutional issues.").[17] Abstention is unwarranted.

---

[16] Even if the Court were to find that Plaintiffs were requesting a review of judicial action— which they are not—this would not be grounds for an abstention because *Younger* abstention does not apply to proceedings involving "reviewing . . . executive action." *See M.D.*, 799 F. Supp. 2d at 718 ("*Younger* abstention does not extend to judicial proceedings that, like those at issue here, are focused solely upon review of executive actions."); *see also Connor B.*, 771 F. Supp. 2d at 154 (declining to abstain under *Younger* where "the state court proceeding is limited to a review of executive action").

[17] *See also Kenny A.*, 218 F.R.D. at 286 ("Although plaintiffs all have periodic reviews before the state juvenile courts, the declaratory and injunctive relief plaintiffs seek is not directed at their review hearings, or at Georgia's juvenile courts, juvenile court judges, or juvenile court personnel. Rather, plaintiffs seek relief directed solely at *executive* branch defendants to remedy their alleged failures as plaintiffs' custodians." (emphasis in original)); *Dwayne B.*, 2007 U.S. Dist. LEXIS 28265, at *20 ("Defendants' claim that there are ongoing judicial proceedings is misleading. While it is true that Michigan has in place a juvenile court system that sets out procedures for bringing and maintaining a child under that court's jurisdiction and there may be some ongoing juvenile court proceedings for individual foster care children, this lawsuit does not seek to interfere with any such proceedings."); *Brian A.*, 149 F. Supp. 2d at 957 (no *Younger* abstention in lawsuit brought by foster children because relief sought was against executive branch and "nothing about this litigation seeks to interfere with or enjoin ongoing and pending state juvenile proceedings").

*Jeremiah M. et al. v. Adam Crum et al.*     -11-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 31 of 93

b.    *Younger Abstention is Inappropriate Because the Hearings at Issue Are Not Quasi-Criminal*

*Sprint* defined the category of "quasi-criminal enforcement proceedings" as "akin to a criminal prosecution in important respects" and that "[s]uch enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Sprint*, 571 U.S. at 78 (internal quotation marks omitted).[18]

Defendants, relying on *Moore v. Sims*, claim that all hearings in CINA courts fall into the category of "quasi-criminal enforcement proceedings."[19] D. Br. at 20-21 (442 U.S. 415 (1979)). But Defendants' reliance on *Moore* is inapt. There, the state court proceeding at issue was the initial removal of children from plaintiff parents accused of abuse or neglect. 442 U.S. at 423. The Supreme Court found that "the State was a party to the state proceedings, and the temporary removal of a child in the child-abuse context was, in aid of and closely related to criminal statutes." *Id*. *Moore* is distinguishable from the case here in which Plaintiffs are foster children alleging constitutional and statutory violations while in

---

[18] *See also Tinsley*, 156 F. Supp. 3d at 1034 (defining quasi-criminal enforcement proceedings as those where the "animating purpose" is to "investigate or penalize" whereas the juvenile court reviews have "an indirect relationship to the enforcement of criminal laws."); *see, e.g., Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) (obscenity); *Trainor v. Hernandez*, 431 U.S. 434 (1977) (welfare fraud); *Moore*, 442 U.S. 415 (child abuse); *Middlesex*, 457 U.S. 423 (attorney misconduct).

[19] In *Moore*, the Texas Department of Human Services took temporary custody of children in a suspected abuse case and instituted a suit for emergency protection, which the Texas juvenile court granted. 442 U.S. 415. While proceedings were ongoing in the state courts, instead of appealing state court decisions or moving to expedite hearings, the parents of the children filed suit in the United States District Court for the Southern District of Texas, challenging the constitutionality of Texas statutes regarding permissible state intervention in parent-child relationships. *Id*.

*Jeremiah M. et al. v. Adam Crum et al.*    -12-    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 32 of 93

the State's custody. Plaintiffs' claims here are not in aid of or closely related to criminal statutes.

Courts have distinguished *Moore* in cases similar to this one. In *Tinsley*, the court distinguished *Moore* as a challenge to "the means by which Plaintiffs *enter* DCF custody" from the complaint in *Tinsley* which "addresses the experiences children have after they are determined dependent and placed in state custody, not the proceedings which led to that custody." 56 F. Supp. 3d at 1034. The *Tinsley* court found that the periodic review hearing which take place once a child is determined dependent and placed in state custody was not quasi-criminal as "[t]he animating purpose of the ongoing dependency proceedings in this case is to plan for and monitor the development and well-being of children, not to investigate or penalize those who might have contributed to their dependency." *Id.* Unlike in *Moore*, "where an immediate threat of criminal harm warranted the removal of children from the custody of the parents without a hearing," the ongoing reviews did "not qualify as quasi-criminal for the purposes of *Younger.*" *Id.*

Courts in the Fifth Circuit (from which *Moore* originated) have also subsequently rejected *Younger* abstention in the foster care class action context. *M.D.*, 799 F. Supp. 2d at 726; *see also M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 835 (5th Cir. 2012) (exercising jurisdiction over class action alleging "class-wide injuries caused by systemic deficiencies" in Texas' administration of child welfare system). The Fourth Circuit

*Jeremiah M. et al. v. Adam Crum et al.*     -13-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.  Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 33 of 93

similarly found that *Moore* applies to "child-removal proceedings" only, and not to the "ongoing individual hearings."[20]

Defendants' claim that *Younger* applies to state abuse-and-neglect proceedings is misleading. *See* D. Br. at 19. In most of Defendants' cited cases, the courts based their abstention decision on the *relief sought*—not on any analysis of whether the hearings at issue fit under one of *Sprint's* "exceptional circumstances." *See 31 Foster Children v. Bush*, 329 F.3d 1255 (11th Cir. 2003); *Joseph A. v. Ingram*, 275 F.3d 1253 (10th Cir. 2002); *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603 (8th Cir. 2018). For example, in *31 Foster Children*, the court stated that plaintiffs were "placing decisions that are now in the hands of the state courts under the direction of the federal district court." 329 F.3d at 1278.[21]

---

[20] The Fourth Circuit also stated that the hearings at issue "do not fit any historical precedent applying the doctrine. And abstaining here would forward none of the comity interests our federalist system holds dear." *Jonathan R.*, 41 F.4th at 328. Defendants attempt to distinguish *Jonathan R.* in a footnote on several bases—all of which are meritless. D. Br. at 19 n.72. For example, Defendants argue that *Jonathan R.* is wrong because the court misinterpreted *Moore* as only applying to initial removal hearings, not ongoing hearings in the same case. But, as previously noted, other courts, including courts in the Ninth Circuit, have made *the exact same finding*, which is consistent with the language of *Sprint. See, e.g.*, *Tinsley*, 156 F. Supp. 3d at 1033-34. Second, Defendants argue that *Jonathan R.* was wrong because "neither *Moore* nor *Sprint* held that culpability is relevant to whether *Younger* applies." But Defendants miss the fact that *Sprint* itself described the quasi-criminal enforcement category as those "characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." 571 U.S. at 78.

[21] The court in *A.A. v. Buckner*, No. 2:21CV367, 2021 U.S. Dist. LEXIS 209247 (M.D. Ala. Oct. 29, 2021) (D. Br. at 19 n.72), distinguished *31 Foster Children* stating that "[t]he systemic relief sought in the complaint, however, is distinguishable from the relief in *31 Foster Children*" and found persuasive another opinion also distinguishing *31 Foster Children* on the basis that there, unlike *31 Foster Children*, "plaintiffs did not ask for individualized determinations with respect to particular foster children, but sought relief on a system-wide basis in the form of reforms to ensure that deprived children's

*Jeremiah M. et al. v. Adam Crum et al.*      -14-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 34 of 93

In *Joseph A.*, the Tenth Circuit court remanded the case to determine if the provisions of a proposed settlement agreement were enforceable in light of *Younger*. 275 F.3d at 1272-73; *Joseph ex rel. Wolfe v. N.M. Dep't of Human Servs.*, No. 80-cv-623, 2003 U.S. Dist. LEXIS 29996, at *11 (D.N.M. Jan. 16, 2003) (holding, the settlement enforceable with the exception of one provision.). In this case, different from both *31 Foster Children* and *Joseph A.*, none of the relief sought would interfere with the juvenile court's operation. When it reaches the issue of relief, this court can easily disallow any relief that might interfere with state court proceedings. More importantly, these cases, which are now *bad law*, analyze abstention in a way that *Sprint* forbids—they apply the *Middlesex* factors without determining *first* whether the case falls into one of the three "exceptional circumstances."[22]

*Oglala Sioux Tribe* is also inapposite because it specifically pertained to "temporary custody proceedings" and the Eighth Circuit found "no meaningful distinction between the custody proceedings in *Moore* and the temporary custody proceedings in South Dakota." 904 F.3d at 610. In fact, the plaintiffs in *Oglala* (tribes and parents) asked for relief that would directly interfere with state court proceedings—*i.e.*, "an order that would dictate a host of procedural requirements for the ongoing state proceedings." *Id.*[23]

---

constitutional and statutory rights are not violated." *Id.* at *18 (citing *Kenny A.*, 218 F.R.D. at 288).

[22] *See Jonathan R.*, 41 F.4th at 332 (distinguishing *31 Foster Child, Joseph A.*, and *Ashley W.* because they "relied on the *Middlesex* factors alone, without determining whether the state periodic hearings were the type of proceedings *Younger* has traditionally applied to.").

[23] *See Jonathan R.* 41 F.4th at 332 (distinguishing *Oglala* because it "fit neatly into the quasi-criminal category: It was brought by parents whose children were taken into state

*Jeremiah M. et al. v. Adam Crum et al.*      -15-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 35 of 93

*Vaughn:Douce v. New Jersey Division of Child Protection & Permanency* is also off point because it is squarely in line with *Moore* since the lawsuit concerned the initial removal process by which the New Jersey Division of Child Protection and Permanency ("NJDCPP") "conducted an investigation and initiated the proceedings by filing a formal complaint against [plaintiff] to terminate his parental rights."[24] No. 21-cv-1596, 2021 U.S. App. LEXIS 23069, at *6 (3d Cir. Aug. 4, 2021).

Last, *Ashley W. v. Holcomb*, 34 F.4th 588 (7th Cir. 2022) is not reliable law and has been swiftly criticized.[25] In that case, the Seventh Circuit incorrectly summarized *Moore*, stating that "[w]e know from *Moore v. Sims* [] that *Younger* applies to state-initiated child-welfare litigation." *Id.* at 591. Aside from this one citation to *Moore*, the Seventh Circuit

---

custody and challenged in federal court the very decision to take them away."). Defendants also cite to several other inapposite court cases (D. Br. 20 n.73, n.74), which as Defendants note, are pre-*Sprint* and thus no longer good case law. *See Zimmermann v. Gregoire*, 18 F. App'x. 599, 600-01 (9th Cir. 2001) (finding that plaintiffs'–who were parents or guardians—briefs "fail to provide an understandable statement of facts, or an understandable argument, or an understandable analysis in support of the remedy they are seeking."); *A.A.*, 2021 U.S. Dist. LEXIS 209247, at *18-19 (finding that requests for specific placement decisions in individual custody cases were covered by *Younger*, but that other systemic relief sought was not); *Sam M. ex rel. Elliott v. Chafee*, 800 F. Supp. 2d 363 (D.R.I. 2011) (concluding that certain claims for certain relief fell under *Younger* abstention but denying abstention in connection with claims for caseload limitations for caseworkers, adequate training, and an increase in the array and type of placements, including foster homes); *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999) (only analyzing the *Middlesex* categories without any analysis of whether the proceedings were quasi-criminal); *Laurie Q. v. Contra Costa County*, 304 F. Supp. 2d 1185 (N.D. Cal. 2004) (same); *Carson P .v. Heineman*, 240 F.R.D. 456, 511-512 (D. Neb 2007) (same).

[24] Appellant parent claimed that his daughter was "being held in an illegal action for private financial gain" and that NJDCCP was "attempting to use [a] psychologist to fabricate a report to the[ir] benefit to prolong, in order to assure[] th[eir] profit." *Id.* at *2.

[25] *See Jonathan R.*, 41 F.4th at 332.

*Jeremiah M. et al. v. Adam Crum et al.*        -16-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.

Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 36 of 93

made no effort to analyze the proceedings in Indiana. Moreover, in relying solely on the *Middlesex* factors without the predicate analysis of whether the proceedings at issue were quasi-criminal, the Seventh Circuit violated abstention law as set forth in *Sprint*. *See Jonathan R.*, 41 F.4th at 332.

Defendants also argue without citation that there is no distinction between the "initial child-removal proceedings" and "ongoing individual hearings that serve to protect the children." D. Br. at 19 n.72.[26] But Alaska's process in which there are initial child-removal proceedings and separate, ongoing hearings to review the child's welfare in custody is no different from any other state, including those in the Ninth Circuit.[27]

---

[26] Defendants cite to *Alyssa B. v. State*, 165 P.3d 605 (Alaska 2007) to argue that a termination proceeding continues earlier proceedings in the existing CINA case. D. Br. at 19 n.72. Alaska is not different from any other state in that respect. As stated previously, other courts, including those within the Ninth Circuit have already distinguished *Moore* on this basis. The cited cases are not in the context of constitutional and statutory claims on behalf of foster children, nor are they related to *Younger* abstention. *See Alyssa B.*, 165 P.3d at 612 (time for right to object to judge in case where parental rights were terminated ran from notice of judge's assignment in the action, not the petition for termination of parental rights). Nor is it relevant that a CINA court must act in the child's best interests at all times. *See OCS v. Michelle P.*, 411 P.3d 576, 584 (Alaska 2018) D. Br. at 19 n.72.

[27] *See Wyatt B.*, 2021 U.S. Dist. LEXIS 184389, at *9, 15-16 (detailing Oregon's child welfare proceedings); *Tinsley*, 156 F. Supp. 3d at 1027-28 (detailing Arizona's child welfare proceedings). Child welfare proceedings begin with an initial hearing where the court determines whether continued placement with the parent is in the best interests of the child. *See* AS 47.10.142; ARS 8-824; ORS 419B.185, 419B.183. This is followed by an adjudication hearing where the court hears evidence concerning the best interests of the child. *See* AS 47.10.80; ARS 8-844; ORS 419B.325. This is followed by a disposition hearing regarding placements and services for the child and parents. *See* AS 47.10.82, 47.10.80; ARS 8-845; ORS 419B.325, 419B.305. Finally, the court reviews the case at periodic intervals. *See* AS 47.10.80; ARS 8-847; 8-862; ORS 419B.449. Even Defendants do not claim that the CINA courts actually make placement decisions and, indeed Alaska would be ineligible for federal funding if it claimed that the superior courts, not the executive branch official of the child welfare system, were responsible for deciding where a child should be placed. D. Br. at 9-10; 42 U.S.C. § 672(a)(2)(B) (children must be in the

*Jeremiah M. et al. v. Adam Crum et al.*     -17-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 37 of 93

Defendants also incorrectly argue that if this Court were to hear this case, it would "allow[] a child to run to federal court to enjoin potentially adverse state court rulings." D. Br. at 19 n.72. As discussed in detail in this brief, Plaintiffs do not seek to force the CINA courts to make specific decisions with respect to each Plaintiff. Instead, Plaintiffs seek class-wide, systemic relief as against Defendants, such that Plaintiffs and others in the General Class will not be harmed or be placed at risk of harm.[28]

   c. *Younger Abstention is Inappropriate Because This Case Does Not Involve Civil Proceedings Involving Certain Orders Uniquely in Furtherance of the State Courts' Ability to Perform Their Judicial Function*

As a final attempt at claiming that *Younger* abstention should apply, Defendants state that even if the proceedings at issue were not "quasi-criminal," this case involves the third *Younger* category or "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial function." D. Br. at 21.[29]

---

custody of an executive branch agency responsible for "the child's placement and care" before a state can receive federal funds).

