S. LANE TUCKER, United States Attorney
MARIE SCHEPERLE, Chief, Civil Unit
    United States Attorney's Office
    Federal Building & U.S. Courthouse
    222 West Seventh Avenue, #9, Room 253
    Anchorage, Alaska 99513-7567
    Phone: (907) 271-5071
    Fax: (907) 271-2344
    Email: Marie.Scheperle@usdoj.gov

KRISTEN CLARKE, Assistant Attorney General
STEVEN H. ROSENBAUM, Chief
REGAN RUSH, Principal Deputy Chief
PATRICK HOLKINS, Trial Attorney
CATHERINE YOON, Trial Attorney
    United States Department of Justice
    Civil Rights Division
    Special Litigation Section
    950 Pennsylvania Avenue, N.W.
    Washington, DC 20530
    Phone: (202) 598-1590
    Fax: (213) 894-7819
    Email: Catherine.Yoon@usdoj.gov

Attorneys for the United States

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JEREMIAH M., HANNAH M. and HUNTER M. by their next friend Lisa Nicolai; MARY B. and CONNOR B. by their next friend Charles Ketcham; DAVID V., GEORGE V., LAWRENCE V., KAREN V., and DAMIEN V. by their next friend Merle A. Maxson; RACHEL T., ELEANOR T. and GAYLE T. by their next friend Rebecca Fahnestock; and LANA H. by her next friend Melissa Skarbek, | Case No. 3:22-cv-00129-JMK |

| | |
|---|---|
| individually and on behalf of all other similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| ADAM CRUM, Director, Alaska Department of Health and Social Services, in his official capacity; KIM GUAY, Director, Office of Children's Services, in her official capacity; ALASKA DEPARTMENT OF HEALTH AND SOCIAL SERVICES; and ALASKA OFFICE OF CHILDREN'S SERVICES, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

The United States of America respectfully submits this Statement of Interest in accordance with 28 U.S.C. § 517[1] to provide its views regarding the proper interpretation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act (Section 504), 29 U.S.C. § 794, as interpreted by the Supreme Court in *Olmstead v. L.C.*, 527 U.S. 581 (1999).

Plaintiffs bring a putative class action challenging Defendants' administration of services for children in foster care, including the manner in which Defendants provide

---

[1] Congress has authorized the Attorney General to send "any officer of the Department of Justice . . . to any . . . district in the United States to attend to the interests of the United States in a suit pending in a court of the United States." 28 U.S.C. § 517.

services to children with disabilities, whom Plaintiffs allege are unnecessarily placed in institutional settings. *See* Am. Compl., ECF No. 16, ¶¶ 260-63, 298-308; 42 U.S.C. § 12132; 29 U.S.C. § 794; *Olmstead v. L.C.*, 527 U.S. 581 (1999). Defendants filed a Motion to Dismiss on August 26, 2022 that argues, among other things, that Plaintiffs have failed to state a claim under the ADA and Section 504. Def.'s Br. in Supp. of Mot. to Dismiss (Def.'s Br.), ECF No. 23, at 70-75. Contrary to Defendants' arguments in support of their Motion: (1) an individual who is at serious risk of institutionalization may allege a violation of the ADA's and Section 504's integration mandate; (2) there are multiple ways to demonstrate that community-based services are appropriate for an individual, only one of which is a determination by the state's own treatment professionals; and (3) providing access to services in a community setting when the state has already established those services may be a reasonable modification of the state's service system if the unavailability of those services causes serious risk of unnecessary institutionalization.

## Interest of the United States

The United States submits this Statement of Interest because this litigation implicates the proper interpretation and application of Title II of the ADA and Section 504. As the federal agency charged with enforcement and implementation of the ADA,[2]

---

[2] The Department of Justice has an open investigation to determine whether the State of Alaska unnecessarily institutionalizes children with behavioral health conditions in violation of Title II of the ADA.

the Department of Justice has an interest in supporting the proper and uniform application of the ADA, in furthering Congress's intent to create "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities," and in furthering Congress's intent to reserve a "central role" for the federal government in enforcing the standards established in the ADA.[3] 42 U.S.C. §§ 12133-12134, 12101(b)(2), 12101(b)(3).

