TREG R. TAYLOR
ATTORNEY GENERAL

Christopher A. Robison
Alaska Bar No. 2111126
Assistant Attorney General, Alaska Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Telephone: (907) 269-5275
Facsimile: (907) 276-3697
Email: chris.robison@alaska.gov
Attorney for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Jeremiah M., et al., )<br><br>    Plaintiffs, )<br><br>v. )<br><br>Adam Crum, et al. )<br><br>    Defendants. ) | Case No. 3:22-CV-00129-JMK |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

I.    The *Younger* abstention doctrine requires the Court to abstain .............................. 1

    A.    *Younger* protects CINA proceedings from federal court interference ......... 1

    B.    Plaintiffs' relief would interfere with ongoing CINA proceedings ............. 5

    C.    Plaintiffs cannot avoid *Younger* by seeking "systemic" relief on behalf of a putative class ............................................................................................ 8

    D.    CINA proceedings implicate important state interests................................ 11

    E.    Abstention is appropriate under *O'Shea* and *Rooker-Feldman* ................. 12

II.   The Court lacks subject matter jurisdiction............................................................. 13

    A.    Each of the Named Plaintiffs must estabish the Court's jurisdiction. Class-wide allegations are irrelevant ..................................... 14

    B.    Each Named Plaintiff failed to adequately plead injury ............................. 15

    C.    Each Named Plaintiff failed to adequately plead causation........................ 15

    D.    Each Named Plaintiff failed to adequately plead redressability ................ 16

III.  Plaintiffs have not adequately alleged their substantive due process claims................................................................................................................. 19

IV.   The right to familial association claim (Count II) is not properly pleaded........... 22

V.    Plaintiffs failed to state a claim under ICWA (Count IV)...................................... 22

VI.   Plaintiffs' ADA and Rehabilitation Act claims should be dismissed .................. 26

VII.  Count V should be dismissed because section 672(a) does not require Defendants to make foster care maintenance payments to all families with whom a child is placed ................................................................................... 29

Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 2 of 33

# I.     The *Younger* abstention doctrine requires the Court to abstain.

*Younger* abstention applies when:

(1)     a federal plaintiff is a party to an ongoing state proceeding that is one of the three types of cases identified in *Sprint*, *i.e.*, a criminal proceeding, a civil enforcement proceeding, or an action that "involve[s] a state's interest in enforcing the orders and judgments of its courts";

(2)     the federal action would interfere with the ongoing state proceeding;

(3)     the federal plaintiff has an adequate opportunity to raise federal claims in the state proceedings;

(4)     the state proceedings "implicate important state interests."[1]

Plaintiffs' Opposition argues this case fails to meet any of those four requirements.

Plaintiffs are incorrect for the reasons set forth below.

## A.     *Younger* protects CINA proceedings from federal court interference.

Plaintiffs argue *Younger* abstention provides no protection for CINA cases, regardless of the extent to which the federal action may interfere with an individual child's case, because state abuse-and-neglect proceedings do not fall into any of the three categories of state proceedings that *Younger* protects, as set out in *Sprint*.[2]

There is no dispute that there is a circuit split on this issue,[3] and the Ninth Circuit

---

[1]     *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d, 754, 759 (9th Cir. 2014).

[2]     Dkt. 30, pp. 12-25 (citations herein are to the page numbers on the parties' respective briefs, as opposed to the ECF page numbers).

[3]     *Compare, e.g.*, *Ashley W.*, 34 F.4th 588, 591 (7th Cir. 2022), *Oglala Sioux Tribe*, 904 F.3d at 610; *Vaughn:Douce v. N.J. Div. of Child Prot. and Permanency*, No. 21-1596, 2021 WL 3403670 (3d Cir. Aug. 4, 2021), *with, e.g.*, *Jonathan R. v. Justice*, 41 F.4th 316 (4th Cir. July 20, 2022).

Reply in Support of Defendants' Motion to Dismiss            Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                               Page 1 of 31

Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 3 of 33

has not weighed-in since *Sprint*.[4] However, the post-*Sprint* majority view among the circuits is that state abuse-and-neglect proceedings are civil enforcement actions covered by *Younger*.[5] And the majority view is consistent with the Supreme Court's opinion in *Moore v. Sims*, which held *Younger* abstention applies to state abuse-and-neglect proceedings, in part because they are "in aid of and closely related to criminal statutes" relating to child abuse.[6] In fact, *Moore* was expressly re-affirmed in *Sprint*, where the Court cited *Moore* as an example of a case in which abstention was appropriate.[7]

Plaintiffs attempt to distinguish *Moore* by claiming CINA proceedings are somehow different from proceedings relating to the "temporary removal of a child in the child-abuse

---

[4]     Plaintiffs' cite *L.H. v. Jamieson*, 643 F.2d 1351 (9th Cir. 1981), but it is not on point as explained in Defendants' Motion. *See* Dkt. 23, pp. 31-33 (addressing *L.H.*).

Plaintiffs also fail to acknowledge *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2001), in which a mother sought an injunction prohibiting interference with her custody her child. In evaluating the mother's claim, the court held that "[t]his is precisely the type of case suited to *Younger* abstention" because (1) important state interests were implicated; (2) "[f]amily relations are a traditional area of state concern"; (3) the "state has a vital interest in protecting 'the authority of the judicial system, so that its orders and judgments are not rendered nugatory'…particularly…in the field of domestic relations, over which federal courts have no general jurisdiction, and in which the state courts have a special expertise and experience"; and (4) the plaintiffs had "an adequate state forum in which to pursue their federal claims." *Gordon*, 203 F.3d at 613 (internal citations omitted)*. Gordon* was cited with approval post-*Sprint*. *See, e.g.*, *Williams v. Cal.*, 700 Fed. Appx. 581 (9th Cir. 2017); *Green v. Phuong*, 3:20-mc-00011-TMB, 2020 WL 4360579, at * 7-8 n. 84 (D. Alaska July 29, 2020).

[5]     *See* Note 3, *supra*; *see* Dkt. 23, p. 19. The Opposition criticizes *Ashley W.*, arguing the decision "violated abstention law" (Dkt. 30, p. 17). But the Seventh Circuit's view on abstention is the *majority* view among the circuits. Dkt. 23, p. 19, n. 72. Moreover, the same lead counsel representing the Plaintiffs here represented the plaintiffs in *Ashley W.*, and they did not ask the Supreme Court to review the Seventh Circuit's decision.

[6]     *Moore v. Sims*, 442 U.S. 415, 423 (1979) (internal quotation marks omitted).

[7]     *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 80 (2013).

Reply in Support of Defendants' Motion to Dismiss                    Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                              Page 2 of 31

Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 4 of 33

context."[8] But nothing in *Moore* suggests courts should draw a distinction between the initial hearing, where the child is removed from his or her parents, and subsequent hearings in the same case, where that removal is re-evaluated and other decisions about the child are reviewed. To the contrary, *Moore* expressly described the proceedings at issue as "ongoing."[9] *Younger* abstention, in turn, only applies to "ongoing" proceedings, which belies any argument that *Moore*'s holding was limited an "initial" removal hearing.

Moreover, in Alaska, CINA cases are the proceedings in which children are initially removed from their parents' custody due to abuse or neglect. The initial removal hearing is part of a single, unitary case bearing the same case number, before the same superior court judge. And that same case remains pending throughout the time the child is in state custody.[10] The removal decision is not even made at one "initial" hearing: throughout a CINA case, the superior court regularly re-evaluates whether the child should remain removed from her biological family, unless and until the court terminates parental rights, which often never happens because re-unification is generally the desired outcome.[11]

Plaintiffs cite *Jonathan R.* and *Tinsley*, but both courts erred in reading *Moore* to create a distinction between the initial removal hearing and other hearings in the same case.

---

[8]     Dkt. 30, pp. 12-13 (quoting *Moore*, 442 U.S. at 423).

[9]     *Moore*, 442 U.S. at 431 n.12.

