TREG TAYLOR
ATTORNEY GENERAL
Margaret Paton-Walsh (Alaska Bar No. 0411074)
Kate Demarest (Alaska Bar No. 1011074)
Christopher R. Robison (Alaska Bar No. 2111126)
Jennifer Teitell (Alaska Bar No. 2405054)
Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Telephone: (907) 269-5275; Facsimile: (907) 276-3697
Email: margaret.paton-walsh@alaska.gov
kate.demarest@alaska.gov
chris.robison@alaska.gov
jennifer.teitell@alaska.gov
Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Jeremiah M., *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>Kim Kovol, *et al.*,<br><br>    Defendants. | Case No.: 3:22-cv-00129-SLG<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNT THREE** |

This case is a wide-ranging challenge to the State of Alaska's child protection system. Count Three of the Amended Complaint alleges violations of the Adoption Assistance and Child Welfare Act (CWA), 42 U.S.C. § 670 *et seq.*[1] The plaintiffs contend that the CWA grants them federal statutory rights, enforceable through a § 1983 action, to prompt petitions to terminate their parents' rights and to particular placements and services. [Dkt. 16 ¶ 279] The CWA, however, grants no such rights.

---

[1]     The CWA is also known as Part IV-E of the Social Security Act.

Instead, the CWA is programmatic in structure and purpose—it imposes conditions on states in exchange for federal funding. States must produce plans to the Secretary of Health & Human Services so that the Secretary can evaluate how case planning will be done and how children's statuses will be reviewed during their time in the state's custody. 42 U.S.C. § 671(a)(16). If the Secretary approves the state's plan, the state must then develop a case review system that substantially complies with the CWA. *See* 42 U.S.C. § 1320a-2a. The Secretary's scrutiny focuses on the program at a system-wide level, not on individual children. And the Secretary reviews the state's program for purposes of granting funds, not securing individual rights. 45 C.F.R. §§ 1355.35(c)(4), 1355.36(b).

The plaintiffs, citing *Henry A. v. Willden*[2] offer these statutes as sources of individual rights enforceable through § 1983. [Dkt. 16 ¶ 280] But in 2023, the Supreme Court made clear the type of language required to create individually enforceable "rights": a statute must contain plain text and structure that unambiguously reflects that intent.[3] Tools of statutory construction distinguish between language that creates rights, which has an unmistakable focus on the individual, and programmatic language, which is directed at the regulator. Applying these principles, the CWA is not an individual rights-creating statute.

---

[2]     678 F.3d 991 (9th Cir. 2012).

[3]     *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023).

*Jeremiah M., et al. v. Kovol, et al.*          Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3      Page 2 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 2 of 31

# BACKGROUND

## I.     The Adoption Assistance and Child Welfare Act.

Count Three of the complaint makes a series of claims under the CWA. The statute appropriates federal funding to "enabl[e] each State to provide, in appropriate cases, foster care and transitional independent living programs for children . . . , adoption assistance for children with special needs, kinship guardianship assistance, and prevention services or programs."[4] 42 U.S.C. § 671 provides that "[i]n order for a State to be eligible for payments under [the CWA], it shall have a plan approved by the Secretary" and then lays out 37 required "features" of a state plan.[5]

One "feature" relevant here (located in § 671(a)(16)) requires that the State plan:

> provide[] for the development of a case plan (as defined in section 675(1) of this title and in accordance with the requirements of section 675a of this title) for each child receiving foster care maintenance payments under the State plan and provides for a case review system which meets the requirements described in sections 675(5) and 675a of this title with respect to each such child.[6]

Another "feature" (located in § 671(a)(22)) requires that the State plan:

> provide[] that, not later than January 1, 1999, the State shall develop and implement standards to ensure that children in foster care placements in public or private agencies are provided quality services that protect the safety and health of the children.[7]

---

[4]      42 U.S.C. § 670.

[5]      *Id.* § 671(a)(1)-(37).

[6]      *Id.* § 671(a)(16).

[7]      *Id.* § 671(a)(22).

*Jeremiah M., et al. v. Kovol, et al.*                                    Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                    Page 3 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 3 of 31

42 U.S.C. § 675(1) explains that a "case plan" includes seven different components, some involving multiple subparts. These include a "description of the type of home or institution in which a child is to be placed,"[8] a "plan for assuring that the child receives safe and proper care and that services are provided to the parents, child, and foster parents,"[9] the child's "health and education records,"[10] and a "plan for ensuring the educational stability of the child while in foster care."[11] A "case review system" is "a procedure for assuring" a variety of things, including, for example, that "each child has a case plan";[12] that certain "procedural safeguards" and notice requirements are met;[13] and that children receive assistance transitioning to independence as they reach adulthood.[14]

Several other statutory provisions direct how the Secretary will evaluate a state's compliance with these CWA requirements and determine payments. 42 U.S.C. § 1320a-2a requires the Secretary to "promulgate regulations for review of such programs to determine whether such programs are in substantial conformity with (1) State plan requirements under . . . parts B and E [of subchapter IV], (2) implementing regulations promulgated by the Secretary, and (3) the relevant approved State plans."[15] And if a state

---

[8]     *Id.* § 675(1)(A).

[9]     *Id.* § 675(1)(B).

[10]    *Id.* § 675(1)(C).

[11]    *Id.* § 675(1)(G).

[12]    *Id.* § 675(5)(A).

[13]    *Id.* § 675(1)(C), (G).

[14]    *Id.* § 675(1)(H), (I).

[15]    *Id.* § 1320a-2a(a).

