TREG TAYLOR
ATTORNEY GENERAL
Margaret Paton-Walsh (Alaska Bar No. 0411074)
Chris Robison (Alaska Bar No. 2111126)
Kate Demarest (Alaska Bar No. 1011074)
Jennifer Teitell (Alaska Bar No. 2405054)
Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
(907) 269-5275; Facsimile: (907) 276-3697
Email: margaret.paton-walsh@alaska.gov
chris.robison@alaska.gov
kate.demarest@alaska.gov
jennifer.teitell@alaska.gov
Attorneys for State of Alaska

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Jeremiah M., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Kim Kovol, *et al.*, <br><br> Defendants. | Case No.: 3:22-cv-00129-SLG <br><br> **DEFENDANTS' OPPOSITION TO MOTION TO MODIFY SCHEDULING ORDER AND REQUEST FOR STATUS HEARING** |

Less than four weeks after this Court modified the pretrial schedule, the plaintiffs have returned seeking additional significant extensions, offering as good cause the very same reason they presented last time. The only thing that has changed since September 27 is that the State's final production was larger than the plaintiffs expected. And the plaintiffs' request, if granted, would all but guarantee loss of a trial date which the State has expended considerable resources to keep and to which the plaintiffs say they remain committed. [*See* Dkt. 112 at 8] The motion is, in effect, an untimely and

overlength motion for reconsideration[1] and should be denied for that reason alone.[2] But the plaintiffs have also failed to show "good cause" to modify the schedule as required under Civil Rule 16(b)(4). They do not establish their own diligence, and they fail to acknowledge that they received nearly all of the material they identify as important to their case before they made their last modification request. The motion should be denied.

I.  **The State has not have engaged in "strategic delay" or missed production deadlines.**

The plaintiffs argue that the schedule must be modified because the State is guilty of "continual" and "strategic" delay producing OCS emails, and they assert that the State has "missed deadlines" in its production. These assertions are not true.

The State outlined the progress of discovery when it presented its position regarding the plaintiffs' previous request to extend pretrial deadlines, [Dkt. 101] and will not repeat that summary here. A few additional details, however, are essential to establish that the plaintiffs' allegations of "strategic delay" are unfounded. [Dkt. 112 at 16]

What the plaintiffs describe as the "slow pacing of discovery" began with the parties' lengthy discussions about custodians and search terms for email collection, which did not conclude until mid-May. [Dkt. 121 at ¶¶ 5-13] The parties' correspondence and

---

[1]  *See* Alaska Local Rule 7.4(h)(2).

[2]  The plaintiffs also failed to inform the defendants' counsel of their intent to file a motion for expedited consideration and did not attempt to agree on a briefing schedule for their principal motion, in violation of Local Rule 7.3.

*Jeremiah M., et al. v. Kovol, et al.*                                 Case No.: 3:22-cv-00129-SLG
Defendants' Opposition to Motion to Modify the Scheduling Order and      Page 2 of 17
Request for Status Hearing

meetings were cooperative and cordial as both parties sought to curate a set of search terms and custodians that would produce a manageable email collection capturing the plaintiffs' requests. The plaintiffs' motion leaves out this part of the story, doubtless because they cannot credibly claim that the State unnecessarily delayed the negotiation.

The search terms to which the plaintiffs agreed produced over 750,000 items,[3] many of which contained extensive confidential and personal information from child in need of aid cases, which had to be redacted because no class has been certified. [Dkt. 121 at ¶¶ 14-15] Because every case involves a court proceeding in which OCS is represented, the email search also produced many privileged and partially privileged documents. That necessitated more redactions and required the creation of a privilege log with thousands of entries. [Dkt. 121 at ¶ 15]

This process was unlike any the State has been required to undertake in any other case and took far longer than the State anticipated. The outside contractor document review team reports that redactions alone took approximately 16,000 hours to complete and the privilege log a further 1400 hours. [Dkt. 121 at ¶ 16] The final production was larger than expected because it contained many extremely large families of documents, meaning emails and attachments in the same string. Any time even one document in a

---

[3] An "item" is an email, meeting invitation, or Teams message plus any attachments.

