TREG R. TAYLOR
ATTORNEY GENERAL

Margaret Paton Walsh (Alaska Bar No. 0411074)
Christopher A. Robison (Alaska Bar No. 2111126)
Katherine Demarest (Alaska Bar No. 1011074)
Jennifer Teitell (Alaska Bar No. 2405054)
Maxwell Jenkins-Goetz (Alaska Bar No. 2408085)
Assistant Attorneys General, Alaska Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Telephone: (907) 269-5275/Facsimile: (907) 276-3697
Email: margaret.paton-walsh@alaska.gov
Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| Jeremiah M., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 3:22-cv-00129-SLG |
| | ) | |
| v. | ) | |
| | ) | |
| Kim Kovol, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF ANNE FARINA

Defendants move to exclude the expert testimony of Dr. Anne Farina under

Federal Rule of Evidence 702. Dr. Farina's opinion regarding disabled children in OCS's

care consists of four subjectively developed "themes" drawn primarily from a handful of

interviews, the contents of which she made no attempt to verify. From these "themes,"

she draws high-level conclusions about supposed system-wide OCS failures.

Dr. Farina's testimony should be excluded. She has never worked in a child

protection system in any state, nor does she treat children involved in such systems. Her

training and experience do not qualify her to opine on the issues addressed in her report. Her opinions will not help the Court understand the evidence or determine a fact in issue. She did not employ reliable, repeatable methods and she did not review anywhere near sufficient facts or data to draw the broad conclusions she does. Nor does her opinion reflect a reliable application of her methods to the limited data upon which she relied.

## I.    Background

Anne Farina is an Independent Clinical Social Worker licensed in the state of Washington.[1] She has a master's degree and a PhD in social work, both from Saint Louis University.[2] Dr. Farina currently works as a mental health therapist and as an Assistant Professor directing the Bachelor of Social Work Program at Seattle University, where she teaches in the area of social work, particularly direct-care clinical practices.[3]

Dr. Farina reviewed a limited subset of discovery selected for her by the plaintiffs' attorneys, including some records produced by OCS and a subset of depositions of OCS employees. She visited AK Child & Family, where she interviewed one staff member; toured the adolescent until at the Alaska Psychiatric Institute; and visited North Star hospital, where she interviewed one seven-year-old child in OCS custody and one staff member.[4] She also interviewed two former named plaintiffs who have been reunified with

---

[1]    Report of Anne Farina (Exhibit A, hereafter "Report") at 1.

[2]    Anne Farina CV at 1. The CV appears at the end of her report in Exhibit A.

[3]    Farina CV at 4-5.

[4]    Report at 1-2, 4.

*Jeremiah M. et al. v. Kovol et al.*                               Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina                Page 2 of 26

Case 3:22-cv-00129-SLG     Document 247     Filed 03/24/25     Page 2 of 26

their mother and one other former Alaska foster child who is now an adult.[5] And she relied heavily upon broad conclusions in a DOJ report about Alaska Medicaid-enrolled children in general.[6]

From this data, Dr. Farina offers what she characterizes as system-wide conclusions about the alleged failures of OCS. Her report concludes that "OCS practices fail to meet the safety and mental health needs of children with disabilities in [the agency's] care."[7] She rests this conclusion upon four "themes" she gleaned from the data she reviewed. Her themes are: 1. "OCS fails to consistently place children in safe, stable environments," 2. "Youth are not consistently provided with appropriate mental health services in the community," 3. "OCS fails to communicate with and support children with disabilities," and 4. "OCS does not properly track waitlists, services, and providers."[8] She also plans to opine that OCS overuses psychotropic medications.[9]

---

[5]     Report at 4-5.

[6]     Report at 1, 6-7; Deposition Transcript of Anne Farina (Exhibit B, hereafter "Dep. Tr.") at 140:16-141:20, 143:3-24, 145:20-148:5.

[7]     Report at 32.

[8]     Report at 7.

[9]     Report at 18-19; Dep. Tr. 225:22-226:1.

*Jeremiah M. et al. v. Kovol et al.*                                    Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina                  Page 3 of 26

Case 3:22-cv-00129-SLG     Document 247     Filed 03/24/25     Page 3 of 26

## II.   Legal Standard

Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[10] govern the admissibility of expert opinion testimony. Rule 702 requires that:

> (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (2) the testimony is based on sufficient facts or data;
>
> (3) the testimony is the product of reliable principles and methods; and
>
> (4) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[11]

The proponent of expert testimony has the burden of proving its admissibility by a preponderance of the evidence.[12] Rule 702 "imposes a special obligation upon a trial judge" to ensure that expert testimony "is not only relevant, but reliable."[13] "[D]istrict courts must apply Rule 702 to assess an expert's qualifications, reliability, and fit before weighing the expert's opinions to decide a triable issue."[14] This "basic gatekeeping

---

[10]    *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[11]    Fed. R. Evid. 702.

