**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

MARY B., *et al.*,

               Plaintiffs,

     v.

KIM KOVOL, Director, Alaska
Department of Family and Community
Services, in her official capacity, *et al.*,

               Defendants.

Case No. 3:22-cv-00129-SLG

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNT THREE

Before the Court at Docket 119 is Defendants' Motion for Summary Judgment on Count Three. Plaintiffs responded in opposition at Docket 163.[1] Defendants replied at Docket 206. Oral argument was not requested and was not necessary to the Court's determination.

## BACKGROUND

In this putative class action, Plaintiffs seek wide-ranging reform of Alaska's foster care system, administered by Alaska's Office of Children's Services ("OCS"), alleging that the system harms the children it is designed to protect and violates

---

[1] In a prior order, the Court dismissed several Named Plaintiffs from this case: Jeremiah M., Hannah M., Hunter M., David V., George V., Lawrence V., Karen V., Damien V., and Gayle T. Docket 220 at 20. The remaining pseudonymously Named Plaintiffs are Mary B., Connor B., Rachel T., Eleanor T., and Lana H. The case caption has been amended accordingly.

Plaintiffs' federal rights.[2]  Plaintiffs bring claims on behalf of themselves and on behalf of a proposed class consisting of "[a]ll children for whom OCS has or will have legal responsibility and who are or will be in the legal and physical custody of OCS."[3]  In addition, Plaintiffs bring claims on behalf of three proposed subclasses:

> [(1)] Alaska Native children who are or will be entitled to federal [Indian Child Welfare Act] ICWA protection (the "Alaska Native Subclass");
>
> [(2)] Children who currently reside or will reside in a kinship foster home—the home of a family member—who meet the criteria to receive foster care maintenance payments under 42 U.S.C. § 672 (the "Kinship Subclass"); and
>
> [(3)] Children who are or will be in foster care and experience physical, cognitive, and psychiatric disabilities (the "ADA Subclass").[4]

After this Court granted in part and denied in part Defendants' Motion to Dismiss, four claims remain: (1) violation of substantive due process pursuant to the Fourteenth Amendment;[5] (2) deprivation of the right to parent-child association pursuant to the First, Ninth, and Fourteenth Amendments;[6] (3) violation of the

---

[2] For a more detailed summary of Plaintiffs' allegations, see this Court's prior order at Docket 55.

[3] Docket 16 at ¶ 28(a).

[4] Docket 16 at ¶¶ 28(b)-(d).

[5] Docket 16 at ¶¶ 264-69.  The substantive due process claim is based on "(a) the right to freedom from the foreseeable risk of maltreatment while under the protective supervision of the State; (b) the right to protection from unnecessary intrusions into the child's emotional wellbeing once the State has established a special relationship with that child; . . . [and] (e) the right to treatment and care consistent with the purpose and assumptions of government custody."  Docket 16 at ¶ 269.  This Court dismissed Plaintiffs' substantive due process claim insofar as it was based on other purported rights.  Docket 55 at 41-42.

[6] Docket 16 at ¶¶ 270-76.  This Court dismissed this claim insofar as it asserted a violation of

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 2 of 22

Case 3:22-cv-00129-SLG     Document 286     Filed 04/23/25     Page 2 of 22

Adoption Assistance and Child Welfare Act of 1980 ("CWA"), 42 U.S.C. § 670 *et. seq.*;[7] and (4) violations of the Americans with Disabilities Act and the Rehabilitation Act.[8]

Relevant here, the CWA provides federal funding to "enabl[e] each State to provide, in appropriate cases, foster care and transitional independent living programs for children . . . , adoption assistance for children with special needs, kinship guardianship assistance, and prevention services or programs."[9] Section 671 requires that, for a State to be eligible for federal funds, the State must have a plan approved by the Secretary of Health and Human Services that complies with 37 requirements.[10] One such requirement, found in § 671(a)(22), provides that the State plan must "develop and implement standards to ensure that children in foster care placements in public or private agencies are provided quality services that protect the safety and health of the children." Another State plan requirement, § 671(a)(16), provides that a State plan must

provide[] for the development of a case plan (as defined in section

---

familial association with regard to siblings and grandparents. Docket 55 at 45-47.