[28] *See Jamieson*, 643 F.2d at 1354 (holding that "requesting an order that would require Arizona to spend more money to fund dispositional alternatives for juveniles in state custody" would "enrich the variety of dispositional alternatives available to a juvenile court judge, and, to this extent, affect pending and ongoing state juvenile proceedings" but does not "have the wholly disruptive consequences associated with enjoining a state judicial proceeding or enjoining further enforcement of a state statute."); *Tinsley*, 156 F. Supp. 3d at 1037 ("[T]he juvenile courts rule on individual cases, not how to remedy deficiencies in the overall administration of foster care. As such, the requested relief would not interfere with the functioning of the juvenile courts.").

[29] Defendants claim that this is because "superior courts often issue orders about placement, services, and other issues, which they then oversee through regularly held status hearings and other proceedings." *Id.* Defendants fail to further elaborate on this.

*Jeremiah M. et al. v. Adam Crum et al.*  -18-    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss

This category has been applied only in very narrow settings where request for relief implicates the administration of the judiciary. *Jonathan R.*, 41 F.4th at 331.

The Supreme Court has only twice found that a case fell into this category. *See id.* at 330. First, in *Juidice v. Vail*, 430 U.S. 327 (1977) (cited at D. Br. at 21 n.80), which concerned a state contempt order, and second in *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987), where the court applied it to a federal challenge to Texas's appeal-bond provisions. The *Pennzoil* court explained that, like *Juidice*, that case "involve[d] challenges to the processes by which the State compels compliance with the judgments of its courts" and enjoining that process would "interfere with the execution of state judgments" and also "do so on the grounds that challenge the very process by which those judgments were obtained." *Id.* at 13-14. However, "[t]he foster-care periodic hearings, of course are nothing of the sort." *Jonathan R.*, 41 F.4th at 331. "The state court's usual rulings during those hearings involve approving foster-care plans, ordering payments for medical or mental-health services, affirming out-of-state transfers, and generally ensuring the children's placements continue to be in their best interest. . . [n]othing about that implicates 'the administration' of [the] judiciary." *Id.* at 331.[30]

---

[30] Defendants also fail to explain how the fact that "superior courts often issue orders about placement, services, and other issues, which they then oversee" warrants *Younger* abstention. D. Br. at 21. But courts have rejected just such as argument. *See Jonathan R.*, 41 F.4th at 331 ("A party resisting federal litigation would always be able to claim that future state orders might be necessary to 'oversee[ ] compliance' with *initial* ones and that any parallel federal litigation *might* inhibit state authority to do so.").

*Jeremiah M. et al. v. Adam Crum et al.*     -19-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 39 of 93

Defendants' arguments are meritless, and this case does not fit into any *Sprint* category. Even if the Court finds that this case pertains to quasi-criminal proceedings— and it should not—this case does not satisfy the *Middlesex* factors.

2. <u>This Case Does Not Satisfy The *Middlesex* Factors</u>

Defendants cannot show that Plaintiffs' claims meet the *Middlesex* test or that: (1) the injunctive or declaratory relief sought interferes with ongoing state court enforcement proceedings; (2) there is an adequate opportunity for the plaintiffs to raise their federal claims in those state court proceedings; and (3) the ongoing state court proceedings implicate an important state interest. *See Middlesex*, 457 U.S. at 432, 437.

a. *The Relief Sought in This Case Does Not Interfere with an Ongoing State Court Enforcement Proceeding*

Defendants incorrectly claim that the relief that Plaintiffs request would "limit superior courts' authority to make the fact-intensive decisions they make every day in CINA cases."[31] D. Br. at 24. Defendants ignore that Plaintiffs seek systemic injunctive relief meant to remedy class-wide constitutional and federal law violations by Defendants, not the judiciary. *See Brown v. Lexington County*, No. 17-cv-1426, 2018 U.S. Dist. LEXIS 113976, at *20-21 (D.S.C. July 9, 2018) (where plaintiffs are not seeking a review of Plaintiffs' individual state court decisions but rather "a declaration that Defendants' alleged

---

[31] Plaintiffs make 18 specific demands for injunctive relief, all of which are directed at actions of Defendants, not the Alaska courts. These demands include requiring Defendants to maintain caseloads within professional standards, review the individualized needs of foster children, and conduct annual case reviews to measure whether foster children receive timely permanence, as required by federal law. ¶¶91-95.

*Jeremiah M. et al. v. Adam Crum et al.*     -20-          3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss

[executive] policies or practices . . . are unconstitutional, and an injunction enjoining those practices . . . the first *Middlesex* factor is not satisfied").[32]

Indeed, Plaintiffs request relief that would make Defendants comply with federal law and their constitutional obligations; Plaintiffs are not seeking any specific decisions in any individual CINA cases. Defendants do not (and cannot) explain how seeking an injunction that Defendants, for example, "place children in placements that are safe, appropriate, and in the least restrictive environment that best suits their individual needs" would interfere with the court's discretion.[33] *See* D. Br. at 25. This relief "does not interfere

---

[32] *See, e.g., Jamieson*, 643 F.2d at 1354 (finding *Younger* abstention unwarranted because relief sought did not "have the wholly disruptive consequences associated with enjoining a state judicial proceeding"); *Tinsley*, 156 F. Supp.3d at 1037-38 (relief sought "does not interfere with the juvenile courts' authority or ability to order initial child placements or to review the adequacy of placements."); *Connor B.*, 771 F. Supp. 2d at 157 ("Any indirect impact this case has on the juvenile courts is slight and fails to rise to the requisite level of interference"); *Dwayne B.*, U.S. Dist. LEXIS 28265, at *20 (finding that relief sought would not interfere because "[t]he relief sought here is not directed at the juvenile courts. It is directed at the executive branch."); *Olivia Y. v. Barbour*, No. 3:04CV251LN, slip op. at 2 (S.D. Miss. Aug. 29, 2006) ("the court is not persuaded that any relief which this court may grant, in the event plaintiffs were to establish a constitutional violation, would necessarily impinge on the jurisdiction and prerogative of the state's Youth Courts."); *Olivia Y.*, 351 F. Supp. 2d 543 at 570 (stating that the court would be "hard-pressed to conclude that any specific relief plaintiffs seek in this action would necessarily interfere with ongoing youth court proceedings"); *Kenny A.*, 218 F.R.D. at 286 (finding no interference because "the declaratory and injunctive relief plaintiffs seek is not directed at their [periodic juvenile court] review hearings, or at Georgia's juvenile courts, juvenile court judges, or juvenile court personnel. Rather, plaintiffs seek relief directed solely at executive branch defendants to remedy their alleged failures as plaintiffs' custodians."); *Brian A.*, 149 F. Supp. 2d at 957 (observing that "nothing about this litigation seeks to interfere with or enjoin" ongoing state juvenile proceedings).

[33] Defendants' arguments about Rule 65 and the prematurity thereof are addressed *infra* at Section III(C).

*Jeremiah M. et al. v. Adam Crum et al.*      -21-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.      Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 41 of 93

with the juvenile courts' authority or ability to order initial child placements or to review

the adequacy of placements." *Tinsley*, 156 F. Supp. 3d at 1037.

Next, Defendants commit several pages to discussing the CINA court's role in

reviewing placement decisions and point to several orders in Plaintiffs' CINA cases.[34] But

in Alaska, it is OCS, not the courts, that is responsible for making placements, and courts

only serve a supervisory role and cannot substitute judgment.[35] *See, e.g., State v. E.E.*, 912

---

[34] As discussed herein and in Plaintiffs' Opposition to Defendants' Motion to Take Judicial Notice of Pleadings and Orders From the Named Plaintiffs' CINA Cases, the Court should not take judicial notice of the findings of fact in any court order.

[35] *See e.g.*, AS 47.10.086 ("[t]he *department* shall make timely, reasonable efforts to provide family support services to the child and to the parents or guardian of the child that are designed to prevent out-of-home placement of the child or to enable the safe return of the child to the family home, when appropriate, if the child is in an out-of-home placement. The *department's* duty to make reasonable efforts under this subsection includes the duty to: (1) identify family support services that will assist the parent or guardian in remedying the conduct or conditions in the home that made the child a child in need of aid; (2) actively offer the parent or guardian, and refer the parent or guardian to, the services identified under (1) of this subsection; the department shall refer the parent or guardian to community-based family support services whenever community-based services are available and desired by the parent or guardian; and (3) document the department's actions that are taken under (1) and (2) of this subsection. (a) If the court makes a finding at a hearing conducted under AS 47.10.080(l) that a parent or guardian has not sufficiently remedied the parent's or guardian's conduct or the conditions in the home despite reasonable efforts made *by the department* in accordance with this section, the court may conclude that continuation of reasonable efforts of the type described in (a) of this section are not in the best interests of the child. *The department shall* then make reasonable efforts to place the child in a timely manner in accordance with the permanent plan and to complete whatever steps are necessary to finalize the permanent placement of the child.") (emphasis added); CINA Rule of Procedure Rule 10.1(1)(A) ("If the Department has taken emergency custody of a non-Indian child under AS 47.10.142, the court shall inquire into and determine at the temporary custody hearing *whether the Department* has made reasonable efforts as required by AS 47.10.086(a) to prevent out-of-home placement, or whether it was not possible under the circumstances to make efforts that would have prevented removal of the child."); CINA Rule of Procedure Rule 10.1(1)(B) ("At any other hearing at which the court is ordering a non-Indian child's removal from the home, the court shall inquire into and determine *whether the Department* has made reasonable efforts as required

*Jeremiah M. et al. v. Adam Crum et al.*     -22-                          3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.     Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 42 of 93

P.2d 1, 2 (Alaska Ct. App. 1996) (finding the "superior court enjoyed no greater authority to dictate the department's placement or treatment of children in need of aid" and that "in the context of CINA proceedings, the supreme court has expressly held that 'the legislature has committed placement decisions to the Department's discretion. The various statutory provisions indicate that the Department, not the court, has expertise on the availability and suitability of placements for minors in its legal custody'") (quoting *In re B.L.J.*, 717 P.2d 376, 380 (Alaska 1986)).[36] This is no different from other cases, including in the Ninth Circuit, that have found that abstention is improper even where state courts review a child welfare organization's actions, including actions taken as to placements and services. [37]

_____

by AS 47.10.086(a) to prevent out-of-home placement, unless the court has previously determined under Rule 17.1 that reasonable efforts are not required.") (emphasis added).

[36] To support their claim that state courts would be "enjoined" from making case-by-case placement decisions, Defendants cite to wholly irrelevant case law. *See, e.g., Alyssa B.*, 165 P.3d 605 (D. Br. at 26 n.95) (denying a jury trial where the mother argued that the superior court had violated her due process rights by conducting a termination trial in her absence). The *Alyssa B.* decision does not find that placement decisions are a unique function of the court and finds a placement-related request to be moot.

[37] *See, e.g., Wyatt B.*, 2021 U.S. Dist. LEXIS 184389, at *17 (finding abstention improper and stating that "[a]lthough the Oregon juvenile courts have an important role in the child welfare system, significant aspects of that system, such as the specifics of a child's placement or the planning and provision of services, are reserved to [the Department of Human Services]"); *Tinsley*, 156 F. Supp. 3d at 1037-38 (finding the "decision of the Court will not disrupt individual placements or specific foster homes" "though the juvenile court 'may' order the placement of a child following a determination of dependency, Arizona law permits [the Department of Child Safety] under some circumstances to place children in foster homes subject only to ratification by the juvenile court"); *see M.D.*, 799 F. Supp. 2d at 720 (finding that even where CINA courts "have conducted detailed reviews of each child's placement and condition since entering foster care, and have enter[ed] orders that are in the best interests of the children," this does not warrant abstention). As discussed above in connection with Defendants' arguments under *Younger*, this case does not interfere with ongoing court proceedings and is dissimilar from the state contempt order in *Juidice* or the appeal-bond provisions in *Pennzoil*. *See* Section III(A)(1) *supra*: *Juidice*,

*Jeremiah M. et al. v. Adam Crum et al.*     -23-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 43 of 93

Such a lawsuit would ultimately aid the ongoing state proceedings, not interfere with them" and these orders "do not address whether the child's treatment in foster care satisfies constitutional demands, the central concern of this lawsuit." *Id.*

Defendants argue that the relief Plaintiffs seek would "effectively enjoin the state court litigation that covers all of these complex, individualized issues" and "could substantially delay" a state court proceeding and have the "practical effect of enjoining [it]."[38] D. Br. at 30. Again, this is incorrect. By "seeking systemic changes that would improve the foster care system" for all class members, the injunctive relief will "ultimately aid the ongoing state proceedings, not interfere with them." *M.D.*, 799 F. Supp. 2d at 720.[39] For this reason, most cases that have considered relief that would expand the availability

---

430 U.S. 327; *Pennzoil Co.*, 481 U.S. 1. *See ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (*Younger* abstention was inappropriate because the federal suit did not involve "the process by which a state compel[s] compliance with the judgments of its courts.") (internal citations omitted).

[38] Defendants cite to several cases in support of this argument (D. Br. at 30 n.114), all of which are distinguished above in Section III(A)(1)(C). Moreover, "there is no reason to dismiss the case en masse before the district court has even had the opportunity to sketch out potential contours of relief." *Jonathan R.*, 41 F.4th at 328.

[39] *See also L.H. v. Jamieson*, 643 F.2d 1351, 1354 (9th Cir. 1981) (*Younger* not implicated where "relief may enrich the variety of dispositional alternatives available to a juvenile court judge, and, to this extent, affect pending and ongoing state juvenile proceedings"); *see also Kenny A.,* 218 F.R.D. at 286-87 ("[T]he only conceivable effect on state court proceedings that could flow from [decreased case worker caseloads] would be caseworkers appearing in juvenile court who are better prepared" and declining to abstain since the relief "would at most simply support and further the juvenile court's own mission of ensuring that children removed from their parents' custody because of abuse or neglect are not further harmed.").

*Jeremiah M. et al. v. Adam Crum et al.*       -24-                     3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss

of placements and services to foster children have held that such relief does not interfere with ongoing juvenile court proceedings.[40]

        b.    *Alaska's CINA Proceedings Do Not Provide an Adequate Forum For Claims Alleging Systemic Constitutional and Federal Statutory Violations*

Under the second *Middlesex* prong, plaintiffs must also have an adequate opportunity to present their federal claims in the state court proceeding. *Middlesex*, 457 U.S. at 432. Here, CINA proceedings are an inappropriate forum for Plaintiffs to remedy the systemic, agency-wide constitutional violations at issue.