### Plaintiffs' Factual Allegations

Plaintiffs are Alaskan children in the child welfare system who bring this putative class action against state Defendants for violating their rights under the U.S. Constitution, the ADA, Section 504, and various federal laws related to the administration of child welfare. Am. Compl. ¶¶ 264-315. Defendants include the Alaska Department of Health and Social Services (DHSS) and the Alaska Office of Children's Services (OCS). *Id.* ¶¶ 23-26. Named Plaintiffs are in OCS custody and have health conditions such as autism, Fetal Alcohol Syndrome, depression, and anxiety. *Id.* ¶¶ 12, 14, 16, 19, 21, 42, 43, 69, 79, 84, 92, 94, 98, 106, 108, 113, 124, 300. With regard to the ADA and Section 504 claims, Plaintiffs also bring this action on behalf of a broader class of "[c]hildren who are or will be in foster care and experience physical, cognitive, and psychiatric

---

[3] The Department of Justice also coordinates federal agencies' implementation and enforcement of Section 504 and has the authority to enforce Section 504. *See* 28 C.F.R. Part 41; Exec. Order No. 12,250, 45 Fed. Reg. 72,995 (Nov. 2, 1980); 29 U.S.C. § 794(a); *see also* 28 C.F.R. § 0.51(b)(3).

disabilities." *Id.* ¶ 28(d).

The Complaint alleges that OCS fails to provide community-based services to Plaintiffs with disabilities that would enable them to live in their homes and communities, instead of institutions. *Id.* ¶¶ 212-13, 260, 263. These services include, for example, family therapy, respite care, wraparound services, and therapeutic foster homes. *Id.* ¶ 212, 260. According to Plaintiffs, OCS's failure to provide "adequate medical and behavioral health services and supports to children with disabilities and their foster families" leads to "unnecessary placement changes, often in institutional settings." *Id.* ¶ 263. Plaintiffs also allege that OCS fails to "adequately recruit, train, and support foster families" to avoid "unnecessary and traumatizing placement changes, institutionalization, placement in inappropriately restrictive, non-institutional placements, and other maltreatment," and fails to provide safety planning or "make reasonable modifications to their safety planning programs" to avoid the unnecessary removal of children with disabilities from their homes and communities. *Id.* ¶¶ 261-62.

Illustrating these issues among the Named Plaintiffs, Plaintiffs allege that Defendants subjected George V. to multiple institutional placements, one of which allegedly occurred when OCS failed to provide information about his medical and behavioral history to his foster parents. *Id.* ¶¶ 85, 87. He was placed in a psychiatric facility in Anchorage, operated by North Star Behavioral Health (North Star), for over 30 days. *Id.* ¶ 89. Similarly, Plaintiffs allege that OCS failed to provide Lana H. with therapeutic foster home placements and failed to prepare or provide support to her foster

parents regarding her health needs, which led to disrupted foster home placements, five admissions to North Star's psychiatric facility including at least two admissions that were several months long, and placement in a Texas treatment facility for nearly a year. *Id.* ¶¶ 127-136. Plaintiffs allege that Lana H. currently resides at a homeless shelter, due to OCS's failure to find an appropriate placement for her, and is still not receiving appropriate mental health services. *Id.* ¶¶ 135-36, 139.

Plaintiffs seek declaratory and injunctive relief to remedy alleged violations of the ADA and Section 504. *Id.* at 90-94.

## Statutory and Regulatory Background

Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). It found that, "historically, society has tended to isolate and segregate individuals with disabilities" and that "individuals with disabilities continually encounter various forms of discrimination, including . . . segregation." *Id.* §§ 12101(a)(2) and (5). Congress determined that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals." *Id.* § 12101(a)(7). Title II of the ADA prohibits disability discrimination in public services: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132.

Congress directed the Attorney General to promulgate regulations to implement Title II. 42 U.S.C. § 12134. These regulations require public entities, *inter alia*, to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d) ("the integration mandate").[4] The "most integrated setting" is one which "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible." *Id.* Part 35, App. B. The regulations also require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." *Id.* § 35.130(b)(7)(i).

In *Olmstead*, the Supreme Court held that, under the ADA and its regulations, "unjustified institutional isolation of persons with disabilities is a form of discrimination." *Olmstead v. L.C.*, 527 U.S. 581, 600 (1999). The Court reasoned that "institutional placement of persons who can handle and benefit from community settings

---

[4] Additionally, the Title II regulations provide that "[a] public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability . . . [p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R.§ 35.130(b)(1)(iii).