[10]    *See Alyssa B. v. State, DHSS*, 165 P.3d 605, 612, (Alaska 2007) (explaining that a termination proceeding is a "procedural continuation of the earlier proceedings in the existing CINA case;" it does not initiate a new proceeding); Dkt. 23, pp. 8-14.

[11]    *See, e.g.*, AS 47.10.086(a)(1) (OCS's duty to make reasonable efforts includes the duty identify family support services that will assist the parent in remedying the conduct that made the child a child in need of aid); *Margot B. v. State, DHSS, OCS*, No. S-16318/16331/16332, 2017 WL 1102975, at *2-3 (Alaska March 22, 2017) (parental rights were not terminated until three years after the child was taken into custody).

Reply in Support of Defendants' Motion to Dismiss                     Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                                      Page 3 of 31

And as explained in the Motion, *Jonathan R.* also erred by distinguishing *Moore* on the basis that the claims in *Moore* were brought by abusive parents rather than children[12] when in fact, *both* parents and children brought claims in *Moore*.[13]

Tinsley is further distinguishable because, "[i]n Arizona, proceedings to remove a child from the familial home and periodic reviews while in state custody are distinct."[14] But in Alaska, temporary removal proceedings are *not* distinct from the periodic reviews of a child's placement and services. All hearings – *e.g.*, emergency custody, temporary custody, adjudication, and permanency – are part of the same CINA proceeding, and each involves custody, as well as placements and services.[15]

Finally, *Jonathan R.* and *Tinsley* are inconsistent with the principles of comity and federalism underlying *Younger*. They would preclude interference with an *initial* decision about whether to remove a child from the home, but then welcome federal court interference with *subsequent* decisions by the same state court about the same child in the same case (*e.g.*, decisions about placement, services, and adoption). Under *Jonathan R.* and *Tinsley*, a child who believes a state court might find placement in a residential treatment facility is in the child's best interest could ask a federal court to enjoin the state court from issuing that decision, and the federal court would have to decide the question already pending before the state court. That is exactly the interference *Younger* was intended to prohibit.

---

[12]    *Jonathan R*, 41 F.4th at 329-30.
[13]    *Moore*, 442 U.S. at 418.
[14]    *Tinsley v. McKay*, 156 F. Supp. 3d 1024, 1034 (D. Ariz. 2015).
[15]    *See Alyssa B.*, 165 P.3d at 612 (Alaska 2007); Dkt. 23, pp. 8-14.

Reply in Support of Defendants' Motion to Dismiss          Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                      Page 4 of 31
Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 6 of 33

## B.     Plaintiffs' relief would interfere with ongoing CINA proceedings.

The Opposition argues Plaintiffs' claims would not interfere with ongoing CINA proceedings because they seek review of "legislative or executive action as opposed to judicial action."[16] This misunderstands the *Younger* interference standard.

In the Ninth Circuit, a federal action that would "effectively" enjoin,[17] or that would "have the practical effect of enjoining" a state proceeding,[18] interferes with the proceeding for purposes of *Younger*. This is true "regardless of whether the relief targets the conduct of a proceeding directly."[19] Indeed, in *Moore*, the Court applied *Younger* to a federal action brought by parents and children that sought to enjoin a state statute (legislative action) and state executive action, but did not seek to actually enjoin an ongoing state court case.[20] Nevertheless, *Younger* applied. The Ninth Circuit has also held a constitutional challenge to "Washington's child welfare statutes" (legislative action) "interfere[d] with ongoing state court proceedings (dependency actions and/or actions to terminate parental rights)."[21]

---

[16]     Dkt. 30, p. 10 (internal quotation marks omitted).
[17]     *Citizens for Free Speech, LLC v. Alameda*, 953 F.3d 665, 657 (9th Cir. 2020) (emphasis added).
[18]     *ReadyLink Healthcare, Inc.*, 754 F.3d at 758.
[19]     *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002).
[20]     *Moore v. Sims*, 442 U.S. 415; *see also, e.g.*, *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 613-14 (8th Cir. 2018); *31 Foster Children v. Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003) ("The relief sought need not directly interfere with an ongoing proceeding or terminate an ongoing proceeding in order for Younger abstention to be required."); *id.* at 1278 (holding that the case would interfere with ongoing state court proceedings "[e]ven though any remedial order would run against the Department," not the courts, because state law gives courts the duty to oversee decisions impacted by the order); *Joseph A.*, 275 F.3d at 1268-69 (holding that the court order is precluded by *Younger*, even though the federal court is *not* asked to enjoin an action from proceeding in state court).
[21]     *Zimmerman v. Gregoire*, 18 Fed. Appx. 599, 601 (9th Cir. 2001).

Reply in Support of Defendants' Motion to Dismiss                    Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                                              Page 5 of 31
Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 7 of 33

Defendants' Motion explained that the relief Plaintiffs seek would "effectively enjoin" ongoing CINA cases because it would control future decisions by Alaska superior courts.[22] Any relief awarded in the injunction that could also be obtained in a CINA case would effectively be off limits in state court; instead, the federal court would become the ultimate arbiter of disputes over things like placement and the duration of a child's time in state custody.

In response, Plaintiffs only addressed one of the Complaint's 18 injunctive relief requests. Plaintiffs argued that "Defendants do not (and cannot) explain how seeking an injunction that Defendants, for example, 'place children in placements that are safe, appropriate, and in the least restrictive environment that best suits their individual needs' would interfere with the court's discretion."[23] But an injunction requiring OCS to place all children in "safe, appropriate, and in the least restrictive environment" would effectively enjoin (preclude) superior courts from making fact-specific placement decisions that deviate from what Plaintiffs' counsel or the federal court deems "safe," "appropriate" or the least restrictive.[24]

And the general consensus that children should be placed in "safe" and

---

[22]    *See* Dkt. 23, pp. 24-30. Plaintiffs rely heavily on *Wyatt B. v. Brown* to support their argument that *Younger* is not applicable here, claiming that defendants in *Wyatt B.* "made almost identical abstention arguments to those made by Defendants here," Dkt. 30, p. 8; *see also id.* at 17 n.27; *id.* at 23 n.37; *id.* at 25 n.4.  But in *Wyatt B.* the defendants did not even raise *Younger*; instead, they relied only on *O'Shea* abstention. Thus, the court did not even decide whether abstention was appropriate under *Younger*. *Wyatt B. v. Brown*, No. 19-cv-00556, 2021 WL 4434011 (D. Or. Sept. 27, 2021).

[23]    Dkt. 30, p. 21.

[24]    *See id.* at 25-26.

Reply in Support of Defendants' Motion to Dismiss          Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                                    Page 6 of 31

Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 8 of 33

"appropriate" placements does not make a federal injunction any less controlling of the superior court's decisions, nor does it mean there will not be disagreements between the federal and state courts about what is "safe" and "appropriate."[25] For instance, if a superior court approved a child's temporary placement in a residential treatment facility, how would it know if that placement meets the federal court's definition of "safe" or "appropriate"? Worse yet, if Plaintiffs' counsel did not believe the placement met this standard, they would presumably ask the Court to declare that the superior-court-approved placement violated the federal order. Those are the types of scenarios *Younger* intended to avoid.

Plaintiffs also seek injunctive relief requiring Defendants to take certain actions *in CINA proceedings*. Specifically, Plaintiffs ask this Court to:

(1)    "Require Defendants to file and proceed with a timely petition [in the CINA proceeding] to free a child for adoption" (*i.e.*, terminate parental rights so that the child is eligible for adoption), and

(2)    "Require Defendants to take all necessary steps to seek and secure an appropriate adoptive placement for a child when the child's plan is adoption," which would require OCS to seek superior court approval.[26]

Both requests would interfere with CINA cases "in an insidious way" because they would impose an across-the-board requirement for OCS to move to terminate parental rights under circumstances defined by the injunction, even if OCS did not believe the

_____

[25]    *See 31 Foster Children*, 329 F.3d at 1278-79 (internal citations omitted) (where plaintiffs seek to place child welfare decisions "that are now in the hands of the state courts under the direction of the federal district court," "[t]he federal and state courts could well differ, issuing conflicting orders about what is best for a particular plaintiff, such as whether a particular placement is safe or appropriate or whether sufficient efforts are being made to find an adoptive family").