*Jeremiah M., et al. v. Kovol, et al.*                    Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                    Page 4 of 31

Case 3:22-cv-00129-SLG    Document 119    Filed 10/28/24    Page 4 of 31

fails to substantially conform, the statute directs that federal matching funds be withheld in an amount "related to the extent of the failure to so conform."[16]

42 U.S.C. § 674(a) describes how the amount of funds to be paid to states should be calculated. And 42 U.S.C. § 674(d) provides for a reduction of payments to states—on top of that provided for in § 1320a-2a—if a State program "is found . . . to have violated . . . with respect to a person" either of two specified paragraphs of the State plan statute that are not at issue in this case (concerning race discrimination and extra-jurisdictional placements).[17] Section 674(d)(3) also includes an express private right of action for violations of the paragraph prohibiting race discrimination.[18]

## II.    The plaintiffs' CWA claims.

The plaintiffs assert seven claims under two separate subsections of 42 U.S.C. § 671(a), alleging that the CWA grants them "specific rights." [Dkt. 16 ¶ 278]

### A.    Claims under 42 U.S.C § 671(a)(16) and § 675(5): the case review system claims.

As described above, 42 U.S.C. § 671(a)(16) requires that to be eligible for federal funding, a state must have a "State plan" that, among other things, provides for a "case review system." 42 U.S.C. § 675(5) defines "case review system" to mean "a procedure for assuring that" a list of goals are pursued, including that:

---

[16]    *Id.* § 1320a-2a(b)(3).

[17]    *Id.* § 674(d)(1).

[18]    *Id.* § 674(d)(3) ("Any individual who is aggrieved by a violation of section 671(a)(18) by a State or other entity may bring an action seeking relief from the State or other entity in any United States district court.").

(A) each child has a case plan designed to achieve placement in a safe setting that is the least restrictive (most family like) and most appropriate setting available and in close proximity to the parents' home, consistent with the best interest and special needs of the child, which--

> **(i)** if the child has been placed in a foster family home or child-care institution a substantial distance from the home of the parents of the child, or in a State different from the State in which such home is located, sets forth the reasons why such placement is in the best interests of the child, and

> **(ii)** if the child has been placed in foster care outside the State in which the home of the parents of the child is located, requires that, periodically, but not less frequently than every 6 months, a caseworker on the staff of the State agency of the State in which the home of the parents of the child is located, of the State in which the child has been placed, or of a private agency under contract with either such State, visit such child in such home or institution and submit a report on such visit to the State agency of the State in which the home of the parents of the child is located.

The plaintiffs assert that this provision gives them federal statutory rights to "placement in the least restrictive and most family-like setting, closest to their home community that conforms to nationally recommended professional standards"; [Dkt. 16 ¶ 279(a)] and to "a case review system in which each child has a case plan designed to achieve safe and appropriate foster care placements in the least restrictive and most family-like setting, close to their home community." [Dkt. 16 ¶ 279(f)]

Subsection (E) of 42 U.S.C. § 675(5) further defines "case review system" to mean "a procedure for assuring that":

(E) in the case of a child who has been in foster care under the responsibility of the State for 15 of the most recent 22 months . . . the State shall file a petition to terminate the parental rights of the child's parents (or, if such a petition has been filed by another party, seek to be joined as a party to the

*Jeremiah M., et al. v. Kovol, et al.*                          Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3          Page 6 of 31

Case 3:22-cv-00129-SLG          Document 119          Filed 10/28/24          Page 6 of 31

petition), and, concurrently, to identify, recruit, process, and approve a qualified family for an adoption, unless--

> **(i)** at the option of the State, the child is being cared for by a relative;
>
> **(ii)** a State agency has documented in the case plan (which shall be available for court review) a compelling reason for determining that filing such a petition would not be in the best interests of the child; or
>
> **(iii)** the State has not provided to the family of the child, consistent with the time period in the State case plan, such services as the State deems necessary for the safe return of the child to the child's home, if reasonable efforts of the type described in section 671(a)(15)(B)(ii) of this title are required to be made with respect to the child.

The plaintiffs assert that this provision gives them a federal statutory "right to have a petition to terminate parental rights filed if the child has been in foster care for 15 out of the last 22 months, unless doing so goes against the best interest of the child as documented in the case record, or subject to a statutory exemption." [Dkt. 16 ¶ 279(g)]

## B.     Claims under 42 U.S.C. § 671(a)(16) and 675(1): the case plan claims.

42 U.S.C. § 675(1)(A) provides that "case plan" means a "written document" that includes, among other things:

> (A) A description of the type of home or institution in which a child is to be placed, including a discussion of the safety and appropriateness of the placement and how the agency which is responsible for the child plans to carry out the voluntary placement agreement entered into or judicial determination made with respect to the child in accordance with section 672(a)(1) of this title.

The plaintiffs assert that this provision gives them a federal statutory right to "a written case plan that includes a plan to provide safe, appropriate and stable placements."

[Dkt. 16 ¶ 679(c)]

*Jeremiah M., et al. v. Kovol, et al.*                                    Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                Page 7 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 7 of 31

42 U.S.C. § 675(1)(B) further provides that a "case plan" includes:

> (B) A plan for assuring that the child receives safe and proper care and that services are provided to the parents, child, and foster parents in order to improve the conditions in the parents' home, facilitate return of the child to his own safe home or the permanent placement of the child, and address the needs of the child while in foster care, including a discussion of the appropriateness of the services that have been provided to the child under the plan. With respect to a child who has attained 14 years of age, the plan developed for the child in accordance with this paragraph, and any revision or addition to the plan, shall be developed in consultation with the child and, at the option of the child, with up to 2 members of the case planning team who are chosen by the child and who are not a foster parent of, or caseworker for, the child. A State may reject an individual selected by a child to be a member of the case planning team at any time if the State has good cause to believe that the individual would not act in the best interests of the child. One individual selected by a child to be a member of the child's case planning team may be designated to be the child's advisor and, as necessary, advocate, with respect to the application of the reasonable and prudent parent standard to the child.