*Jeremiah M., et al. v. Kovol, et al.*                 Case No.: 3:22-cv-00129-SLG
Defendants' Opposition to Motion to Modify the Scheduling Order and     Page 3 of 17
Request for Status Hearing

family was privileged or partially privileged, that family could not be produced until the privileged material had been redacted. [Dkt. 121 at ¶ 19]

The plaintiffs repeatedly assert that the State made "representations" and "commitment[s]" to produce all emails by the initial August 1 discovery deadline. [Dkt. 112 at 3, 9, 10.] But the email they cite in support of that proposition shows that in fact, the State expressed only a "hope" that this could be accomplished—at the very start of the process. [Dkt. 113-2 at 3] Nor did the State make a "commitment" regarding email production at any later time. [*See e.g.*, Dkt. 113-3 at 2 (expressing "hope" that production would be complete "in the near future.")]

The email review and production took about five months. Given the size of the collection and the extensive redactions required to comply with Alaska law and to protect attorney-client privilege, the defendants do not believe this is surprising, much less unreasonable. The State has not engaged in anything resembling strategic delay tactics.

II. **The extensions plaintiffs request are not justified by the situation; they received nearly all the material they identify as important before their last modification request.**

The plaintiffs' motion reads as if the State's final email production contains the majority of what they consider important to their case. They explain that "only through review of Defendants' practices, aggregate data, email and other communications, reports, and other documentary evidence" can they understand how Alaska's child welfare system operates, and they assert that it has taken the State "almost nine months to

*Jeremiah M., et al. v. Kovol, et al.*  Case No.: 3:22-cv-00129-SLG
Defendants' Opposition to Motion to Modify the Scheduling Order and   Page 4 of 17
Request for Status Hearing

complete review and produce responsive documents." [Dkt. 112 at 5-6] They fail to acknowledge the substantial productions of highly relevant documents and data that the State made very early in discovery. Nor do they recognize that these documents, along with the many thousands of emails produced before their last schedule modification request, necessarily contain nearly all of the material they identify as important to the subsequent trial preparation tasks.

OCS produced *all* its policies and procedures, internal and external reports, aggregate data, and many other documents by the end of March 2024, including the named plaintiffs' case files, which contain tens of thousands of pages. [Dkt. 121 at ¶ 4] Yet the plaintiffs contend that "by June 7, 2024, Defendants had only produced approximately 2,000 documents and had not produced any email discovery." [Dkt. 112 at 9] The defendants do not know how the plaintiffs might have calculated their "2,000 document" figure, but on May 7, the State produced a set of documents with the final Bates number M069,319, meaning by that time, the plaintiffs had nearly 70,000 pages of documents to review, including a massive spreadsheet with over 500,000 lines of data about every child in OCS's custody since 2018, and substantial individual plaintiff files containing many documents within lengthy pdf files. [Dkt. 121 at ¶ 4]

After that, the plaintiffs received many thousands of OCS's emails and communications before they made their last schedule modification request. As noted above, the parties agreed on search terms and custodians for email searches only in mid-

*Jeremiah M., et al. v. Kovol, et al.*  Case No.: 3:22-cv-00129-SLG
Defendants' Opposition to Motion to Modify the Scheduling Order and  Page 5 of 17
Request for Status Hearing

Case 3:22-cv-00129-SLG   Document 120   Filed 10/28/24   Page 5 of 17

May, so it is hardly surprising that the defendants made their first email production on June 11. And more than half of the total email production was complete by the end of August—146,474 of the total 268,333 documents produced as a result of the email collection. [Dkt. 121 at ¶ 18] The emails produced in September and October are not different in kind than the ones the plaintiffs already had the last time the Court considered their scheduling request.

The extensions requested by the plaintiffs are simply not warranted by the size of the final email production. First, the plaintiffs' speculation that they will discover new important people or facts in the last production does not warrant extending the discovery witness list deadline. The suggestion that they could not produce any kind of meaningful witness list by the October 31 deadline makes little sense given that the State produced over 150,000 emails before the end of August—in additional to tens of thousands of pages of other documents, including the named plaintiffs' case files, months before that. Again, the emails that the plaintiffs received in October are not substantively distinct from earlier productions. They do not come from different custodians or respond to different RFPs. They simply either contain privileged information or are in the same family as a document that contains privileged information. It is unlikely that the later produced emails will reveal names that do not already appear in earlier email productions. And if that did occur, the appropriate remedy would be permission to

*Jeremiah M., et al. v. Kovol, et al.*            Case No.: 3:22-cv-00129-SLG
Defendants' Opposition to Motion to Modify the Scheduling Order and     Page 6 of 17
Request for Status Hearing

include any late-discovered witnesses upon a proper showing that they could not reasonably have been identified earlier.