[12]    Rule 702; *Daubert* 509 U.S. at 593 n.20; *United States v. Moore*, No. 3:20-CR-00029-SLG, 2022 WL 834381, at *1 (D. Alaska Mar. 21, 2022).

[13]    *Daubert*, 509 U.S. at 589; *Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843 (9th Cir. 2014).

[14]    *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832-834 (3d Cir. 2020); *Boltar, L.L.C. v. Comm'r*, 136 T.C. 326, 334 (2011); *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020) (failure to make reliability findings is an abuse of discretion). *See also Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010) ("[In a bench trial,] the court must provide more than just conclusory

*Jeremiah M. et al. v. Kovol et al.*                     Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina                     Page 4 of 26

Case 3:22-cv-00129-SLG     Document 247     Filed 03/24/25     Page 4 of 26

obligation" applies to "all expert testimony."[15] The focus of the analysis "must be solely on principles and methodology, not on the conclusions they generate, and the court's task is to analyze not what the experts say, but what basis they have for saying it."[16]

## III. Argument

### A. Dr. Farina's education, training, and experience do not qualify her to provide expert opinions that will assist the court to draw systemic conclusions about the performance of Alaska's child protection system.

Before a witness can provide expert testimony, the trial court must expressly find that the proposed witness is qualified to offer that testimony.[17] An expert is qualified if "it is more likely than not that the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact at issue."[18] The expert's expertise "must relate to the issues in dispute such that the witness's expertise is helpful to the trier of fact."[19] Here, Dr. Farina offers analysis that purports to help the Court make factual findings about the placements and mental health treatment provided to disabled children in OCS custody, on a system-wide level. She

---

statements of admissibility or inadmissibility to show that it adequately performed its gatekeeping function.").

[15] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

[16] *Grodzitsky v. American Honda Motor Co., Inc.*, 957 F.3d 979, 984-85 (9th Cir. 2020).

[17] *United States v. Moore*, No. 3:20-CR-00029-SLG, 2022 WL 834381, at *1 (D. Alaska Mar. 21, 2022)

[18] Rule 702(a) (emphasis added).

[19] *Rambus Inc. v. Hynix Semiconductor Inc.*, 254 F.R.D. 597, 604 (N.D. Cal. 2008).

*Jeremiah M. et al. v. Kovol et al.*                    Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina              Page 5 of 26

Case 3:22-cv-00129-SLG    Document 247    Filed 03/24/25    Page 5 of 26

offers opinions about OCS's practices communicating with disabled foster children and connecting them to care.[20]

Dr. Farina is a therapist and an educator who describes her professional experience as "conducting mental health assessments and providing mental health services for individuals and families," including foster children, among many other groups.[21] But more than 80 percent of her current clients are adults; none are foster children or even Medicaid recipients.[22] She last provided care to a foster child in 2018 and could not say how frequently she did so.[23] Dr. Farina has never worked for or with a state child welfare agency or performed any other role in state or federal government.[24]

Dr. Farina's experience as a mental health clinician, however extensive, does not qualify her to opine on a child-welfare-system's practices with respect to placing children in foster homes, identifying their mental health needs, or connecting them with services. She has no "scientific, technical, or other specialized knowledge" whatsoever in how state-wide systems (foster care, health, or otherwise) operate. She is not familiar with the tools available (or unavailable) to states to expand their mental health services array, and

---

[20]    Report at 7.

[21]    Report at 1; Farina CV.

[22]    Dep. Tr. 8:6-16; 138-39. (The last time that Dr. Farina provided services to a child in foster care was around 2018 in the state of Missouri).

[23]    Dep. Tr. 139:3-17.

[24]    Dep. Tr. 8:19-9:7.

*Jeremiah M. et al. v. Kovol et al.*                  Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina        Page 6 of 26

Case 3:22-cv-00129-SLG    Document 247    Filed 03/24/25    Page 6 of 26

she does not know what standards of care state agencies are held to.[25] Her areas of practice and research do not relate to child welfare systems, but instead to "mental health, attachment, trauma, generational trauma, and trauma-informed interventions."[26] Other than one other expert witness engagement with the plaintiffs' attorneys, she has no experience reviewing child welfare agencies' case files.[27] And she is not a medication provider qualified to opine about prescribing practices.[28]

Even if being a therapist with experience treating the relevant population *were* adequate to provide a systems analysis, Dr. Farina does not qualify on that front either. Dr. Farina could perhaps be qualified as an expert in providing direct trauma-focused therapy, but that does not make her an expert in the performance of statewide child welfare systems. She treats mostly adults, not foster children or vulnerable children or even children generally, and her practice does not accept Medicaid. In short, she has very little experience (and no experience at all since 2018) working with the population at issue here—children in the custody of a state child protection system.[29]

---

[25]    Dep. Tr. 201:25–202:9. *See also United States v. Wells*, 2019 WL 3229912 (D. Alaska 2019) (determined an expert was "not qualified to give expert testimony regarding confirmation bias" because he had no "formal education or experience" or "relevant knowledge or skills" regarding confirmation bias).

[26]    Report at 1; Dep. Tr. 11-12.