[7] Docket 16 at ¶¶ 277-80. This Court dismissed Plaintiffs' claim brought pursuant to § 672(a) of the Adoption Assistance and Child Welfare Act. Docket 55 at 56-60.

[8] Docket 16 at ¶¶ 298-315. This claim is based on the "integration mandate" of the ADA which requires that States utilize community-based treatment and do not create a serious risk of institutionalization. Docket 55 at 66-68. This Court dismissed Plaintiffs' claims insofar as they alleged violations based on reasonable accommodations of OCS Safety Plans, healthcare services, and services to foster care providers. Docket 55 at 64-66.

[9] 42 U.S.C. § 670.

[10] 42 U.S.C. § 671.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 3 of 22

Case 3:22-cv-00129-SLG     Document 286     Filed 04/23/25     Page 3 of 22

675(1) of this title and in accordance with the requirements of section 675a of this title) for each child receiving foster care maintenance payments under the State plan and provides for a case review system which meets the requirements described in sections 675(5) and 675a of this title with respect to each such child.

Section 675(1) explains that a "'case plan' means a written document" that includes a "description of the type of home or institution in which a child is to be placed" and a "plan for assuring that the child receives safe and proper care and that services are provided to the parents, child, and foster parents in order to improve the conditions in the parents' home, facilitate return of the child to his own safe home or the permanent placement of the child, and address the needs of the child while in foster care . . . ."[11]

A "case review system," as defined in § 675(5)(A), "means a procedure for assuring that . . . each child has a case plan designed to achieve placement in a safe setting that is the least restrictive (most family like) and most appropriate setting available and in close proximity to the parents' home, consistent with the best interest and special needs of the child . . . ."

Further, pursuant to a case review system, "the State shall file a petition to terminate the parental rights of the child's parents (or, if such a petition has been filed by another party, seek to be joined as a party to the petition), and, concurrently, to identify, recruit, process, and approve a qualified family for an

---

[11] 42 U.S.C. § 675(1)(A), (B).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 4 of 22

adoption" if a child "has been in foster care under the responsibility of the State for 15 of the most recent 22 months."[12]  There are three exceptions to this timeline to file the petition: the child is being cared for by a relative, the case plan demonstrates that a parental rights termination petition would not be in the best interests of the child, or the State has not provided the child's family with services that are necessary for the safe return of the child to the child's home.[13]

In Count Three, Plaintiffs assert that these provisions create several statutory rights enforceable by 42 U.S.C. § 1983:

a) placement in the least restrictive and most family-like setting, closest to their home community that conforms to nationally recommended professional standards, 42 U.S.C. §§ 671(a)(16), 675(5)(A);

b) access to quality services to protect his or her safety and health, 42 U.S.C. § 671(a)(22);

c) a written case plan that includes a plan to provide safe, appropriate and stable placements, 42 U.S.C. §§ 671(a)(16), 675(1)(A);

d) a written case plan that ensures that the child receives safe and proper care while in foster care and implementation of that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

e) a written case plan that ensures provision of services to parents, children, and foster parents to facilitate reunification, or where that is impossible, the permanent placement of the child and implementation of that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

f) a case review system in which each child has a case plan designed to achieve safe and appropriate foster care placements in the least

---

[12] 42 U.S.C. § 675(5)(E).

[13] 42 U.S.C. § 675(5)(E)(i)-(iii).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 5 of 22

Case 3:22-cv-00129-SLG     Document 286     Filed 04/23/25     Page 5 of 22

restrictive and most family-like setting, close to their home community. 42 U.S.C. §§ 671(a)(16), 675(5)(A); and

g) the right to have a petition to terminate parental rights filed if the child has been in foster care for 15 out of the last 22 months, unless doing so goes against the best interest of the child as documented in the case record, or subject to a statutory exemption. 42 U.S.C. § 675(5)(E).[14]

Defendants seek summary judgment on Plaintiffs' claims based on purported violations of the CWA, maintaining that none of the identified provisions create federal statutory rights enforceable by § 1983.[15]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[P]urely legal issues appropriate for resolution in a motion for summary judgment include the interpretation of a statute or regulation."[16]

---

[14] Docket 16 at ¶¶ 279-80.