CINA courts are tasked with adjudicating questions of family law, not with crafting broad-based injunctive relief concerning an executive agency. In fact, courts have repeatedly held that family court proceedings are not appropriate forums for a "multi-faceted class-action challenge to the [State's] administration of its entire foster-care system." [41] *LaShawn*, 990 F.2d at 1322-23; *see also Jamieson*, 643 F.2d at 1354 (claims

---

[40] *See, e.g., Tinsley*, 156 F. Supp. 3d at 1037 (D. Ariz. 2015) ("The request by Plaintiffs for 'practices to ensure a minimally adequate capacity and array of placements' . . . does not interfere with the juvenile courts' authority or ability to order initial child placements or to review the adequacy of placements."); *Wyatt B.*, 2021 U.S. Dist. LEXIS 184389 (where plaintiffs asked for systemic relief to address, among other things, placements and services, court declined to abstain, instead stating that the court would continue considering the scope of equitable relief should plaintiffs prevail); *Connor B.,* 771 F. Supp. 2d at 154 (finding that "Defendants fail to show how the present case would interfere with ongoing state proceedings" where injunctive relief requested regarded "determining the propriety and safety of placements, the adequacy of services, the frequency of visitation, and that appropriateness of DCF's plans to achieve permanency for each child."); *M.D.*, 799 F. Supp. 2d 718 (no *Younger* interference with placement review hearings which "primarily review DFPS actions in relation to the foster child at issue").

[41] *See, e.g., Jonathan R.*, 41 F.4th at 332 ("[I]ndividual periodic [child welfare] hearings do not afford an adequate opportunity for Plaintiffs to press their systemic claims"); *M.D.*, F. Supp. 2d at 721 (declining to abstain under *Younger* because "[s]tate court placement

*Jeremiah M. et al. v. Adam Crum et al.*    -25-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss

were "not of a sort that would be presented during the normal course of a state

proceeding.").[42] State proceedings address issues involving the care of a child by his or her

review hearings focus on whether the particular child's needs are being met, not overarching systemic concerns or constitutional violations."); *LaShawn A. by Moore v. Kelly*, 301 U.S. App. D.C. 49 (1993) (holding that family court neglect proceedings, periodic review hearings, and termination proceedings are inadequate for raising multifaceted, constitutional class action challenge to the administration of the child welfare system); *Connor B.*, 771 F. Supp. 2d at 158 (finding that state courts, tasked with handling questions of family law on an ad-hoc basis, "cannot and do not" afford plaintiff foster children an "adequate opportunity to seek relief for systemic failures"); *Dwayne B.*, 2007 U.S. Dist. LEXIS 28265, at *21 (internal quotation marks omitted) (holding that "there is no pending judicial proceeding which could serve as an adequate forum for the class of children in this case to present its multifaceted request for broad-based injunctive relief based on the Constitution and on federal and state law"); *Kenny A.*, 218 F.R.D. at 287 ("Even in individual cases, the juvenile court cannot order [the child welfare agency] to provide a particular placement for a child, develop new placements, or enter orders requiring staff training, caseloads, the creation of new resources or other issues affecting what happens to children who come before it."); *Brian A.*, 149 F. Supp. 2d at 957 (noting that "[a]lthough technically Plaintiffs could raise constitutional questions in their individual juvenile proceeding[s]," no such proceeding could serve as an adequate forum for the broad injunctive relief sought by class-action plaintiffs); *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 291 (S.D.N.Y. 2000) ("[T]he Court does not believe that the Family Court can adequately consider plaintiffs' claims in the context of a multi-faceted lawsuit challenging a system-wide policy rather than [agency] actions in individual cases."); *Sam M.*, 800 F. Supp. 2d at 382 ("[W]hile the plaintiffs do not appear statutorily precluded from bringing claims in Family Court that may amount to constitutional violations, it does not appear, under the alleged circumstances of this case, that the Family Court would present an adequate forum to address those claims and to afford complete relief to the plaintiff children."). Defendants improperly distinguish *Connor B.* and *Kenny A.,* stating that their holdings are based on a state court's lack of authority with regard to placements. D. Br. at 22 n.85. However, the driving force behind those decisions is that those courts, like the CINA courts here, were unable to provide Plaintiffs with far-reaching class action relief.

[42] Defendants cite *Pennzoil Co.* for the mistaken proposition that Plaintiffs must show that there is "unambiguous authority" stating they could not have brought their claims in the related state court proceeding. D. Br. at 22 (citing *Pennzoil Co.*, 442 U.S. at 430-31). But this argument relies on old pre-*Sprint* case outside of the class action and child welfare context and ignores the numerous cases since *Pennzoil* finding that state courts are inadequate to hear claims nearly identical to Plaintiffs' claims here.

*Jeremiah M. et al. v. Adam Crum et al.*     -26-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.                Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 46 of 93

parent, and "are not suitable arenas in which to grapple with broad issues external to the parent-child relationship." *LaShawn*, 990 F.2d at 1323.[43] Beyond that, CINA courts conduct periodic reviews of individual foster care cases, approve placements, and when necessary, terminate parental rights and/or approve adoptive parents or other legal guardians. *See* Section III(A)(1)(B) *infra.* Those courts do not have jurisdiction to correct widespread failings within DHSS and OCS and cannot order Defendants to change or alter systemic issues, policies, or procedures (such as high caseworker caseloads). Defendants have not cited any cases in CINA courts seeking systemic and class-wide relief (nor are Plaintiffs aware of any). CINA courts do not incorporate the Federal Rules regarding class certification, *see* CINA Rule 1(e), and under CINA Rule 1(g) are prohibited from adopting rules and procedures that may "unduly delay or otherwise interfere with the unique character and purpose of child in need of aid proceedings," which a class action would undoubtedly do.

Plaintiffs could also never raise their constitutional class claims during their individual proceedings for the practical reason that CINA proceedings are kept secret from public view and it is difficult to access records from other cases. AS 47.10.090(e) (state court Child in Need of Aid records confidential); AS 47.10.093(a) (Alaska OCS records generally confidential and shall not be released "directly or indirectly to anyone without a

---

[43] *See Brown v. Alexander*, No. 13-01451 SC, 2013 U.S. Dist. LEXIS 175357, at *23 (N.D. Cal. Dec. 13, 2013) (holding that family court did not provide an adequate forum for plaintiffs' systemic claims); *Lahey v. Contra Costa Cty. Dep't of Children & Family Servs.*, No. C 01-1075 MJJ, 2004 U.S. Dist. LEXIS 18292, at *32 (N.D. Cal. Aug. 31, 2004) (same).

*Jeremiah M. et al. v. Adam Crum et al.*     -27-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.     Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 47 of 93

court order."). Thus, there is no precedent for plaintiffs or courts to rely on and inadequate opportunity for class members to be aware of class claims or to join a class action.[44]

Defendants argue that "superior courts have the authority to make decisions about placements and services that bind OCS" and that CINA courts "routinely address complex issues of federal law." D. Br. at 23. But that is misleading. Those courts can review individual OCS decisions for abuses of discretion and address federal statutes, such as ICWA, that specifically pertain to child welfare in individual cases. *See Dep't of Health and Soc. Servs. v. A.C.*, 682 P.2d 1131, 1134-35 (Alaska Ct. App. 1984) ("The superior court may review the Department's decision for abuse of that discretion, but the court may not usurp the Department's decision-making function or substitute its own view of the minor's best interests."). But Defendants cite to no case (nor could they) where a CINA court ordered any kind of far-reaching injunctive relief that addressed civil rights violations. Defendants have not put forward any basis to show that Plaintiffs' claims satisfy the second *Middlesex* factor.

---

[44] Additionally, as Defendants acknowledge, Plaintiffs for the most part do not have the right to an attorney in these proceedings. D. Br. at 11. In a similar case, one court agreed that a child in foster care had no real chance to raise her constitutional claims in juvenile court proceedings because, among other things, she was not represented by an attorney and state law "did not provide [her] with a mechanism to present a claim against . . . state defendants for their alleged violations of her constitutional rights." *Brokaw v. Weaver*, 305 F.3d 668, 668 (7th Cir. 2002) (citing *Ernst v. Child and Youth Servs. of Chester Cnty.*, 108 F.3d 486, 492 (3d Cir. 1997)).

*Jeremiah M. et al. v. Adam Crum et al.*     -28-     3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1   Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 48 of 93

c.      *This Suit Does Not Implicate an Important State Interest for Younger Purposes*

Defendants make the conclusory claim that "there can be no dispute that Alaska's CINA proceedings implicate the State's historical and compelling interest in ensuring the safety and proper care of the children placed in its custody." D. Br. at 21.[45] But more is required and Plaintiffs do not seek relief related to an area where an important state interest predominates nor do they seek relief that touches the core of the state's administration of its judicial system.

Indeed, the "important state interest" prong cannot be met where a child welfare system is also governed by substantial federal statutes, oversight, and policy. This is because "[t]he goal of *Younger* abstention is to avoid federal court interference with *uniquely* state interests such as preservation of these states' peculiar statutes, schemes, and procedures." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1150 (9th Cir. 2007) (emphasis in original). There is no unique or predominating state interest where, as here, in exchange for federal funds, Defendants willingly subject their foster care system to federal oversight.[46] *See Dwayne B.*, 2007 U.S. Dist. LEXIS 28265, at *20 n.5 ("there are no 'comity' or 'federalism' concerns presented by this lawsuit because the State . . . has

---

[45] To support their claim, Defendants rely on out of context quotes from *Santosky v. Kramer*, 455 U.S. 745, 766 (1982) and *Moore*, 442 U.S. at 435 without consideration for the underlying facts in each case. In *Santosky*, the Court considered the proper evidentiary standard to be used in parental rights termination proceedings. *Id.* As discussed above, any reliance on *Moore* is also misplaced, as that case was pre-*Sprint* and did not apply the *Middlesex* factors at all.

[46] *See also McCartney v. Cansler*, 608 F. Supp. 2d 694, 703-04 (E.D.N.C. 2009) (holding *Younger* abstention not warranted in case alleging federal Medicaid violations because of strong federal interest in and regulation of program).

*Jeremiah M. et al. v. Adam Crum et al.*      -29-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 49 of 93

voluntarily agreed to federal oversight of its foster care system in exchange for federal funding").[47]

Additionally, the Ninth Circuit has cautioned that the "important state interest" requirement is "not an invitation to abstain simply because a suit implicates a state law, even one involving a traditional state concern."[48] *Logan v. U.S. Bank Nat'l Ass'n.*, 722 F.3d 1163, 1167 (9th Cir. 2013). The court strictly limited the application of *Younger* to proceedings "where the operation of the state judicial system is itself at issue." *Id.* at 1167-68; *see also Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 886 (9th Cir. 2011) (finding that to establish a vital interest in the state's judicial functions for *Younger* purposes, the claim must go to "the core of the administration of a State's judicial system.") (quoting *Juidice*, 430 U.S. at 335). In *Potrero*, the Ninth Circuit ruled that the federal suit would not "unduly interfere with the state's vital interest in 'protecting "the authority of [the state's] judicial system . . . ." where the case did not challenge the authority of state courts to issue writs or "processes for their enforcement once issued." *Potrero*, 657 F.3d at 887 (quoting *Pennzoil Co.*, 481 U.S. at 14 n.12 and *Juidice*, 430 U.S. at 336 n.12).

---

[47]In fact, the very annual review with which Defendants' claim Plaintiffs' requested injunctive relief interferes (*see* D. Br. at 25-26) is mandated by the federal Title IV-E program. 42 U.S.C. § 675(5)(C); CINA Rule 19(a) ("The court shall conduct an annual review for a child under the supervision of the Department pursuant to AS 47.10.080(c)(2) to determine if continued supervision, as it is being provided, is in the best interest of the child.")

[48] Likewise, in *ReadyLink*, the Ninth Circuit found it to be irrelevant to its *Younger* analysis that the state proceeding involved the interpretation of a state insurance regulation, an area of traditional state concern, since "[i]n nearly every civil case, litigants request that a court or a quasi-judicial agency interpret a statute, a regulation, or the common law." 754 F.3d at 760.

*Jeremiah M. et al. v. Adam Crum et al.*      -30-                     3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.        Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 50 of 93

Plaintiffs do not raise any challenge to the state court's authority to issue or enforce writs nor do they raise issues that go to the "core" of the administration of the state juvenile court. *Potrero*, 657 F.3d at 887. Thus, under controlling Ninth Circuit law, Defendants cannot show that Plaintiffs' suit meets the third *Middlesex* factor.

### 3. *O'Shea* Abstention Is Inappropriate

*O'Shea v. Littleton*, 414 U.S. 488, 500 (1974) is an outgrowth of *Younger*. Under *O'Shea*, a federal court may not issue an injunction which would result in an "ongoing federal audit" of state court proceedings that would "indirectly accomplish the kind of interference that *Younger v. Harris* . . . and related cases sought to prevent." *O'Shea*, 414 U.S. at 500. Defendants claim that *O'Shea* abstention should be applied. D. Br. at 33. But the interference with state court proceedings must be explicit and here, unlike *O'Shea*, Plaintiffs are not asking for any relief that would directly or indirectly interrupt or alter any state court proceedings.[49]

Defendants ignore well-settled law in the Ninth Circuit and elsewhere finding that *O'Shea* is inapplicable where plaintiffs—as they do here—challenge systemic issues in the child welfare system, not individual determinations in specific cases. For example, the

_____

[49] In *O'Shea*, plaintiffs brought a lawsuit seeking "an injunction aimed at controlling or preventing the occurrence of [bond determinations] that might take place in the course of future state criminal trials." *Id.* at 500. The Supreme Court held that an injunction aimed at controlling individual bond determinations would "disrupt the normal course of proceedings in the state courts via resort to the federal suit for determination of the claim *ab initio*, just as would the request for injunctive relief from an ongoing state prosecution against the federal plaintiff which was found to be unwarranted in *Younger*." *Id.* at 500-01. And enforcing the injunction would require "continuous supervision by the federal court over the conduct of the petitioners in the course of future criminal trial proceedings." *Id.* at 501.

*Jeremiah M. et al. v. Adam Crum et al.*  -31-  3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 51 of 93

*Tinsley* Court found *O'Shea* abstention inappropriate because, "although the juvenile courts play a significant role in overseeing the care of children within the custody and care of the Arizona child welfare agencies, the courts are not involved in adjudicating and remedying the types of claims raised here."[50] *Tinsley*, 156 F. Supp. 3d at 1043. Moreover, "the complaint and proposed relief. . . are not directly aimed at the functioning of the juvenile courts" and the "failures of child welfare agencies to comply with juvenile court orders are the result of the broader problems Plaintiffs wish to address." *Id.* at 1043-44. Similarly, in *Wyatt B.*, the court found that *O'Shea* abstention did not apply where "Plaintiffs do not allege that their injuries are the result of the procedures or the administration of the juvenile court system, or that the systemic relief they seek is within the power of the Oregon juvenile courts to grant." 2021 U.S. Dist. LEXIS 184389, at *18.