*Jeremiah M. et al. v. Adam Crum et al.* 7
Case No. 3:22-cv-00129-JMK

Case 3:22-cv-00129-JMK   Document 31   Filed 10/03/22   Page 7 of 20

perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life." *Id.* The Court concluded that individuals with disabilities are entitled to community-based services when such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the state and the needs of others with disabilities. *Id.* at 607.[5]

## Argument

### I. Plaintiffs Who are Institutionalized or at Serious Risk of Institutionalization May Allege a Violation of the Integration Mandate

The integration mandate protects persons with disabilities who are unnecessarily institutionalized or are at serious risk of such institutionalization. To the extent Defendants argue Plaintiffs have not alleged a violation of the integration mandate simply because they are not presently institutionalized, that argument must fail. *See* Def.'s Br. at 73. Rather, as the Ninth Circuit Court of Appeals has held, to properly allege a violation of the integration mandate a plaintiff need only plead facts showing that "the challenged state's action creates a serious risk of institutionalization." *M.R. v. Dreyfus*, 663 F.3d 1100, 1116-17 (9th Cir. 2011), *amended by* 697 F.3d 706 (9th Cir. 2012); *see also Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1181 (10th Cir. 2003) (observing

---

[5] Courts interpret the integration mandate of Title II and Section 504 coextensively. *M.R. v. Dreyfus*, 663 F.3d 1100, 1115 (9th Cir. 2011), *amended by* 697 F.3d 706 (9th Cir. 2012); *see also Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013) (holding that Title II and Section 504 "impose the same integration requirements").

that the protections of *Olmstead* and the integration mandate "would be meaningless if plaintiffs were required to segregate themselves by entering an institution before they could challenge an allegedly discriminatory law or policy that threatens to force them into segregated isolation").[6]

Courts have considered plaintiffs to be at serious risk of institutionalization when a state has deprived them of community-based services that are necessary to avoid institutionalization. *See*, *e.g.*, *M.R.*, 663 F.3d at 1111, 1113, 1115 (finding plaintiffs had shown serious risk where reduction in services critical to their health exacerbated their risk of institutionalization); *Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161, 1171 (N.D. Cal. 2009) (granting preliminary injunction where state placed elderly plaintiffs with disabilities at serious risk of institutionalization in nursing facilities by limiting the availability of community-based services).

Defendants also argue that the institutional placements that Plaintiffs experienced, ranging from 30 days to almost a year and sometimes on a repeated basis, do not violate the integration mandate because they are merely "temporary." *See* Def.'s Br. at 74. That argument lacks legal support and is counter to the Supreme Court's reasoning in *Olmstead*. Just as indefinite isolation and segregation in an institutional setting "severely diminishes the everyday life activities of individuals, including family

---

[6] Serious risk does not require that institutionalization be "inevitable" or that the plaintiff have "no choice" but to submit to institutional care. *M.R.*, 663 F.3d at 1117.

relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment," *Olmstead*, 527 U.S. at 601, shorter term unjustified institutionalization similarly disrupts the individual's established life in the community. Courts have recognized that policies that risk shorter term institutionalization may violate the integration mandate. *See, e.g.*, *United States v. Mississippi*, 400 F. Supp. 3d 546, 555, 576 (S.D. Miss. 2019) (finding an ADA violation where individuals with disabilities are "faced with a reoccurring cycle of hospitalizations without adequate community-based services to stop the next commitment"); *Marlo M. v. Cansler*, 679 F. Supp. 2d 635, 638 (E.D.N.C. 2010) (granting preliminary injunction where evidence demonstrated that plaintiffs would suffer "regressive consequences" if they "even temporarily" moved to an institutional setting); *Cruz v. Dudek*, No. 10-23048–CIV, 2010 WL 4284955, at *13 (S.D. Fla. Oct 12, 2010) (granting preliminary injunction where state's denial of community-based services placed plaintiffs at risk of institutionalization and state had proposed entry into nursing home for sixty days prior to providing community-based services) (Order adopting Magistrate's Report and Recommendation, Nov. 24, 2010); *Haddad v. Arnold*, 784 F. Supp. 2d 1284, 1307 (M.D. Fla. 2010) (granting preliminary injunction after finding that the plaintiff would suffer irreparable injury if forced to enter a nursing home before receiving community-based services).