[26]    Dkt. 16 (Am. Compl.), p. 92.

Reply in Support of Defendants' Motion to Dismiss                    Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                                  Page 7 of 31

Case 3:22-cv-00129-JMK    Document 38    Filed 10/14/22    Page 9 of 33

motion was supported by state law or in a particular child's best interest. Plaintiffs' requests would also prevent OCS from presenting to the superior court a permanency option (*i.e.*, something other than adoption) that OCS believes is in the child's best interest.[27]

Finally, Plaintiffs argue that "[i]n Alaska, it is OCS, not the courts, that is responsible for making placements, and courts only serve a supervisory role and cannot substitute judgment."[28] While OCS makes placement decisions, any party to the CINA case (including the child) may challenge them at any time,[29] and decisions are reversed when a superior court finds an abuse of discretion or violation of state or federal law.[30] Just because superior courts review placement decisions rather than making them in the first instance, does not mean an injunction governing placement will not interfere with CINA cases.

### C. Plaintiffs cannot avoid *Younger* by seeking "systemic" relief on behalf of a putative class.

Plaintiffs also attempt to avoid *Younger* by pointing out that they are seeking

---

[27]     *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1268-69 (10th Cir. 2002) (order precluded by *Younger*, even though federal court was *not* asked to enjoin action from proceeding in state court, because it "require[ed] interference with the operations of the Children's Court in an insidious way in that the [order] expressly prevent[ed] the Department' employees from recommending a range of planning options for children who are in the Department's custody," which "has an effect not unlike that of an injunction or declaratory judgment because the Department is precluded ever from presenting certain options to the Children's Court").

[28]     Dkt. 30, p. 22.

[29]     CINA Rule 19.1(b), (d).

[30]     *See, e.g.*, *DHHS v. Zander B.*, 474 P.3d at 1162; *Celia W. v. DHHS, OCS*, No. S-17954, 2021 WL 4191436 (Alaska September 15, 2021); *Dylan J. v. State*, No. S-14641, 2012 WL 4840768 (Alaska October 10, 2012); *In re J.D.S.*, No. S-10383, 2002 WL 1183536 (Alaska May 29, 2002); S.S.M. v. State, 3 P.3d 342 (Alaska 2000); *Brynna B. v. State, DHHS, DFYS*, 88 P.3d 527 (Alaska 2004); *Irma E. v. State*, 312 P.3d 850 (Alaska 2013); *Cora C. v. State*, No. S-16798, 2018 WL 2979472 (Alaska June 13, 2018) (unpublished); *Danielle A. v State, DHHS, OCS*, 215 P.3d 349, 356 (Alaska 2009).

Reply in Support of Defendants' Motion to Dismiss                    Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                                        Page 8 of 31

Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 10 of 33

"systemic relief," not individual relief, and that CINA courts do not hear class actions or issue "systemic" relief.[31] But Plaintiffs' focus on "systemic relief" misunderstands the requirements for *Younger* abstention.[32] As noted below, each Named Plaintiff must allege facts sufficient to support jurisdiction over his or her *individual* claims, not just facts sufficient to support putative class claims.[33]

Accordingly, the question under *Younger* is not whether the plaintiff has an "adequate opportunity" to raise putative *class* claims or pursue "systemic relief" in state court. The proper question is whether each *individual* plaintiff has an "adequate opportunity" to raise their *individual* federal issues in the ongoing state court proceeding, "subject to conventional limits on justiciability."[34] As the Tenth Circuit noted, a plaintiff is not "entitled to avoid the effects of the *Younger* abstention doctrine in cases where relief is available to individual litigants in ongoing state proceedings but not to represented parties in a class action."[35] Otherwise, *any* plaintiff to an ongoing state court case could sidestep *Younger* simply by asserting claims in federal court on behalf of a putative class.

Here, nearly all relief the Named Plaintiffs seek can be pursued in their individual

---

[31]     Dkt. 30, pp. 18, 21, 25-28.

[32]     As an initial matter, requests for systemic relief actually work in favor of abstention, not against it. In *Moore*, the Supreme Court explained that the district court "invert[ed] traditional abstention reasoning" by "suggest[ing] that the more sweeping the challenge the more inappropriate is abstention" when in fact, the opposite is true: "The breadth of a challenge to a complex state statutory scheme has traditionally militated in *favor* of abstention, not *against* it." *Moore*, 442 U.S. at 427 (emphasis in original).

[33]     *See* Dkt. 23, pp. 14-16.

[34]     *Moore*, 442 U.S. at 426.

[35]     *Joseph A.*, 275 F.3d at 1273-74.

Reply in Support of Defendants' Motion to Dismiss                    Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                                          Page 9 of 31
Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 11 of 33

CINA cases,[36] and the Opposition fails to establish otherwise. Instead, Plaintiffs assert that there are obstacles to pursuing their claims in state court. For instance, Plaintiffs argue foster children are not assigned counsel in all CINA cases (Dkt. 30, p. 28 n.44), and that "CINA proceedings are kept secret from public view and it is difficult to access records from other cases" (Dkt. 30, p. 27). But neither argument demonstrates a lack adequate opportunity to pursue claims in superior court.

First, CINA proceedings include numerous protections to ensure children have an adequate opportunity to be heard, including appointment of counsel in many situations (Dkt. 23, p. 24). And "the absence of automatic counsel at public expense for every child in a [state abuse-and-neglect] proceeding does not permit a federal court to deem all [such] proceedings defective and bypass the state judiciary."[37] Second, confidentiality has nothing to do with the Named Plaintiffs' ability to raise federal issues.[38] As the First Circuit explained, "the Supreme Court has never suggested that having an adequate opportunity to present a federal claim requires the parallel state proceeding be open to the public."[39]

Alaska superior courts "are competent to adjudicate federal constitutional claims,"[40] and Plaintiffs cannot point to any authority to overcome the presumption applied in the

---

[36]     Dkt. 23, pp. 8-14, 22-24; *see also* AS 22.10.020(a); AS 22.10.020(c); AS 47.10.080(l)(6); CINA Rule 17.2(g); CINA Rule 10.1(a)(2), (b)(2); CINA R. 17.2(e)(5); *Cora C. v. State*, No. S-16798, 2018 WL 2979472 (Alaska. June 13, 2018) (unpublished) (reviewing whether the superior court complied with ICWA); *Danielle A. v State, DHHS, OCS*, 215 P.3d 349, 356 (Alaska 2009) (same).

[37]     *Ashley W.*, 34 F.4th at 593.

[38]     *See, e.g., Brooks v. N.H. Supreme Court*, 80 F.3d 633, 639 (1st Cir. 1996).

[39]     *Id.*; *see also Spargo v. N.Y. Comm'n on Judicial Conduct*, 351 F.3d 65, 80-81 (2d Cir. 2003).

[40]     *Oglala Sioux Tribe*, 904 F.3d at 613 (citing *Moore*, 442 U.S. at 430).