The plaintiffs assert that this provision gives them federal statutory rights to "a written case plan that ensures that the child receives safe and proper care while in foster care and implementation of that plan," [Dkt. 16 ¶ 279(d)] and to "a written case plan that ensures provision of services to parents, children, and foster parents to facilitate reunification, or where that is impossible, the permanent placement of the child and implementation of that plan." [Dkt. 16 ¶ 279(e)]

### C.     Claim under 42 U.S.C. § 671(a)(22): the services claim.

Finally, 42 U.S.C. § 671(a)(22) requires that to be eligible for federal funding, a state must have a "State plan" providing that "not later than January 1, 1999, the State shall develop and implement standards to ensure that children in foster care placements in public or private agencies are provided quality services that protect the safety and health

*Jeremiah M., et al. v. Kovol, et al.*                                          Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                Page 8 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 8 of 31

of the children." The plaintiffs assert that this provision gives each child a federal statutory right to "access to quality services to protect his or her safety and health." [Dkt. 16 ¶ 279(b)]

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[19] A motion for summary judgment may present issues comprised solely of questions of law.[20] Determining whether a statute includes a private right of action is solely a question of law.[21]

## ARGUMENT

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[22] The plaintiffs allege that the CWA grants them federal statutory rights that they may enforce under Section 1983. [Dkt. 16 ¶ 280] But the CWA "establishes a federal reimbursement program,"[23] and in statutes "enacted pursuant to the spending power, the typical remedy for state

---

[19]     Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

[20]     *Asuncion v. Dist. Dir. of U.S. Immigr. & Naturalization Serv.*, 427 F.2d 523, 524 (9th Cir. 1970).

[21]     *In re Sankey*, 307 B.R. 674, 677 (D. Alaska 2004) (statutory construction is a question of law).

[22]     *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

[23]     *Suter v. Artist M.*, 503 U.S. 347, 350-51 (1992).

*Jeremiah M., et al. v. Kovol, et al.*                                      Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                          Page 9 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 9 of 31

noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State."[24] For such statutes to create rights enforceable under § 1983, the Supreme Court "sets a demanding bar: Statutory provisions must unambiguously confer individual federal rights."[25] If that bar is met, "the right is presumptively enforceable by § 1983,"[26] but the presumption may be rebutted by a showing that "Congress shut the door to private enforcement either expressly, through 'specific evidence from the statute itself,' or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."[27]

## I.     Recent Supreme Court cases set a high bar for finding private rights of action.

For many years, district and circuit courts applied a three-part test found in *Blessing v. Freestone* to determine whether a federal statute creates individual rights enforceable under § 1983.[28] *Blessing* required that Congress "intended that the provision in question benefit the plaintiff," that the plaintiff "demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence," and that "the provision giving rise to the asserted right . . . be

---

[24]     *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 28 (1981)).

[25]     *Talevski*, 599 U.S. at 180.

[26]     *Gonzaga*, 536 U.S. at 284.

[27]     *Id*. at 285 n.4.

[28]     520 U.S. 329, 340-41 (1997).

*Jeremiah M., et al. v. Kovol, et al.*                                    Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                    Page 10 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 10 of 31

couched in mandatory, rather than precatory terms."[29] However, the Supreme Court recently rejected the *Blessing* test as insufficiently "stringent."[30]

First, in *Gonzaga University v. Doe*, the Supreme Court acknowledged that "[s]ome language in our opinions might be read to suggest that something less than an unambiguously conferred right is enforceable by § 1983," pointing specifically to *Blessing*[31] as a source of this confusion.[32] The Court said the "confusion has led some courts to interpret *Blessing* as allowing plaintiffs to enforce a statute under § 1983 so long as the plaintiff falls within the general zone of interest that the statute is intended to protect."[33] But *Gonzaga* expressly "reject[ed] the notion that [the] cases permit anything short of an unambiguously conferred right" to support a private right of action.[34]

Then in 2023, the Supreme Court reaffirmed *Gonzaga*'s "unambiguous conferral" requirement in *Health & Hospital Corporation of Marion County. v. Talevski*.[35] That case explains that "[c]ourts must employ traditional tools of statutory construction to assess whether Congress has 'unambiguously conferred' 'individual rights upon a class of

---

[29]    *Id.* (internal quotation marks omitted).

[30]    *Talevski*, 599 U.S. at 186.

[31]    520 U.S. 329.

[32]    *Gonzaga*, 536 U.S. at 282.

[33]    *Id*. at 283.

[34]    *Id*.; *see also*, *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 330 n. (2015) (interpreting *Gonzaga* as "expressly rejecting the notion . . . that [the Supreme Court's] cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." (internal quotation marks omitted))

[35]    *Talevski*, 599 U.S. at 183.

*Jeremiah M., et al. v. Kovol, et al.*                                    Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3          Page 11 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 11 of 31

beneficiaries' to which the plaintiff belongs."[36] The "*Gonzaga* test" finds an enforceable

right when "the provision in question is 'phrased in terms of the persons benefited,' and

contains 'rights-creating,' individual-centric language with an 'unmistakable focus on the

benefited class.'"[37]

Consideration of the statutes in question in *Gonzaga* and *Talevski* illuminates just

how high the bar created by this "rights-creating" language requirement is. In *Gonzaga*,

the Court held that a particular provision of the Family Educational Rights and Privacy

Act (FERPA) was not enforceable by § 1983.[38] Even though FERPA contained "rights-

creating language in the title and the text of the Act,"[39] the absence of any reference to

rights or a focus on the individual in the *specific provisions* at issue led the Court to find

that the statute did not unambiguously confer enforceable rights.[40] The Court explained

that those specific provisions "lack the sort of 'rights-creating' language critical to

showing the requisite congressional intent to create new rights."[41] "Unlike the

individually focused terminology" of other provisions that said things like "[n]o

person . . . shall . . . be subjected to discrimination," the provisions at issue spoke "only to

---

[36]     *Id.*

[37]     *Id.*

[38]     *Gonzaga*, 536 U.S. at 279 ("[W]e have never before held, and decline to do so here, that spending legislation drafted in terms resembling those of FERPA can confer enforceable rights.").

[39]     *Id.* at 293 (Stevens, J. dissenting).

[40]     *Id.* at 290.