Nor does the plaintiffs' recent receipt of a large number of emails justify extending other deadlines as they request. They offer no explanation for the alleged need to extend the last day to take lay depositions—after all, the State provided a detailed and manageable witness list on October 15, and the now-complete production is fully searchable for those witnesses' names. Likewise, the last document production does not justify extending the deadline to even *identify* expert witnesses by 45 days. Or indeed, *any of the other deadlines* that plaintiffs ask to push out. If, as the plaintiffs claim, they have been diligently reviewing documents as they received them, they should be able to review the remaining emails in just a few weeks,[4] giving them adequate time to identify any new emails for their experts and for lay depositions. They should also have a near-complete list of individuals they would like to depose based upon the production they received through August, allowing them to produce a genuine witness list.

---

[4] The defendants assume that the plaintiffs have retained a document review contractor—as the defendants were obliged to do—given that all ten of the plaintiffs' attorneys would have to work full time on document review from now until a week before the new witness deadline they request to commit the 2,400 hours they say will be required to review the October production. [Dkt. 112 at 11]

*Jeremiah M., et al. v. Kovol, et al.*   Case No.: 3:22-cv-00129-SLG
Defendants' Opposition to Motion to Modify the Scheduling Order and   Page 7 of 17
Request for Status Hearing

### III. The plaintiffs do not meet the good cause standard to modify the scheduling order.

The plaintiffs correctly cite the standard they must meet to modify the scheduling order, but they fail to meet it. *Johnson v. Mammoth Recreations, Inc.* explains that although "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end."[5]

The plaintiffs' motion makes no real attempt to establish diligence. Instead, it simply asserts it with no explanation.[6] They claim to have been "actively reviewing Defendants productions and attempting in good faith to comply with the Court's deadlines," [Dkt. 112 at 9] but the record does not support that contention.

The motion and supporting affidavit contain no information regarding efforts to review documents produced so far. They do not say how many documents they have reviewed, or how much time they have so far committed to the effort. Recognizing that it lacked the in-house resources to manage such a large document review project within the

---

[5] *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

[6] *See e.g.*, [Dkt. 112 at 3] ("Plaintiffs have diligently pursued discovery in this case…Plaintiffs have diligently reviewed documents produced and have attempted in good faith at every point to meet existing deadlines."); [Dkt. 112 at 7] ("Plaintiffs have diligently pursued discovery both from the inception of this case and most recently since the Court's scheduling order on September 27."); [Dkt. 112 at 9] ("Plaintiffs have actively and diligently pursued production of responsive documents from Defendants,").

*Jeremiah M., et al. v. Kovol, et al.*                      Case No.: 3:22-cv-00129-SLG
Defendants' Opposition to Motion to Modify the Scheduling Order and      Page 8 of 17
Request for Status Hearing

standard discovery timelines, the State hired an outside contractor to manage email discovery in this case. [Dkt. 121 at ¶ 14] The plaintiffs do not say whether or when they have also done this, or what progress has been made.

But other information the plaintiffs have provided suggests that the plaintiffs have not been diligent about reviewing documents. At the parties Friday, October 18 "meet and confer" call, the plaintiffs' attorneys reported that their document review contractor estimated that review would take approximately 5,000 hours. [Dkt. 121 at ¶ 32] Using the plaintiffs' estimated review pace of 50 documents per hour, that figure suggests that the plaintiffs had approximately 250,000 documents still to review when they received that estimate. That means that by mid-October, the plaintiffs had reviewed fewer than 20,000 of the email documents produced, even though they received nearly 150,000 of those documents before the end of August.