[27]    Dep. Tr. 85-87.

[28]    *Id*. 230: 2-10.

[29]    *See, e.g.*, *United States v. Chang*, 207 F.3d 1169, 1173 (9th Cir. 2000) (explaining that "practical experience in international finance" is insufficient to qualify a person as an expert in identification of counterfeit securities).

*Jeremiah M. et al. v. Kovol et al.*                                    Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina                Page 7 of 26

Case 3:22-cv-00129-SLG     Document 247     Filed 03/24/25     Page 7 of 26

Moreover, Dr. Farina's opinions are not grounded in her expertise as a mental health professional. She opines on "themes" she called the "essence" of what "emerged from the data used for this report,"[30] Her expertise and training played no role in forming those opinions, "no understandable scientific basis is stated,"[31] and her testimony is, ultimately not "more than a personal belief or opinion."[32] The Court or a layperson could just as knowledgably look to the data and decide whether it supports the plaintiffs' allegations that OCS's policies and practices are causing harm.

Dr. Farina's opinion fails the "helpful to the trier of fact" aspect of Rule 702(a) as well. "To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue."[33] Before admitting an opinion, the court must affirmatively determine that it "fits" the issue, a standard that is "higher than bare relevance."[34] In order to fit an issue, the testimony must speak "clearly and directly" to an issue in dispute.[35]

---

[30]    Report at 2; Dep Tr. 157:7-12.

[31]    *Turpin v. Merrell Dow Pharmaceuticals*, *Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992).

[32]    *Id.*

[33]    *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998)

[34]    *Moore*, 2022 WL 834381, at *2 (quoting *In re Paoli R.R. Yard PCB Lit.,* 35 F.3d 717, 745 (3d Cir. 1994)).

[35]    *Id.* (citing exclusion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1321-1322 (9th Cir. 1995) of "vague assertions that there is a statistically significant relationship between Bendectin and birth defects," because testimony "that

*Jeremiah M. et al. v. Kovol et al.*                                        Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina                      Page 8 of 26

Case 3:22-cv-00129-SLG     Document 247     Filed 03/24/25     Page 8 of 26

Here, the plaintiffs seek to prove that OCS's policies and practices have caused, on a class-wide basis, various harms such as placement instability and unnecessary institutionalization. But Dr. Farina's report does not say that the alleged harms she identifies are happening on a broad scale. She opines only that OCS "fails to consistently" or simply "fails to" do the things in her four themes. But she has no opinion regarding how frequently the alleged failures occur.[36] She offered no clarity on what level would qualify as "consistently" achieving something.[37]

When asked, for example, to point to instances "where OCS failed to provide safety for children with disabilities in its care," she pointed vaguely to "safety concerns" regarding named plaintiffs and former named plaintiffs and one interviewee's belief that he was placed at North Star unnecessarily.[38] She did nothing to verify whether alleged safety concerns were supported by evidence.[39] Indeed, she said it would not change her opinion if she hypothetically learned that the person was placed at North Star due to suicidal ideation before OCS took custody of him.[40]

---

Bendectin causes some birth defects" such evidence fell far short of furthering the plaintiffs' burden to show that "it caused their birth defects").

[36]    Dep. Tr. 59:12-19.

[37]    Dep. Tr. 101:17-104:6, 105:3-107:3.

[38]    Dep. Tr. 59:12-61:12-72.

[39]    Dep. Tr. 63:25-64:17

[40]    Dep. Tr. 65:1-66:4.

*Jeremiah M. et al. v. Kovol et al.*                                         Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina                 Page 9 of 26

Case 3:22-cv-00129-SLG     Document 247     Filed 03/24/25     Page 9 of 26

She does not know how many children are in OCS custody or how many of them have disabilities.[41] She did not attempt to learn how many children in OCS custody receive services at the facilities she visited.[42] She had no quantitative information regarding how frequently OCS "failed to provide necessary mental health services for children in their care"[43] or "failed to place children in a safe, stable environment"[44] or "had more than four foster placements"[45] or did not receive services "in the most integrated setting."[46] She testified that an outside institutional placement simply "doesn't happen in a system that is . . . functioning in the best way."[47] She defined "at risk" as "at risk"[48] and "reasonable cause" to mean "how I used it in that sentence."[49] She agreed that "we can't conclude that anyone who receives services in an institution was unnecessarily institutionalized,"[50] and could not identify any single child who was unnecessarily institutionalized.[51] This testimony is not helpful. Vague assertions that negative things

---

[41]    Dep. Tr. 90:17-91:1.

[42]    Dep. Tr. 54:15-55:23.

[43]    Dep. Tr. 74:2-20.

[44]    Dep. Tr. 99:13-102:16.

[45]    Dep. Tr. 195:10-19.

[46]    Dep. Tr. 218:22-219:4.

[47]    Dep. Tr. 178:24-179:23.

[48]    Dep. Tr. 160:4-10.

[49]    Dep. Tr. 254-55.

[50]    Dep. Tr. 165:4-9.