[15] Docket 119. The Court notes that Defendants did not move to dismiss Count Three in their motion to dismiss and, as Plaintiffs point out, Defendants did not move to amend their motion to dismiss after the Supreme Court issued its decision in *Health & Hospital Corp. of Marion County v. Talevski*, 599 U.S. 166 (2023), which Defendants contend demonstrates that the CWA provisions on which Plaintiffs rely do not create enforceable statutory rights. Federal Rule of Civil Procedure 12(g)(2) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." That is what Defendants have done here. However, the Court will consider the motion on the merits because there is no evidence that the motion was "interposed for delay and . . . addressing it would expedite disposition of the case on the merits." *Pepper v. Apple Inc.* (*In re Apple iPhone Antitrust Litig.*), 846 F.3d 313, 319 (9th Cir. 2017) (quoting 2 Moore's Federal Practice - Civil § 12.23).

[16] *Nichols Inst. Diagnostics, Inc. v. Scantibodies Clinical Lab., Inc.*, 218 F. Supp. 2d 1243, 1245

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 6 of 22

Case 3:22-cv-00129-SLG    Document 286    Filed 04/23/25    Page 6 of 22

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this civil action includes claims arising under federal law including 42 U.S.C. § 1983, the Adoption Assistance and Child Welfare Act of 1980, and the Americans with Disabilities Act.

## DISCUSSION

"Although federal statutes have the potential to create § 1983-enforceable rights, they do not do so as a matter of course."[17] The contours of the standard for whether a federal statute creates an enforceable federal right have solidified over time. In *Gonzaga*, the Supreme Court clarified that:

> Some language in our opinions might be read to suggest that something less than an unambiguously conferred right is enforceable by § 1983. *Blessing*, for example, set forth three "factors" to guide judicial inquiry into whether or not a statute confers a right: "Congress must have intended that the provision in question benefit the plaintiff," "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence," and "the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." In the same paragraph, however, *Blessing* emphasizes that it is only violations of *rights*, not *laws*, which give rise to § 1983 actions. This confusion has led some courts to interpret *Blessing* as allowing plaintiffs to enforce a statute under § 1983 so long as the plaintiff falls within the general zone of interest that the statute is intended to protect; something less than what is required for a statute to create rights enforceable directly from the statute itself under an implied private right of action. . . . We now reject the notion that our cases permit anything short of an unambiguously conferred right to support

(S.D. Cal. 2002) (citing *Edwards v. Aguillard*, 482 U.S. 578, 581-82 (1987)).

[17] *Talevski*, 599 U.S. at 183.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 7 of 22

a cause of action brought under § 1983.[18]

As such, "[c]ourts must employ traditional tools of statutory construction to assess whether Congress has 'unambiguously conferred' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs."[19]   This so-called "*Gonzaga* test is satisfied where the provision in question is 'phrased in terms of the persons benefited' and contains 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class.'"[20]   "The dividing line is between statutes that are 'concerned with whether the needs of any particular person have been satisfied' and those that are 'concerned . . . solely with an aggregate institutional policy and practice.'"[21]

For example, in *Gonzaga*, the Supreme Court held that certain provisions of the Family Educational Rights and Privacy Act (FERPA) did not create an enforceable statutory right because the specific provisions "lack[ed] the sort of 'rights-creating' language critical to showing the requisite congressional intent to create new rights."[22]   The Court explained that, "[u]nlike the individually focused terminology" of other provisions that said things like "[n]o person . . . shall . . . be

---

[18] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 282-83 (2002) (emphasis in original) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340-341 (1997)).

[19] *Talevski*, 599 U.S. at 183 (quoting *Gonzaga*, 536 U.S. at 282).

[20] *Id.* (quoting *Gonzaga*, 536 U.S. at 284).

[21] *Polk v. Yee*, 36 F.4th 939, 945 (9th Cir. 2022) (alteration in original) (quoting *Ball v. Rodgers*, 492 F.3d 1094, 1107 (9th Cir. 2007)).