Further, in distinguishing *O'Shea* from the type of claim at hand against executive agency defendants, the Fourth Circuit in *Jonathan R.* stated that "*O'Shea* does not resemble this case in any way that matters. There, plaintiffs complained that various judicial and prosecutorial officials colluded to curtail their civil rights, and the only two defendants before the Supreme Court were a magistrate and a county circuit judge." 41 F.4th at 334. Moreover, the Fourth Circuit held that unlike *O'Shea* where the only way to change the practice at issue was by "controlling or preventing the occurrence of specific events that

---

[50] Plaintiff foster children requested relief that was aimed at the agency's "processes for acquiring, screening, and licensing foster homes and its provision of enough foster homes to house children entrusted to its care," not "at controlling the ultimate placement of individual children in a foster home." *Tinsley,* 156 F. Supp. 3d at 1038.

*Jeremiah M. et al. v. Adam Crum et al.*      -32-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 52 of 93

might take place in the course of future state criminal trials," the district court could "offer meaningful relief solely by monitoring executive action." *Id.* (internal citations omitted). [51]

Defendants cite to several cases in which various courts applied *O'Shea* abstention. D. Br. at 33 n.124. These *O'Shea* cases share several common characteristics: defendants include state court systems and state court officials; relief is aimed at specific events that take place in state court proceedings; and granting relief would "require both an 'interruption of state proceedings' and 'an ongoing federal audit of' them." *Id.* Plaintiffs in *O'Shea*, *E.T. v. Cantil-Sakauye*, 682 F.3d 1121 (9th Cir. 2012), *Disability Rights N.Y. v. New York*, 916 F.3d 129 (2nd Cir. 2019), and *Oglala*, 904 F.3d 603 filed suit against state court systems and/or court officials. In each of these cases, plaintiffs sought to control or enjoin specific events that take place in state court proceedings—bond determinations (*O'Shea*), adequacy of representation (*E.T.*),[52] guardianship adjudications (*Disability*

---

[51] *See also T.F. v. Hennepin County*, No. 17-1826, 2018 U.S. Dist. LEXIS 25841, at *12 (D. Minn. Feb. 16, 2018) (finding *O'Shea* abstention inapplicable because foster children plaintiffs "[did] not claim 'any statutory or constitutional violations in the procedure and administration of' [Minnesota's juvenile] courts.") (citing *Tinsley*, 156 F. Supp. 3d at 1044).

[52] In *E.T.*, plaintiffs brought a § 1983 suit against state court officials and judges alleging that the "crushing and unlawful" caseloads of *court-appointed attorneys* prevented attorneys from providing effective assistance of counsel. *E.T.*, 682 F.3d at 1122.

*Jeremiah M. et al. v. Adam Crum et al.*      -33-      3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 53 of 93

*Rights NY*),[53] and emergency removal hearings *(Oglala)*.[54] The present case shares none of these characteristics.[55]

Defendants elaborate on the superior courts' role in child welfare proceedings, D. Br. at 13-18, invoke *O'Shea*, *id.* at 38-39, and then hope this court will use its imagination to arrive at the conclusion that the relief stated in the complaint will require an ongoing federal audit of Alaska's superior courts. However, the relief that Defendants point to— i.e. that placements be "appropriate" and "in the least restrictive environment," that OCS "file and proceed with a timely petition to free a child for adoption in certain circumstances," and that placements be "ICWA-compliant" (D. Br. at 34)—are all actions in the control of OCS, not the courts.[56] As discussed *supra* at Section III(A)(2)(a), while

---

[53] In *Disability Rights N.Y.*, plaintiffs brought a § 1983 suit against *state court officials and judges* alleging that the statute governing guardianship adjudications was unconstitutional. The complaint sought "to alter the manner in which guardianship proceedings are conducted." 916 F.3d at 130-31.

[54] In *Oglala*, parents filed suit against the executive agency and the *presiding judge*, alleging that the emergency removal hearing process violated their rights. *Oglala,* 904 F.3d at 608. The court abstained because the relief requested "interfere[d] with the state judicial proceedings by requiring the defendants to comply with numerous procedural requirements at future 48-hour hearings." *Id.* at 612.

[55] *See Tinsley*, 156 F. Supp. 3d at 1043-44 (distinguishing *E.T.* because plaintiffs' suit was not "directly aimed at the functioning of the juvenile courts"); *Wyatt B.*, 2021 U.S. Dist. LEXIS 184389, at *14 (distinguishing *E.T.* because plaintiffs' relief did not "entail examination of the administration of individual cases").

[56] For example, OCS can, based on its own determination of the best interests of the child, place the child in a home or institution inside or outside of the state, AS 47.10.080(s); AS 47.10.100(a); approve an unlicensed relative for placement, AS 47.14.115(b); separate siblings and prohibit contact between siblings AS 47.10.100(r); transfer a child from one out-of-home placement to another, AS 47.10.080(s); deny visitation to family members, AS 47.10.080(p); require foster parents to facilitate visitation by the child's parents, AS 47.10.080(t); override a school district's enrollment decisions, AS 47.10.080(y); and override a child's placement preferences. AS 47.10.086(h). OCS is responsible for

*Jeremiah M. et al. v. Adam Crum et al.*    -34-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss

the court can review placement decisions, it cannot substitute judgment.[57] That CINA courts hold hearings to review some of Defendants' decisions is in no way different from other states that have found *O'Shea* abstention to be inappropriate.

Defendants fail to answer the threshold question for *O'Shea*: whether the interference would be so substantial as to require the "constant day-to-day supervision" of judicial officers. *O'Shea* 414 U.S. at 500-01. *O'Shea* abstention is thus inappropriate.

### 4.     <u>*Rooker-Feldman* Does Not Apply To This Case</u>

The *Rooker-Feldman* doctrine is "confined to . . . cases brought by state-court losers complaining of injuries caused by *state-court judgments* . . ." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (emphasis added). The Ninth Circuit has clarified that "where the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party, *Rooker-Feldman* does not bar jurisdiction . . . [even if the parties] are litigating the same or similar

---

licensing, training, and investigation of foster care homes, AS 47.14.100(j), 47.14.115; for hiring, training, and supervising caseworkers, AS 47.14.112; for contracting with and supervising medical professionals and detention facilities, AS 47.14.010, 47.20.070, 47.32.010; and for providing vocational training and independent living skills to foster children who are likely to age out of the system. AS 47.18.310; AS 47.18.320.

[57] *Compare with Wyatt B.*, 2021 U.S. Dist. LEXIS 184389, at *10, 16 (finding abstention not warranted and citing to Oregon law stating that "unless otherwise authorized by law, the court may not direct a specific placement. The actual planning and placement of the child or ward is the responsibility of the department" Also stating that "[t]he state agency retains substantial control over the specifics of placement for children placed in their custody by the juvenile court and retains control over the licensing, training, and investigation of foster care homes."). *See also supra* at III(A)(2)(b) (explaining the similarity between Oregon, Arizona, and Alaska courts).

*Jeremiah M. et al. v. Adam Crum et al.*       -35-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 55 of 93

dispute in state court."[58] *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003). The Supreme Court has clarified that "*Rooker-Feldman* does not apply to a suit seeking review of state agency action." *Exxon Mobil*, 544 U.S. at 287 (internal citations omitted).[59]

*Rooker-Feldman* does not apply in this case because: (1) the Complaint challenges only executive action, not judicial decisions; and (2) Plaintiffs lacked a reasonable opportunity to raise their federal claims in the state proceedings.[60]

Defendants argue that this lawsuit amounts to a collateral attack on Plaintiffs' underlying CINA court proceedings, in part because "superior courts have already upheld placement decisions with respect to the Named Plaintiffs." D. Br. at 36. But Plaintiffs *do not* challenge or seek to alter any underlying CINA court decisions.[61] Here, Plaintiffs challenge state agency action, as in *Exxon*. The mere existence of parallel proceedings does not render the issues "inextricably intertwined" sufficient to warrant dismissal.[62]

---

[58] It is wholly inapplicable to independent claims raised in federal court, even if those claims "den[y] a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party." *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015) (quoting *Exxon Mobil*, 544 U.S. at 293).

[59] *See also Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 650 n.3 (2002); *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 800 (9th Cir. 2002).

[60] *See Feldman v. McKay*, No. 15-cv-04892, 2015 U.S. Dist. LEXIS 159741, at *38 (C.D. Cal. Nov. 25, 2015) ("For an issue to be inextricably intertwined with a state court decision, there must have been a reasonable opportunity to raise the issue in the state proceedings."); *Marshall v. Wash. State Bar Ass'n*, No. 11-cv-5319, 2012 U.S. Dist. LEXIS 71932, at *27 (W.D. Wash. May 23, 2012) ("The pertinent inquiry is whether Marshall had a reasonable opportunity to raise objections in the state court proceedings.").

[61] Defendants also inappropriately rely on CINA courts' finding of facts. *See* Plaintiffs' Opposition to Defendants' Motion for Judicial Notice filed on September 30, 2022.

[62] Defendants omit the threshold requirement stated in *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (applying *Rooker-Feldman* only "[i]f claims raised in the federal court action are 'inextricably intertwined' with the state court's decision *such that the*

*Jeremiah M. et al. v. Adam Crum et al.*          -36-                          3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss

Additionally, as discussed in Section III(A)(2) *infra* CINA proceedings are wholly inadequate venues for Plaintiffs' claims.

Defendants cite to no case that applied the *Rooker-Feldman* doctrine *for the sole reason* that plaintiffs could have brought the claims in the underlying state court case.[63] That is because, as stated above, the *Rooker-Feldman* doctrine is limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments." *Exxon Mobil*, 544 U.S. at 284. That is not the case here.[64]

---

*adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules*") (emphasis added); *see also Noel*, 341 F.3d at 1165 ("We have never held that when there are simultaneous suits in state and federal court, in which related or 'inextricably intertwined' claims are being litigated, the federal suit must be dismissed.").

[63] In *Miller v. Nichols*, for example, the court applied *Rooker-Feldman* because plaintiffs' effort to prevent adoption of their child amounted to "an end run around the state court's judgment" terminating parental rights. 586 F.3d 53, 59 (1st Cir. 2009). In *Phillips v. City of New York*, the court found that "Plaintiffs lost in state court . . . and that judgment was rendered prior to commencement of this federal lawsuit" and that "the relevant injury did arise out of the state court judgment." 453 F. Supp. 2d 690, 713, 717 (S.D.N.Y. 2006). Defendants misstate *Guess v. Bd. of Med. Exam'rs of State of N.C.*, which stated that "Feldman will preclude jurisdiction if the constitutional claims are *inextricably intertwined* with the merits of the state court judgment," even if Plaintiffs never brought the same federal claim in state court. 967 F.2d 998, 1002-03 (4th Cir. 1992) (emphasis added).

[64] Defendants conclude with an abstention catch-all: that as an alternative to *Younger*, *O'Shea*, or *Rooker-Feldman*, the court may abstain when hearing a case "risks a serious federalism infringement" to "an area of traditional state authority." D. Br. at 35. To support this proposition, Defendants cite *J.B. v. Woodward*, 997 F.3d 714, 723 (7th Cir. 2021), which concerned a facial challenge to a state statute that, if granted, would have interfered with family court proceedings "to such a degree as to all but compel the federal judiciary to stand down."

*Jeremiah M. et al. v. Adam Crum et al.*     -37-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.   Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 57 of 93

**B. Plaintiffs Have Adequately Alleged Standing to Bring Their Claims**

"The doctrine of standing addresses whether [the] party invoking federal court jurisdiction has '[t]he requisite personal interest' in the outcome of the case 'at the commencement of the litigation.'" *Wyatt B.*, 2022 U.S. Dist. LEXIS 147091, *66 (quoting *Blair v. Shanahan*, 38 F.3d 1514, 1519 (9th Cir. 1994)). Plaintiffs must prove three things to establish standing: (1) that they have suffered an "injury in fact"; (2) that there was a "causal connection between the injury and the conduct complained of"; and (3) that it is "likely" that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). The Court may *only* dismiss Plaintiffs' claims for lack of standing if Plaintiffs have failed to make "general factual allegations of injury resulting from the defendant's conduct." *Clark K. v. Guinn*, No. 06-cv-1068, 2007 U.S. Dist. LEXIS 35232, at *10 (D. Nev. May 9, 2007) (quoting *Lujan,* 504 U.S. at 561).

1. Plaintiffs Have Adequately Alleged an Injury-In-Fact

"[T]o satisfy the 'injury-in-fact' requirement, a plaintiff need not wait for an injury to occur." *Clark K.*, 2007 U.S. Dist. LEXIS 35232 at *10 (cited D. Br. at 54 n.208). "An allegation of future injury satisfies this prong so long as the alleged injury is "imminent" or "real and immediate" and not merely "conjectural" or "hypothetical." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983)). At the pleading stage, "[g]eneral factual allegations of injury resulting from the defendant's conduct may suffice." *Jewel v. NSA*, 673 F.3d 902, 907 (9th Cir. 2011).

Plaintiffs have alleged continuing, concrete, and particularized injuries while in OCS's care and custody. *See Clark K.*, 2007 U.S. Dist. LEXIS 35232, at *13 ("Plaintiffs

*Jeremiah M. et al. v. Adam Crum et al.*     -38-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.    Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 58 of 93

assert detailed allegations of tangible injuries. Plaintiffs also allege these harms will continue into the present and are very likely to persist into the future unless Defendants are forced to remedy the significant problems in [the] child welfare system."). Plaintiffs all remain in OCS custody, and therefore, face ongoing harm and remain at a significant risk of experiencing future harm from Defendants' policies and practices. Numerous other courts have found these claims sufficient. *See, e.g.*, *B.K. v. Snyder*, 922 F.3d 957, 967, 972 (9th Cir. 2019) (plaintiff in foster care "face[d] a risk of harm from [child welfare agency's] policies and practices" and thus had "standing to press her due process claims").[65]

Defendants contend that Plaintiffs do not satisfy the injury requirement because they allege only past injuries, not a likelihood of repeated injury or future harm. D. Br. at 39. Defendants pluck past injuries from Plaintiffs' allegations and strategically omit the obviously prospective harm. But the Complaint alleges that Jeremiah M., Hannah M., and Hunter M., have ongoing needs for which OCS is not properly providing services and continue to languish in a poor placement. (*See* ¶¶41-57). The same is true for Rachel T. and Eleanor T. (*See* ¶¶101-11). These allegations greatly resemble those in other cases where courts have found standing. *See, e.g.*, *B.K.*, 922 F.3d at 967 (plaintiff "presented evidence that she has not received adequate medical care or appropriate placements in the past as well as evidence that statewide policies and practices expose her to a risk of similar future harms."). Notably, Defendants do not contest Plaintiffs' allegations of ongoing

---

[65] *See also M.D. v. Abbott*, 907 F.3d 237, 264 (5th Cir. 2018) (affirming the District Court's finding that "a policy or practice of maintaining overburdened caseworkers directly causes all [] children to be exposed to a serious risk of physical and psychological harm").