## II. Plaintiffs Need Not Rely on a State Treatment Professional's Determination to Show Community-Based Services Are Appropriate to the Needs of the Individual

Defendants argue the ADA and Section 504 claims should be dismissed because Plaintiffs fail to allege that the State's treatment professionals determined that they could appropriately be served in the community. *See* Def.'s Br. at 74. That argument is misguided. When alleging a violation of the integration mandate, plaintiffs need not rely on a determination by a state's treatment professional to demonstrate the appropriateness of services in a community setting.

While the facts in *Olmstead* included opinions by the state's treatment professionals, the case did not present the question of whether a state's treatment professionals are the *only* professionals who can determine that community-based services are appropriate. *See Olmstead*, 527 U.S. at 602-03. Since then, courts have ruled that a person asserting a violation of the integration mandate need not rely on a state's treatment professionals for the appropriateness determination. As courts have explained, to hold otherwise would allow states to circumvent their obligations under *Olmstead* by withholding such determinations.[7] *See, e.g., Mississippi*, 400 F. Supp. 3d

---

[7] Consistent with the rulings of courts that have considered this issue, the Department of Justice's *Olmstead* Statement explains that "[a] reasonable, objective assessment by a public entity's treating professional is one, but only one, such avenue" to show that an integrated setting is appropriate for an individual. U.S. Dept. of Justice, Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and *Olmstead v. L.C.*, https://perma.cc/K2HP-JW27 ("DOJ *Olmstead* Statement"), at Q & A No. 4. It further provides that "[p]eople with

Jeremiah M. et al. v. Adam Crum et al.    11
Case No. 3:22-cv-00129-JMK

Case 3:22-cv-00129-JMK    Document 31    Filed 10/03/22    Page 11 of 20

at 575-76 (finding the appropriateness prong established where plaintiff's experts determined, and defendant's experts failed to refute, appropriateness); *Day v. District of Columbia*, 894 F. Supp. 2d 1, 23-24 (D.D.C. 2012) (stating that "lower courts have universally rejected the absolutist interpretation" that plaintiffs must provide determinations from a public entity's treatment professionals); *Disability Advocates, Inc. v. Paterson,* 653 F. Supp. 2d 184, 258-59 (E.D.N.Y. 2009) (reasoning that requiring determinations from state treatment professionals would "eviscerate the integration mandate"), *vacated on other grounds sub nom. Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 162-63 (2d Cir. 2012); *Long v. Benson*, No. 4:08cv26-RH/WCS, 2008 WL 4571904, at *2 (N.D. Fla. Oct. 14, 2008) (noting that the protections of the integration mandate would become illusory if the state could refuse to acknowledge the appropriateness of community placement); *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 290-91 (E.D.N.Y. 2008) (rejecting the argument that the state's treatment professionals must be the ones to make an appropriateness determination); *Frederick L. v. Dep't of Pub. Welfare*, 157 F. Supp. 2d 509, 540 (E.D. Pa. 2001) (finding

---

disabilities can also present their own independent evidence of the appropriateness of an integrated setting, including, for example, that individuals with similar needs are living, working and receiving services in integrated settings with appropriate supports. This evidence may come from their own treatment providers, from community-based organizations that provide services to people with disabilities outside of institutional settings, or from any other relevant source." *Id.*

that states cannot avoid the integration mandate by failing to make recommendations for community placement).

Defendants next contend that Plaintiffs have not alleged community-based services were appropriate for them at the time the State placed Plaintiffs in institutions, *see* Def.'s Br. at 74, but nothing in Title II of the ADA, Section 504, or the *Olmstead* decision confines a plaintiff's allegations and proof of appropriateness for community services to the time of admission to an institution. Here, Plaintiffs allege that, before placing Named Plaintiff Lana H. in institutional settings, OCS failed to provide her or her foster parents with services and supports that may have helped Lana H. remain in the community. *See* Am. Compl. ¶¶ 127-132, 136. Similarly, in *United States v. Mississippi*, the United States alleged that Mississippi's service system "pushes thousands of people into segregated hospital settings that could have been avoided with community-based services." 400 F. Supp. 3d at 553. The court ultimately found that Mississippi violated the integration mandate, despite the state's expert witnesses' testimony that individuals were appropriate for a hospital at the time of admission, because "community-based services . . . are appropriate if they can help persons with disabilities avoid or minimize hospitalization." *Id*. at 569-572, 575-76. Indeed, the *Olmstead* decision itself puts to rest any doubt that Defendants' argument is wrong. The *Olmstead* plaintiffs alleged only that they were appropriate for community services at the time of the lawsuit, and not at the time they were first admitted to the state hospital. *Olmstead*, 527 U.S. at 593. Public entities cannot avoid their obligations under the

integration mandate by putting individuals at serious risk of unnecessary institutionalization and then asserting that institutionalization is appropriate.