Reply in Support of Defendants' Motion to Dismiss      Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*      Page 10 of 31

Case 3:22-cv-00129-JMK    Document 38    Filed 10/14/22    Page 12 of 33

*Younger* analysis that "'a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'"[41]

Finally, Plaintiffs' argument that they do not have an adequate opportunity to raise their claims in CINA cases because they are seeking class-wide relief disregards the well-settled rule that a litigant's right "to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims."[42] In other words, Rule 23 "leaves the parties' legal rights and duties intact and the rules of decision unchanged."[43] As a result, Plaintiffs cannot circumvent the application of *Younger* simply by alleging claims for systemic relief.[44]

### D. CINA proceedings implicate important state interests.

Remarkably, Plaintiffs dispute that CINA proceedings implicate important state interests, relying on quotations taken out of context discussing other parts of the *Younger* analysis.[45] But in the dozens of child welfare institutional reform cases litigated over the last few decades across the country, including many litigated by lead counsel for Plaintiffs, plaintiffs rarely dispute this *Younger* factor.[46] And Plaintiffs fail to cite a single case

---

[41]   *Oglala Sioux Tribe*, 904 F.3d at 613 (citing *Moore*, 442 U.S. at 430) (quoting *Pennzoil v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)); *accord, e.g.*, *31 Foster Children*, 329 F.3d at 1279; *Joseph A*, 275 F.3d at 1274; *see also Moore*, 442 U.S. at 425-26 ("[A]bstention is appropriate unless state law clearly bars the interposition of the [federal statutory] and constitutional claims.").

[42]   *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980).

[43]   *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010).

[44]   Plaintiffs' insistence that they are only seeking systemic relief is the same problem that doomed the plaintiffs in *Ashley W.* If the Named Plaintiffs are not seeking individual changes to their services, placements, or treatment, then they lack standing because they are not pursuing relief that would redress their individual harms.

[45]   Dkt. 30, pp. 29-31.

[46]   *See, e.g.*, *Joseph A.*, 275 F.3d at 1268; *31 Foster Children*, 329 F.3d at 1275; *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999).

Reply in Support of Defendants' Motion to Dismiss          Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                              Page 11 of 31
Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 13 of 33

holding state abuse-and-neglect cases do not implicate important state interests.

While Plaintiffs point to *Dwayne B. v. Granholm* (a case brought by Plaintiffs' lead counsel here), "[i]t [was] not disputed that Michigan has a strong interest in the welfare of children in its foster care system."[47] Accordingly, *Dwayne B.* only involved "the first and third *Middlesex* factors," not the "important state interest factor."

Finally, the Supreme Court has explained that "[f]amily relations are a traditional area of state concern,"[48] and States have "an urgent interest in the welfare of the child."[49] If zoning abatement proceedings implicate important state interests,[50] and state custody proceedings implicate important state interests,[51] certainly state abuse-and-neglect proceedings do as well. Indeed, the Ninth Circuit has already held "dependency actions and/or actions to terminate parental rights" "implicate important state interests."[52]

### E.    Abstention is appropriate under *O'Shea* and *Rooker-Feldman*.

The Opposition argues *O'Shea* is limited to cases where the plaintiffs actually bring claims against state courts and explicitly seek to enjoin state court actions.[53] While most *O'Shea* cases fit that description, the doctrine is not as limited as Plaintiffs suggest. Rather, *O'Shea* applies when the plaintiff seeks "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of" ongoing or future

---

[47]    *Dwayne B. v. Granholm*, No. 06-13548, 2007 WL 1140920, *5 (April 17, 2017).
[48]    *Moore*, 442 U.S. at 435.
[49]    *Santosky v. Kramer*, 455 U.S. 745, 766 (1982).
[50]    *Citizens for Free Speech, LLC*, 953 F.3d at 657.
[51]    *H.C. v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000).
[52]    *Zimmerman v. Gregoire*, 2001 WL 1020303, 601 (unpublished).
[53]    Dkt. 30, pp. 30-31.

Reply in Support of Defendants' Motion to Dismiss          Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                          Page 12 of 31
Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 14 of 33

state court proceedings, such that the relief the plaintiff seeks is effectively an "ongoing federal audit" of state proceedings.[54] Indeed, a number of courts have abstained under *O'Shea* where the plaintiffs were not explicitly seeking an injunction against a state court.[55]

In addressing Defendants' *Rooker-Feldman* argument, Plaintiffs do not dispute that superior courts have approved the Named Plaintiffs' placements in their CINA cases.[56] Nevertheless, Plaintiffs contend *Rooker-Feldman* does not apply because Plaintiffs "do not challenge or seek to alter" any superior court's placement decision.[57] If that is true, what relief are the Named Plaintiffs seeking with respect to their placements, given that superior courts have issued orders approving them?[58] If the Named Plaintiffs are not seeking changes to their placements, then they lack standing to bring claims based on allegedly inappropriate placements.[59] If the Named Plaintiffs are seeking to change their placements, that would require the Court to review superior court decisions in the Named Plaintiffs' CINA cases, which *Rooker-Feldman* prohibits.[60] Plaintiffs cannot have it both ways.

## II.     The Court lacks subject matter jurisdiction.

The Seventh Circuit's May 2022 opinion in *Ashley W.* casts significant doubt on

---

[54]     *See* 414 U.S. 488, 500 (1974).

[55]     *See, e.g.*, *Hall v. Valeska*, No. 12-12267, 509 Fed. App'x 834 (11th Cir. Dec. 31, 2012) (unpublished); *Attala Cnty., Miss., Branch of NAACP v. Evans*, No. 19-cv-167, 2020 WL 5351075 (N.D. Miss. Sept. 4, 2020).

[56]     *See* Dkt. 30, pp. 35-37.

[57]     *Id.* at 36.

[58]     Dkt. 23, pp. 36-37 (describing CINA courts approving Named Plaintiffs' placements).

[59]     *See* Part II, *infra*.

[60]     *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-84 n.16 (1983); *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003).

Reply in Support of Defendants' Motion to Dismiss            Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                              Page 13 of 31
Case 3:22-cv-00129-JMK     Document 38     Filed 10/14/22     Page 15 of 33

federal courts' jurisdiction over cases like this one, and that issue was heavily briefed in the Motion.[61] Nevertheless, the Opposition devotes just a few pages to it. Plaintiffs point out a few allegations pertaining to a few of the 14 Named Plaintiffs, then ask the Court to trust that they will demonstrate jurisdiction after discovery. But that is not the standard. At the pleading stage, *each plaintiff* bears the burden to plead sufficient allegations to demonstrate the court's subject matter jurisdiction.[62] Here, Plaintiffs failed to do so.

## A. Each of the Named Plaintiffs must establish the Court's jurisdiction. Class-wide allegations are irrelevant.

To avoid demonstrating that each Named Plaintiff adequately pleaded (1) injury, (2) causation, and (3) redressability, the Opposition cites the Ninth Circuit's opinion in *B.K. v. Snyder*[63] and asserts that "Plaintiffs need not allege that each policy and practice affected each individual plaintiff."[64] But *B.K.* does not actually stand for the proposition for which it is cited. In fact, the Ninth Circuit echoed exactly what Defendants have stressed here:

> [W]hen we measure a plaintiff's standing, regardless of whether the plaintiff sues individually or as a class representatively, we look concretely at the facts that pertain to that plaintiff.[65]

Plaintiffs also ignore the well-settled rule that "the basic inquiry, for each party seeking to invoke the authority of the federal courts, is whether that party alleges personal injury that is fairly traceable to the challenged conduct and likely to be redressed by the

---

[61]     Dkt. 23, pp. 38-46.
[62]     *Barapind v. Gov't of Republic of India*, 50 F. Supp. 3d 1388, 1391 (E.D. Cal. 2014), *aff'd*, 844 F.3d 824 (9th Cir. 2016) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, (1936)).
[63]     922 F.3d 957 (9th Cir. 2019).
[64]     Dkt. 30, p. 41.
[65]     *B.K.*, 922 F.3d at 967.

Reply in Support of Defendants' Motion to Dismiss                    Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                            Page 14 of 31
Case 3:22-cv-00129-JMK    Document 38    Filed 10/14/22    Page 16 of 33

requested relief."[66] Applying that rule here, *each* of the 14 Named Plaintiffs must allege:

    (1)   <u>Injury</u>: An actual injury or a likelihood of future harm absent an injunction (past exposure to illegal conduct alone is not enough).

    (2)   <u>Causation</u>: The injury alleged must be fairly traceable to Defendants' illegal conduct or practice, and the line of causation must be more than attenuated.