[41]     *Id.* at 287.

*Jeremiah M., et al. v. Kovol, et al.*                    Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                    Page 12 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 12 of 31

the Secretary of Education, directing that '[n]o funds shall be made available' to any 'educational agency or institution' which has a prohibited 'policy or practice.'"[42]

In *Talevski*, by contrast, the Court held that specific provisions of the Federal Nursing Home Reform Act (FNHRA) *did* create enforceable rights.[43] The Court observed that the FNHRA provisions at issue in that case "both reside" in a statutory section that "expressly concerns '[r]equirements *relating to residents' rights*,'" reasoning that "[t]his framing is indicative of an individual 'rights-creating' focus."[44] And the text of each provision explicitly referred to residents' rights. One required nursing homes to "protect and promote . . . *[t]he right* to be free from . . . any physical or chemical restraints imposed for purposes of discipline or convenience and not required to treat *the resident's* medical symptoms."[45] The other was "[n]estled in a paragraph concerning 'transfer and discharge *rights*,'" telling facilities that they "'must not transfer or discharge [a] *resident* unless certain preconditions are met."[46]

The *Talevski* court summarized "*Gonzaga*'s stringent standard," as applied to FNHRA, concluding that the provisions "use clear 'rights-creating language,' speak 'in terms of the persons benefited,' and have an 'unmistakable focus on the benefited class,'"

---

[42]     *Id.*

[43]     *Talevski*, 599 U.S. at 180.

[44]     *Id.* at 184 (emphasis added by the court).

[45]     *Id.* (emphasis added by the court).

[46]     *Id*. at 184–85 (emphasis added by the court).

*Jeremiah M., et al. v. Kovol, et al.*          Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3          Page 13 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 13 of 31

making them "presumptively enforceable under § 1983."[47] Under *Gonzaga* and *Talevski*, therefore, a statute is presumptively enforceable under § 1983 only if it uses "rights creating language," speaks "in terms of the persons benefited," and has an "unmistakable focus on the benefited class."[48] That presumption may be rebutted by a showing that "Congress shut the door to private enforcement either expressly, through 'specific evidence from the statute itself,' or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."[49]

The Amended Complaint cites *Henry A. v. Willden*, a 2012 Ninth Circuit case that applied *Blessing* to find that the case plan provisions of the CWA created a privately enforceable right of action.[50] But *Willden* cannot be considered good law because its reasoning is irreconcilable with the intervening Supreme Court precedent of *Talevski*.[51]

*Willden* superficially acknowledged that *Gonzaga* "clarified that the first prong of the *Blessing* test is meant to determine whether Congress 'unambiguously conferred' a federal right" which "requires 'rights-creating' language."[52] But after *Talevski*, there can

---

[47]     *Id*. at 186.

[48]     *Id*.

[49]     *Gonzaga*, 536 U.S. at 285 n.4.

[50]     *Henry A. v. Willden*, 678 F.3d 991, 1008 (9th Cir. 2012).

[51]     *See Miller v. Gammie*, 335 F.3d 889, 892 (9th Cir. 2003).

[52]     *Willden*, 678 at 1005.

*Jeremiah M., et al. v. Kovol, et al.*                          Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3          Page 14 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 14 of 31

be no doubt that *Willden*'s lip service to the *Gonzaga* standard was a misapplication of the Supreme Court's instruction.[53]

Willden* said that *Gonzaga*'s "unambiguous conferral" directive to look for "rights-creating language," meant only that the text of the statute "must be phrased in terms of the persons benefited."[54] Rather than understanding *Gonzaga* as a wholesale rejection of *Blessing*'s first factor, the *Willden* court simply substituted "phrased in terms of the persons benefited"[55] for *Blessing*'s "Congress must have intended that the provision in question benefit the plaintiff."[56] That adjustment to *Blessing* is no adjustment at all.

Gonzaga* requires much more than this rewording of *Blessing*, as should be apparent from its bottom line: that FERPA, i.e. the Family Educational *Rights* and Privacy Act,[57] created no enforceable federal rights in its nondisclosure provisions. As *Talevski* explains: "the *Gonzaga* test is satisfied where the provision in question is 'phrased in terms of the persons benefited' *and* contains 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class.'"[58]

---

[53]     *Talevski*, 599 at 183.

[54]     *Willden*, 678 F.3d at 1005.

[55]     *Id*.

[56]     *Blessing*, 520 U.S. at 340.

[57]     20 U.S.C. § 1232(g) (emphasis added).

[58]     *Talevski*, 599 U.S. at 183 (emphasis added).

*Jeremiah M., et al. v. Kovol, et al.*                              Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                Page 15 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 15 of 31

*Talevski*'s explication of the *Gonzaga* test "is fundamentally inconsistent with the reasoning"[59] the Ninth Circuit applied in *Willden*, meaning that *Willden* is no longer good law. Although the bar for this Court to disregard circuit precedent is "high,"[60] it is met here. "The issues presented in the two cases need not be identical in order for the intervening higher authority to be controlling."[61] Where the Supreme Court has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable," district courts must follow the Supreme Court.[62] *Talevski* leaves no doubt that *Willden* misinterpreted *Gonzaga*. The Ninth Circuit's continued use of the *Blessing* test after *Gonzaga* has since been thoroughly undercut by *Talevski*.[63]

## II. The CWA does not create enforceable rights in Sections 671(a) and 675.

Applying the Supreme Court's modern test, the CWA does not create rights enforceable under § 1983. *Talevski* instructs that "[c]ourts must employ traditional tools of statutory construction to assess whether Congress has 'unambiguously conferred' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs."[64] Applying these tools to the CWA reveals that the specific provisions invoked here do not

---

[59]     *Miller*, 335 F.3d at 892.

[60]     *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013).

[61]     *Id*.

[62]     *Miller*, 335 F.3d at 900.