The plaintiffs' email correspondence similarly suggests that they have not been diligently reviewing the productions. On October 10, the plaintiffs' attorney emailed the defendants revealing for the first time that they believed the State had an obligation "to supplement ESI discovery by conducting another email pull from the date of the initial pull." [Dkt. 121 at ¶ 24, Dkt. 121-1 at 5] That same email declared: "Finally, we have not received OCS records for the Named Plaintiffs after February 2024. Please produce current files for the Named Plaintiffs immediately." [Dkt. 121 at ¶ 25, Dkt. 121-1 at 5] But as the defendants pointed out in response, they produced updated files for the named

*Jeremiah M., et al. v. Kovol, et al.*  Case No.: 3:22-cv-00129-SLG
Defendants' Opposition to Motion to Modify the Scheduling Order and    Page 9 of 17
Request for Status Hearing

Case 3:22-cv-00129-SLG    Document 120    Filed 10/28/24    Page 9 of 17

plaintiffs on August 27. [Dkt. 121 at ¶ 25, Dkt. 121-1 at 4] Five days later, the plaintiffs claimed to "have again searched the August 27 production for the records you reference," but to be "still unable to locate OCS files for the named plaintiffs" and requested Bates numbers. [Dkt. 121 at ¶ 25, Dkt. 121-1 at 3] But, in fact, the entire August 27 production was *solely comprised* of updates to the OCS files for the named plaintiffs. After defendants explained that and gave the Bates range for that entire production, the plaintiffs said nothing more on the subject. [Dkt. 121 at ¶ 31, Dkt. 121-4 at 1]

And the witness list the plaintiffs provided shows that they have made no real effort to identify trial witnesses, further suggesting that very little review had been done by that time. The first "final discovery witness list" deadline (out of two that the Court, perhaps inadvertently, included on the current schedule), [Dkt 106 at 1-2] was October 15. The State produced a list of 15 people with clear descriptions of the likely subjects of testimony for each. By contrast, the plaintiffs offered a list of 102 named individuals, at least two of whom are deceased, with no explanation whatsoever about their identities or possible subjects of testimony. They also included several catch-all categories capturing thousands more people. [Dkt. 121 at ¶ 26, Dkt. 121-2]

The State proposed a meet and confer call to ask for a list that complies with the Civil Rules and the Rule 26 Report's requirement that "each party shall make a good faith attempt to list only those lay witnesses that the party reasonably believes will testify at trial." [Dkt. 68] At that meeting, the plaintiffs said they *did know* the names of at least

*Jeremiah M., et al. v. Kovol, et al.*　　　　　　　　　　　　　　　Case No.: 3:22-cv-00129-SLG
Defendants' Opposition to Motion to Modify the Scheduling Order and　　　Page 10 of 17
Request for Status Hearing

some people who might testify at trial. But they neither named those people at the time, nor responded to the State's request that they submit a new witness list identifying at least those known witnesses so the State could pursue deposition scheduling. [Dkt. 121 at ¶ 34, Dkt. 121-4]

Finally, the plaintiffs failed to share another critical detail with the court—the fact that they waited until the last day for written discovery to propound extensive additional discovery requests, which will require another round of email collection and review. Both the motion and Ms. Lowry's affidavit in support declare that the plaintiffs "have served two requests for production since January 2024—one on January 26, 2024, and a second one on March 4, 2024. [Dkt. 113 at ¶ 2, Dkt. 112 at 9] But in fact, the plaintiffs served a third set of document requests on October 15—the last day for written discovery— including ten new requests for production and seventeen requests for supplemental emails. There is no reason most of the new requests could not have been identified earlier than October. The defendants' initial estimates indicate that these new requests will produce tens of thousands of additional documents that will require review and redaction before they can be produced. And although the plaintiffs stated on October 10 that they were "working on further narrowing the search terms and custodians based on [their] review of the initial production," [Dkt. 121-4 at 5] and made a similar promise to provide suggested search terms for the new RFPs on October 18, their proposed terms arrived only as the State was finalizing this opposition on October 28. [Dkt. 121 at ¶ 35] Until

*Jeremiah M., et al. v. Kovol, et al.*  Case No.: 3:22-cv-00129-SLG
Defendants' Opposition to Motion to Modify the Scheduling Order and    Page 11 of 17
Request for Status Hearing

Case 3:22-cv-00129-SLG   Document 120   Filed 10/28/24   Page 11 of 17

search terms are agreed upon, the State cannot begin pulling documents to review for its responses to the new requests.

If the plaintiffs believe that the defendants' production of large quantities of documents supports extending pretrial deadlines, it is reasonable to infer that they will seek yet another extension of those deadlines when the defendants produce the tens of thousands of documents responsive to their last-minute discovery requests. The plaintiffs should not be heard to complain that they cannot review documents produced in response to their own expansive discovery requests quickly enough to meet deadlines, while at the same time demanding yet more documents at the last minute.