[51]    Dep. Tr. 167:1-172:2

*Jeremiah M. et al. v. Kovol et al.*                                    Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina          Page 10 of 26

Case 3:22-cv-00129-SLG     Document 247     Filed 03/24/25     Page 10 of 26

happened, with no precision about what happened nor any attempt to say how frequently they occurred, cannot help this court to find systemic OCS failures.

Nor does Dr. Farina offer analysis or conclusions regarding causes of the supposed failures she found. She freely admits that she conducted no analysis of causation[52] and says nothing about OCS's policies and practices, specific actions, level of efforts, or trends, either in general or by reference to specific individual cases. She could not point to any specific action OCS can and should take that it is not currently taking to address her concerns and conclusions.[53]

Finally, Dr. Farina's opinion that OCS misuses psychotropic medication is irrelevant to any claim, defense, or allegation in the case. The word "psychotropic" does not appear in the Amended Complaint, and the plaintiffs have not alleged that OCS is "overusing" or "misusing" psychotropic medications on a systemic basis.

In short, Dr. Farina offers no specialized knowledge or insights that would help the trier of fact understand the evidence or determine a fact at issue. There is no aspect of Dr. Farina's analysis that could not be adequately performed by a layperson. Even if "discrete pieces of evidence" Dr. Farina discusses could be relevant, "that does not mean that [a party] may get them into evidence by having [an expert] recite them" or that a party can "put on its closing argument through [an expert] as 'expert testimony.'"[54]

---

[52]    Dep. Tr. at 206:24-08:3.

[53]    Dep. Tr. 257:19-258:3.

[54]    *Rambus Inc. v. Hynix Semiconductor Inc.*, 254 F.R.D. 597, 610 (N.D. Cal. 2008).

*Jeremiah M. et al. v. Kovol et al.*                                        Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina                     Page 11 of 26

Case 3:22-cv-00129-SLG     Document 247     Filed 03/24/25     Page 11 of 26

**B. Dr. Farina's testimony is not based on sufficient facts or data.**

Next, Rule 702(b) requires expert testimony to be "based upon sufficient facts or data."[55] "Rule 702 instructs a district court judge to determine whether an expert 'had sufficient factual grounds on which to draw conclusions.'"[56] "The trial judge in all cases of proffered expert testimony must find that it is properly grounded."[57] *Daubert's* instruction that the court focus on "principles and methodology, not on the conclusions they generate"[58] does not prevent a court from determining whether the data on which a witness relied is *sufficient* to generate a particular conclusion. Rather, when "there is simply too great an analytical gap between the data and the opinion proffered," the expert's testimony should be excluded.[59]

Here, an enormous "analytical gap" separates the data Dr. Farina considered and her broad system conclusions. She relied on four categories of "data" in forming her opinions. First, she interviewed one current seven-year-old foster child and three older former foster children, with each interview lasting less than 30 minutes.[60] She did not analyze the named plaintiffs' actual files, but instead relied on summaries prepared by the

---

[55]    Rule 702(b).

[56]    *Elosu v. Middlefork Ranch Inc.,* 26 F.4th 1017, 1025–26 (9th Cir. 2022).

[57]    Fed. R. Evid. 702 advisory committee note to the 2000 amendments.

[58]    *Daubert*, 509 U.S. at 595.

[59]    *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146-47 (1997) (affirming the district court conclusion that "the studies upon which the experts relied were not sufficient, whether individually or in combination, to support their conclusions.").

[60]    Dep. Tr. 21:18-22:5.

*Jeremiah M. et al. v. Kovol et al.*                                    Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina                Page 12 of 26

Case 3:22-cv-00129-SLG    Document 247    Filed 03/24/25    Page 12 of 26

plaintiffs' counsel.[61] She did not determine whether the interviewees or their parents had declined any services offered.[62] Nor did she attempt to verify what the children had told her through any independent evidence.[63]

Second, Dr. Farina reviewed summaries of the named plaintiffs' case files prepared by plaintiffs' counsel. She "relied on the summaries for analysis" rather than the actual files.[64] She did not check the summaries for accuracy.[65]

Third, Dr. Farina visited three facilities in Anchorage: Alaska Psychiatric Institute, North Star hospital, and AK Child and Family. She interviewed North Star's Director of Risk and Facility Compliance and AK Child and Family's Director of Admissions, with each interview lasting 30-45 minutes.[66] Fourth, she reviewed a set of "case discovery documents" hand-picked for her by plaintiffs' counsel.[67] Those case documents, however, did not include enough information for her to be familiar with the names of Commissioner Kim Kovol or OCS Director, Kim Guay.[68]

---

[61]     Dep. Tr. 49:6-50:2.

[62]     Dep. Tr. 89:24-91:10.

[63]     Dep. Tr. 24:10-27:3.

[64]     Dep. Tr. 49:6-50:2.; Report Appx B (PDF page 48).

[65]     Dep. Tr. 50:3-15.

[66]     Dep. Tr. 51:4-52:3.