[22] *Gonzaga*, 536 U.S. at 287 (third, fourth, and fifth alteration in original).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 8 of 22

Case 3:22-cv-00129-SLG     Document 286     Filed 04/23/25     Page 8 of 22

subjected to discrimination," the provisions at issue spoke "only to the Secretary of Education, directing that '[n]o funds shall be made available' to any 'educational agency or institution' which has a prohibited 'policy or practice.'"[23]

Most recently, and in contrast, in *Talevski* the Supreme Court held that specific provisions of the Federal Nursing Home Reform Act (FNHRA) created enforceable rights because the provisions were found in a statutory section that "expressly concern[ed] '[r]equirements *relating to residents' rights*,'" which was "indicative of an individual 'rights-creating' focus."[24]  Further, each provision explicitly referred to residents' rights, with one requiring nursing homes to "protect and promote . . . *[t]he right* to be free from . . . any physical or chemical restraints imposed for purposes of discipline or convenience and not required to treat *the resident's* medical symptoms," and the other was "in a paragraph concerning 'transfer and discharge *rights*,'" instructing facilities that they "'must not transfer or discharge [a] *resident*' unless certain preconditions are met, including advance notice of the transfer or discharge to the resident and his or her family."[25]  The preconditions related to the resident's welfare or health, and exceptions to the advance-notice requirement also turned on the resident's health or urgent medical

---

[23] *Id.*

[24] *Talevski*, 599 U.S. at 180, 184 (second alteration and emphasis in original) (first quoting 42 U.S.C. § 1396r(c); and then quoting *Gonzaga*, 536 U. S. at 284).

[25] *Id.* at 184-85 (alterations and emphasis in original) (first quoting 42 U.S.C § 1396r(c)(1)(A)(ii); then quoting 42 U.S.C. § 1396r(c)(2); and then quoting 42 U.S.C. §§ 1396r(c)(2)(A)-(B)).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 9 of 22

Case 3:22-cv-00129-SLG     Document 286     Filed 04/23/25     Page 9 of 22

needs.[26]

Prior to *Talevski*, in *Willden*, the Ninth Circuit considered whether plaintiffs could bring a claim against Nevada "for a class of children who have not received a case plan as required by the CWA."[27]  The Court first recounted that "*Blessing* established a three-prong test for determining whether a federal statute creates an individual right," and that, "[i]n *Gonzaga University v. Doe*, the Supreme Court clarified that the first prong of the *Blessing* test is meant to determine whether Congress 'unambiguously conferred' a federal right" which "requires 'rights-creating language,' meaning that the text of the statute 'must be phrased in terms of the persons benefited.'"[28]

Applying the test as set forth, the Ninth Circuit held that "the case plan provisions of the CWA, codified at §§ 671(a)(16) and 675(1), are enforceable through § 1983."[29]  The Ninth Circuit "disagree[d]" with the district court's conclusion "that these provisions do not contain sufficient 'rights-creating language' to satisfy the first prong of the *Blessing* test."[30]  The Court reasoned that "Section 671(a)(16) unambiguously requires the State to provide for the

---

[26] *Id.* at 185.

[27] *Henry A. v. Willden*, 678 F.3d 991, 1006 (9th Cir. 2012).

[28] *Id.* at 1005 (quoting *Gonzaga*, 536 U.S. at 283-84 & n.3)).

[29] *Id.* at 1008.

[30] *Id.*  at 1006.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 10 of 22

Case 3:22-cv-00129-SLG    Document 286    Filed 04/23/25    Page 10 of 22

development of a case plan 'for each child.'"[31]   Further, "rights-creating language 'is readily discernible' in § 671(a)(16) because it 'expresses a clear mandate by using the term "shall"' and 'discusses how the state must distribute benefits to *each child*.'"[32]   The Court also noted that "the reference here to a case plan 'for each child' focuses squarely on the protected individual, rather than an aggregate interest or a regulated entity."[33]