*Jeremiah M. et al. v. Adam Crum et al.*    -39-    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK    Document 30    Filed 09/30/22    Page 59 of 93

harm—for example, that Lana H. remains in a homeless shelter where she is not getting services. ¶21. To the extent Plaintiffs cite past harms, it is to prove likelihood of future harm. *See Sierakowski v. Ryan*, 223 F.3d 440, 445 (7th Cir. 2000) ("[T]o confer standing for injunctive relief, [past harms] may be evidence that future violations are likely to occur.").[66]

Plaintiffs complain of systemic, widespread policies and practices that either directly harm or pose a significant risk of harm to these plaintiffs. For example, OCS's "lack of assistance" prevents Plaintiffs from receiving the services they need. *See* ¶50; D. Br. at 41. And Plaintiffs continue to suffer harm from "significant caseworker turnover." *See* ¶110. What is more, OCS's failure to "return phone calls" or "provide medical consent forms," while in the past, amount to "evidence that future violations are likely to occur." *Sierakowski*, 223 F.3d at 445. As the facts make clear, "[t]his case is different than *Lyons*. Plaintiffs . . . who are in foster care have standing to pursue their claims [because] [t]hey are in Defendants' custody and . . . cannot avoid exposure to Defendants' challenged conduct."[67] *Clark K.*, 2007 U.S. Dist. LEXIS 35232, at *12.

---

[66] *See also Powell v. Illinois*, No. 18-cv-6675, 2019 U.S. Dist. LEXIS 168209, at *19 (N.D. Ill. Sept. 30, 2019) (highlighting that the "trauma each child suffered in the past frames this ongoing injury"); *C.f. Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (plaintiff lacked standing because he made no allegations of future injury) (D. Br. at 40 n.161); *Stack v. City of Hartford*, 170 F. Supp. 2d 288, 293-294 (D. Conn. 2001) (same) (D. Br. at 39 n.154).

[67] Indeed, Plaintiffs allegations that they are still in OCS custody and continue to be at risk of harm are a far cry from those in *Lyons*, 461 U.S. 95 (D. Br. at 40) where plaintiff who was placed in a police chokehold would need to show that he would have another encounter with the police, and that (1) all police choke all citizens they encounter, or (2) the city authorized police officers to act in this way. *Id.* at 105-06.

*Jeremiah M. et al. v. Adam Crum et al.*     -40-                              3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 60 of 93

## 2. Plaintiffs Have Adequately Alleged Causation

"[F]or purposes of standing at the pleading stage," causation exists where plaintiffs pleaded that "Defendants' failures caused Plaintiffs' injuries and their continued failures are likely to cause further injuries." *Clark K.*, 2007 U.S. Dist. LEXIS 35232, at *14.

Defendants claim that Plaintiffs need to add "specific allegations linking OCS's alleged historical problems to the circumstances of the Named Plaintiffs themselves."[68] D. Br. at 43. However, if state officials "fail to provide [plaintiff with reasonable care] . . . through the deficient statewide policies and practices [plaintiff] alleges, the harm to [plaintiff] will have been caused by those officials." *B.K.*, 922 F.3d at 967. Plaintiffs need not allege that each policy and practice affected each individual plaintiff. *Id.* Plaintiffs need only, as they do here, allege a failure to provide reasonable care. *See, e.g.*, ¶¶140, 168, 173, 181, 192, 268, 276, 291, 297, 308, 315. Defendants did not cite a single case that supports their theory of causation. Nor can they.

Defendants attempt to support their theory with *Karen L.*, 953 P.2d at 877. But Defendants' caveat that *Karen L.* "arose in a different context" is an understatement. D. Br. at 42. There, the court, reviewing a grant of summary judgement in a negligent infliction of emotional distress case, held that the mother's participation in CINA proceedings was not a proximate cause of her injuries, and that the agency did not owe her a duty of care. This case is wholly inapplicable.

---

[68] Defendants' citation to *Wash. Envtl. Council v. Bellon* is inapposite. 732 F.3d 1131, 1142 (9th Cir. 2013) (no "plausible scientific or other evidentiary basis that [Defendants' actions] are the source of their injuries.").

*Jeremiah M. et al. v. Adam Crum et al.*     -41-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.    Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 61 of 93

Defendants also quickly gloss over the specific allegations linking Plaintiffs' injuries to OCS and then raise Gayle T.'s sexual assault while in Hanson House as an example of OCS's lack of responsibility for Plaintiffs' harms. D Br. at 43-44 ("[T]here is no allegation that Hanson House is run or controlled by OCS"). But the agency cannot contract away its constitutional duty of care to foster children who remain in the state's custody. *See K.H. v. Morgan*, 914 F.2d 846, 849 (7th Cir. 1990). Plaintiffs have thus sufficiently alleged causation to overcome a motion to dismiss.

### 3. Plaintiffs Have Adequately Alleged Redressability

"To establish Article III redressability, the plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Juliana v. U.S.*, 947 F.3d 1159, 1170 (9th Cir. 2020) (internal citations omitted). Plaintiffs are not, however, "required to allege the precise means of redress at the pleading stage." *Crawford v. Uber Techs., Inc.*, No. 17-cv-02664, 2018 U.S. Dist. LEXIS 33778, at *10 (N.D. Cal. Mar. 1, 2018).[69]

---

[69] Defendants argue that the redressability analysis in *Ashley W.* is relevant here. *See* 34 F.4th 588, 593 (7th Cir. 2022). But that court's analysis of redressability—as Defendants concede—"turns on *Younger*." D. Br. at 44. If this court declines to abstain, then *Ashley W.* serves no purpose in a redressability analysis. Moreover, the conclusion in *Ashley W.* relied on the faulty assumption that plaintiffs' injuries were non-redressable "short of ordering the state to come up with more money." 34 F.4th at 593. But as a threshold matter, Plaintiffs do not seek any type of relief that would directly require Defendants to increase funding. Plaintiffs ask that the Court require Defendants to comply with their constitutional and statutory obligations, by for example, increasing personnel or access to services, with any monetary impact being entirely ancillary. *See Papasan v. Allain*, 478 U.S. 265, 278 (1986) ("[R]elief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury."); *see Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d

*Jeremiah M. et al. v. Adam Crum et al.*      -42-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1  Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 62 of 93

Defendants claim that Plaintiffs could bring many of their requests for injunctive relief before a CINA court. But, as discussed above, Plaintiffs cannot. *See* Section III(A)(2)(b).

Defendants then claim that the remaining relief that Plaintiffs seek are either "aspirational" or "speculative." D. Br. at 46-47. But courts should not assess at the pleading stage whether relief sought in a complaint will ultimately succeed. *Dwayne B.*, 2007 U.S. Dist. LEXIS 28265, at *16 ("Plaintiffs' complaint need only seek injunctive relief that is 'likely' to remedy Defendants' conduct that they allege causes their harms; not injunctive relief that 'assures' these injuries will be redressed."). Here, "[t]he relief Plaintiffs seek would clearly remedy their claimed injuries . . . [and] federal courts have generally afforded foster children standing in situations like this case." *Clark K.*, 2007 U.S. Dist. LEXIS 35232, at *14-15.[70]

### C.     Defendants' Arguments About the Appropriateness of Injunctive Relief Are Premature

Without requesting dismissal of any specific claims, Defendants argue that several of the requests for injunctive relief fail as a matter of law because they: (1) apply to third-parties not before the court; and (2) fail to comport with the specificity requirements of Federal Rule of Civil Procedure 65.[71] D. Br. at 47-50. This argument is without merit and

---

858, 865 (9th Cir. 2016) ("The *Young* doctrine allows individuals to pursue claims against a state for prospective equitable relief, including any measures ancillary to that relief.").

[70] *See also B.K.*, 922 F.3d at 967 ("If those allegedly deficient policies and practices are abated by an injunction, that harm may be redressed by a favorable court decision.").

[71] Defendants specifically argue that the requests for relief found at sections IV(a), (b), (p) and (q) of the Complaint's Prayer for Relief section are improper. *See* ¶¶91–93.

*Jeremiah M. et al. v. Adam Crum et al.*     -43-                         3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.    Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 63 of 93

ignores the actual language of the Complaint and the numerous federal district court decisions setting out the limitations to motions brought under Rule 12.[72]

As a basic matter, the relevant pleading standard is found in Rule 8, which simply requires that every complaint contain a "demand for relief, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3). Because the Plaintiffs' prayers for relief consist of just that—demands for various sorts of equitable relief—they satisfy the pleading requirements of the Federal Rules of Civil Procedure.[73]

Defendants do not point to a case or rule that would allow the court to dismiss otherwise well-pleaded claims at the Rule 12 stage on the sole grounds that certain prayers for relief may be improper. Indeed, most federal courts have concluded that claims should not be dismissed under Rule 12(b) "merely because a plaintiff requests a remedy to which he or she is not entitled."[74] As the district court reasoned in *Celebrity Chefs Tour, LLC*,

---

[72] Defendants' cited cases are inapposite for this reason. For example, *M.D.,* 907 F.3d at 268 (D. Br. at 50 n.196, n.197) was decided following class certification and a two-week bench trial.

[73] Defendants argue that certain requests for injunctive relief are invalid because they "refer to standards set by third parties" D. Br. at 49. But courts have found similar requests for injunctive relief valid under Rule 65. *See DG v. Devaughn*, 594 F.3d 1188, 1200 (10th Cir. 2010) (in connection with motion for class certification, finding requests for "(1) an injunction setting limits on the caseloads of caseworkers and their supervisors set by the [Council on Accreditation] COA and the [Child Welfare League of America] CWLA and (2) and injunction mandating caseworkers monitor foster children by visiting them as frequently as set forth under COA and CWLA standards" to be valid).

[74] *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1159, 1164 (S.D. Cal. 2014) (internal quotation marks omitted) (quoting *Summit Tech., Inc. v. High–Line Med. Instruments, Co.*, 933 F. Supp. 918, 927–28 (C.D.Cal.1996)); *see also Pruitt v. Cheney*, 963 F.2d 1160, 1164 (9th Cir. 1991), amended (May 8, 1992) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support

*Jeremiah M. et al. v. Adam Crum et al.*     -44-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 64 of 93

arguments about the propriety of relief requested generally do not serve as a basis for dismissal of claims in their entirety.[75] 16 F. Supp. 3d at 164.

Instead, most federal courts have concluded that arguments regarding the propriety of injunctions or other equitable relief are premature at the pre-answer, motion to dismiss stage. Rejecting an analogous argument, the District Court in *Fowler v. Aetna Life Ins. Co.* concluded that "[w]ithout a more fully-developed record, no one in this action is yet in a position to determine what, if any, equitable relief" may be available to the plaintiffs.[76] Defendants' request for dismissal of Plaintiffs' claims on the grounds that some of their requests for injunctive relief may be improper should be rejected by the Court.

---

of his claim which would entitle him to relief."); *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 629–30 (W.D. Va. 2014) ("[T]he nature of the relief included in the demand for judgment is immaterial to the question of whether a complaint adequately states a claim upon which relief can be granted."). The one contrary decision can be found in the Second Circuit's decision in *Bano v. Union Carbide Corp.*, 361 F.3d 696, 716-16 (2d Cir. 2004) affirming the dismissal of a claim for injunctive relief that would have necessarily required the cooperation of a non-party foreign government. The *Bano* court urged the district court to reconsider dismissal in the event the foreign government moved to intervene in the case. *Id.* This is not an issue here where the relief sought is in Defendants' hands.

[75] *Id.* (rejecting defendants' argument that plaintiffs' claims should be dismissed on a Rule 12(b)(6) motion where complaint alleged improper relief punitive damages that defendants argued were unavailable to plaintiffs).

[76] *Fowler v. Aetna Life Ins. Co.*, No. 08-cv-03463 WHA, 2008 U.S. Dist. LEXIS 95174, at *12-13 (N.D. Cal. Nov. 13, 2008); *see also Carten v. Hartford Life & Accident Ins. Co.*, No. 10-cv-04019, 2010 U.S. Dist. LEXIS 115468, at *10 (N.D. Cal. Oct. 21, 2010) ("[I]t is also premature to address whether the various flavors of injunctive relief requested in the complaint are 'appropriate.' When, if ever, plaintiff establishes her entitlement to relief, these questions will be ripe for adjudication.").

*Jeremiah M. et al. v. Adam Crum et al.*      -45-                     3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.  Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 65 of 93

**D. Plaintiffs Have Adequately Stated Claims on Which Relief May be Granted**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Finally, "all pleadings shall be so construed as to do substantial justice." *Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996) (citing Fed. R. Civ. P. 8(f)).

       1.    <u>Plaintiffs Have Adequately Alleged Substantive Due Process Claims</u>

The Due Process Clause of the Fourteenth Amendment prohibits the state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. When the state assumes custody of a child—deprives them of liberty—it creates a "special relationship" that triggers Fourteenth Amendment due process protections.[77] A foster child has a "protected liberty interest" in "reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child." *Lipscomb v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992) (citations omitted);

---

[77] *See Henry A. v. Willden*, 678 F.3d 991, 1000 (9th Cir. 2012); *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 846-47 (9th Cir. 2010).

*Jeremiah M. et al. v. Adam Crum et al.*    -46-         3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1 Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 66 of 93

*Wyatt B.*, 2021 U.S. Dist. LEXIS 184389, at \*20. A state agency violates these rights when it acts deliberately indifferent to unreasonable risks of harm. *Henry A.*, 678 F.3d at 1000-01.

The scope of these protections is broad, as held in the Ninth Circuit and elsewhere. A foster child's right to be free from unreasonable risk of harm encompasses the right to "social worker supervision and protection from harm inflicted by a foster parent." *Henry A.*, 678 F.3d at 1000; to "protection from psychological as well as physical abuse," *M.D. v. Abbott*, 152 F. Supp. 3d 684, 696 (S.D. Tex. 2015); and to "personal security and reasonably safe living conditions," *Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 880 (5th Cir. 2004).[78] These protections are not merely against actual injury—the Fourteenth Amendment protects foster children against unreasonable *risks* of harm.[79] Relying on foster families and private institutions to provide that care does not

---

[78] *See also Marisol A.*, 929 F. Supp. at 675 ("tak[ing] a broad view of the concept of harm in the context of plaintiffs' substantive due process claims", finding "custodial plaintiffs have a substantive due process right to be free from unreasonable and unnecessary intrusions into their emotional well-being"); *Olivia Y.*, 351 F. Supp. 2d at 556 (finding that "plaintiffs' pleading is sufficient to allege a violation of their substantive due process right to adequate care and treatment while in state custody"); *Connor B.*, 771 F. Supp. 2d at 161 (cited D. Br. 51 n.198) (finding substantive due process claims adequately alleged, including "the right to remain in custody no longer than necessary under the circumstances, the right to receive care and treatment in accordance with accepted standards of professional judgment, and the right to be placed in the least restrictive environment").

[79] *See, e.g., Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (prisoners' claim for injunctive relief based on risk of future harm due to unsafe conditions was "firmly established in our constitutional law"); *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1984) (finding that plaintiffs "need not wait until actual casualties occur in order to obtain relief from [unsafe] conditions").