Moreover, Defendants' reliance on the Alaska superior courts' placement decisions, *see* Def.'s Br. at 74-75, is insufficient to show that Plaintiffs cannot meet *Olmstead's* appropriateness requirement. This is because Defendants again rely on the erroneous contention that the only relevant consideration of appropriateness is at the point of admission to an institution and, separately, because the placement criteria used by the superior courts differ from what *Olmstead* requires. More specifically, the superior courts' consideration of certain residential placements turns on whether community-based services that could be an alternative to institutional placement are "reasonably available." *See id.* at 74. Whether or not that test is appropriate under state law, it does not insulate the State from its independent obligations under *Olmstead*. Under the ADA and Section 504, public entities have an affirmative obligation to provide integrated, community-based alternatives to institutional care, which could include the expansion of services, as discussed below. *See* 28 C.F.R. §§ 35.130(b)(7)(i) and 35.130(d). That obligation to provide appropriate community-based services under *Olmstead* does not depend on whether those services are immediately available. *See Olmstead*, 527 U.S. at 607. Courts have allowed *Olmstead* claims to proceed where community-based services are not available to the plaintiff; indeed, the unavailability of services has been the impetus for many of those claims. *See, e.g.*, *Mississippi*, 400 F. Supp. 3d at 576; *Brantley*, 656 F. Supp. 2d at 1175.

*Jeremiah M. et al. v. Adam Crum et al.*                14
Case No. 3:22-cv-00129-JMK

Case 3:22-cv-00129-JMK   Document 31   Filed 10/03/22   Page 14 of 20

### III. Provision of Community-Based Services Through a State's Existing Service System to Avoid Unnecessary Institutionalization May Constitute a Reasonable Modification of the System

Defendants contend that Plaintiffs have failed to state a claim under the integration mandate on the grounds that the State is not required to ensure that there are sufficient providers of community-based services throughout the state.[8] *See* Def.'s Br. at 75. Defendants' argument is based on a flawed understanding of the applicable legal framework.

Where a state administers a system for providing services to people with disabilities, modifying that system to serve people who qualify for those services in the community, rather than institutions, may be a reasonable modification, despite Defendants' assertions to the contrary. *See* Def.'s Br. at 75. Courts have found proposed modifications that expand existing services to be reasonable, particularly when the modifications align with the public entity's own stated plans and obligations. *See*, *e.g.*, *Henrietta D. v. Bloomberg*, 331 F.3d 261, 280-81 (2d Cir. 2003) (upholding as a reasonable modification an order requiring agency to follow existing law and procedures); *Mississippi*, 400 F. Supp. 3d at 576 (finding provision of community-based services reasonable where the plaintiff showed that the state "already ha[d] the

---

[8] Defendants also argue that this is not a reasonable undertaking for the Court, Def.'s Br. at 75. However, reasonableness in the context of a reasonable modification is evaluated from the perspective of the defendant, not a court, and should not be conflated with redressability.

framework for providing [community-based] services and [could] more fully utilize and expand that framework to make the services truly accessible"); *Haddad*, 784 F. Supp. 2d at 1304-05 (providing a service already in state's service system to additional individuals is not a fundamental alteration); *Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 344-45 (D. Conn. 2008) (plaintiffs' requested service expansion, which was consistent with defendants' publicly stated plans, was reasonable). And as the Ninth Circuit observed in *Townsend v. Quasim*, expanding the provision of community-based services to individuals to whom a public entity already provides institutional services is a reasonable modification. 328 F.3d 511, 517-18 (9th Cir. 2003).[9] Like the plaintiffs in *Townsend*, Plaintiffs seek community-based services as alternatives to institutional care. *See* Am. Compl. ¶ 263.

Contrary to Defendants' assertion that the State is not required to ensure sufficient community-based services, *see* Def.'s Br. at 75, a state may violate the integration mandate by failing to reasonably modify its service system to expand the availability of existing community-based services to prevent needless institutionalization. *Pashby v. Delia*, 709 F.3d 307, 322-24 (4th Cir. 2013); *see also Radaszewski ex rel. Radaszewski v.*

---

[9] A plaintiff's burden of identifying reasonable modifications a public entity must make to remedy or avoid discrimination is not a "heavy one." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 280 (2d Cir. 2003) (citing *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)). The plaintiff need only suggest the existence of a plausible accommodation. *See Townsend,* 328 F.3d at 517-18; *Frederick L. v. Dep't of Pub. Welfare*, 364 F.3d 487, 492 n.4 (3d Cir. 2004).