    (3)   <u>Redressability</u>: The Plaintiffs must show it is *likely*, as opposed to merely speculative, that *the injuries actually complained about* (see item (1), above) will be redressed by a favorable decision.

Here, the Complaint fails to establish all three requirements for each Named Plaintiff.

### B. Each Named Plaintiff failed to adequately plead injury.

The Opposition fails to demonstrate that the Complaint adequately pleaded an actual injury for each Named Plaintiff. First, the Opposition only points out arguable injuries for six of the 14 Named Plaintiffs.[67] Second, the Opposition makes the high-level allegation that "Plaintiffs all remain in OCS custody, and therefore, face ongoing harm and remain at a significant risk of experiencing future harm from Defendants' policies and practices." Dkt 30, p. 39. But Plaintiffs fail to identify any specific policies or practices, let alone how they place any particular Named Plaintiff at "significant risk" of future harm. Accordingly, Plaintiffs have adequately pleaded an injury for only six of the 14 Plaintiffs, at best.

### C. Each Named Plaintiff failed to adequately plead causation.

Plaintiffs' response to Defendants' causation arguments is even more general. First, Plaintiffs incorrectly argue they are not obligated to plead that Defendants' policies and practices affected *each* Named Plaintiff. But as noted above, the Ninth Circuit requires

---

[66]    *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615-16 (1989) (internal citations omitted).

[67]    Dkt. 30, pp. 38-40 (citing allegations pertaining to Jeremiah M., Hannah M., Hunter M., Rachel T., Elanor T., and Lana H.).

Reply in Support of Defendants' Motion to Dismiss    Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*    Page 15 of 31
Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 17 of 33

courts to "look concretely" at the facts pertaining to *each* plaintiff,[68] and the Supreme Court has long required *each party* to allege injury, causation, and redressability.[69]

The Opposition then moves to a one-paragraph discussion of causation, mentioning only one of the 14 Named Plaintiffs, Gayle T. In addressing Defendants' arguments about Gayle T., the Opposition argues an agency may not "contract away its constitutional duty of care," but that is not what Defendants argued. Rather, Defendants pointed out that Plaintiffs have not alleged facts sufficient to support a claim that Defendants violated their constitutional duties. And the case Plaintiffs cite (*K.H. v. Morgan*)[70] is fundamentally unlike this one because that complaint alleged that two defendant case workers "knew that the foster parent was incompetent."[71] Here, the Complaint failed to allege that Defendants knew the facility where Gayle T. was placed was incompetent or dangerous. In short, neither the Complaint nor the Opposition establishes a causal link between Plaintiffs' high-level complaints about OCS and the past harms each Named Plaintiff allegedly suffered.

### D. Each Named Plaintiff failed to adequately plead redressability.

Of the three elements of standing, redressability is most problematic for the Plaintiffs. But the Opposition devotes the least amount of attention to that component (Dkt. 30, pp. 42-43), arguing, in essence, that the Court shouldn't worry about this at the pleading stage. According to the Plaintiffs, a proper injunction can be crafted later, after the parties go through a long and arduous discovery process, litigate class certification, and conduct a

---

68      *B.K.*, 922 F.3d at 967.
69      *See, e.g., ASARCO Inc.*, 490 U.S. at 615-16 (internal citations omitted).
70      914 F.2d 846 (7th Cir. 1990).
71      *Id*. at 849.

Reply in Support of Defendants' Motion to Dismiss          Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                    Page 16 of 31
Case 3:22-cv-00129-JMK    Document 38    Filed 10/14/22    Page 18 of 33

trial on the merits. Dkt. 30, pp. 42-43. Plaintiffs are incorrect.

First, plaintiffs are unquestionably required to establish redressability at the pleadings stage. For example, in *M.S. v. Brown*, five plaintiffs filed a putative class action against Oregon state officials alleging constitutional violations and seeking injunctive and declaratory relief.[72] The trial court granted a motion to dismiss, and the plaintiffs appealed.[73] On appeal, the Ninth Circuit specifically analyzed *each* request for declaratory and injunctive relief and concluded the plaintiffs failed to adequately plead redressability.[74] In *Ashley W.*, the Seventh Circuit similarly analyzed redressability at the pleadings stage and concluded the plaintiffs' claims should be dismissed.[75]

Second, the authorities Plaintiffs cite for the proposition that redressability arguments are "premature" are not on point. For example, Plaintiffs cite *Celebrity Chefs Tour, LLC v. Macy's Inc.*[76] for the proposition that a claim should not be dismissed merely because a plaintiff requests a remedy to which it is not entitled. But *Celebrity Chefs* involved a dispute over whether a plaintiff could recover punitive damages on a trademark claim (which, even if unavailable, would not justify dismissal of the entire claim).[77] It had nothing to do with injunctive relief, subject matter jurisdiction, or redressability.

Plaintiffs' Ninth Circuit case – *Pruitt v. Cheney*[78] – is also inapposite. It says nothing

---

[72]    902 F.3d 1076, 1083-84 (9th Cir. 2018).
[73]    *Id*. at 1082.
[74]    *Id*. at 1084-1091.
[75]    *Ashley W. v. Holcomb*, 34 F.4th at 593-94.
[76]    16 F.Supp.3d 1159 (S.D. Cal. 2014).
[77]    *Id*. at 1164.
[78]    963 F.2d 1160 (9th Cir. 1991).

Reply in Support of Defendants' Motion to Dismiss              Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                               Page 17 of 31
Case 3:22-cv-00129-JMK    Document 38    Filed 10/14/22    Page 19 of 33

about redressability or subject matter jurisdiction, nor did it hold that trial courts cannot consider redressability on a motion to dismiss.[79] It also relied on *Conley v. Gibson's* "no set of facts" pleading standard, which was retired 15 years ago in *Twombly*.[80]

Plaintiffs' position that they don't have to establish redressability at this juncture is also at odds with the rule that federal courts are presumptively without jurisdiction over civil cases, and the burden of establishing the contrary is on the plaintiff.[81] It is also inconsistent with the court's "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."[82]

Third, in an effort to avoid *Younger*, the Opposition repeatedly disavows any effort to seek "individual" relief for the Named Plaintiffs, stressing that Plaintiffs seek "systemic relief."[83] But Plaintiffs make no attempt to show why it is likely, as opposed to speculative, that any of the Complaint's 18 requests for injunctive relief would actually improve the plight of any of the Named Plaintiffs.[84] That omission is telling, especially when Plaintiffs' requests for relief are entirely divorced from the Named Plaintiffs – *i.e.* none of the requests references ongoing or threatened harm to a Named Plaintiff, much less puts a stop to it.

Fourth, the Opposition has no answer for Defendants' arguments about Plaintiffs'

---

[79]  *See id.*

[80]  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007) ("*Conley's* 'no set of facts' language has been questioned, criticized, and explained away long enough .... [and] has earned its retirement.").

[81]  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[82]  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

[83]  Dkt. 30, pp. 18, 21, 25-28.

[84]  *See, e.g.*, *Ashley W.*, 34 F.4th at 592 ("The question is whether the issues such as the ones we have mentioned…matter *to these plaintiffs* in a way that a court could redress.") (emphasis added).