[63]     *Talevski*, 599 U.S. at 230-31 (2023) (Alito, J. dissenting) (noting that *Gonzaga* "reject[ed] the standard articulated in *Blessing v. Freestone*," and explaining, "[n]one of this is new ground . . . *Gonzaga* 'plainly repudiate[s] the ready implication of a § 1983 action that' our earlier decisions 'exemplified.'"); *accord Armstrong*, 575 U.S. at 330 n.

[64]     *Talevski*, 599 U.S. at 183.

*Jeremiah M., et al. v. Kovol, et al.*                                    Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                Page 16 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 16 of 31

"unambiguously confer" rights that foster children can enforce under § 1983. And even if this Court disagrees with the defendants about whether *Willden* remains binding authority, that case does not hold that the plaintiffs' specific CWA sections create private rights of action. Count 3 fares no better under *Willden* than under a principled application of *Talevski*.

### A.   Applying the correct *Talevski* standard, the CWA claims cannot survive.

On its face, the CWA's purpose is not to create new federal statutory rights for foster children, but rather to provide additional funding and federal oversight of state child welfare systems. The CWA provides for funding for states with a qualifying state plan [§§ 670-671], directs states to make foster care maintenance payments and adoption and guardianship assistance payments to families [§§ 672-73], provides additional funding to help foster children transition to adulthood [§ 677], explains how the amount of payments to the states will be calculated [§ 674], directs the Secretary to provide technical assistance to the states and collect data from them [§ 676], defines the statutory terms [§§ 675, 675a], and provides a "rule of construction" [§ 678].[65]

---

[65]   42 U.S.C. § 678 ("Nothing in this part shall be construed as precluding State courts from exercising their discretion to protect the health and safety of children in individual cases, including cases other than those described in section 671(a)(15)(d) of this title.").

*Jeremiah M., et al. v. Kovol, et al.*                                        Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                      Page 17 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 17 of 31

The CWA contains multiple references to parental rights,[66] but refers to the "rights of the child" just once—in a provision not cited by the plaintiffs concerning foster children over the age of fourteen.[67] Simply put, the CWA does not contain the "rights-creating" language required by *Gonzaga* and *Talevski*—explicit references to rights.

The legislative history of the CWA further confirms that it does not unambiguously confer rights. In 1992, in *Suter v. Artist M.*, the Supreme Court considered whether § 671(a)(15)—one of the 16 required features of a State plan[68]— "unambiguously confer[red] upon the child beneficiaries of the Act a right to enforce the requirement that the State make 'reasonable efforts' to prevent a child from being removed from his home, and once removed to reunify the child with his family[.]"[69] The Court concluded that it did not, reasoning that § 671(a) simply required the states to have "a plan approved by the Secretary which contains the . . . listed features."[70]

Congress responded in 1994 by enacting the so-called "*Suter* fix," which notably did *not* say that Congress actually intended any part of § 671(a) (or the rest of the CWA)

---

[66]     *See e.g.*, 42 U.S.C. §§ 671(1)(15)(D)(iii), 672(f), 675(5)(C), 675(5)(E), 675(7), 675(12)(B).

[67]     42 U.S.C. § 675a(b) requires that a case plan for a foster child "who has attained 14 years of age shall include (1) a document that describes the rights of the child with respect to education, health, visitation, and court participation, the right to be provided with [certain specified documents like medical records] . . . and the right to stay safe and avoid exploitation."

[68]     Numerous amendments to the CWA have since increased the number of required features to 37.

[69]     *Suter v. Artist M.*, 503 U.S. 347, 357 (1992).

[70]     *Id*. at 359.

*Jeremiah M., et al. v. Kovol, et al.*                                         Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                 Page 18 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 18 of 31

to create rights enforceable by § 1983. Instead, Congress added convoluted language that preserved the outcome of *Suter* (i.e., that § 671(a)(15) is not privately enforceable) while disapproving aspects of the case's reasoning:

> In an action brought to enforce a provision of this chapter, such provision is not to be deemed unenforceable because of its inclusion in a section of this chapter requiring a State plan or specifying the required contents of a State plan. This section is not intended to limit or expand the grounds for determining the availability of private actions to enforce State plan requirements other than by overturning any such grounds applied in *Suter v. Artist M.*, 112 S.Ct. 1360 (1992), but not applied in prior Supreme Court decisions respecting such enforceability; provided, however, that this section is not intended to alter the holding in *Suter v. Artist M.* that section 671(a)(15) of this title is not enforceable in a private right of action.[71]

Even assuming, as the Second Circuit has reasoned, that "[i]t would have been pointless for Congress to" enact the *Suter* fix "if it did not contemplate that some provisions of the Act would support a private enforcement action,"[72] that does not mean that any language Congress included in the CWA actually meets "*Gonzaga*'s stringent standard,"[73] much less that the sections the plaintiffs rely on do. To the contrary, the *Suter* fix is striking in that it neither overturned the ultimate holding in *Suter* itself nor clarified Congress's intentions about any other provisions of the CWA. The "fix" provides courts no interpretive tools for discerning intent beyond looking at each provision's text, as *Gonzaga* and *Talevski* instruct.

---

[71]  42 U.S.C. § 1320a-2.

[72]  *N.Y. State Citizen's Coal. for Child. v. Poole*, 922 F.3d 69, 83 n.7 (2nd Cir. 2019).

[73]  *Talevski*, 599 U.S. at 186.