In sum, the plaintiffs' motion makes no genuine attempt to establish diligence. Instead, the evidence suggests that they failed to review the State's productions through March and then emails through August until long after they received them and failed to consider until the very last minute whether their case requires even more documents. There is no possibility they will receive the responses to their new requests before the expert report and lay deposition deadlines, but they do have everything they originally requested, and have had most of it for months.

### IV.     The defendants will be significantly prejudiced by the overbroad extensions requested.

The plaintiffs ask this Court to extend every deadline in the current scheduling order except those related to class certification. [Dkt. 112 at 12-14] Their proposal creates an impossibly compressed schedule that seems designed to lead to postponing the trial.

*Jeremiah M., et al. v. Kovol, et al.*                                         Case No.: 3:22-cv-00129-SLG
Defendants' Opposition to Motion to Modify the Scheduling Order and     Page 12 of 17
Request for Status Hearing

Case 3:22-cv-00129-SLG    Document 120    Filed 10/28/24    Page 12 of 17

As just one example, the plaintiffs propose that the new dispositive motion deadline should be April 3. [Dkt. 112 at 14] Under the timelines in the Local Rules, that would make oppositions due on April 24, and replies on May 8[7]—three days after the current trial date. This is not a serious proposal.

Any delay in the trial will substantially prejudice the defendants. The plaintiffs seek prospective injunctive relief, which requires them to prove an ongoing legal violation at the time of summary judgment and at the time of trial.[8] Accordingly, a significant delay of trial could cause discovery to become stale and the plaintiffs to demand additional supplementation with respect to the 82 distinct document requests[9] they have served, requiring more ESI production in a case that has already been extraordinarily burdensome and costly for the State.

The State has committed substantial resources—in both in-house attorney time and funding for our document review contractor—in order to respond to the plaintiffs' extremely expansive requests for production. Department of Law staff have spent over 1,500 hours on discovery since the plaintiffs served their first discovery requests and the State has paid its document review contractor over $1.8 million *so far*. [Dkt. 121 at ¶ 17]

---

[7] Local Rule 7.2 provides for oppositions 21 days after dispositive motions, and replies 14 days after oppositions.

[8] *See Farmer v. Brennan*, 511 U.S. 825, 844-46 (1994).

[9] Although the plaintiffs have served nearly 100 requests for production, the most recent set of requests included updates of the email requests made in the first set of requests.

*Jeremiah M., et al. v. Kovol, et al.*                  Case No.: 3:22-cv-00129-SLG
Defendants' Opposition to Motion to Modify the Scheduling Order and     Page 13 of 17
Request for Status Hearing

Case 3:22-cv-00129-SLG     Document 120     Filed 10/28/24     Page 13 of 17

And agency staff have spent many additional hours working to produce the documents and data demanded by the plaintiffs. Any delay of the trial will compound these burdens.

In sum, the plaintiffs filed a wide-ranging lawsuit with multiple claims. They propounded extremely broad discovery requests. They cannot be surprised that this would require them to review a lot of documents in a short time. And they received a large volume of documents that contained most of the information they need to meet their deadlines well before their *last* request to amend the schedule. Without any explanation of their efforts at document review so far, the plaintiffs have not established good cause to upend the schedule and threaten the trial date.

## V. The State requests a status hearing to expeditiously address the scheduling order issue and to prevent any further delay resulting from the plaintiffs' improper request to inspect premises.

Along with their extensive new document requests, the plaintiffs served the State with a Federal Rule of Civil Procedure 34 notice to enter and inspect premises "and documents," and interview "consenting staff and residents," at four institutional facilities in Anchorage, seeking to schedule those inspections for the week of November 4-8. [*See* Dkt. 121-3] But three of the four identified facilities are private entities not "possessed or controlled by" the defendants and under Rule 34(c), require a subpoena because they are third parties.[10]

---

[10] These three facilities are North Star Hospital, Providence Alaska Medical Center, and AK Child & Family.