[67]     Report at 1 and App'x B.

[68]     Dep. Tr. 259:12-15.

*Jeremiah M. et al. v. Kovol et al.*                    Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina                    Page 13 of 26

Case 3:22-cv-00129-SLG        Document 247        Filed 03/24/25        Page 13 of 26

All or very nearly all of this data was developed for the purposes of litigation. The question of whether an expert's opinion is grounded in science or developed for purposes of litigation is a "very significant fact."[69]

Yet from this limited, litigation-developed record, Dr. Farina derived her four "themes" regarding OCS's *systemic* practices: that OCS "fails to consistently place children in safe, stable environments," does not "consistently" provide "appropriate mental health services in the community," "fails to communicate with and support children with disabilities, and "does not properly track waitlists, services, and providers."[70]

The data Dr. Farina reviewed, under even the most generous interpretation, could not possibly have been sufficient to support such broad, systemwide conclusions. She did not learn or consider most of the obviously relevant information that should have informed these opinions. She did not, even in a ballpark or general way, consider the prevalence of any of the events underlying her opinions.

With respect to placements, she has no opinion about how frequently OCS failed to place a child in a safe, stable environment[71] or how many children in OCS custody have had more than four placements.[72] She did not consider efforts OCS has taken to

---

[69]  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995); *see* also Rule 702 commentary to 2000 amendments.

[70]  Report at 7.

[71]  Dep. Tr. 99:13-17.

[72]  Dep. Tr. 195:8-11.

*Jeremiah M. et al. v. Kovol et al.*                     Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina          Page 14 of 26

Case 3:22-cv-00129-SLG     Document 247     Filed 03/24/25     Page 14 of 26

improve placement availability.[73] Nor does she know how many foster families surrendered their license during the pandemic.[74] And she did not compare OCS to other states in terms of placement safety and stability.[75]

Dr. Farina opines that OCS fails to consistently provide appropriate mental health care. But she was unable to make a conclusion about how often OCS fails to provide mental health services.[76] She could not provide a baseline or example of a system that met a standard she would consider adequate.[77] She does not know how many children are in OCS custody or how many have disabilities,[78] or how many have behavioral health disabilities compared to physical disabilities.[79] She has no opinion about how often OCS does not provide youth with mental health services[80] or appropriate mental health services in the community or in the most integrated setting.[81] She did not consider how much money Alaska spends on community-based services.[82] She did not consider the numbers of children in OCS custody receiving institutional care or how that rate

---

[73]     Dep. Tr. 205:4-10.

[74]     Dep. Tr. 192:18-21.

[75]     Dep. Tr. 174:3-11.

[76]     Dep. Tr. 189:2-5.

[77]     Dep. Tr. 129-35.

[78]     Dep. Tr. 90:17-91:1.

[79]     Dep. Tr. 91:2-5.

[80]     Dep. Tr. 188:13-189:5.

[81]     Dep. Tr. 112:23-113:11; 218:22-219:4.

[82]     Dep. Tr. 148:13-16.

*Jeremiah M. et al. v. Kovol et al.*                                    Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina                              Page 15 of 26

Case 3:22-cv-00129-SLG     Document 247     Filed 03/24/25     Page 15 of 26

compares to other disabled children in Alaska or elsewhere.[83] She alleged that "OCS overused or misused medications," but does not know how often.[84] And she does not know how often children experience discharge delay from facilities when it is no longer medically necessary for them to continue services.[85] With respect to prescriptions, she considered mostly one person's report of his own experience.[86]

Dr. Farina's third theme, that "OCS fails to communicate with and support children with [behavioral health] disabilities,"[87] relied primarily on the anecdotes of the people she interviewed.[88] The child at North Star did not know her discharge plan on the day she was interviewed.[89] Dr. Farina recalled seeing notes about caseworker changes.[90] She could not identify specific instances where she observed that OCS failed to communicate to providers about a child's medication or that providers did not meet the standard of care.[91] She noted that in one case, a child was on a waitlist for a specialized service but she did not know whether OCS sought interim services.[92]

---

[83]    Dep. Tr. 92:8-10.

[84]    Dep. Tr. 226:17-25.

[85]    Dep. Tr. 250:14-19.

[86]    Dep. Tr. 227:1-234:12 (extended discussion of a single patient).

[87]    Report at 7.

[88]    Dep. Tr. 124:23-128:22.

[89]    Dep. Tr. 126:17-126:7.

[90]    Dep. Tr. 128:4-7.

[91]    Dep. Tr. 77:22-80:6.

[92]    Dep. Tr. 211:11-21.