In *Willden*, the Ninth Circuit also held that a provision of the CWA found in the definition of case review system created a statutory right enforceable through § 1983.  In addition to requiring a case plan, § 671(a)(16) requires that a State plan "provide[] for a case review system which meets the requirements described in [42 U.S.C. §§ 675(5) and 675a] with respect to each such child."   Section 675(5) defines "case review system" and, together with subsection D, requires a "procedure for assuring that . . . a child's health and education record . . . is reviewed and updated, and a copy of the record is supplied to the foster parent or foster care provider with whom the child is placed, at the time of each placement of the child in foster care . . . ."  The Ninth Circuit held that this "records provision" was "privately enforceable along with the case plan provisions."[34]   The Court was

---

[31] *Id.*

[32] *Id.* at 1007 (emphasis in original) (quoting *Connor B. v. Patrick*, 771 F. Supp. 2d 142, 171 (D. Mass. 2011)).

[33] *Id.*

[34] *Id.* at 1008.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 11 of 22

Case 3:22-cv-00129-SLG     Document 286     Filed 04/23/25     Page 11 of 22

persuaded by the statute's repeated focus on the individuals benefitted by §§ 671(a)(16) and 675(5)(D): A case review system must be provided with respect to each child; the child's health and education record must be provided to the foster parent; and this must happen at the time the child is placed in foster care.[35]

Further, the Court explained that the records provisions were "couched in mandatory terms and contain detailed, concrete requirements that are capable of judicial enforcement."[36]

Defendants contend that none of the CWA provisions on which Plaintiffs rely create rights enforceable under § 1983.[37] Specifically, in Defendants' view, "42 U.S.C. § 671(a) and the associated definitions in § 675 lack the specific references to individual *rights* that were central to the Supreme Court's decisions in *Gonzaga* and *Talevski*" because those "sections focus on the 'requisite features of [the] State plan' rather than having an 'unmistakable focus on the benefited class.'"[38] And Defendants maintain that "*Willden* cannot be considered good law because its reasoning is irreconcilable with the intervening Supreme Court precedent of *Talevski*" and, alternatively, "*Willden* . . . does not control this case" because "it analyzed the provisions of §§ 675(1) and (5) relating to children's records to reach the conclusion that *those provisions* created enforceable rights, but it did not

---

[35] *Id.* at 1008-09.

[36] *Id.* at 1009.

[37] Docket 119 at 16-29.

[38] Docket 119 at 22 (emphasis in original).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 12 of 22

Case 3:22-cv-00129-SLG     Document 286     Filed 04/23/25     Page 12 of 22

analyze any of the subsections of §§ 675(1) or (5) that plaintiffs rely on here."[39]

I.    *Willden*

Defendants contend that *Willden* is no longer good law because "*Talevski*'s explication of the *Gonzaga* test 'is fundamentally inconsistent with the reasoning' the Ninth Circuit applied in *Willden*," and "[w]here the Supreme Court has 'undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable,' district courts must follow the Supreme Court."[40]   In Defendants' view, *Willden*'s "superficial[]" invocation only paid "lip service" to the *Gonzaga* standard.[41]

To disregard *Willden*, the Court would have to find that *Willden* and *Talevski* are "clearly irreconcilable."[42]   This "high standard"[43] is only met when the prior precedent has been "effectively overruled" by the intervening higher authority, although "the issues decided by the higher court need not be identical in order to be controlling."[44]   "For [a court] to hold that an intervening Supreme Court decision has 'effectively overruled' circuit precedent, the intervening decision must do more than simply 'cast doubt' on our precedent.  Rather, it must 'undercut the theory or

---

[39] Docket 119 at 14, 25.

[40] Docket 119 at 16 (quoting *Miller v. Gammie*, 335 F.3d 889, 892, 900 (9th Cir. 2003)).

[41] Docket 119 at 14-15.

[42] *Miller*, 335 F.3d at 900.

[43] *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (citation omitted).