*Jeremiah M. et al. v. Adam Crum et al.* -47- 3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK Document 30 Filed 09/30/22 Page 67 of 93

relieve the state of its constitutional duty to foster children who remain in the state's custody. *K.H. v. Morgan*, 914 F.2d at 851-52.

Defendants call this precedent a "litany of rights," and contend, incorrectly, that Alaska foster children are constitutionally entitled to no more than "basic human needs," and that the state need only provide "minimally adequate care and treatment," converting the floor of constitutional protection into its ceiling.[80] *See* D. Br. at 51-52. Indeed, the only two cases Defendants cite to support this proposition are *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989), and *Youngberg v. Romeo*, 457 U.S. 307, 319 (1982) (D. Br. at 52 n.203, 54 n.209), conveniently glossing over two decades of decisions that expand and expound upon the due process rights of foster children.

First, Plaintiffs adequately allege that Defendants have violated their "right to conditions and duration of foster care reasonably related to the purpose and assumption of government custody." ¶269(d). Defendants misstate this claim by characterizing it as a request for certain types of homes or specific lengths of time in care and in so doing cite several inapposite and outdated cases.[81] *See* D. Br. at 52-54. For example, the plaintiffs in

---

[80] Defendants concede that Plaintiffs assert rights recognized under the Fourteenth Amendment. *See* D. Br. at 54-55 (citing ¶¶269(a); 269(c) ("the right to freedom from the foreseeable risk of maltreatment"; the right to services "necessary to prevent unreasonable risk of harm"). Additionally, Plaintiffs adequately allege that Defendants have violated their "right to protection from unnecessary intrusions into the child's emotional wellbeing once the State has established a special relationship with that child." ¶269(b). Defendants do not appear to contest that this is a recognizable right. Rightly so, as the state must "shield the children in their custody from physical and *psychological* harm." *Wyatt B.*, 2021 US. Dist. LEXIS 184389, *26.

[81] Unlike *K.H. v. Morgan*, a case about whether child welfare officials were protected by qualified immunity against a suit for damages, Plaintiffs here seek injunctive relief. 914 F.2d 846, 849 (7th Cir. 1990) ("[T]he outer bounds of judicial competence to remedy deep-

*Jeremiah M. et al. v. Adam Crum et al.*      -48-                          3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 68 of 93

*Reno v. Flores*, 507 U.S. 292, 302 (1993) (D. Br. at 53)—an immigration case involving unaccompanied minors in federal custody—made a categorical request for placement with non-relatives instead of institutions.[82] These cases are similarly unresponsive to "the right not to be maintained in custody longer than is necessary to accomplish the purpose to be served by taking a child into government custody," ¶269(f), and "the right to receive or be reunited with an appropriate permanent home and family within a reasonable period." ¶269(g). These rights are adequately alleged.[83] They are not, as Defendants contend, requests for specific placements but requests that Defendants meet their constitutional duties to foster children. *See* D. Br. at 52.

Finally, Plaintiffs have adequately alleged violations of "the right to treatment and care consistent with the purpose and assumptions of government custody." ¶269(e); *See Henry A.*, 678 F.3d at 1000-01 (upholding claims that the state failed to provide services necessary to ameliorate the conditions of foster children, resulting in harm to those children); *see also Lipscomb*, 962 F.2d at 1379 ("Once the state assumes wardship of a

---

seated problems of public responsibility are to be explored not in damages suits but in equity actions").

[82] *See also Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 809 F. Supp. 2d 754, 775-76 (N.D. Ohio 2011) ("The *Flores* case has no application in the context of removal of children *from their parents or custodial guardians.*") (emphasis in original). In a mistaken interpretation of Plaintiffs' claims, Defendants argue that courts have rejected rights to the type and duration of foster care placement, citing authorities that are inapposite. D. Br. at 52 n.208.

[83] *See, e.g., Connor B.*, 771 F. Supp. 2d at 161 (upholding substantive due process claims pursuant to the "right to remain in custody no longer than necessary"); *Brian A.*, 149 F. Supp. 2d at 953-54 (upholding substantive due process claims, including "the right not to be deprived of [] liberty unnecessarily by retention in state custody" and the "right to be placed in the least restrictive, most appropriate, family-like setting while in state custody").

*Jeremiah M. et al. v. Adam Crum et al.*     -49-     3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 69 of 93

child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child"); *Olivia Y.*, 351 F. Supp. 2d at 556.[84] Plaintiffs do not seek an aspirational child welfare system, *see* D. Br. at 54, but merely a constitutionally adequate one.

Plaintiffs have also adequately alleged that Defendants' policies and practices amount to deliberate indifference. A foster child's due process rights are violated when the state acts with deliberate indifference to unreasonable risks of harm. *See Henry A.*, 678 F.3d at 1000-01.[85] To prove deliberate indifference in the Ninth Circuit, a plaintiff must prove that the agency acted with "reckless disregard" to an objective "substantial risk of [] serious harm." *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016).[86] State agencies are considered deliberately indifferent to these harms when "statewide policies and practices expose [foster children] to a risk of similar future harms." *B.K.*, 922 F.3d at 967.

The complaint is replete with facts that support a finding of deliberate indifference. OCS is aware that its poorly trained and maintained workforce can have "long-lasting and pervasive negative impact on children and families involved in the child welfare system," ¶165, that frequent placement changes delay data entry and create a "a significant safety risk to children in care," ¶171, that delayed permanency "worsens conditions for foster children and leads to higher and higher caseloads…as well as increased caseworker

---

[84] Unlike *Mark G. v. Sabol*, 93 N.Y.2d 710 (1999) (D. Br. at 54 n.211), a state court case concerning monetary damages for failure to provide preventative services (*i.e.*, prior to entry into foster care), Plaintiffs here seek appropriate services while in state custody.

[85] *See also M.D.*, 152 F. Supp. 3d at 696-98.

[86] *See also Tamas*, 630 F.3d at 845.

*Jeremiah M. et al. v. Adam Crum et al.*     -50-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.                Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 70 of 93

turnover, ¶202, that basic services are not being provided to foster children, ¶209-210, and that minimally adequate medical care is not being provided to foster children with disabilities, ¶263. OCS maintains practices and policies that perpetuate these well-known harms, including but not limited to defaulting to reunification, even when parents sexually abused children, ¶187, failing to implement "a standardized process to track petitions for termination of parental rights, or to ensure that such petitions are timely filed," ¶201, and failing to implement standardized referral processes for services. ¶208.

This is not mere negligence. It is "akin to reckless disregard," and easily amounts to deliberate indifference. *Castro*, 833 F.3d at 1071. Defendants' policies and practices are the proximate cause of Plaintiffs' deprivation of rights under the Constitution. *Doe v. N.Y.C. Dep't of Soc. Servs.*, 649 F.2d 134, 145 (2d Cir. 1981); *Taylor v. Ledbetter*, 818 F.2d 791, 797 (11th Cir. 1987).

Defendants cite a deliberate indifference test that has since been overturned.[87] D. Br. at 55. Presently, a plaintiff "who asserts a due process claim for failure to protect [must] prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1070. This standard better accords with the understanding that the deliberate indifference standard should be relaxed with respect to foster children because "such persons are 'entitled to more considerate treatment and conditions of

---

[87] Defendants cite *Momox-Caselis v. Donohue*, 987 F.3d 835, 845 (9th Cir. 2021) for the three-part deliberate indifference test. The *Momox-Caselis* court cites *Tamas*, which relies on *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010) for the test. But the Ninth Circuit overruled *Clouthier* in *Castro*, 833 F.3d at 1070, and so too the subjective test. *See id.* ("We therefore overrule *Clouthier* to the extent that it identified a single deliberate indifference standard for all § 1983 claims").

*Jeremiah M. et al. v. Adam Crum et al.*      -51-      3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 71 of 93

confinement than criminals whose conditions of confinement are designed to punish.'" *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 790 (2d Cir. 1983) (citing *Youngberg*, 457 U.S. at 321-22).

Plaintiffs succeed under both tests. The objectively substantial risk of harm presented by Plaintiffs is uncontested. Instead, Defendants argue that Plaintiffs have not proved the subjective component—that OCS was aware of the objectively substantial risk of harm to foster children, should have been aware of the risks, or ignored the risks. *See* D. Br. at 55. The subjective component "may be inferred from the fact that the risk of harm is obvious." *Tamas*, 630 F.3d at 845 (quoting *Hernandez*, 380 F.3d at 881), and such an inference is warranted here where OCS was aware of and ignored obvious risks.

Defendants also quote from a Fifth Circuit decision stating that "[i]ncidental psychological injury that is the natural, if unfortunate consequence of being a ward of the state does not give rise to the level of a substantive due process violation." *M.D.*, 907 F.3d at 251. The Fifth Circuit, however, ultimately found that it is "illogical to argue that because a child comes in already 'damaged' the State cannot be held liable for inflicting further harm that compounds that damage—even if it cannot be measured with mathematical certainty." *Id.* at 255. Defendants' arguments with respect to Plaintiffs' constitutional claims fail.

     2.    <u>Plaintiffs Have Adequately Alleged Violations of Their Right to Family Association Under the First, Ninth, and Fourteenth Amendments</u>

The Supreme Court has held that "certain intimate human relationships must be secured against undue intrusion by the State" and protected as "a fundamental element of

*Jeremiah M. et al. v. Adam Crum et al.*    -52-       3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 72 of 93

personal liberty." *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984). "The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment." *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (internal citations omitted).

Courts have found that "once the state has removed a child from his or her family, it cannot deliberately and without justification deny that child the services necessary to facilitate reunification with his or her family, when safe and appropriate, without violating the child's right to family integrity."[88] *Kenny A.*, 218 F.R.D. at 297. This is because "once state officials remove a child from his or her home, they have a constitutional duty to protect the child from harm," including the duty to provide "safe and appropriate placements and services that…do not unnecessarily interfere with the child's rights of family association."[89] *Kenny A. ex rel. Winn v. Perdue*, No. 02-cv-1686, 2004 U.S. Dist. LEXIS 27025, at *25 (N.D. Ga. Dec. 11, 2004). Here, Plaintiffs allege that as children in state custody and care, Plaintiffs' "intimate human relationships" with their parents, siblings, and other family members are systematically and improperly intruded upon by Defendants' policies and practices. For example, Plaintiffs allege that Defendants regularly place children in inappropriate institutional settings, where "intimate human relationships"

---

[88] *See also, Connor B. v. Patrick*, 985 F. Supp. 2d 129, 163 (D. Mass. 2013) (cited D. Br. at 51 n.198, D. Br. at 55 n.216).

[89] *See also Brian A.*, 149 F. Supp. 2d at 956 (refusing to dismiss foster children's claim "that Defendants' systematic actions and inactions have violated their rights under the First and Ninth Amendments not to be deprived of family relationships absent compelling reasons.").

*Jeremiah M. et al. v. Adam Crum et al.*     -53-          3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 73 of 93

are wholly absent. ¶¶123, 259, 261, 263. Defendants shuffle children through foster placements without regard for their right to "enter into and maintain" such relationships. ¶¶54, 56, 73, 76, 78, 82, 86. Defendants unnecessarily separate siblings when making placement decisions and do not even arrange for visitation between separated siblings or parents. ¶¶76-77.

This is illustrated in the specific claims regarding the Named Plaintiffs. For example, Plaintiffs have alleged that even though Jeremiah M., Hannah M., and Hunter M.'s case plan remains reunification, Defendants have failed to make reasonable efforts towards reunification and have placed the children a far distance from their parents, making visitation difficult. ¶56. With regard to Mary B., Defendants have also failed to make any real efforts towards reunification. ¶57. As another example, David V., George V., Lawrence V., Karen V., and Damien V., Plaintiffs allege that OCS for the most part placed all siblings separately and, at one point, cancelled all in-person visitation (which was the only time that the children would see their mother and each other) in spite of the fact that the case planning goal remained reunification with the mother. ¶77. Plaintiffs allege that Defendants placed Gayle T. in isolated facilities far from her family and failed to facilitate any visitation with her parents. ¶¶113-14, 116. Therefore, Plaintiffs have adequately alleged violations of their right to familial association.[90]

---

[90] *See, e.g.*, *Kenny A.*, 218 F.R.D. at 296 (finding a violation of the right to familial association adequately pled where Plaintiffs alleged due to Defendants systemic "denial of meaningful visitation with parents and siblings, failure to place children with relatives when they first enter foster care, and failure to facilitate plaintiffs' prompt reunification with their families whenever safe and appropriate."); *Kenny A.*, 2004 U.S. Dist. LEXIS 27025, at *27 (declining to grant summary judgment on familial association claim where

*Jeremiah M. et al. v. Adam Crum et al.*     -54-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1 Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 74 of 93

First, Defendants argue that the Ninth Amendment does not "independently" secure Plaintiffs' constitutional rights. *See* D. Br. at 57.[91] But the Supreme Court has found that the right to familial association is deeply rooted in the First, Ninth, and Fourteenth Amendment. *See Roberts* 468 U.S. at 617-18.

Second, Defendants argue that these protections do not extend to kinship relationships. *See* D. Br. at 57. Plaintiffs cite to numerous violations of familial association that have already been recognized by the courts between parents and children. Additionally, Plaintiffs have pled violations of familial association with (1) siblings and (2) grandparents. The cases Defendants cite are distinguishable.[92]

---

Plaintiffs alleged that Defendants "fail to ensure that siblings are placed together or have frequent visitation when separated, fail to ensure frequent parent-child visitation, and fail to provide services necessary to facilitate children's reunification with their parents.").

[91] Defendants' cited cases are not in the child welfare context and are entirely inapposite. *See Strandberg v. City of Helena*, 791 F.2d 744, 748 (1986) (claim by plaintiffs that their right to familial association was violated when son hung himself in jail); *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1072 (7th Cir. 2013) (claim by bar owners that a no smoking ordinance violated rights to association was rejected because bar patron relationships were not sufficiently intimate); *Johnson v. Tex. Bd. of Criminal Justice*, 281 F. App'x 319, 320 (5th Cir. 2008) (claim by prisoner that prison conditions violated the Ninth Amendment); *Crossley v. Cal.*, 479 F. Supp. 3d 901, 917-18 (S.D. Cal. 2020) (claim by plaintiffs that California's independent contractor test violated the Ninth Amendment); *Menefee v. Tacoma Pub. Sch. Dist. No. 10*, No. 17-cv-6037, 2018 U.S. Dist. LEXIS 53674, at *9 (W.D. Wash. Mar. 29, 2018) (claim by parents that the school district's failure to protect their child against sexual abuse violated the Ninth Amendment).