*Maram*, 383 F.3d 599, 609 (7th Cir. 2004) ("[A] State may violate Title II when it refuses to provide an existing benefit [in this case, an in-home nursing program that was not available to the plaintiff] to a disabled person that would enable that individual to live in a more community-integrated setting."). A state's "failure to prevent unnecessary gaps in service" within its community service system may violate the integration mandate "by limiting [individuals'] ability to maintain their social and economic independence and depriving them of a real choice between home and institutional care." *Ball v. Rodgers*, No. CV 00–67–TUC–EHC, 2009 WL 1395423, at *5-6 (D. Ariz. Apr. 24, 2009).

In making the argument that "creating more providers of specialized community mental health services . . . is not something that OCS . . . can reasonably do," *see* Def.'s Br. at 75, Defendants appear to assert the affirmative defense that the requested relief should not be granted because doing so would cause a fundamental alteration of the State's program.[10] Such a defense is fact-bound and premature for evaluation on a Motion to Dismiss. *See Michelle P. ex rel. Deisenroth v. Holsinger*, 356 F. Supp. 2d

---

[10] To comply with the integration mandate, public entities must reasonably modify their policies, procedures, or practices when necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity. *M.R.*, 663 F.3d at 1116 (citing 28 C.F.R. § 35.130(b)(7)(i)). States that administer service systems for people with disabilities may not avail themselves of this defense unless they can first demonstrate that they have a comprehensive, effectively working plan to comply with the *Olmstead* mandate. *See*, *e.g.*, *Frederick L. v. Dep't of Pub. Welfare of Pa.*, 422 F.3d 151, 157 (3d Cir. 2005); *Sanchez v. Johnson*, 416 F.3d 1051, 1067-68 (9th Cir. 2005); *Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare*, 402 F.3d 374, 381-82 (3d Cir. 2005).

763, 770 (E.D. Ky. 2005) (plaintiffs who sought to participate in existing Medicaid waiver program "[did] not seek the creation of new programs," leading court to conclude that "whether the relief requested would result in a fundamental alteration is a matter that can be resolved only by a careful examination of all the facts and circumstances" and is inappropriate for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)) (citing *Martin v. Taft*, 222 F. Supp. 2d 940, 972, 974 (S.D. Ohio 2002) (quotation marks omitted)); *see also Hindel v. Husted*, 875 F.3d 344, 347-48 (6th Cir. 2017) (finding that district court erred by "merely accepting defendant's [fundamental alteration] affirmative defense without requiring facts and evidence to support it").

## Conclusion

For the foregoing reasons, the United States respectfully requests that the Court consider this Statement of Interest.

RESPECTFULLY SUBMITTED this 3rd day of October 2022, in Anchorage, Alaska.

| | |
|---|---|
| S. LANE TUCKER<br>United States Attorney<br>District of Alaska | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| /s/ Marie Scheperle<br>MARIE SCHEPERLE<br>Chief<br>Civil Unit<br>United States Attorney's Office | STEVEN H. ROSENBAUM<br>Chief<br>Special Litigation Section<br><br>REGAN RUSH<br>Principal Deputy Chief |

Special Litigation Section

  */s/ Catherine Yoon*
CATHERINE YOON
PATRICK HOLKINS
Trial Attorneys
United States Department of Justice
Civil Rights Division
Special Litigation Section

Attorneys for the United States

*Jeremiah M. et al. v. Adam Crum et al.*      19
Case No. 3:22-cv-00129-JMK

Case 3:22-cv-00129-JMK   Document 31   Filed 10/03/22   Page 19 of 20

## CERTIFICATION OF WORD COUNT

I, Marie Scheperle, pursuant to District of Alaska Local Civil Rule 7.4(a)(3), hereby certify that this **STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA** contains 3,452 words, excluding those portions listed in Local Civil Rule 7.4(a)(4), as calculated by the word processing software used to complete the document.

/s/ Marie Scheperle
Office of the U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2022, I electronically filed the foregoing with the Clerk of Court using the ECF system, which sent notification of such filing to all counsel of record.

/s/ Marie Scheperle
Office of the U.S. Attorney