Reply in Support of Defendants' Motion to Dismiss                 Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                                  Page 18 of 31
Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 20 of 33

aspirational requests (*e.g.*, an injunction requiring OCS to hire more workers or find more foster families). In fact, one of Plaintiffs' own authorities highlights why this type of relief is *unlikely* to work, even on a class-wide basis. In *K.H. v. Morgan*, Judge Posner explained:

> [T]he underlying problem [movement of a child among multiple placements] is not lack of professional competence but lack of resources, *a problem of political will unlikely to be soluble by judicial means*. Good foster parents are difficult to find, unless they are paid generously; good institutional care is expensive too. The needs of neglected, abused, and abandoned children compete with other demands, both public and private, for scarce resources. *The allocation of the nation's—even of a single state's—resources is not a realistic assignment for the federal courts.*[85]

In sum, each Named Plaintiff was required to show that it is likely, not merely speculative, that his or her actual injury will be redressed by a favorable decision. But none of Plaintiffs' requests for injunctive relief references ongoing or threatened harm to a Named Plaintiff, much less puts a stop to it.[86] And it is entirely speculative whether Plaintiffs' aspirational requests would make a difference, even on a class-wide basis.[87]

## III. Plaintiffs' have not adequately alleged their substantive due process claims.[88]

Plaintiffs' substantive due process claims (Count I) fail for two reasons:

(1)     They assert the violation of rights that are not constitutionally recognized; and

(2)     They fail to allege sufficient facts to support their claims.

Plaintiffs Opposition begins by defending various alleged rights related to the

---

[85]     *K.H.*, 914 F.2d at 853.

[86]     As set forth above and in the Motion, 12 of Plaintiffs' 18 requests for relief are available in their CINA cases, which requires the Court to abstain. Dkt. 23, pp. 46-47.

[87]     *See Ashley W.* and *K.H.*, *supra*.

[88]     Plaintiffs' Opposition argues that the amended complaint adequately asserts rights recognized under the Fourteenth Amendment. Dkt. 30, p. 48 n.80. To be clear, Defendants do not concede that Plaintiffs have adequately stated a substantive due process claim.

Reply in Support of Defendants' Motion to Dismiss                    Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                                          Page 19 of 31
Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 21 of 33

availability of placements and the length of time a child is in foster care. But the court in one of Plaintiffs' most prominently featured authorities – *Wyatt B. by McAllister v. Brown* – recognized that substantive due process does *not* extend to the rights Plaintiffs assert, and it granted a motion to dismiss the same types of claims the Plaintiffs make here.[89]

The court explained: "[S]ubstantive due process does not…extend to placement in an optimal or least-restrictive setting, or to the availability of an array of placement options";[90] accordingly, it dismissed the plaintiffs' claim "to the extent that it seeks to vindicate a substantive due process right to be housed in the least restrictive setting, or a right to an array of community-based placements."[91] The court also held that "substantive due process does not extend to a right not to be retained in DHS custody for longer than is necessary...,"[92] and it dismissed Plaintiffs' claim "insofar as it asserts a claim based on a right to a 'duration of foster care reasonably related to the purpose of government custody,'…or 'the right not to be maintained in custody longer than is necessary to accomplish the purpose to be served by taking a child into government custody.'"[93]

Thus, even under Plaintiffs' own authorities, the alleged substantive due process rights asserted in ¶¶ 269(c) (least restrictive environment), (d) (duration of foster care), and (f) (maintain custody no longer than is necessary), and (g) (right to be placed in a permanent

---

[89]    2021 WL 4434011, at *9; *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 268 (5th Cir. 2018) ("[T]he availability of foster homes, particularly those that provide the most "home-like," "least-restrictive" environments, is something uniquely out of the State's control.").

[90]    *Wyatt B.*, 2021 WL 4434011, at *9.

[91]    *Id.*

[92]    *Id*.

[93]    *Id*.

Reply in Support of Defendants' Motion to Dismiss          Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                           Page 20 of 31

Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 22 of 33

home or be reunited with family within a reasonable period) should be dismissed.

The other rights Plaintiffs assert in ¶ 269 should also be dismissed because (1) they exceed the "minimally adequate care and treatment" standard set forth in *Lipscomb v. Simmons*, and (2) they are vague and unworkable (*e.g.* "right to freedom from foreseeable risk of maltreatment," ¶ 269(a); "right to protection from unnecessary intrusions into the child's emotional well-being," ¶ 269(b), "right to treatment and care consistent with the purpose and assumption of government custody" ¶ 269(e)).[94]

Finally, even if the rights in ¶ 269 are constitutionally recognized, the claims still fail because Plaintiffs' allegations, taken as true, do not plausibly allege deliberate indifference.[95] "Deliberate indifference is 'a stringent standard of fault, requiring proof that [the actor] disregarded a known or obvious consequence of his action.'"[96] And here, Plaintiffs' arguments as to why the Complaint's factual allegations establish deliberate

---

[94]    *See Lipscomb v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992) (foster children have a protected liberty interest in "reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child.").

[95]    Plaintiffs argue the deliberate indifference standard in *Momox-Caselis*, 987 F. 3d 835, 845 (9th Cir. 2021) was set aside by *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). In addition to being a temporal impossibility (*Castro* was issued five years before *Momox-Caselis*), *Castro* was limited in its holding. It overruled a prior case (*Clouthier v. Cty. of Contra Costa*) "to the extent it identified a single deliberate indifference standard for all § 1983 claims." 833 F.3d at 1070. And *Castro* only altered the subjective test "in the context of a pretrial detainee's failure-to-protect claim." *Id.* Thus, *Momox-Caselis* remains good law in foster care situations. Plaintiffs' assertion (Dkt. 30, p. 51) that "reckless disregard" is the new standard in proving deliberate indifference in foster care cases is misunderstands *Castro*, which merely provides: "[T]he test to be applied under *Kingsley* must require a *pretrial detainee* who asserts a due process claim for failure to protect to prove more than negligence but less than subjective intent—something akin to reckless disregard." 833 F.3d at 1071 (emphasis added).

[96]    *Momox-Caselis*, 987 F.3d at 845.

Reply in Support of Defendants' Motion to Dismiss                    Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                                          Page 21 of 31

Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 23 of 33

indifference fail to specify any specific instances of deliberate indifference, let alone link those allegations to any Named Plaintiff.[97] Plaintiffs also fail to explain why the complaint's factual allegations "shocked the conscience."[98] In short, Plaintiffs' generalized allegations (*e.g.*, harms are perpetuated by "failing to implement standardized referral processes for services"[99]) do not satisfy pleading standards and should be dismissed.

## IV. The right to familial association claim (Count II) is not properly pleaded.

Plaintiffs allege a right to a "permanent family" under the First and Ninth Amendments,[100] but they ignore *Mullins v. Oregon*, which held there is no "affirmative right to create an entirely new family unit out of whole cloth."[101] They cite no law to support their assertion that states assume an affirmative obligation to restore the family unit when it removes children.[102] And none of their cases—including *Kenny A. v. Perdue*[103]— establish a right to a permanent family. Accordingly, Count II should be dismissed.

## V. Plaintiffs failed to state a claim under ICWA (Count IV).

Plaintiffs admit the cause of action created by the Indian Child Welfare Act (ICWA)

---

[97]     Dkt. 30, pp. 50-51. For instance, Plaintiffs defend the alleged "right to protection from unnecessary intrusions into the child's emotional wellbeing" by selectively quoting from *Wyatt B.* But what *Wyatt B.* actually says is: "The state must provide food, shelter, clothing, medical care, supervision and must, *to the best of its ability under the circumstances*, shield the children in their custody from physical and psychological harm." 2021 WL 4434011, at *8. Plaintiffs did not point to any allegations that the State, to the best of its ability under the circumstances, failed to shield one of the Named Plaintiffs from physical or psychological harm.

[98]     *See, e.g.*, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-50 (1998).

[99]     Dkt. 30, p. 51.

[100]     Am. Compl. ¶ 271.

[101]     57 F. 3d 789, 794 (9th Cir. 1995).

[102]     Dkt. 30, p. 56.

[103]     218 F.R.D. 277 (N.D. Ga. 2003).