*Jeremiah M., et al. v. Kovol, et al.*                                  Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3          Page 19 of 31

Case 3:22-cv-00129-SLG    Document 119    Filed 10/28/24    Page 19 of 31

Further amendments demonstrate that Congress knows exactly how to *unambiguously* create a CWA cause of action when it wants to.[74] In 1996, Congress added a paragraph about racial discrimination to the State plan statute and explicitly made it privately enforceable. Paragraph (18) of 42 U.S.C. § 671(a) requires a State plan to provide that "the State" or "any other entity . . . that receives funds from the Federal Government and is involved in adoption or foster care placements" may not deny adoption or placement opportunity to "any person . . . on the basis of the race, color, or national origin of the person, or of the child involved."[75] When it added this paragraph to § 671(a), Congress also added to the enforcement provisions in § 674, *both* a financial penalty for violations (to be levied by the Secretary)[76] *and* a private right of action against "the State or other entity" for violations.[77]

If Congress had intended that the *entire* State plan statute—that is, all of 42 U.S.C. § 671(a)—should be enforceable by § 1983, or even that any provision other than paragraph (18) be so enforceable, it could and would have said so when it made these changes in 1996. The fact that it did not—either when it passed the *Suter* fix or at any

---

[74] *See*, *e.g.*, *Bittner v. United States*, 598 U.S. 85, 94 (2023) ("When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning (*expressio unius est exclusio alterius*).").

[75] *See* Pub. L. 104-188, § 1808, 110 Stat. 1903 (codified at 42 U.S.C. § 671(a)(18)).

[76] *See id.*; 42 U.S.C. § 674(b).

[77] 42. U.S.C. § 674(d)(3).

*Jeremiah M., et al. v. Kovol, et al.*                    Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                    Page 20 of 31

Case 3:22-cv-00129-SLG    Document 119    Filed 10/28/24    Page 20 of 31

time since—reinforces the conclusion that the statute lacks the unambiguous conferral of rights essential to sustain the plaintiffs' cause of action in Count 3.

The express standards for compliance laid out in the CWA provide further evidence that Congress did not intend for individual enforcement of § 671(a). 42 U.S.C. § 1320a-2a directs the Secretary to "promulgate regulations for the review of" programs to determine whether they "are *in substantial conformity with*" State plan requirements and the relevant approved State plans.[78] The statute also provides for ongoing federal review of state programs, an opportunity for failing states to "implement a corrective action plan, approved by the Secretary, designed to end the failure to conform," and withholding of federal matching funds if a "program fails substantially to so conform."[79] "Substantial conformity" is a measure of aggregate success; it does not require perfection in performance. But a statutory right enforceable by § 1983 *would* require perfection, because it would expose a state to liability for each individual alleged failure, regardless of whether the program overall is in "substantial conformity." Congress would not logically have intended to impose two such inconsistent enforcement standards.[80]

---

[78]    42 U.S.C. 1320a-2a (emphasis added.).

[79]    *Id.*

[80]    *Armstrong*, 575 U.S. at 331-32 ("[T]he explicitly conferred means of enforcing compliance with § 30(A) by the Secretary's withholding funding, § 1396c, suggests that other means of enforcement are precluded." (internal citations omitted)).

*Jeremiah M., et al. v. Kovol, et al.*                                      Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                 Page 21 of 31

Case 3:22-cv-00129-SLG    Document 119    Filed 10/28/24    Page 21 of 31

Thus, applying "traditional tools of statutory construction" as directed by *Talevski*[81]—i.e., "interpret[ing] statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous"[82]—compels the conclusion that Congress did not in the CWA "'unambiguously confer[]' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs."[83]

In particular, 42 U.S.C. § 671(a) and the associated definitions in § 675 lack the specific references to individual *rights* that were central to the Supreme Court's decisions in *Gonzaga* and *Talevski*. These sections focus on the "requisite features of [the] State plan"[84] rather than having an "unmistakable focus on the benefited class."[85] The *Suter* fix may direct courts not to find a CWA provision unenforceable *merely* because it is included in a section "requiring a State plan or specifying the required contents of a State plan,"[86] but that does not transform a statute describing the features of a State plan into one that has an "unmistakable focus on the benefited class" as *Talevski* requires.[87]

---

81     *Talevski*, 599 U.S. at 183.

82     *Shelby v. Bartlett*, 391 F.3d 1061, 1064 (9th Cir. 2004) (quoting *Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991)).

83     *Talevski*, 599 U.S. at 183.

84     42 U.S.C. § 671(a).

85     *Talevski*, 599 U.S. at 183.

86     42 U.S.C. 1320a-2.

87     *Talevski*, 599 U.S. at 183.

*Jeremiah M., et al. v. Kovol, et al.*           Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3       Page 22 of 31

Case 3:22-cv-00129-SLG    Document 119    Filed 10/28/24    Page 22 of 31

Finally, it is hard to see the CWA as sufficiently "unambiguous" to meet the high bar set by *Gonzaga* and *Talevski* when many courts find no personal rights in its language. The Ninth Circuit recently recognized that "inconsistent judicial rulings" can be caused by statutes that are "ambiguous or unclear."[88] And courts are split on whether the CWA creates rights enforceable by § 1983: some have held that certain specific provisions of the CWA create such rights,[89] while others have found no such rights in the statute.[90] In *Gonzaga*, the Supreme Court "made clear that unless Congress 'speak[s] with a clear voice,' and manifests an 'unambiguous' intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983."[91] The CWA fails to meet that "stringent standard."[92]

---

[88]     *Ratha v. Rubicon Res., LLC*, 111 F.4th 946, 959 (9th Cir. 2024).

[89]     *See e.g.*, *D.O. v. Glisson*, 847 F.3d 374, 381 (6th Cir. 2017); *Chong v. McManaman*, 154 F. Supp. 3d 1043, 1050 (D. Haw. 2015); *Connor B. v. Patrick*, 771 F. Supp. 2d 142, 172 (D. Mass. 2011); *Miss. Child Care Ass'n v. Martin*, 241 F. Supp. 2d 1032, 1042 (W.D. Mo. 2003).

[90]     *See e.g.*, *Midwest Foster Care & Adoption Ass'n v. Kincade*, 771 F.3d 1190, 1203 (8th Cir. 2013); *Alger v. County of Albany, New York*, 489 F. Supp. 2d 155, 158 (N.D.N.Y. 2006); *Carson P. ex rel. Foreman v. Heineman*, 240 F.R.D. 456, 541 (D. Neb. 2007); *T.F. by Keller v. Hennepin County*, No. 17-1826, 2018 WL 940621, at *6 (D. Minn. Feb. 16, 2018); *Jonathan R. v. Justice*, No. 3:19-CV-00710, 2023 WL 184960, at *15 (S.D.W. Va. Jan. 13, 2023).