*Jeremiah M., et al. v. Kovol, et al.*            Case No.: 3:22-cv-00129-SLG
Defendants' Opposition to Motion to Modify the Scheduling Order and    Page 14 of 17
Request for Status Hearing

The only institution plaintiffs list that the State controls is Alaska Psychiatric Institute. The State has expressed willingness to facilitate a visit to the adolescent unit at that facility, but the plaintiffs have not meaningfully engaged in that conversation. Rule 34 does not permit a party to interview "consenting staff and residents" within the facility, if indeed a mentally ill child could even meaningfully consent to such an interview. Nor does Rule 34 contemplate review of confidential medical records of children the plaintiffs' counsel do not represent, given that no class has been certified. The defendants raised these concerns during the parties' call on October 18, and in a follow up email later that same day, but the plaintiffs have failed to respond meaningfully or attempt to resolve the issues with their notice.

These matters are appropriate for discussion and consideration at a status conference regarding the plaintiffs' motion more broadly. The State needs a genuine discovery witness list identifying witnesses the plaintiffs intend to call at trial, so that depositions can be scheduled around the upcoming holidays and before the January 3, 2025 deadline for lay depositions. [Dkt. 106] And the State cannot arrange an inspection of API without agreement about appropriate parameters of that visit.

Handling these issues during a status conference along with the plaintiffs' new motion will allow the Court to effectively guide the parties through their disagreements so the parties can proceed with discovery in a timely manner. Defendants respectfully request that the Court schedule a status conference at the Court's earliest convenience.

*Jeremiah M., et al. v. Kovol, et al.*                            Case No.: 3:22-cv-00129-SLG
Defendants' Opposition to Motion to Modify the Scheduling Order and    Page 15 of 17
Request for Status Hearing

Case 3:22-cv-00129-SLG     Document 120     Filed 10/28/24     Page 15 of 17

## IV. Conclusion

The State respectfully asks the Court to maintain the current schedule. The State further requests an order that the plaintiffs to submit a witness list that complies with the Rule 26(f) Scheduling Order immediately. And the State requests a status conference to address other outstanding discovery issues.

DATED: October 28, 2024.

            TREG TAYLOR
            ATTORNEY GENERAL

            By: */s/Margaret Paton Walsh*
               Margaret Paton Walsh
               Alaska Bar No. 0411074
               Katherine Demarest
               Alaska Bar No. 1011074
               Chris Robison
               Alaska Bar No. 2111126
               Jennifer Teitell
               Alaska Bar No. 2405054
               Department of Law
               1031 West Fourth Avenue, Ste. 200
               Anchorage, AK 99501
               Telephone: (907) 269-5275
               Facsimile: (907) 276-3697
               kate.demarest@alaska.gov
               Attorneys for Defendants

*Jeremiah M., et al. v. Kovol, et al.*         Case No.: 3:22-cv-00129-SLG
Defendants' Opposition to Motion to Modify the Scheduling Order and  Page 16 of 17
Request for Status Hearing

Case 3:22-cv-00129-SLG  Document 120  Filed 10/28/24  Page 16 of 17

**Certificate of Service**

I certify that on October 28, 2024, the foregoing **Defendants' Opposition to Motion to Modify the Scheduling Order and Request for Status Hearing** were served electronically on:

Marcia Robinson Lowry
Julia Tebor
Anastasia Benedetto
David Baloche
**A BETTER CHILDHOOD**
mlowry@abetterchildhood.org
jtebor@abetterchildhood.org
abenedetto@abetterchildhood.org
dbaloche@abetterchildhood.org

Elena M. Romerdahl
Hannah Paton
**PERKINS COIE, LLP**
eromerdahl@perkinscoie.com
hpaton@perkinscoie.com

James J. Davis, Jr.
Nicholas Feronti
Savannah V. Fletcher
**NORTHERN JUSTICE PROJECT, LLC**
jdavis@njp-law.com
nferonti@njp-law.com
sfletcher@njp-law.com

Mark Regan
**DISABILITY LAW CENTER OF ALASKA**
mregan@dlcak.org

*/s/Margaret Paton Walsh*
Margaret Paton Walsh
Chief Assistant Attorney General

*Jeremiah M., et al. v. Kovol, et al.*　　　　　　　　　　Case No.: 3:22-cv-00129-SLG
Defendants' Opposition to Motion to Modify the Scheduling Order and　　Page 17 of 17
Request for Status Hearing

Case 3:22-cv-00129-SLG　　Document 120　　Filed 10/28/24　　Page 17 of 17