*Jeremiah M. et al. v. Kovol et al.*                                    Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina          Page 16 of 26

Case 3:22-cv-00129-SLG     Document 247     Filed 03/24/25     Page 16 of 26

Finally, Dr. Farina's fourth theme that "OCS does not properly track waitlists, services, and providers,"[93] rests not on data, but on assumptions. She could not explain what it would look like for a system to "properly" track those things.[94] Nor could she identify any instance where a child was harmed by OCS' recordkeeping practices, as "that would be speculation."[95]

Dr. Farina's deposition testimony regarding mental health services exemplifies the circular and foundation-less nature of her conclusions. According to her report, Dr. Farina intends to testify that "[y]outh are not consistently provided with appropriate mental health services in the community."[96] But she cannot quantify, in any way, how many times OCS failed.[97] When asked in the broadest possible way, "[h]ow often is this occurring?" she simply restated her conclusion:

> I mean, I can't say how much it's occurring, but the – of the documents
> that I reviewed, that was a theme that emerged of the youth in OCS
> care not consistently provided with appropriate mental health services
> in the community.[98]

Despite the fact that the term "consistently" plainly connotes some level of frequency, Dr. Farina couldn't define it, other than to suggest that she knows a theme when she sees one:

---

[93]    Report at 7.

[94]    Dep. Tr. 133:14-134:6.

[95]    Dep. Tr. 135:16-20.

[96]    Report at 7.

[97]    Dep. Tr. 112:3-7.

[98]    Dep. Tr. 113:7-11.

*Jeremiah M. et al. v. Kovol et al.*                                          Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina                              Page 17 of 26

Case 3:22-cv-00129-SLG      Document 247      Filed 03/24/25      Page 17 of 26

Q:     [C]onsistency/consistently implies something is happening at a level of frequency. Would you agree with that?

A:     So, I mean, again, it's almost like the – the wording you use is – computes differently with how this report is written, right? So I can only speak to how this report was written. So "Foster youth are not consistently provided with appropriate mental health services in the community," that's a theme that emerged because of it coming up in multiple places over the data set. We're looking at all the data, right? So it emerged in multiple ways. That's how its theme was developed.

Q:     Okay. How many times did it have to emerge before it rose to the level of emerging consistently?

A:     So a number – there isn't – when it comes to qualitative data, it's – it's not that there's a number that has to be reached in order for a theme to emerge. When – when information is coming up in a variety of ways – this is a theme that came from the data. There isn't a – like, when it comes to qualitative analysis, there isn't a number of times that something has to be mentioned. It's that you're – you're seeing this come up.[99]

Dr. Farina pointed to just one actual data point underlying her conclusion: the DOJ report: "this is a specific one that did come up from the DOJ report also, that with – with lack of services in the community and children not being consistently provided with those services for the community, that puts them at risk for institutionalized care."[100] But that report is about service availability for Medicaid-eligible children, not children in OCS custody, a distinction Dr. Farina did not consider to be important.[101]

Despite having quantified nothing, Dr. Farina asserts her four "themes" and opines that "failures of OCS directly put foster children with disabilities at risk of unnecessary

---

[99]     Dep. Tr. 105:18-06:19.

[100]    Dep. Tr. 106:20-25.

[101]    Dep. Tr. 141:4-11, 146:13-147:20.

*Jeremiah M. et al. v. Kovol et al.*                    Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina          Page 18 of 26

Case 3:22-cv-00129-SLG     Document 247     Filed 03/24/25     Page 18 of 26

institutionalization in facilities. The systemic issues permeate every level of the system."[102] There is simply nothing in the data she considered even close to adequate to support that opinion.

Expert testimony cannot be admissible unless it is properly grounded in data sufficient to generate the conclusions offered. Here, there is an analytical chasm between the data and Dr. Farina's conclusions. "Personal opinion, not science, is testifying."[103]

### C. Thematic Analysis is not a reliable and appropriate methodology for evaluating systemic issues in child welfare.

Next, Rule 702(c) requires expert testimony to be, more likely than not, "a product of reliable principles and methods."[104] In making that determination, the court must determine "whether the reasoning or methodology underlying the testimony is scientifically valid."[105] *Daubert* outlined four factors relevant to that analysis:

(1)    Whether the technique or theory in question can be, and has been, tested;

(2)    Whether it has been subjected to publication and peer review;

(3)    Its known or potential error rate; and

(4)    Whether it has attracted widespread acceptance within a relevant scientific community.[106]

---

[102]    Report at 5.

[103]    *Turpin v. Merrell Dow Pharms., Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992).

[104]    Rule 702(c).

[105]    *Daubert*, 509 U.S. at 592-93.

[106]    *United States v. Moore*, 2022 WL 834381 *2 (D. Alaska 2022) (citing *Daubert*, 509 U.S. at 593).

*Jeremiah M. et al. v. Kovol et al.*                                                    Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina                    Page 19 of 26

Case 3:22-cv-00129-SLG        Document 247        Filed 03/24/25        Page 19 of 26

The methodology Dr. Farina claims to have used has not been tested for identifying systemic issues in state-administered systems, has not been subject to publication or peer review, and has an unknown error rate. Her report contains just one sentence describing the methodology she used: "[t]he qualitative research method of thematic analysis was used for data analysis to identify common threads and themes."[107] She cites a single 2023 journal article that proposes a new approach to the "thematic analysis technique."[108] The article's authors describe their methodology as a "new six-step strategy" that "positions itself as a potential foundation for future researchers" with a caveat: "the efficiency of [their] method compared to other model-building approaches has not been empirically tested."[109] The steps are: (1) Transcription, familiarization with the data, and selection of quotations; (2) Selection of keywords; (3) Coding of the data; (4) Development of themes; (5) Conceptualization through interpretation of keywords, codes, and themes; and (6) Development of a conceptual model.[110]

Thematic analysis is not the type of specialized work that is beneficial to a trier of fact in litigation. The method has not been "empirically tested" or otherwise widely

---

[107]    Report at 2.