[44] *Miller*, 335 F.3d at 893, 900.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 13 of 22

Case 3:22-cv-00129-SLG     Document 286     Filed 04/23/25     Page 13 of 22

reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.'"[45]

The Court does not read *Willden* as clearly irreconcilable with *Talevski*. In *Talevski*, the Supreme Court articulated that the "*Gonzaga* test is satisfied where the provision in question is 'phrased in terms of the persons benefited' and contains 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class.'"[46] In *Willden*, the Ninth Circuit held that §§ 671(a)(16) and 675(1) evinced enforceable statutory rights because "Section 671(a)(16) unambiguously requires the State to provide for the development of a case plan 'for each child.'"[47] Thus, the *Willden* court held the rights-creating language was readily discernible because "it 'originally a clear mandate by using the term "shall"' and 'discusses how the state must distribute benefits to *each child*,'"[48] and "the reference here to a case plan 'for each child' focuses squarely on the protected individual, rather than an aggregate interest or a regulated entity."[49]

These two analyses are substantially similar. The Ninth Circuit determined that the relevant CWA provisions used mandatory language requiring the State to

---

[45] *United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011) (quoting *Miller*, 335 F.3d at 900).

[46] *Talevski*, 599 U.S. at 183 (quoting *Gonzaga*, 536 U.S. at 284).

[47] *Willden*, 678 F.3d at 1006.

[48] *Id.* at 1007 (emphasis in original) (quoting *Connor B.*, 771 F. Supp. 2d at 171).

[49] *Id.*

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 14 of 22

Case 3:22-cv-00129-SLG    Document 286    Filed 04/23/25    Page 14 of 22

develop case plans and distribute benefits for each child, which reflected a focus on the protected individual child, and that the language was rights-creating. The Court therefore finds that *Talevski* does not undercut the reasoning in *Willden* and the cases are not clearly irreconcilable. *Willden* remains binding precedent on this Court.[50]

## II.    Case Plan Claims – §§ 671(a)(16), 675(1)

The Court turns to Plaintiffs' claims under the CWA asserting rights to "a written case plan that includes a plan to provide safe, appropriate and stable placements," "a written case plan that ensures that the child receives safe and proper care while in foster care and implementation of that plan," and "a written case plan that ensures provision of services to parents, children, and foster parents to facilitate reunification, or where that is impossible, the permanent placement of the child and implementation of that plan."[51]

---

[50] Defendants also suggest that a statute must explicitly reference "rights" for it to create an enforceable federal right. Docket 119 at 18 ("[T]he CWA does not contain the 'rights-creating' language required by *Gonzaga* and *Talevski*—explicit references to rights."); Docket 206 at 10 ("*Talevski*, by contrast, found enforceable rights in statutory provisions that used the term 'right' *and* identified the individual possessor of that right."). However, the Court does not read Supreme Court precedent as requiring a statute to use the word "right" to create an enforceable statutory right. *See Gonzaga*, 536 U.S. at 284 & n.3 ("We have recognized, for example, that Title VI of the Civil Rights Act of 1964 . . . create[s] individual rights because those statutes are phrased 'with an *unmistakable focus* on the benefited class.' . . . Title VI provides: '*No person* in the United States *shall . . .* be subjected to discrimination under any program or activity receiving Federal financial assistance" on the basis of race, color, or national origin.'" (emphases in original) (citations omitted)).

[51] Docket 16 at ¶ 279(c)-(e).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 15 of 22

Case 3:22-cv-00129-SLG    Document 286    Filed 04/23/25    Page 15 of 22

Defendants argue *Willden* only addressed § 671(a)(16) and not § 675(1).[52] The Court disagrees. The *Willden* court expressly recounted the statutory language of § 671(a)(16) and summarized the case plan requirements found in § 675(1) before holding that "these provisions . . . are enforceable through § 1983."[53] Therefore, under *Willden*, both § 671(a)(16) and § 675(1) of the CWA create rights enforceable through § 1983. The Court denies Defendants' motion for summary judgment as to these claims.

### III. Case Review System Claims – §§ 671(a)(16), 675(5)(A)

Next, Plaintiffs allege violations of their rights pursuant to the CWA to "placement in the least restrictive and most family-like setting, closest to their home community that conforms to nationally recommended professional standards" and to "a case review system in which each child has a case plan designed to achieve safe and appropriate foster care placements in the least restrictive and most family-like setting, close to their home community."[54]

*Willden* held that § 675(5)(D) created an enforceable statutory right. That subsection is part of the statutory definition of case review system found in § 675(5), as that term is used in § 671(a)(16). The Court sees no reason why *Willden*'s holding should not extend to other features of a case review system as

---

[52] *See e.g.*, Docket 206 at 14.