[92] *Compare Miller v. Cal. Dep't of Soc. Servs.*, 355 F.3d 1172, 1176 (9th Cir. 2004) (D. Br. at 57 n.223) (grandparents were unable to establish their substantive due process right because biological mother and the agency objected to visitation); *J.P. v. Cty of Alameda*, 803 F. App'x 106, 109 (9th Cir. 2020) (concerning claims that the state violated rights to familial association when the state was responsible for the death of a sibling); *Olvera v. Cnty. of Sacramento*, 932 F. Supp. 2d 1123, 1148 (E.D. Cal. 2013) (concerning foster parents' rights to familial association); *Ragan v. County of Humboldt Dep't of Health & Hum. Servs.*, No. 16-cv-05580, 2017 U.S. Dist. LEXIS 31560 (N.D. Cal. Mar. 6, 2017)

*Jeremiah M. et al. v. Adam Crum et al.*    -55-    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.  Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 75 of 93

Last, Defendants argue that Plaintiffs have no affirmative right to a "permanent home and family" or to "all reasonable efforts toward fostering familial association." D. Br. at 58. However, when the state involuntarily removes children from a family unit and/or separates siblings, the state assumes an affirmative obligation to restore the family unit to its condition prior to state interference. Defendants' arguments thus are without merit.

      3.    <u>Plaintiffs Have Adequately Alleged Violations of the Indian Child Welfare Act</u>

The Complaint adequately alleges a violation of Section 1915 of ICWA, 25 U.S.C. § 1915, as it alleges that plaintiffs in the Alaska Native Subclass are Indian children entitled to ICWA protections, *see* ¶¶12, 14, 17, 28(b); that Defendants did not follow the ICWA placement preferences when placing plaintiffs in the Alaska Native Subclass ¶¶54, 55, 70, 76, 80, 255-59, 288; that Defendants lacked good cause for its placement decisions, *see id.* at ¶¶60, 70-71, 76, 80, and that Defendants' actions resulted in placements that deprived Indian children of their communities and heritage and harmed them. *See* ¶¶71, 78, 81-82.

---

(same). These cases do not support the proposition that grandparents and siblings lack rights to familial association. Additionally, history and tradition provide substantial support relatives' substantive due process rights to familial association. *See, e.g.*, *Moore*, 431 U.S. at 504 ("The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition."); *see also* RALPH NORTH, TREATISE ON THE LAW AND PRACTICE OF THE PROBATE COURTS OF MISSISSIPPI 258-60 (1845) (discussing that kinship placement is descendent from early English authorities); 2 ARTHUR WALLACE CALHOUN, A SOCIAL HISTORY OF THE AMERICAN FAMILY FROM COLONIAL TIMES TO THE PRESENT 23 (1917) (discussing the "blessed custom" of kinship placement in early America); Stephen B. Presser, *The Historical Background of the American Law of Adoption*, 11 J. FAM. L. 443, 459 (1972) (discussing that kinship placement was widely practiced in America by the middle of the nineteenth century).

*Jeremiah M. et al. v. Adam Crum et al.*    -56-        3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.1 Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 76 of 93

In opposing Plaintiffs' claims, Defendants make several meritless arguments. First, Defendants incorrectly argue that Plaintiffs have not adequately alleged that plaintiffs in the Alaska Native Subclass are Indian children for purposes of ICWA. *See* D. Br. at 61. *But see* ¶¶12, 14, 17 (alleging that certain Named Plaintiffs are in the Alaska Native Subclass); ¶28(b) (defining the Alaska Native Subclass as "Alaska Native children who are or will be entitled to federal ICWA protection."). Defendants cite *Umtuch v. Hoyt*, No. 96-cv-35000, 1998 U.S. App. LEXIS 22699, at *3 (9th Cir. Sep. 17, 1998), a case in which the plaintiff conceded that her children were not Indian children. Plaintiffs here make no such concession.

Next, Defendants incorrectly claim that Plaintiffs have not stated a claim under ICWA because Section 1915 does not create a private right of action, D. Br. at 61. A statute provides privately enforceable federal rights that are actionable under Section 1983 where Congress "intended to confer individual rights upon a class of beneficiaries." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 285 (2002). In considering whether a statutory provision gives rise to a federal right, the following factors are considered: (1) Congress must have intended that the provision in question benefit the plaintiff; (2) the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence; and (3) the statute must unambiguously impose a binding obligation on the States. *See Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997). In addition, Congress must not have expressly foreclosed a remedy under Section 1983, or impliedly "by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.* at 341.

*Jeremiah M. et al. v. Adam Crum et al.*      -57-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.  Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 77 of 93

Defendants' authorities are distinguishable in one important respect: in *Doe v. Mann*, 285 F. Supp. 2d 1229, 1232 (N.D. Cal. 2003), *Jumping Eagle v. Warren*, No. 18-cv-4131, 2021 U.S. Dist. LEXIS 24621, at *28 (D.S.D. Feb. 9, 2021), and *Collins v. Bern*, 2006 U.S. Dist. LEXIS 108634, at *9 (D.S.D. Aug. 30, 2006), plaintiffs sought to enforce Section 1915 under Section 1914 (25 U.S.C. § 1914). Plaintiffs were unsuccessful because, as the courts held (and Defendants note), Section 1914 cannot, by its own terms, be used to enforce violations of Section 1915. Here, by contrast, Plaintiffs are seeking to enforce Section 1915 under Section 1983. This is not a Section 1914 case seeking to invalidate individual state court orders, but a class action seeking to enforce Section 1915's rules.

Plaintiffs' claims under Section 1915 satisfy the *Gonzaga-Blessing* test. The language of Section 1915—"In any adoptive placement of an Indian child"; "Any child accepted for foster care or preadoptive placement"—evinces "the kind of individually focused terminology that unambiguously confers an individual entitlement under the law." *Harris v. Olszewski*, 442 F.3d 456, 461 (6th Cir. 2006) (internal citations and quotation marks omitted). Section 1915 "does not contain the kind of vagueness that would push the limits of judicial enforcement," especially considering that Section 1915(e) requires states to maintain records of their compliance with Sections 1915(a) and (b). *Id.* at 462. The "shall" language of Section 1915—"a preference shall be given"; "shall be placed in the least restrictive"; "shall also be placed within reasonable proximity to his or her home"—confirms that the provision is "couched in mandatory rather than precatory terms." *Blessing*, 520 U.S. at 341. Defendants argue incorrectly that Congress impliedly foreclosed private enforcement because Congress created a private right under a separate provision.

*Jeremiah M. et al. v. Adam Crum et al.*      -58-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 78 of 93

This is not the kind of "comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.*

Moreover, Defendants err "in seeking to impose upon Indian law doctrines from other fields of law." *Venetie I.R.A. Council v. Alaska*, 944 F.2d 548, 553 (9th Cir. 1991). "Because of the unique legal status of Indians in American jurisprudence, legal doctrines often must be viewed from a different perspective from that which would obtain in other areas of the law." *Id*. (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143 (1980)). And so "standard principles of statutory construction do not have their usual force in cases involving Indian law." *Id*. (citing *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985)). Courts should "liberally construe a federal statute in favor of Indians, with ambiguous provisions interpreted for their benefit." *Doe v. Mann*, 415 F.3d 1038, 1047 (9th Cir. 2005) (citing *Blackfeet*, 471 U.S. at 766).

The purpose of ICWA, and the canons of interpretation applied to ICWA, were intended "to rectify state agency and court actions that resulted in the removal of Indian children from their Indian communities and heritage." *Id.* "Indeed, promotion of the stability of Indian families is a major objective of the Act." *Venetie*, 944 F.2d at 554 (citing 25 U.S.C. § 1902 (1988). Defendants' actions result in the removal of Indian children from their communities and heritage. *See* ¶259. Without a cause of action under Section 1915, children in the Alaska Native Subclass would be left without a remedy. It is inconceivable "that Congress intended such a self-defeating result." *Venetie*, 944 F.2d at 554.

Third, Defendants argue that there may have been good cause to place plaintiffs in homes that were not in accordance with ICWA preferences. D. Br. at 62-63. But these

*Jeremiah M. et al. v. Adam Crum et al.*     -59-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 79 of 93

arguments are inappropriate for review on a motion to dismiss,[93] and Plaintiffs allege that there was no good cause for deviating from ICWA. *See, e.g.,* ¶70 (placing Connor B. with non-Native family without contacting relatives); ¶76 (no attempts made to place children in accordance with ICWA).

Last, Defendants state that ICWA does not require them to, for example, maintain a certain number of licensed ICWA foster homes. D. Br. at 63. This, combined with Defendants' contention that "Plaintiffs' claims amount to no more than a disagreement with some of the individual placement decisions," reveals a fundamental misunderstanding about this case. *Id.* Plaintiffs' claims are not aimed at a court's individual decisions. They are aimed at Defendants' systemic failures that create situations in which Defendants fail to comply with ICWA. Defendants' arguments are without support.[94]

### 4.    Plaintiffs Have Adequately Alleged Violations of 42 U.S.C. § 672(a)

The Adoption Assistance and Child Welfare Act of 1980 ("AACWA") requires that the state make maintenance payments to "foster family home[s]." 42 U.S.C. § 672. Section 672(c)(1)(A) contemplates two categories of eligible foster families: (1) "licensed foster parents, who usually care for unrelated foster children"; *or* (2) "approved foster homes, which typically care for a relative child."[95]

---

[93] *See Planned Parenthood Fedn. of Am., Inc. v. Ctr. For Med. Progress*, 735 F. App'x. 241, *247 (9th Cir. 2018).

[94] Defendants also make arguments that this Court should abstain from review under *Younger*. D. Br. at 63. Those arguments are addressed above.

[95] *D.O. v. Glisson*, 847 F.3d 374, 382-83 (6th Cir. 2017). This question has not yet been addressed by courts in the Ninth Circuit.

*Jeremiah M. et al. v. Adam Crum et al.*    -60-         3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss

As an initial matter, Defendants ignore Plaintiffs' allegations in the alternative that Defendants are violating the law because of their "ongoing policy, pattern, or practice of failing to take necessary steps to ensure that relatives or community members who could appropriately provide homes for Plaintiff Kinship Subclass members . . . are licensed as kinship foster parents."[96] ¶296. For example, OCS placed Jeremiah M., Hunter M., and Hannah M. with their grandmother, who sought assistance regarding licensing; OCS never returned her calls and never sent anyone to do a home inspection. *See* ¶¶45-51. Similarly, Mary B.'s grandmother submitted several licensing applications, and OCS did not help her, instead directing her to websites that provided incorrect information.[97] ¶¶61-65.

OCS actively frustrated efforts by approved relatives to secure a license—it did not respond to relatives, conduct home visits, assist relatives with licensing applications, or provide correct information to relatives seeking variances. *Id.* These facts amount to a clear violation of the AACWA.[98] Defendants offer no defense.

---

[96] Plaintiffs request injunctive relief to address Defendants' violations of AACWA, not Alaska state law. Defendants' argument that *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984) applies thus completely misses the mark. D. Br. at 47-48. However, Alaska's understanding of their obligations under federal law can be inferred from state laws regarding kinship caregivers. For example, if OCS approves an unlicensed relative for placement, OCS must "assist the adult family member in obtaining a license, including assisting the adult family member with obtaining any variances necessary to obtain the license." AS 47.14.115. OCS must "streamline the application and licensing paperwork necessary for a person to be approved as a foster parent or relative placement to the extent consistent with federal law." AS 47.32.032.

[97] The children's placements disrupted due, in part, to Defendants' failure to pay the required foster care maintenance payments or assist in licensing the relatives. Currently, Mary B.'s placement is at risk of disruption for the same reason. ¶¶51, 65, 66-67.

[98] Defendants' actions also violate AACWA's due diligence requirement. For example, Section 671(a)(29) of AACWA requires states to "exercise due diligence to identify and

*Jeremiah M. et al. v. Adam Crum et al.*      -61-      3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss

Plaintiffs have also adequately alleged that the State should be, but is not making payments to homes that fall into the second category, unlicensed kinship foster homes, which violates the statute. Defendants placed members of the Kinship Subclass with relatives. ¶¶45, 61, 65. Defendants then withheld foster care maintenance payments from those approved relatives. ¶¶47, 62-63. Defendants argue that the two categories are the same—that they only need to make payments to foster parents who are "licensed" or who meet the "meet[] the standards for licensing." D. Br. at 65. But If Congress intended states to apply a single standard, it would have excluded "approved" entirely, or replaced the disjunctive "or" with the conjunctive "and" in subsequent amendments to the Act. Neither common sense nor legislative history support an interpretation of the statute that deems relatives safe enough for placement, but not eligible for monetary support.

Defendants cite to *Glisson*, a Sixth Circuit case, and contend that the court only ruled in favor of the unlicensed relative foster caregiver because "Kentucky's procedure for 'approval' included a background check and home evaluation, which are also required for licensed foster parents," and the plaintiff was approved for placement under the lesser standard. D. Br. at 65 n.245 (citing *Glisson*, 847 F.3d at 382-83). But the record in *Glisson* reveals that, in fact, Kentucky had established two *separate* standards for licensed foster

---

provide notice" that "specifies that the child has been or is being removed from the custody of the parent or parents of the child," "explains the options the relative has under Federal, State, and local law to participate in the care and placement of the child, including any options that may be lost by failing to respond to the notice," and "describes the requirements…to become a foster family home and the additional services and supports that are available for children placed in such a home." *See* ¶¶47-49, 63-64, 66.

*Jeremiah M. et al. v. Adam Crum et al.*     -62-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss

homes and unlicensed relative foster homes.[99] Based on these facts, the court still held that

the unlicensed plaintiffs were entitled to maintenance payments. Alaska is no different.[100]

       5.     <u>Plaintiffs Have Adequately Alleged Discrimination by Denial of a Reasonable Accommodation and Violations of the Integration Mandate in Contravention of the Americans with Disabilities Act and the Rehabilitation Act</u>

Defendants argue that counts VI and VII of the Complaint (¶¶298-315) should be

dismissed because the facts pleaded "do not constitute discrimination" under the

Americans with Disabilities Act (hereinafter, "ADA") or section 504 of the Rehabilitation

Act of 1973 (hereinafter, "Rehabilitation Act"). D. Br. at 65-70. Defendants further contend

these disability-related causes of action fail to state a claim as a matter of law because they

either: (1) amount to impermissible claims regarding the adequacy of medical services

provided to individuals experiencing disabilities (D. Br. at 66); or (2) fail to adequately

plead violations of the ADA's integration mandate. D. Br. at 68-69. For this last point,

Defendants rely in part on facts extraneous to the complaint: various confidential state court

records filed under seal purporting to show that the plaintiffs were not, at various times,

---

[99] Defendants in *Glisson* represented to the Sixth Circuit that the great aunt "never had mandated state training." Brief of Defendant-Appellee Vickie Yates Brown Glisson at 25, *D.O. v. Glisson*, No. 16-cv-5461, (6th Cir. Jul. 27, 2016), ECF No. 20. And the District Court's holding in *Glisson* was based on Kentucky's argument that "the additional training and requirements for licensed foster-care providers justifies treating [unlicensed plaintiffs] differently." *D.O. v. Beshear*, No. 15-cv-048, 2016 U.S. Dist. LEXIS 37651, at *20-21 (E.D. Ky. Mar. 23, 2016).

[100] *See* AS 47.14.100(j) ("For the purpose of determining whether the home of a relative meets the requirements for placement of a child under (e) of this section or under AS 47.10.088(i), the department shall conduct a criminal background check from state and national criminal justice information available under AS 12.62. The department may conduct a fingerprint background check on any member of the relative's household who is 16 years of age or older when the relative requests placement of the child.").