Reply in Support of Defendants' Motion to Dismiss          Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*          Page 22 of 31

Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 24 of 33

cannot be used "to enforce violations of § 1915," but they argue their § 1915 claims are still viable because they are seeking to enforce the provision via 42 U.S.C. § 1983 instead.[104] But, as Plaintiffs acknowledge,[105] a claim alleging a violation under federal law may not be brought under § 1983 if Congress has "foreclosed a 1983 remedy."[106]

Congress may foreclose a § 1983 remedy either expressly or "by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."[107] To determine whether Congress did this for a violation of a federal right created by statute, courts look to "the remedial devices provided in [the] particular Act."[108] When Congress provides "an express, private means of redress in the statute itself," that provision "is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983."[109] Such an inference may be overcome "by textual indication, express or implicit, that the remedy is to complement, rather than supplant, § 1983."[110] As the Ninth Circuit summarized, "when Congress creates a right by enacting a statute but at the same time limits enforcement of that right through a specific remedial

---

[104]    Dkt. 30, p. 58.

[105]    *Id.* at 57.

[106]    *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19-21 (1981).

[107]    *Blessing v. Freestone*, 520 U.S. 329, 341 (1997); *see also Smith v. Robinson*, 468 U.S. 992 (1984), *superseded on other grounds by statute as recognized in Fry v. Napoleon Community Schools*, 580 U.S. 154 (2017) (holding § 1983 was precluded when the statute established a "comprehensive" set of "detailed procedural safeguards," including procedures to "ensure that hearings conducted by the State are fair and adequate" and "a right to judicial review").

[108]    *Nat'l Sea Clammers*, 453 U.S. at 20.

[109]    *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 121 (2005).

[110]    *Id.* at 122.

Reply in Support of Defendants' Motion to Dismiss          Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                              Page 23 of 31
Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 25 of 33

scheme that is narrower than § 1983, a § 1983 remedy is precluded."[111]

By enacting § 1914, Congress provided in ICWA an express, private means of redress in the statute itself that is narrower than § 1983, in that it only authorizes judicial review for alleged violations of §§ 1911, 1912, and 1913. There is no "textual indication" that § 1914 is intended "to complement, rather than supplant, § 1983." To the contrary, as other courts have explained in recognizing congressional intent to foreclose a § 1983 remedy, ICWA establishes a "comprehensive" set of "detailed procedural safeguards" that Congress designed to effectively protect Indian children and tribes, and Congress provided an express right to judicial review to remedy violations of those procedures only.[112] This shows that Congress intended to preclude attempts to seek relief through § 1983 for alleged violations of ICWA that are not covered by § 1914's express cause of action.

That federal Indian law instructs courts to interpret ambiguities in favor of Indians does not mean courts are free to ignore explicit limitations federal Indian law statutes impose on their jurisdiction.[113] And although other courts have concluded that Section 1914 does not preclude a Section 1983 remedy for violations of the specific provisions that fall within Section 1914's express cause of action,[114] no case holds a Section 1983 remedy is

---

[111]    *Stilwell v. City of Williams*, 831 F.3d 1234, 1244 (9th Cir. 2016).

[112]    *See Smith*, 468 U.S. at 1012-13; *see also* 25 U.S.C. §§ 1901, 1902.

[113]    *See Doe v. Mann*, 285 F. Supp. 2d 1229, 1241 (N.D. Cal. 2003) ("While this court is mindful that ambiguities in ICWA should be interpreted to benefit Indians, it seems clear from the text of section 1914 that Congress intended to provide a cause of action only for violations of three ICWA sections.").

[114]    *Native Vill. of Venetie IRA Council v. Alaska*, 155 F.3d 1150, 1153 (9th Cir. 1998) (tribes can bring Section 1983 claim to enforce sovereign interests protected by Section 1911(d)'s full faith and credit clause); *Belinda K. v. Cnty. of Alameda*, No. 10-CV-05797,

Reply in Support of Defendants' Motion to Dismiss                    Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                              Page 24 of 31

Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 26 of 33

available for alleged violations of provisions that are not covered by Section 1914.

Even if Congress had not precluded plaintiffs from pursuing Section 1915 claims under Section 1983, there is no federal right giving rise to an implied cause of action under Section 1915 through Section 1983, as several federal courts have held.[115] Three requirements must be met for a statute to create a private right enforceable under 1983:

(1) "Congress must have intended that the provision in question benefit the plaintiff";

(2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and

(3) "the statute must unambiguously impose a binding obligation on the States…in mandatory, rather than precatory, terms."[116]

Although Plaintiffs are correct that ICWA, including § 1915, is designed to benefit "Indian child[ren]," Plaintiffs failed to show that § 1915's placement preferences create individual rights that are not so "vague and amorphous" as to be judicially unenforceable or that those preferences impose binding obligations on States. Rather, the fact that § 1915's placement preferences are subject to tribal renegotiation,[117] and may be departed from for good cause, indicates the provision does *not* create the type of clear, unambiguous, and binding obligations that courts have interpreted as to give rise to federal rights, but

---

2011 WL 2690356, at *17 (N.D. Cal. July 8, 2011) (concluding on "a close question" that Indian parent could bring Section 1983 claim to enforce § 1912's right to counsel).

[115] *See* Dkt. 23, pp. 66-67 (citing cases).

[116] *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997) (internal citations omitted); *see also Gonzaga v. Doe*, 536 U.S. 273, 282-83 (2002).

[117] *See* § 1915(c).

Reply in Support of Defendants' Motion to Dismiss                 Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                              Page 25 of 31
Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 27 of 33

instead it merely "express[es] a congressional preference for certain kinds of treatment."[118]

Plaintiffs assert that if there is no claim under § 1915, Indian children "would be left without a remedy."[119] But children and Tribes can challenge placements in CINA cases, and in any event, § 1983 "does not provide an avenue for relief every time a state actor violates a federal law."[120] They can also go to federal court and seek relief for violations of §§ 1911, 1912, and 1913's procedural protections. That Congress did not grant a similar right to challenge a State's compliance with § 1915's mandatory yet yielding placement preferences shows there is no judicially enforceable, individual federal right to compliance.

## VI.    Plaintiffs' ADA and Rehabilitation Act claims should be dismissed.

Plaintiffs' argue they have "adequately alleged discrimination" in violation of the ADA and the Rehabilitation Act "resulting from Defendants' failure to offer reasonable modifications to existing foster care programs." Dkt. 30, at 63. But the Complaint contains no allegations about any Plaintiff purporting to represent the "ADA Subclass" making any request for reasonable modification, nor any allegation that Defendants refused reasonably modify their policies and practices to accommodate their disabilities.

Plaintiffs cite the general assertion in Count VI that Defendants have not afforded them "an equal opportunity to take advantage" of certain types of services, including in-home safety plans, health care screenings, and respite care.[121] But the Complaint alleges

---

[118]    *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989) (quoting *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 19 (1981)).
[119]    *See* Dkt. 30, p. 59.
[120]    *Rancho Palos Verdes*, 544 U.S. at 119.
[121]    Dkt. 30, p. 66 (citing Am. Compl., ¶ 306).

Reply in Support of Defendants' Motion to Dismiss                    Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                                      Page 26 of 31
Case 3:22-cv-00129-JMK    Document 38    Filed 10/14/22    Page 28 of 33

no inadequacies in any of the Named Plaintiffs' in-home safety plans.[122] Nor does it allege

inadequacies in any of their health care screenings or respite care, other than a single

statement that George V. receives it as a Medicaid service (¶84). In short, the allegations

about the Named Plaintiffs (which are all that matter now) fail to state an ADA claim.[123]

Plaintiffs also have not "adequately alleged violations of the integration mandate

based on a risk of future placement in institutions or other overly restrictive settings."[124]

In insisting that they have, Plaintiffs mischaracterize Defendants' argument – as does the

Department of Justice (DOJ), in its Statement of Interest – to say that "risk of future

institutionalization" does not violate the ADA.[125] But that is not Defendants' argument.