[91]     *Gonzaga*, 536 U.S. at 280 (quoting *Pennhurst State Sch.l & Hosp. v. Halderman*, 451 U.S. 1, 17, 28 n.21 (1981)).

[92]     *Talevski*, 599 U.S. at 186.

*Jeremiah M., et al. v. Kovol, et al.*                                     Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                    Page 23 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 23 of 31

**B.**    *Willden* **does not control the outcome here because it does not address the plaintiffs' specific claims.**

Even if the court decides to apply *Willden*—which it should not—*Willden* did not hold that the specific CWA requirements invoked here created individually enforceable rights to certain *outcomes*—particular placements, provision of services to children and parents, safe and proper care, and early termination petitions—as plaintiffs' complaint suggests. *Willden* held that § 671(a)(16) "unambiguously requires the State to provide for the development of a case plan 'for each child.'"[93] But the Amended Complaint does not allege that the named plaintiffs lack case plans. [Dkt. 16 ¶¶ 40-140]

And although *Willden* recognized that courts "must examine each provision separately rather than the statute as a whole,"[94] the Ninth Circuit did not in fact "examine each provision" of § 675(1)'s definition of a case plan "separately." Indeed, it did not analyze the case plan definition at all. Instead the court simply noted that it had "held that another detailed definition in § 675 . . . satisfied the second *Blessing* prong," before summarily concluding that "§ 675(1) does as well."[95] In other words, because § 675(1) provides a detailed description of a case plan, the "requirement that each child have a case plan," that is, the requirement in § 671(a), is "not so vague and amorphous that its enforcement would strain judicial competence." *Willden* did *not*, however, identify

---

[93]    *Willden*, 678 F.3d at 1006 ("Count Eight of the complaint seeks injunctive relief for a class of children who have not received a case plan as required by the CWA.").

[94]    678 F.3d at 1007 n.8 (citing *ASW v. Oregon*, 424 F.3d 970, 977 (9th Cir. 2005)).

[95]    *Id.* at 1007.

*Jeremiah M., et al. v. Kovol, et al.*                                        Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                Page 24 of 31

Case 3:22-cv-00129-SLG    Document 119    Filed 10/28/24    Page 24 of 31

"rights-creating language" sufficient to satisfy the first *Blessing* factor in any of § 675(1)(A)-(G)'s case plan components.

The enforceable right *Willden* found is a right for each child to have a case plan, because the plaintiffs in that case alleged that they did not receive case plans.[96] The decision does not hold that the individual aspects of a case plan listed in § 675(1) create individually enforceable rights to have each of those elements successfully implemented, which is what the plaintiffs in this case contend. Instead, it analyzed the provisions of §§ 675(1) and (5) relating to children's records to reach the conclusion that *those provisions* created enforceable rights,[97] but it did not analyze any of the subsections of §§ 675(1) or (5) that plaintiffs rely on here. *Willden* thus does not control this case. The Ninth Circuit did not address the specific claims made here by the plaintiffs, much less did it hold that plaintiffs' "rights" extend to "implementation" of the case plan.[98] [Dkt. 16 ¶ 279(d), (e)[99]]

### 1. Case plan claims

Plaintiffs' case plan claims do not hold up under any iteration of the private right of action standard. The two elements of a case plan listed in section 675(1)(A) and (B) do not contain even the kind of "rights-creating language" that the Ninth Circuit sought in

---

[96]     *Id.* at 1006.

[97]     *Id*. at 1008-09.

[98]     *See* First Amended Complaint, Dkt. 16 ¶ 279.

[99]     Subparagraph 279(c) omits the language "and implementation of that plan" that appears in 279(d) and (e), but the defendants suspect that the omission was inadvertent.

*Jeremiah M., et al. v. Kovol, et al.*                                    Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                    Page 25 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 25 of 31

*Willden*—much less the kind required by *Gonzaga* and *Talevski*. The provisions do not "express a clear mandate by using the term 'shall'"—at least not with respect to the *outcomes* upon which the plaintiffs assert they may sue.[100] Nor are the listed items "unmistakably focused on the benefitted class, i.e., foster children."[101] Instead, section 675(1) is unmistakably focused on *the contents of a case plan*.

### 2. Case review system claims

The case review system claims in the plaintiffs' complaint similarly do not hold up under either modern or outdated precedent. The word "shall" does not appear in § 675(5)(A). Although that subsection includes the phrase "each child," upon which the *Willden* court placed unwarranted weight,[102] that right can extend at most to a right to a "case review system" that assures that "each child has a case plan *designed to achieve* [a safe] placement" in "the least restrictive . . . and most appropriate setting available."[103] This description of the features of a case review system does not create an individually enforceable right *to such a placement*.

---

[100]    42 U.S.C. 675(B) mandates that for children who are 14 or older, the plan "shall be developed in consultation with the child."  42 U.S.C. 675(1)(e) provides that a case plan will include "documentation of the steps the agency is taking to find an adoptive family or other permanent living arrangement for the child," and requires that "[a]t a minimum, such documentation *shall* include child specific recruitment efforts."

[101]    *Willden*, 678 F.3d at 1007.

[102]    *Id*.

[103]    42 U.S.C. 675(5)(A) (emphasis added).

*Jeremiah M., et al. v. Kovol, et al.*                                          Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                    Page 26 of 31

Case 3:22-cv-00129-SLG      Document 119      Filed 10/28/24      Page 26 of 31

Similarly, § 675(5)(E) cannot be read as creating a "right to have a petition to terminate parental rights filed if the child has been in foster care for 15 out of the last 22 months, unless doing so goes against the best interest of the child as documented in the case record, or subject to a statutory exemption." [Dkt. 16 ¶ 279(g)] *Willden* did not consider § 675(5)(E). The only reference to "rights" in § 675(5)(E) is to "parental rights." Thus, this claim fails the *Gonzaga* and *Talevski* standard.