[108]    Exhibit C: A Step-By-Step Process of Thematic Analysis to Develop a Conceptual Model in Qualitative Research. Muhammad Naeem, et al. International Journal of Qualitative Methods, Vol. 22, 15 (2023).

[109]    Naeem at 15-16.

[110]    Naeem at 15.

*Jeremiah M. et al. v. Kovol et al.*                              Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina          Page 20 of 26

Case 3:22-cv-00129-SLG    Document 247    Filed 03/24/25    Page 20 of 26

accepted in the scientific community.[111] In fact, it seems that to date, no court has

accepted an expert's testimony based on the "thematic analysis" model.

At her deposition, the only example Dr. Farina could provide of another instance

where she used thematic analysis was a social media study where "we were looking at

about 3500 tweets that used a specific hashtag. And so for each of the tweets, we were

doing the coding process, pulling out the essence, pulling out, you know – creating labels.

And from those labels, then we would use – started to make categories. And from the

categories, the themes emerged."[112] Sorting and characterizing the contents of written

materials and drawing conclusions from that material is a quintessential task of a fact

finder reviewing a body of evidence. It is not a specialized task that requires an expert.

In short, Dr. Farina relied on a new methodology that might be useful in developing

a "conceptual framework."[113] But its own creators recognized that its use in other contexts

required "further exploration."[114] But Rule 702 and *Daubert* require experts to utilize

established, proven methodology. Dr. Farina failed to do so here.

Even if "thematic analysis" were an accepted technique, Dr. Farina did not

implement it reliably. The article Dr. Farina cited emphasizes that "the importance of a

well-developed conceptual model cannot be overstated."[115] Yet she describes no

---

[111]    Naeem at 16.

[112]    Dep. Tr. 20:25-21:6.

[113]    Naeem at 16.

[114]    *Id.*

[115]    *Id.* at 14.

*Jeremiah M. et al. v. Kovol et al.*                                     Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina                  Page 21 of 26

Case 3:22-cv-00129-SLG      Document 247      Filed 03/24/25      Page 21 of 26

conceptual model at all. She simply lists "themes." Her report contains no mention of keyword selection, coding, or conceptualization (steps 2, 3,5, and 6 of the method).

When asked to describe her methodology during her deposition, she could not identify how many codes she used.[116] She said she chose codes by "identifying pieces of the essence, the – a label. Sometimes a code is the actual words there."[117] "[A]s you go through the data, you're – you're identifying codes. Then you're – from the codes, you're starting to put into categories. And that's where the themes emerge."[118] After the data has been reviewed and coded, "[t]hen it's putting the codes together, kind of going back in and looking what the – what codes exist and whether the themes are emerging from."[119] She explained that a "code" doesn't turn into "theme" until "it emerges in a way that shows some consistency."[120] Themes subjectively "emerged" from "the essence" of "the data, meaning "the site inspections, and the separate interviews of several children."[121]

When questioned how often a theme had to arise to be seen "consistently," Dr. Farina had no coherent answer, other than to admit that deciding when a "theme emerges" is entirely up to the researcher (and thus incapable of being tested). She said "it's not that there's a number that has to be reached in order for a theme to emerge.

---

[116]    Dep. Tr. 156:10-12.

[117]    Dep. Tr. 157:10-12.

[118]    Dep. Tr. 157:18-24.

[119]    Dep. Tr. 158:22–159:1.

[120]    Dep. Tr. 156:20-157:2.

[121]    Report at 7; Dep. Tr. 16:7-22; 107:4-108:8.

*Jeremiah M. et al. v. Kovol et al.*                                      Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina                    Page 22 of 26

Case 3:22-cv-00129-SLG      Document 247      Filed 03/24/25      Page 22 of 26

When . . . information is coming up in a variety of ways – this is a theme that came from the data. There isn't a – like, when it comes to a qualitative analysis, there isn't a number of times that something has to be mentioned. It's that you're – you're seeing this come up."[122] She pointed again to the DOJ report and concluded, "It's that, in a variety of ways in the data, this theme emerged."[123]

When asked how, then, anyone could check her work, she responded:

A:    So you could go through the same process of looking at the same data and coding the data, kind of identifying, you know, the labels and pulling the code and then categorizing the codes and king of pulling the categories together into the themes.

…

Q:    Okay. So once I've got that done, how do I look at it and go: Okay, this is – this is happening consistently?