[53] *Willden*, 678 F.3d at 1006; *see id.* at 1008 ("[T]he case plan provisions of the CWA, codified at §§ 671(a)(16) and 675(1), are enforceable through § 1983.").

[54] Docket 16 at ¶ 279(a), (f).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 16 of 22

defined in § 675(5), including subsection A. In *Willden*, the Court was

> persuaded by the statute's repeated focus on the individuals benefitted by §§ 671(a)(16) and 675(5)(D): A case review system must be provided with respect to each child; the child's health and education record must be provided to the foster parent; and this must happen at the time the child is placed in foster care.[55]

Here, as *Willden* recognized, a case review system must be provided with respect to each child pursuant to § 671(a)(16). Section 675(5)(A) requires "a procedure for assuring that . . . each child has a case plan designed to achieve placement in a safe setting that is the least restrictive (most family like) and most appropriate setting available and in close proximity to the parents' home, consistent with the best interest and special needs of the child . . . ." Therefore, § 675(5)(A), like § 675(5)(D), focuses on individual children, not the aggregate.[56] It requires that a case review system provide a procedure to assure that each child's case plan is designed for the child's placement in the most family like setting, close to each child's parents' home, and upon consideration of the best interest and special needs of each child. The Court finds that §§ 671(a)(16) and 675(5)(A) create statutory rights enforceable by § 1983. As such, the Court denies summary judgment to Defendants on Plaintiffs' claim asserting a right to "a case review

---

[55] *Willden*, 678 F.3d at 1008-09.

[56] *See Talevski*, 599 U.S. at 183-84 ("[The Supreme Court has] rejected § 1983 enforceability where the statutory provision 'contain[ed] no rights-creating language'; had 'an aggregate, not individual, focus'; and 'serve[d] primarily to direct the [Federal Government's] distribution of public funds.'" (quoting *Gonzaga*, 536 U.S. at 290)).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 17 of 22

system in which each child has a case plan designed to achieve safe and appropriate foster care placements in the least restrictive and most family-like setting, close to their home community."[57]

However, the Court finds that Plaintiffs' asserted right to "placement in the least restrictive and most family-like setting, closest to their home community that conforms to nationally recommended professional standards" is not supported by the text of § 675(5)(A). That provision requires a State to provide a case review system, which is a procedure to assure that "each child has a case plan designed to achieve placement in a safe setting that is the least restrictive (most family like) and most appropriate setting available and in close proximity to the parents' home, consistent with the best interest and special needs of the child." The right is to a review procedure designed to achieve placement in a safe, least-restrictive setting. The right is not to the placement itself. The Court therefore grants Defendants summary judgment as to Plaintiffs' assertion of a right to "placement in the least restrictive and most family-like setting, closest to their home community that conforms to nationally recommended professional standards."[58]

---

[57] Docket 16 at ¶ 279(f); *see Gary G. v. Newsom*, Case No. 5:23-cv-00947-MEMF-BFM, 2024 WL 4354697, at *10 (C.D. Cal. Sept. 30, 2024) (relying on *Willden* to find that "the Ninth Circuit has affirmatively held that 'case plan provisions are enforceable through § 1983,' in addition to provisions related to providing a case review system" and denying motion to dismiss claims alleging right to case plans and case review system); *see also* Docket 163 at 20 n.55 (collecting cases).