*Jeremiah M. et al. v. Adam Crum et al.*    -63-            3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss

placed by OCS in an institutional setting. D. Br. at 68-69. None of these arguments are valid, especially at this early procedural stage of this case.

       a.     *Plaintiffs Have Adequately Alleged Discrimination under the ADA and the Rehabilitation Act, Partly Because Defendants Have Not Made Reasonable Modifications to their Programs to Avoid Discrimination*

As the Defendants acknowledge, Title II of the ADA prohibits state governments from discriminating against individuals based on their disability, while the Rehabilitation Act prohibits disability-related discrimination by recipients of federal funds. D Br. at 65-66; 42 U.S.C. §§ 12101–12132; 29 U.S.C. § 794. To make a prima facie claim under Title II of the ADA, plaintiffs must show that "(1) [they are] qualified individual[s] with disabilit[ies]; (2) [they were] either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or w[ere] otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of [their] disabilit[ies]."[101] Under the Rehabilitation Act, a plaintiff must additionally allege that the state program or agency receives federal assistance.[102]

Well-settled precedent establishes that it is disability discrimination under the ADA and the Rehabilitation Act to offer "equal treatment" that in practice discriminates against people with disabilities.[103] Both the Supreme Court and the Ninth Circuit have repeatedly

---

[101] *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737–38 (9th Cir. 2021) (internal citations and quotation marks omitted).

[102] *Id*. at 738. The Defendants do not appear to contest that the Complaint adequately alleges that the individuals are qualified individuals with disabilities under the ADA or the Rehabilitation Act, or that the Rehabilitation Act applies to Defendants.

[103] *McGary v. City of Portland*, 386 F.3d 1259, 1267 (9th Cir. 2004) (citing and quoting *Presta v. Peninsula Corridor Joint Powers Bd.*, 16 F. Supp. 2d 1134, 1136 (N.D.Cal.1998)

*Jeremiah M. et al. v. Adam Crum et al.*     -64-           3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 84 of 93

reaffirmed that Title II of the ADA and its implementing regulations forbid various forms of discrimination, including a failure by a state agency to offer "reasonable modifications" to existing programs and services when doing so is necessary to avoid discrimination against a qualified individual with a disability.[104]

  b.  *Plaintiffs Have Adequately Alleged Discrimination in Violation of the ADA and the Rehabilitation Act Resulting from Defendants' Failure to Offer Reasonable Modifications to Existing Foster Care Programs*

  Defendants broadly assert that "Plaintiffs do not assert they were excluded from participation in or otherwise denied the benefits of Alaska's child welfare program on the basis of their disabilities." D. Br. at 66. The Defendants instead characterize Plaintiffs' allegations as asserting that "they have a variety of health conditions and allege OCS has or has not taken various actions related in some way to the treatment of those conditions."

---

(internal quotation marks omitted) ("[Title II of the ADA] guards against both intentional discrimination and simple exclusion from services resulting not from intentional discriminatory acts, but rather from inaction, thoughtlessness, or equal treatment when particular accommodations are necessary.... In the context of disability, therefore, equal treatment may not beget equality, and facially neutral policies may be, in fact, discriminatory if their effect is to keep persons with disabilities from enjoying the benefits of services that, by law, must be available to them.").

[104] *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 159 (2017) (observing both the Rehabilitation Act and the ADA require public entities to make reasonable modifications to programs when necessary to avoid discrimination); *Tennessee v. Lane*, 541 U.S. 509, 532 (2004) (holding Title II's "reasonable modifications" requirements apply to state courts); *Updike v. Multnomah County*, 870 F.3d 939, 951 (9th Cir. 2017) (quoting *Mark H. v. Lemahieu*, 513 F.3d 922, 937–38 (9th Cir. 2008) (internal quotation marks omitted) ("A public entity may be liable for damages under Title II of the ADA or § 504 of the Rehabilitation Act if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons."); *McGary*, 386 F.3d at 1269 (holding plaintiff had adequately stated claim that public entity discriminated against him under Title II of the ADA by failing to make reasonable modifications to its nuisance abatement program).

*Jeremiah M. et al. v. Adam Crum et al.* -65-  3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK Document 30 Filed 09/30/22 Page 85 of 93

D. Br. at 66. But this misconstrues Plaintiffs' claims, ignoring the plain language of Paragraph 306, where the ADA subclass members claim that Defendants have discriminated against them by not affording them an equal opportunity to take advantage of at least four types of services:

- In-home safety plans intended to allow children to remain with their family of origin; [105]

- Appropriate healthcare delivered in the most integrated, home-like setting appropriate to their needs;

- Timely delivery of mental health and other disability-related services to avoid unnecessary institutionalizations and changes in placement;[106] or

- Respite services intended to help foster parents care for children with more intensive needs.[107]

These claims are in turn supported by the specific facts alleged by the individual plaintiffs with disabilities. For example, Plaintiffs allege that Jeremiah M. experiences

---

[105] As set out in Section 2.2.3.2 of the Alaska CPS Manual, Alaska's Office of Children's Services has a policy that permits caseworkers, in appropriate circumstances, to leave children home with their natural parents or guardians upon the parents' agreeing to a set of safety-related rules. STATE OF ALASKA -- CHILD PROTECTION SERVICES (CPS) POLICY MANUAL, Office of Children's Services -- Publications (2022), http://dpaweb.hss.state.ak.us/training/OCS/cps/index.htm#t=CPS_Policy_Manual.htm (last visited Sept. 15, 2022).

[106] Defendants construe the reasonable modification claims made in ¶306 (B), (H) as impermissible claims regarding the adequacy of health services. This contention is without merit because, as the Plaintiffs plainly allege in ¶306, the ADA and the Rehabilitation Act violations are premised not on insufficient medical services, but a failure to modify existing foster care programs to ensure that children with disabilities enjoy the same opportunity to receive services—including behavioral health and medical services—in the most integrated setting that can meet their needs.

[107] Alaska law enables OCS to offer "respite care" to foster parents, irrespective of the children's needs, to provide "temporary relief from the stresses of caring for a foster child[.]" AS 47.14.100(d)(2).

*Jeremiah M. et al. v. Adam Crum et al.*    -66-        3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK    Document 30    Filed 09/30/22    Page 86 of 93

disabilities and was removed from his mother's care after his non-custodial father visited the family while intoxicated and his mother was subsequently evicted. ¶44. Likely because of his disabilities and because of prejudiced notions about the difficulty of parenting children with disabilities (¶42), Defendants appear to have made no attempt to explore other arrangements, such as an in-home safety plan, that might have allowed Jeremiah M. and his siblings to remain in their mother's care. ¶44.[108] By declining to make reasonable modifications to their "safety planning" program, Defendants discriminated against Jeremiah M. by denying him the same opportunity afforded to other children to remain safely in his parent's home.

     c.    *Plaintiffs Have Adequately Alleged Violations of the Integration Mandate Based on a Risk of Future Placement in Institutions or Other Overly Restrictive Settings*

Defendants also argue that Plaintiffs' integration mandate claims should be dismissed because the plaintiffs are all presently placed in home- or community-based settings, and because the Complaint does not allege sufficient facts to show that Plaintiffs' prior placements in secure residential psychiatric treatment centers were improper. D. Br. at 68-70. These arguments ignore well-established precedent that ADA integration

---

[108] As the Defendants are aware, existing, generally applicable OCS policy requires child protective service to use the least intrusive means to ensure the child's safety, directing foster care workers to first consider an in-home safety plan before removing the child from their home. *See* Section 1.1, STATE OF ALASKA -- CHILD PROTECTION SERVICES (CPS) POLICY MANUAL, Office of Children's Services -- Publications (2022), http://dpaweb.hss.state.ak.us/training/OCS/cps/index.htm#t=CPS_Policy_Manual.htm (last visited Sep 15, 2022).

*Jeremiah M. et al. v. Adam Crum et al.*    -67-    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 87 of 93

mandate claims can be premised on a risk of *future* institutionalization, and improperly rely on evidence extraneous to the complaint.

In *M.R. v. Dreyfus*, 697 F.3d 706, 734–35 (9th Cir. 2012), *opinion amended and superseded on denial of reh'g*, 697 F.3d 706 (9th Cir. 2012), the Ninth Circuit held that the ADA's integration mandate prohibits states from taking actions or executing policies that "place individuals at risk of unnecessary institutionalization."[109] In subsequent cases, courts have determined that the integration mandate requires states to provide services in the most integrated setting regardless of whether "the plaintiff faces a risk of institutionalization in a residential setting."[110]

Reflecting these post-*Olmstead* developments, current Title II regulations require states to "administer services, programs, and activities in the *most integrated* setting

---

[109] *See also Davis v. Shah*, 821 F.3d 231, 263 (2d Cir. 2016) ("We thus hold that a plaintiff may state a valid claim for disability discrimination by demonstrating that the defendant's actions pose a serious risk of institutionalization for disabled persons."); *Steimel v. Wernert*, 823 F.3d 902, 914 (7th Cir. 2016) ("Based on the purpose and text of the ADA, the text of the integration mandate, the Supreme Court's rationale in Olmstead, and the DOJ Guidance, we hold that the integration mandate is implicated where the state's policies have either (1) segregated persons with disabilities within their homes, or (2) put them at serious risk of institutionalization."); *Pashby v. Delia*, 709 F.3d 307, 324 (4th Cir. 2013), *abrogated on other grounds by Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7 (2008) (finding that plaintiffs were likely to succeed on merits of integration mandate claim premised on "a significant risk of institutionalization."); *Fisher v. Oklahoma Health Care Auth.*, 335 F.3d 1175, 1182 (10th Cir. 2003) ("*Olmstead* does not imply that disabled persons who, by reason of a change in state policy, stand imperiled with segregation, may not bring a challenge to that state policy under the ADA's integration regulation without first submitting to institutionalization.").

[110] *Lane v. Kitzhaber*, 841 F. Supp. 2d 1199, 1206 (D. Or. 2012) (rejecting state-defendant's argument that integration mandate did not apply to the place at which employment-related disability services were delivered).

*Jeremiah M. et al. v. Adam Crum et al.*     -68-     3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss

appropriate to the needs of qualified individuals with disabilities."[111] Accordingly, a plaintiff must allege that: (1) they have been inappropriately provided services by a public entity in an institution or other less-integrated setting; (2) they are willing to receive services in a more integrated, home-like setting; and (3) providing services in the community is feasible considering the resources available in the state.

Contrary to Defendants' assertion, the Complaint alleges sufficient facts to support a claim of "unjustified isolation." D. Br. at 6. For example, the Complaint alleges that Defendants placed George V. in several "inappropriate and inadequate" institutions and institution-like settings, including the Covenant House shelter for homeless and runway youth, the Alaska Native Medical Center, and North Star Behavioral Health Systems, a secure residential treatment facility in Anchorage.[112] ¶¶86-89. Under *M.R. v. Dreyfus*, this is enough to demonstrate a prima facie claim for violations of the integration mandate of 28 C.F.R. § 325.130(d).[113]

---

[111] 28 C.F.R. § 325.130(d) (emphasis added).

[112] *See also* ¶¶125-34 (alleging that Defendants failed to place Lana H. in the least restrictive home—in her case a therapeutic foster home—instead placing her in North Star Behavioral Health Systems and McLaughlin Youth Center, a juvenile detention center).

[113] Finally, Defendants' contention that state court reviews under AS 47.10.087 obviate any discrimination by ensuring that institutional placements are appropriate is without merit and ignores the limitations of the state law in question. D. Br. at 69-70. First, this law applies only to "secure residential psychiatric treatment centers," defined by statute as secure- or semi-secure facilities providing psychiatric treatment under the supervision of a physician. AS 47.10.087; AS 47.32.900(20). Accordingly, AS 47.10.087 offers no protection to children who have been placed in runaway youth shelters or hospitals as has happened to George V., or to the whole host of other institution-like "residential child care facilities" in which Alaska OCS routinely places children. *See In re Necessity for the Hospitalization of April S.*, 499 P.3d 1011, 1014 (Alaska 2021) (State arguing that that no hearing warranted because the facility at issue was a different type of facility — a

*Jeremiah M. et al. v. Adam Crum et al.*     -69-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 89 of 93

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

---

psychiatric hospital — not covered by the statute."). Second, the argument assumes that in all cases the review required by AS 47.10.087 has occurred, and that the testifying medical professionals gave adequate and reliable testimony. But the opinions of the state's medical professionals are not controlling as to the appropriateness of home- or community-based placement under the integration mandate. And, as illustrated by the facts of the Alaska Supreme Court's 2021 decision *In re Necessity for the Hospitalization of April S.*, the Defendants' foster care workers sometimes determine it necessary to commit foster children to psychiatric hospitals on an emergency basis (before obtaining a court order), and there remain open questions under state law as to when, and under what circumstances, an order under AS 47.10.087 must be obtained. Moreover, these placement decisions are made by Defendants and only reviewed by the courts in connection with individual CINA cases.

*Jeremiah M. et al. v. Adam Crum et al.*        -70-                                3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448.  Case 3:22-cv-00129-JMK    Document 30    Filed 09/30/22    Page 90 of 93

Dated: September 30, 2022

/s/ *Marcia Robinson Lowry*

Marcia Robinson Lowry (*admitted pro hac vice*)
mlowry@abetterchildhood.org
Julia K. Tebor (*admitted pro hac vice*)
jtebor@abetterchildhood.org
Jonathan G. Borle (*admitted pro hac vice*)
jborle@abetterchildhood.org
**A BETTER CHILDHOOD**
355 Lexington Avenue, Floor 16
New York, NY 10017
Telephone: (646) 795-4456
Facsimile: (212) 692-0415

Danielle M. Ryman, AK Bar No. 9911071
dryman@perkinscoie.com
Elena M. Romerdahl, AK Bar No. 1509072
eromerdahl@perkinscoie.com
Michael O'Brien, AK Bar No. 0311084
mobrien@perkinscoie.com
**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, AK 99501
Telephone: (907) 279-8561
Facsimile: (907) 276-3108

James J. Davis, Jr., AK Bar No. 9412140
jdavis@njp-law.com
Nicholas Feronti, AK Bar No. 2106069
nferonti@njp-law.com
Savannah V. Fletcher, AK Bar No. 1811127
sfletcher@njp-law.com
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
Telephone: (907) 308-3395
Facsimile: (866) 813-8645

*Jeremiah M. et al. v. Adam Crum et al.*     -71-     3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 91 of 93

Mark Regan, AK Bar No. 8409081
mregan@dlcak.org
Patrick D. Stocks, AK Bar No. 1505032
pstocks@dlcak.org
**DISABILITY LAW CENTER OF ALASKA**
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
Telephone: (907) 565-1002
Facsimile: (907) 565-1000
*Attorneys for Plaintiffs*

*Jeremiah M. et al. v. Adam Crum et al.*    -72-                3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 92 of 93

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2022, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in Case No. 3:22-cv-00129-JMK who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *Marcia Robinson Lowry*

*Jeremiah M. et al. v. Adam Crum et al.*     -73-                    3:22-cv-00129-JMK
Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss
158449448. Case 3:22-cv-00129-JMK   Document 30   Filed 09/30/22   Page 93 of 93