---

[122]     The only allegations Plaintiffs cite about inadequacies relating to in-home safety plans, health care screenings, or respite relate to Jeremiah M. (¶¶ 42 and 44 of the First Amended Complaint). But even Rule 8's liberal pleadings standards do not support Plaintiffs' suggestion that the allegation that Jeremiah M. was removed from his mother's care "after his non-custodial father visited the family while intoxicated and his mother was subsequently evicted" should be read to allege, as they now claim, that Defendants did not explore an in-home safety plan "likely because of his disabilities and because of prejudiced notions about the difficulty of parenting children with disabilities," Dkt. 30, at 67. There simply is no connection between the allegation in the Complaint and the assertion in the brief, but even if there were, "[f]actual allegations must be enough to raise a right to relief above the speculative level" in order to survive a motion to dismiss. *Twombly*, 550 U.S. at 545. In any event, in-home safety plans are not, as Plaintiffs appear to believe, an obligation to find a parent a home. Rather, they are plans to protect a child from abuse and other safety threats within a home. *See* OCS, Child Protection Services Manual, at 468-70 (2022), available                                                 at: https://aws.state.ak.us/OnlinePublicNotices/Notices/Attachment.aspx?id=135698.

[123]     Paragraph 306 of the Complaint also alleges denial of equal opportunity to "[t]imely delivery of behavioral healthcare and other disability-related community-based services". To the extent this is a claim of inadequate health care, that is not an ADA violation, for the reasons given in the Motion to Dismiss at pp. 66-68. To the extent it is a claim of risk of unjustified institutionalization, Defendants address that below.

[124]     Dkt. 30, p. 67.

[125]     Dkt. 30, pp. 67-68.

Reply in Support of Defendants' Motion to Dismiss         Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                         Page 27 of 31
Case 3:22-cv-00129-JMK    Document 38    Filed 10/14/22    Page 29 of 33

Rather, Defendants pointed out that "the Complaint does not allege any facts to support a claim of 'unjustified isolation' of any Named Plaintiff." Dkt. 23, p. 68. Plaintiffs now appear to argue that their theory of a violation of the "integration mandate" is that the Named Plaintiffs are "at risk of future placement in institutions." But the Sixth and Seventh Causes of Action in the First Amended Complaint refer only to "placing foster children with disabilities in institutions" and failing to place foster children "in the most home-like, least restrictive setting appropriate," not "risk of future placements in institutions."[126]

Finally, the Complaint failed to allege facts with respect to each Named Plaintiffs sufficient to support a claim of "risk of future institutionalization" or any other violation of the integration mandate. Of the 13 members of the ADA subclass, Plaintiffs make no allegation that 12 of them – Jeremiah H., Hannah H., Hunter H., Connor B., David V., George V., Lawrence V., Karen V., Damien V., Rachel T., Eleanor T., or Lana H. – are at any risk of future placement in institutions or other restrictive settings. While Plaintiffs allege Gayle T. may be moved back to a treatment center if she "misbehaves or runs away," they fail to allege she is not receiving needed community-based services that would assist her in avoiding that behavior.[127] Instead, Plaintiffs allege Gayle T. was not provided assistance in arranging treatment for a back injury (which presumably would not be the cause of any future institutionalization risk).[128] Plaintiffs' (and DOJ's) argument that a risk of institutionalization is sufficient to state a claim under the ADA is thus irrelevant as to

---

[126]   *See, e.g.*, Am. Compl., ¶¶ 298-315.
[127]   *Id*. at ¶ 123.
[128]   *Id*. at ¶ 121.

Reply in Support of Defendants' Motion to Dismiss          Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                              Page 28 of 31
Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 30 of 33

whether *these Named* Plaintiffs have alleged such a claim. They have not.[129]

**VII.    Count V should be dismissed because Section 672(a) does not require Defendants to make foster care maintenance payments to all families with whom a child is placed.**

Section 672(a) requires States to make foster care maintenance payments to two categories of families: (1) families "licensed by the State"; and (2) families "approved, by the agency of such State having responsibility for licensing homes of this type, as meeting the standards established for such licensing."[130]

Here, Plaintiffs do not allege Defendants failed to make foster care maintenance payments to foster families "licensed by the State" or to families "approved…as meeting the standards established for such licensing."[131] Instead, they contend § 672(a) requires the State to make maintenance payments to any family with whom OCS places a child.[132] Plaintiffs' argument fails because it conflates OCS's approval of a foster child's placement with OCS's approval of a family "as meeting the standards established for…licensing."[133]

OCS sometimes places children with families who have neither been licensed nor "approved" by OCS as meeting the licensing standards.[134] For example, if a child is

---

[129]    Plaintiffs and DOJ refer to allegations in the Complaint that two other Named Plaintiffs – George V. and Lana H. – were previously placed in institutions as sufficient to support a claim of "unjustified isolation" in violation of the ADA. But this is a case for *injunctive* relief to enjoin *future* actions. Absent an allegation that they themselves face a risk of future unjustified institutional placement that can be remedied by an injunction, they have not stated a claim, and their claims should be dismissed.

[130]    § 672(a)(2)(c), (c).

[131]    *See* Dkt. 30, pp. 60-63.

[132]    *Id.* at 62.

[133]    § 672(a)(2)(c), (c).

[134]    § 672(a)(2)(c), (c); OCS, Child Protection Services Manual (OCS Manual), *supra*, §§ 2.6.1, 3.4(E)(2).

Reply in Support of Defendants' Motion to Dismiss                    Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                                              Page 29 of 31

Case 3:22-cv-00129-JMK    Document 38    Filed 10/14/22    Page 31 of 33

removed due to abuse, OCS may immediately place her with a "kinship" family (*e.g.*, grandparents) that is not licensed as a foster family. OCS encourages and will work with a family to get licensed, but that takes time, and many kinship families do not want to become formally licensed or approved.[135] Plaintiffs do not – and cannot – cite any language in § 672(a) requiring OCS to make foster care maintenance payments to families who have not been "approved" by OCS "as meeting the standards established for…licensing," simply because OCS has approved placement with the family.

Plaintiffs also argue Defendants violated § 672(a) by "'failing to take necessary steps to ensure that relatives or community members who could appropriately provide homes for Plaintiff Kinship Subclass members…are licensed as kinship foster parents.'" But Plaintiffs fail to point to any language in § 672(a) requiring Defendants to "take necessary steps to ensure" kinship families.[136]

Recognizing § 672(a) is of no help, Plaintiffs claim Defendants violated § 671(a)(29)'s "due diligence" requirement.[137] But Plaintiffs brought a claim under on § 672(a), not 671(a)(29). Further, § 671(a)(29) relates to a state's efforts to identify and notify extended family members when a child is taken into foster care; § 671(a)(29) does not require states to make maintenance payments to foster or kinship families.[138]

---

[135]    While OCS encourages kinship families to become licensed, OCS permits them to forego licensing if they wish. OCS Manual, §§ 2.6.1, 3.4(E)(2). Kinship families may choose to forego licensing for any number of reasons, including because they do not wish to subject their home to another layer of government regulation.
[136]    *See* Dkt. 30, p. 61.
[137]    Dkt. 30, at 61 n.98.
[138]    42 U.S.C. § 671(a)(29).

Reply in Support of Defendants' Motion to Dismiss                    Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                                            Page 30 of 31
Case 3:22-cv-00129-JMK   Document 38   Filed 10/14/22   Page 32 of 33

Dated: October 14, 2022.

Respectfully submitted,

TREG R. TAYLOR
ATTORNEY GENERAL

*/s/ Christopher A. Robison*
Christopher A. Robison
Alaska Bar No. 2111126
Assistant Attorney General
Alaska Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
T: (907) 269-5275/F: (907) 276-3697
Email: chris.robison@alaska.gov

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

A true and correct copy of this Reply Brief was served on counsel of record for the

Plaintiffs via the CM/ECF system on October 14, 2022.

*/s/ Christopher A. Robison*
Christopher A. Robison

Reply in Support of Defendants' Motion to Dismiss          Case No. 3:22-cv-00129-JMK
*Jeremiah M. et al. v. Crum et al*                                              Page 31 of 31
Case 3:22-cv-00129-JMK    Document 38    Filed 10/14/22    Page 33 of 33