The termination petition portion of the case review system claim also fails even the *Blessing* test. Although § 675(5)(E) uses the word "shall"—"the State shall file a petition to terminate the parental rights of the child's parents"—it contains three exceptions. A termination petition need not be filed at the 15-month mark if (1) "the child is being cared for by a relative"; (2) the State documents a compelling reason not to file a petition; or (3) "the State has not provided to the family of the child, consistent with the time period in the State case plan, such services as the State deems necessary for the safe return of the child to the child's home, if reasonable efforts . . . are required to be made with respect to the child."[104] These exceptions make clear that this aspect of a case review system is not "unmistakably" focused on a speedy permanency for children, but rather, asks states to design a case review system that balances that goal with other critical considerations, especially parents' competing rights to reasonable efforts and reunification. The provision as a whole does not support the plaintiffs' claim that children

---

[104]     42 U.S.C. § 675(5)(E).

*Jeremiah M., et al. v. Kovol, et al.*                                    Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                    Page 27 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 27 of 31

have an individually enforceable right to have a termination petition filed after 15 months in OCS custody "subject to a statutory exception." [Dkt. 16 ¶ 279(g)] The determination required by this third exception, whether parents have received adequate efforts, cannot be made in a federal court case brought by the child. That determination can be made only by the state superior court in the termination proceeding, which includes the parents as well as OCS and the child.

As with their case plan claims, the plaintiffs conflate rights to a case plan and a case review system—rights *Willden* could support if it were still good law—with a right to the actual *outcomes* that these tools are designed to promote. The plaintiffs do not allege that Alaska lacks a case review system.

### 3. The services claim

A similar problem dooms the plaintiffs' final claim of a right to "access to quality services to protect his or her safety and health," citing § 671(a)(22). [Dkt. 16 ¶ 279(b)] That section provides that "[i]n order for a State to be eligible for payments" it must have a State plan that "provides that, not later than January 1, 1999, the State shall develop and implement standards to ensure that children in foster care placements in public or private agencies are provided quality services that protect the safety and health of the children."

This language is patently insufficient to create an individually enforceable right to the outcome that plaintiffs claim under *Gonzaga* and *Talevski*. And *Willden* did not address § 671(a)(22), but the reasoning of that decision would not support this claim either. Section 671(a)(22) does include the word "shall," but the thing it mandates is not

*Jeremiah M., et al. v. Kovol, et al.*                                    Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                        Page 28 of 31

Case 3:22-cv-00129-SLG     Document 119     Filed 10/28/24     Page 28 of 31

the provision of services, but rather, the "develop[ment] and implement[ation]" of "standards" in the State plan to further that objective.

In sum, *Willden* did not hold that any of the specific sections of the CWA relied on by the plaintiffs created rights enforceable by § 1983, so that decision does not control this case, and the Court should not apply it. And even if the Court does apply that case, it supports at most a finding of individual rights to case plans and a case review system, which are not things the plaintiffs allege they have been denied. No version of the private right of action test supports a finding of rights to the outcomes those tools are designed to promote.

The Court should apply the controlling Supreme Court precedents of *Gonzaga* and *Talevski*. A principled application of the standard in those cases leads to the conclusion that the CWA cannot be enforced through a § 1983 action.

## CONCLUSION

For these reasons, the State asks this Court to grant summary judgment in its favor on Count 3 of the Amended Complaint.

*Jeremiah M., et al. v. Kovol, et al.*                    Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3                    Page 29 of 31

Case 3:22-cv-00129-SLG    Document 119    Filed 10/28/24    Page 29 of 31

DATED: October 28, 2024.

TREG TAYLOR
ATTORNEY GENERAL


By:    /s/*Margaret Paton Walsh*
       Margaret Paton Walsh
       (Alaska Bar No. 0411074)
       Kate Demarest
       (Alaska Bar No. 1011074)
       Christopher R. Robison
       (Alaska Bar No. 2111126)
       Jennifer Teitell
       (Alaska Bar No. 2405054)
       Department of Law
       1031 West Fourth Avenue, Ste. 200
       Anchorage, AK 99501
       Telephone: (907) 269-5275
       Facsimile: (907) 276-3697
       Email: margaret.paton-
       walsh@alaska.gov
       Attorney for Defendants


Certificate of Service
I certify that on October 28, 2024, the foregoing **Defendants' Motion for Summary Judgment on Count 3** was served electronically on:

Marcia Robinson Lowry
Julia Tebor
David Baloche
Anastasia Benedetto
**A BETTER CHILDHOOD**
mlowry@abetterchildhood.org
jtebor@abetterchildhood.org
dbaloche@abetterchildhood.org
abenedetto@abetterchildhood.org

*Jeremiah M., et al. v. Kovol, et al.*                    Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3          Page 30 of 31

Case 3:22-cv-00129-SLG    Document 119    Filed 10/28/24    Page 30 of 31

Elena M. Romerdahl
Hannah Paton
**PERKINS COIE LLP**
eromerdahl@perkinscoie.com
hpaton@perkinscoie.com

James J. Davis, Jr.
Nicholas Feronti
Savannah V. Fletcher
**NORTHERN JUSTICE PROJECT, LLC**
jdavis@njp-law.com
nferonti@njp-law.com
sfletcher@njp-law.com

Mark Regan
**DISABILITY LAW CENTER OF ALASKA**
mregan@dlcak.org

/s/*Margaret Paton Walsh*
Margaret Paton Walsh

*Jeremiah M., et al. v. Kovol, et al.*                    Case No.: 3:22-cv-00129-SLG
Defendants' Motion for Summary Judgment on Count 3              Page 31 of 31

Case 3:22-cv-00129-SLG    Document 119    Filed 10/28/24    Page 31 of 31