A:    I mean, part – it would be part of your process of seeing – you know, what you saw the data, what themes were emerging. Again, it's not a – it's not a number you're reaching. It's seeing how is that your – that's why you're – you know, you're going in and out of the data, and you're looking at the big piece and seeing what's emerging.

Q:    So it's a subjective call that you made based on your review of the data?

A:    That is a part of qualitative analysis, where, yes, there are – the coding process is – that's kind of the crux of qualitative analysis. Yeah. You're – you're – the researcher is pulling the themes.[124]

---

[122]    Dep. Tr. 106:11-19.

[123]    Dep. Tr. 107:2-3.

[124]    Dep. Tr. 107:8-108:8.

*Jeremiah M. et al. v. Kovol et al.*                              Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina            Page 23 of 26

Case 3:22-cv-00129-SLG     Document 247     Filed 03/24/25     Page 23 of 26

Baffled, the defendants requested Dr. Farina's underlying materials showing her keywords, codes, and themes. But those materials proved unilluminating. They contain no obvious keywords or codes, no grouping of codes into themes, and nothing that might be described as a "conceptual model."[125]

In sum, Dr. Farina went through a limited set of case documents, hand-picked for her by plaintiffs' counsel, and identified "themes" that "emerged" from the documents to help plaintiffs prove their claims. She explained:

> So with a thematic analysis, you're basically taking the data and coding the data, where you're assigning different codes or kind of like labels to the data. You're pulling out the essence of [] the different pieces. And then from the codes and the [] kind of label that are assigned, then you're looking at the big picture and developing… the themes begin to emerge.[126]

In *In Re Paoli R.R. Yard PCB Litigation*, the Third Circuit explained that any deviation from a reliable methodology renders the testimony inadmissible.[127] Here, Dr. Farina did not follow the Naeem methodology.[128] Her testimony should be excluded.

---

[125]    Dep. Tr., 156:10-12; Exhibit D (files produced by Dr. Farina on March 19 and 24, 2025, in response to request for the analysis underlying her conclusions).

[126]    Dep. Tr. 14:6-15.

[127]    35 F.3d 717, 745 (3d Cir. 1994) (explaining that *Daubert* requires experts to testify about "conclusions supported by good grounds for each step in the analysis," which "means that any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible . . . whether the step completely changes the reliable methodology or merely misapplies that methodology).

[128]    Naeem at 5.

*Jeremiah M. et al. v. Kovol et al.*                        Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina                        Page 24 of 26

Case 3:22-cv-00129-SLG    Document 247    Filed 03/24/25    Page 24 of 26

## CONCLUSION

Dr. Farina is not an expert in child welfare systems. She rests broad, systemic conclusions on limited data prepared for litigation, and she employed a cursory imitation of the untested method of "thematic analysis." Her testimony is not admissible under Evidence Rule 702.

Dated: March 24, 2025.

Respectfully submitted,

TREG TAYLOR
ATTORNEY GENERAL

By: */s/Margaret Paton Walsh*
Margaret Paton Walsh
(Alaska Bar No. 0411074)
Christopher R. Robison
(Alaska Bar No. 2111126)
Katherine Demarest
(Alaska Bar No. 1011074)
Jennifer Teitell
(Alaska Bar No. 2405054)
Maxwell Jenkins-Goetz
(Alaska Bar No. 2408085)
Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Telephone: (907) 269-5275
Facsimile: (907) 276-3697
Email: margaret.paton-
walsh@alaska.gov
Attorneys for State of Alaska

*Jeremiah M. et al. v. Kovol et al.*                    Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina          Page 25 of 26

Case 3:22-cv-00129-SLG     Document 247     Filed 03/24/25     Page 25 of 26

## WORD COUNT

Pursuant to L. Civ. R. 7.1(a)(1), this Motion, excluding the case caption and signature block, contains 5,697 words.

*/s/Margaret Paton-Walsh*
Margaret Paton-Walsh


Certificate of Service

I certify that on March 24, 2025, the foregoing **Defendants' Motion to Exclude Testimony of Anne Farina** was served electronically on:

Marcia Robinson Lowry
Julia Tebor
David Baloche
Anastasia Benedetto
**A BETTER CHILDHOOD**
mlowry@abetterchildhood.org
jtebor@abetterchildhood.org
dbaloche@abetterchildhood.org
abenedetto@abetterchildhood.org

Elena M. Romerdahl
Hannah Paton
**PERKINS COIE LLP**
eromerdahl@perkinscoie.com
hpaton@perkinscoie.com

Mark Regan
**DISABILITY LAW CENTER OF ALASKA**
mregan@dlcak.org

/s/Margaret Paton Walsh
Margaret Paton Walsh, Chief Assistant Attorney General

*Jeremiah M. et al. v. Kovol et al.*                    Case No. 3:22-cv-00129-SLG
Defendants' Motion to Exclude Testimony of Anne Farina                    Page 26 of 26

Case 3:22-cv-00129-SLG     Document 247     Filed 03/24/25     Page 26 of 26