[58] Docket 16 at ¶ 279(f).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 18 of 22

Case 3:22-cv-00129-SLG     Document 286     Filed 04/23/25     Page 18 of 22

## IV.    Petition to Terminate Parental Rights Claim – § 675(5)(E)

Plaintiffs also allege violations of their right under the CWA "to have a petition to terminate parental rights filed if the child has been in foster care for 15 out of the last 22 months, unless doing so goes against the best interest of the child as documented in the case record, or subject to a statutory exemption."[59]

The CWA defines "case review system" to include "a procedure for assuring that" "in the case of a child who has been in foster care under the responsibility of the State for 15 of the most recent 22 months, . . . the State shall file a petition to terminate the parental rights of the child's parents . . . and, concurrently, to identify, recruit, process, and approve a qualified family for an adoption" unless certain exceptions apply.[60]

Pursuant to *Willden*, the Court finds that § 675(5)(E) creates an enforceable right to a case review system that assures that a termination petition is filed under certain circumstances.  The provision focuses on individual children and their particular circumstances, indicating that it is "concerned with whether the needs of any particular person have been satisfied" rather than focusing "solely [on] an aggregate institutional policy and practice."[61]  The provision is "'phrased in terms of the persons benefited,'" i.e. children who have been in State custody for 15 of

---

[59] Docket 16 at ¶ 279(g).

[60] 42 U.S.C. § 675(5)(E).

[61] *See Polk*, 36 F.4th at 945 (quoting *Ball*, 492 F.3d at 1107)).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 19 of 22

Case 3:22-cv-00129-SLG    Document 286    Filed 04/23/25    Page 19 of 22

the most recent 22 months, "and contains 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class,'" i.e. the State shall file a petition to terminate their parent's rights and to work toward finding the children an adoptive home.[62]

Defendants contend that, in order to evaluate this claim, the Court would have to determine whether petitions were filed within 15 months and whether any statutory exceptions applied for each child.[63]  This argument may be relevant to whether a class would appropriately be certified as to this claim, but it bears little import on whether § 675(5)(E) creates an enforceable statutory right.

The Court therefore denies Defendants summary judgment as to Plaintiffs' claim under the CWA asserting a right to have a petition to terminate parental rights filed in the enumerated circumstances.

### V.     Access to Quality Services Claim – § 671(a)(22)

Lastly, Plaintiffs allege violations of a right under the CWA to have "access to quality services to protect his or her safety and health."[64]  Section 671(a)(22) provides that a State "shall have a plan . . . which . . . provides that . . . the State shall develop and implement standards to ensure that children in foster care placements in public or private agencies are provided quality services that protect

---

[62] *See Talevski*, 599 U.S. at 182-83 (quoting *Gonzaga*, 536 U.S. at 284).

[63] Docket 206 at 19.

[64] Docket 16 at ¶ 279(b).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 20 of 22

Case 3:22-cv-00129-SLG     Document 286     Filed 04/23/25     Page 20 of 22

the safety and health of the children."

Unlike the provisions above that focus on "each child" or particular children that meet certain requirements, this provision concerns a State's obligation to implement standards to provide children in foster care with quality services. There is nothing individualized or rights-creating in the provision that would indicate that Congress intended to create an enforceable right to each child. Therefore, the Court grants Defendants summary judgment as to Plaintiffs' claims pursuant to § 671(a)(22).[65]

## CONCLUSION

In light of the foregoing, the Court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment on Count Three at Docket 119.

The Court DISMISSES the following CWA claims from this case:

1. "[P]lacement in the least restrictive and most family-like setting, closest to their home community that conforms to nationally recommended professional standards, 42 U.S.C. §§ 671(a)(16), 675(5)(A);"[66] and

2. "[A]ccess to quality services to protect his or her safety and health, 42 U.S.C. § 671(a)(22)."[67]

---

[65] *See Gary G.*, 2024 WL 4354697, at *11 (finding that "the *Blessing* factors do not support a finding of an enforceable right to access certain types of services as to Section 671(a)(22)").

[66] Docket 16 at ¶ 279(a).

[67] Docket 16 at ¶ 279(b).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 21 of 22

Case 3:22-cv-00129-SLG     Document 286     Filed 04/23/25     Page 21 of 22

Defendants' Motion for Summary Judgment on Count Three is otherwise DENIED.

DATED this 23rd day of April, 2025, at Anchorage, Alaska.

/s/ Sharon L, Gleason
UNITED STATES DISTRICT JUDGE

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Defendants' Motion for Summary Judgment on Count Three
Page 22 of 22
Case 3:22-cv-00129-SLG     Document 286     Filed 04/23/25     Page 22 of 22