# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

MARY B., *et al.*,

                Plaintiffs,

      v.

KIM KOVOL, Director, Alaska
Department of Family and Community
Services, in her official capacity, *et al.*,

             Defendants.

Case No. 3:22-cv-00129-SLG

## ORDER ON CLASS CERTIFICATION AND RELATED MOTIONS

This order addresses five pending motions:

(1) Plaintiffs' Motion to Substitute Next Friends at Docket 255. Defendants responded in opposition at Docket 320, to which Plaintiffs replied at Docket 331.

(2) Plaintiffs' Motion for Class Certification at Docket 135. Defendants responded in opposition at Docket 157, to which Plaintiffs replied at Docket 202.

(3) Plaintiffs' Motion to Amend Motion for Class Certification and Appointment of Counsel at Docket 324. Defendants responded in opposition at Docket 333, to which Plaintiffs replied at Docket 334.

(4) Defendants' Motion for Leave to Supplement Factual Materials Supporting Their Opposition to Class Certification at Docket 228.

Plaintiffs responded in opposition at Docket 235, and Defendants did not file a reply.

(5) Defendants' Motion to Supplement Factual Materials Regarding Plaintiffs' Motion for Class Certification at Docket 297. Plaintiffs responded in opposition at Docket 304, to which Defendants replied at Docket 316.

Oral argument was not requested for any of the pending motions and was not necessary to the Court's determinations.

## BACKGROUND

In this putative class action, Plaintiffs—five children who were in the custody of Alaska's Office of Children's Services ("OCS") at the time the motion for class certification was filed—seek wide-ranging reform of Alaska's foster care system, alleging that the system harms the children it is designed to protect and violates Plaintiffs' federal rights.[1]

After the Court granted in part and denied in part Defendants' Motion to Dismiss, four claims remain: (1) violation of substantive due process pursuant to the Fourteenth Amendment[2]; (2) deprivation of the right to parent-child association

---

[1] Pseudonymously Named Plaintiffs are Mary B., Connor B., Rachel T., Eleanor T., and Lana H. Docket 16 at ¶¶ 12-22; Docket 220 at 20 (order dismissing other Named Plaintiffs from this case because they were no longer in OCS custody).

[2] Docket 16 at ¶¶ 264-69. The substantive due process claim is based on "(a) the right to freedom from the foreseeable risk of maltreatment while under the protective supervision of the State; (b) the right to protection from unnecessary intrusions into the child's emotional wellbeing once the State has established a special relationship with that child; . . . [and] (e) the right to treatment and care consistent with the purpose and assumptions of government custody." Docket 16 at ¶ 269.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 2 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 2 of 58

pursuant to the First, Ninth, and Fourteenth Amendments[3]; (3) violation of the Adoption Assistance and Child Welfare Act of 1980 ("CWA"), 42 U.S.C. § 670 *et. seq.*;[4] and (4) violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*.[5]

Plaintiffs bring these claims on behalf of themselves and on behalf of a proposed class consisting of "[a]ll children for whom OCS has or will have legal responsibility and who are or will be in the legal and physical custody of OCS" (the "General Class").[6]  In addition, Plaintiffs bring claims on behalf of three proposed subclasses:

[(1)] Alaska Native children who are or will be entitled to federal [Indian Child Welfare Act] ICWA protection (the "Alaska Native Subclass");

[(2)] Children who currently reside or will reside in a kinship foster home—the home of a family member—who meet the criteria to

---

The Court dismissed Plaintiffs' substantive due process claim insofar as it was based on other purported rights.  Docket 55 at 41-42.

[3] Docket 16 at ¶¶ 270-76.  The Court dismissed this claim insofar as it asserted a violation of familial association with regard to siblings and grandparents.  Docket 55 at 45-47.

[4] Docket 16 at ¶¶ 277-80.  The Court previously dismissed Plaintiffs' claim brought pursuant to § 672(a) of the CWA.  Docket 55 at 56-60.  The Court also granted summary judgment to Defendants on Plaintiffs' CWA claim premised on purported statutory rights to "placement in the least restrictive and most family-like setting, closest to their home community that conforms to nationally recommended professional standards, 42 U.S.C. §§ 671(a)(16), 675(5)(A);" and "access to quality services to protect his or her safety and health, 42 U.S.C. § 671(a)(22)."  Docket 286 at 21.

[5] Docket 16 at ¶¶ 298-315.  This claim is based on the "integration mandate" of the ADA which requires that states utilize community-based treatment and do not create a serious risk of institutionalization.  Docket 55 at 66-68.  The Court dismissed Plaintiffs' claims insofar as they alleged violations based on reasonable accommodations of OCS Safety Plans, healthcare services, and services to foster care providers.  Docket 55 at 64-66.

[6] Docket 16 at ¶ 28(a).

*Case No. 3:22-cv-00129-SLG, Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 3 of 58

receive foster care maintenance payments under 42 U.S.C. § 672 (the "Kinship Subclass"); and

[(3)] Children who are or will be in foster care and experience physical, cognitive, and psychiatric disabilities (the "ADA Subclass").[7]

In their class certification motion, Plaintiffs seek class certification of the General Class and the ADA Subclass.[8] In a prior order, the Court disqualified the next friend for Named Plaintiffs Mary B., Connor B., and Lana H.[9] Those Named Plaintiffs now seek to substitute another next friend.

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this civil action includes claims arising under federal law including 42 U.S.C. § 1983, the Adoption Assistance and Child Welfare Act of 1980, and the Americans with Disabilities Act.

## LEGAL STANDARD

### I. Next Friend

Federal Rule of Civil Procedure 17(c)(2) provides that "[a] minor . . . who does not have a duly appointed representative may sue by a next friend." "The burden is on the 'next friend' clearly to establish the propriety of his status and

---

[7] Docket 16 at ¶¶ 28(b)-(d).

[8] Docket 135 at 11.

[9] Docket 220 at 20.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 4 of 58

thereby justify the jurisdiction of the court."[10]  "In order to establish next-friend standing," a "putative next friend must show . . . the next friend has some significant relationship with, and is truly dedicated to the best interests of, the [plaintiff]."[11]

## II.    Class Certification

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"[12]  Pursuant to Rule 23(a), a district court may certify a class only if (1) it is "so numerous that joinder of all members is impracticable," (2) "there are questions of law or fact common to the class," (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and (4) "the representative parties will fairly and adequately protect the interests of the class."  These four prerequisites are commonly known as numerosity, commonality, typicality, and adequacy of representation.[13]  If these prerequisites are met, a court must also find that one of the requirements of Rule 23(b) has been met.  Here, Plaintiffs rely on Rule 23(b)(2), which requires finding that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

---

[10] *Whitmore v. Arkansas*, 495 U.S. 149, 164 (1990).

[11] *Coal. of Clergy v. Bush*, 310 F.3d 1153, 1159-60 (9th Cir. 2002) (quoting *Massie ex rel. Kroll v. Woodford*, 244 F.3d 1192, 1194 (9th Cir. 2001)).

[12] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

[13] *Johnson v. City of Grants Pass*, 72 F.4th 868, 885 (9th Cir. 2023), *rev'd on other grounds*, 603 U.S. 520 (2024).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 5 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 5 of 58

corresponding declaratory relief is appropriate respecting the class as a whole."[14]

"[A] district court facing a class certification motion is required to conduct 'a rigorous analysis' to ensure that the Rule 23 requirements are satisfied."[15] "Although [the Supreme Court has] cautioned that a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."[16] The party seeking class certification bears the burden of demonstrating that the requirements of Rule 23(a) and (b) are satisfied by a preponderance of the evidence.[17]  In other words, "plaintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23."[18] Plaintiffs may use any admissible evidence to make the requisite showing.[19]

---

[14] Docket 135 at 21; Fed. R. Civ. P. 23(b)(2).

[15] *Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

[16] *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013) (quoting *Wal-Mart*, 564 U.S. at 351).

[17] *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022).

[18] *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (emphasis in original).

[19] *Olean Wholesale*, 31 F.4th at 665 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454-55 (2016)).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 6 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 6 of 58

**DISCUSSION**

## I. Motions to Supplement

As an initial matter, Defendants move for leave to supplement the record regarding their opposition to class certification with additional responses by Plaintiffs to Defendants' interrogatories and deposition testimony of Justin Lazenby, a proposed next friend in this case.[20]  Regarding the interrogatories, Defendants maintain that they have shown cause to allow supplementation because the responses were not provided by Plaintiffs until after Defendants filed their opposition and they are relevant to whether an injunction could redress Plaintiff's alleged injuries.[21]  And Defendants assert that Mr. Lazenby's testimony is relevant to questions of standing and whether class certification is proper.[22]

Plaintiffs oppose supplementation with the interrogatories because, in their view, "Defendants' attempt to supplement the record with materials focused on the relief sought improperly shifts the focus from whether class certification is appropriate under Rule 23 to a merits-based inquiry."[23]  Plaintiffs also contend that

---

[20] Docket 228; Docket 297.

[21] Docket 228 at 2-3.

[22] Docket 297 at 4-7.

[23] Docket 235 at 3.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 7 of 58

Mr. Lazenby's testimony is irrelevant to the adequacy inquiry for class certification and does not undermine Plaintiffs' showing of commonality and standing.[24]

Pursuant to District of Alaska Local Rule 7.1(d)(2), a party may supplement its factual materials after briefing is complete only by filing a motion and showing good cause. The motion must have the factual materials attached as an exhibit and explain why earlier filing was not possible. The Court finds that Defendants have satisfied the requirements of Local Rule 7.1(d)(2) and therefore GRANTS Defendants' Motions to Supplement at Docket 228 and Docket 297. The Court will consider the supplemented materials in its consideration of the merits of class certification below.

## II.    Motion to Substitute Next Friends

Named Plaintiffs Mary B., Connor B., and Lana H. move to substitute their next friends.[25] The Court previously disqualified the individual who was serving as Lana H.'s next friend and who Plaintiffs proposed could serve as Mary B. and Connor B.'s next friend, precluding that next friend from representing any of the three children.[26] Plaintiffs now move to substitute Justin Lazenby as the next friend for Lana H. and Bonnie Yazzie as the next friend for Mary B. and Connor B.[27] Mr.

---

[24] Docket 304 at 2-9.

[25] Docket 255.

[26] Docket 220.

[27] Docket 255 at 2.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 8 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 8 of 58

Lazenby previously served as Lana H.'s guardian ad litem until he stopped serving as a guardian ad litem entirely in 2023, he has a meaningful relationship with Lana H., and he no longer works as a guardian ad litem, nor does he work with OCS on contract.[28] Ms. Yazzie is Mary B. and Connor B.'s maternal grandmother and had physical custody of Mary B. for approximately 7 months, from September 2021 to March 2022.[29]

Defendants oppose substitution of these next friends.[30] Defendants maintain that Mr. Lazenby and Ms. Yazzie are not appropriate next friends because "their personal interests either actually conflict with the interests of the children they seek to represent or, at least, create a risk or appearance of such conflicts."[31]

Specifically, while Defendants acknowledge that Mr. Lazenby had a significant relationship with Lana H. in the past while serving as her guardian ad litem, Defendants assert that Mr. Lazenby's participation in this case "would create 'a conflict of interest' or 'an appearance of impropriety' because his own professional decision-making is connected to the disputed issues in the case."[32]

---

[28] Docket 255 at 5; Docket 322-1 (SEALED) at 11 (Lazenby Dep.).

[29] Docket 255 at 4; Docket 16 at ¶¶ 61-65.

[30] Docket 320.

[31] Docket 320 at 5.

[32] Docket 320 at 6.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 9 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 9 of 58

That is because, as Defendants put it, Mr. Lazenby communicated with Lana H. at least monthly, attended her court hearings and treatment team meetings, and communicated with caseworkers, foster parents, therapists, and residential treatment staff.[33] Defendants also contend that Mr. Lazenby "communicates his recommendations about children's care, including OCS's and medical professionals' decisions about their care, to OCS caseworkers, service providers, and to the court."[34]

Plaintiffs reply that Mr. Lazenby satisfies the requirements to serve as Lana H.'s next friend because he had a significant relationship with her and there is no conflict of interest or appearance of impropriety, as he is not currently employed by OCS and does not currently provide services to children.[35]

The Court finds that Mr. Lazenby has "some significant relationship with, and is truly dedicated to the best interests of" Lana H.[36] The Court does not find that his prior communication with caseworkers, treatment providers, and the state court during his prior role as Lana H.'s guardian ad litem creates a conflict of interest in this case, as he is no longer serving as Lana H.'s guardian ad litem or as a guardian ad litem in general. Further, his role as Lana H.'s guardian ad litem

---

[33] Docket 320 at 7 (citing Docket 322-1 (SEALED) at 6-7, 11-12).

[34] Docket 320 at 7 (citing Docket 322-1 (SEALED) at 6-8, 16-21).

[35] Docket 331 at 4-7.

[36] *Coal. of Clergy*, 310 F.3d at 1160.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 10 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 10 of 58

obligated him to communicate with various parties to advocate for Lana H.'s best interests and his recommendations are not at issue in this case. This case concerns OCS's provision of services to children in OCS custody and whether OCS's practices presently violate those children's rights.

As to Ms. Yazzie, Defendants acknowledge that she has a significant relationship with Mary B. and Connor B. but contend that she should not be permitted to serve as the children's next friend because "[h]er views about what is best for the children are often diametrically opposed to those presented by her attorneys" and she does not have sufficient understanding of this case.[37] Plaintiffs reply that "there is no requirement that a next friend agree with every factual assertion or piece of evidence in the case" and a "next friend is not a party or a witness, they serve solely as a conduit for the child's legal interests."[38]

The Court finds that Ms. Yazzie has a "significant relationship with, and is truly dedicated to the best interests of," Mary B. and Connor B.[39] Ms. Yazzie's disagreement with some of the factual allegations or legal arguments in this case is immaterial, as she is not a party or a witness and this case involves whether

---

[37] Docket 320 at 9-11. Defendants also maintain that Ms. Yazzie disagrees that Connor B. is a member of the ADA Subclass and therefore she should not serve as the ADA class representative as Connor B.'s next friend. Docket 320 at 9-10. However, because Lana H. is a member of the ADA Subclass and has a proper next friend as discussed above, she is an adequate class representative for the ADA Subclass.

[38] Docket 331 at 7.

[39] *Coal. of Clergy*, 310 F.3d at 1160.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 11 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 11 of 58

OCS practices presently violate the rights of children in OCS custody. Therefore, the Court GRANTS Plaintiffs' Motion to Substitute Next Friends at Docket 255 with respect to both Mr. Lazenby and Ms. Yazzie.

### III. Motion for Class Certification

#### a. Standing

As a threshold matter, in their opposition to class certification, Defendants challenge Named Plaintiffs' standing to bring the claims in this case.[40] Standing is a "threshold issue" and an "essential and unchanging part of the case-or-controversy requirement of Article III."[41] "To establish standing, a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling."[42] "In a class action, standing is satisfied if at least one named plaintiff meets the requirements."[43] It is the named plaintiffs' burden to support each standing element "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the

---

[40] Docket 157 at 4-11. The Court previously denied Defendants' motion to dismiss on standing grounds. Docket 55 at 25-35. Defendants characterize their prior challenge as a facial attack to standing on the pleadings and the present challenge as a factual attack requiring Plaintiffs to present evidence supporting standing at the class certification stage. Docket 157 at 4 n.10.

[41] *Horne v. Flores*, 557 U.S. 433, 445 (2009) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

[42] *Id.* (citing *Lujan*, 504 U.S. at 560-61).

[43] *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 12 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 12 of 58

successive stages of litigation."[44]  "[T]he 'manner and degree of evidence required' at the preliminary class certification stage is not the same as 'at the successive stages of the litigation'—*i.e.*, at trial."[45]  "Because the preponderance of the evidence standard applies at the class certification stage, standing at the time of class certification must be established by a preponderance of the evidence,"[46] although plaintiffs are accorded "greater evidentiary freedom at the class certification stage" than at trial.[47]  "[O]nce the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met."[48]  Courts "look concretely at the facts that pertain to [each] plaintiff" to determine whether a named plaintiff has standing.[49]

Five Named Plaintiffs remain in this litigation: Mary B., Connor B., Rachel T., Eleanor T., and Lana H.  The Court therefore reviews the facts pertaining to each Named Plaintiff to determine whether any of them has standing to bring each claim remaining in this case.

---

[44] *Lujan*, 504 U.S. at 561.

[45] *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (quoting *Lujan*, 504 U.S. at 561).

[46] *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1240 (9th Cir. 2024).

[47] *Sali*, 909 F.3d at 1006.

[48] *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (citation omitted).

[49] *B.K. v. Snyder*, 922 F.3d 957, 967 (9th Cir. 2019).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 13 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 13 of 58

### i. ADA and Rehabilitation Act

Defendants maintain that none of the Named Plaintiffs "are experiencing the injury of 'unnecessary institutionalization' or 'serious risk' thereof" because Plaintiffs do not present evidence that residential treatment was inconsistent with the recommendations of treatment professionals nor have they shown that Plaintiffs placed in residential treatment "had the 'ability to receive services in' community-based placements."[50] Further, Defendants contend that Plaintiffs have not shown that any injury caused by the alleged violation of the ADA is fairly traceable to Defendants or is redressable.[51]

"[U]nder the integration mandate of the ADA [a] plaintiff need not show that institutionalization is 'inevitable' or that she has 'no choice' but to submit to institutional care in order to state a violation of the integration mandate. Rather, a plaintiff need only show that the challenged state action creates a serious risk of institutionalization."[52] "In order to comply with the integration mandate, states must implement reasonable modifications to avoid unnecessary institutionalization or isolation, at least where the modifications do not fundamentally alter the state's program or activity."[53] Therefore, an injury in fact is shown under the integration

---

[50] Docket 157 at 6.

[51] Docket 157 at 7.

[52] *M.R. v. Dreyfus*, 697 F.3d 706, 734 (9th Cir. 2012).

[53] Docket 55 at 68 (citations omitted).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 14 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 14 of 58

mandate when state action creates a serious risk of unnecessary institutionalization.

Plaintiffs point to their expert's report that recounts how both OCS and the Department of Justice have recognized OCS's challenges in identifying placement options for children with "more intense behavioral needs or complex medical diagnoses."[54] Plaintiffs' expert concluded that systemic concerns, including lack of sufficient community-based services provided for foster children and insufficient placement options aligned with the needs of children, expose children in OCS custody to "the harm of extended institutionalization . . . beyond the period of time needed for therapeutic purposes, due to a lack of family based placement options or other appropriate settings near their home community."[55]

Further, as the Court previously noted, the factual allegations in the Amended Complaint as to Lana H. adequately "state a claim for a violation of the integration mandate."[56] That conclusion was based in part on allegations that OCS has placed Lana H. at North Star Behavioral Health System five times due to a

---

[54] Docket 202 at 9 (citing Docket 203-2 at 33-38, 52-57); Docket 203-2 at 41-43 (Groh Report) (noting that Department of Justice report found "widespread use of institutional care for some children and noted an example of one child for whom OCS sought out-of-state placement for the child because they previously had not been able to successfully return the child home due to insufficient supports").

[55] Docket 203-2 at 10, 18 (Groh Report).

[56] Docket 55 at 68-69.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 15 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 15 of 58

lack of available therapeutic foster homes and then sent her to a treatment center in Texas.[57]  Defendants do not dispute the veracity of those factual allegations.

A summary of the case file for Lana H., a member of the proposed ADA Subclass, provides evidence that OCS practices place her at a serious risk of institutionalization.  The case summary indicates that, in 2018, Lana H. was diagnosed with several mental health disorders and a psychologist recommended that she receive ongoing treatment in a therapeutic foster home.[58]  But she was then placed at North Star Residential facility for several months.[59]  Because the serious risk of institutionalization alone is a cognizable violation of the integration mandate, Plaintiffs have shown by a preponderance of the evidence that OCS practices place Lana H. at serious risk of institutionalization.  Further, Plaintiffs adequately demonstrate causation at this stage of the litigation by attributing the risk of institutionalization to OCS's failure to provide sufficient community-based services or placement options aligned with the needs of children.  Lastly, the purported harm could be redressed by injunctive relief.[60]

---

[57] Docket 55 at 68 (citing Docket 16 at ¶¶ 126-32).

[58] Docket 138-3 (SEALED) at 3.

[59] Docket 138-3 (SEALED) at 3-4.

[60] *B.K.*, 922 F.3d at 967 ("If [the state's] allegedly deficient policies and practices are abated by an injunction, that harm may be redressed by a favorable court decision.").

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 16 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 16 of 58

As such, the Court finds that Lana H. has shown injury-in-fact, causation, and redressability by a preponderance of the evidence and she therefore has standing to bring the ADA claim.

## ii. Fourteenth Amendment – Substantive Due Process

Defendants next contend that Plaintiffs fail to establish standing to pursue their substantive due process claim because, in Defendants' view, "Substantive Due Process only protects a foster child's right to 'basic human needs'" and Plaintiffs have not shown a deprivation of any basic human needs due to the alleged OCS practices.[61]

The Ninth Circuit has held that "[o]nce the state assumes wardship of a child, the state owes the child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child."[62] "To prevail on a claim for failure to meet this duty, a plaintiff must prove that state officials acted with such deliberate indifference to the plaintiffs' liberty interest that their actions 'shock the

---

[61] Docket 157 at 7-8 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)).

[62] *Lipscomb v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992); *see B.K.*, 922 F.3d at 968 ("Due process requires the state to provide children in its care 'reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child.'" (quoting *Lipscomb*, 962 F.2d at 1379)).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 17 of 58

conscience.'"[63]  To make this showing, a plaintiff must prove "(1) an objectively substantial risk of harm, and (2) the official's subjective awareness of that risk."[64]

The Court previously recognized that the following rights "fall on the basic needs end of the spectrum": "(a) freedom from the foreseeable risk of maltreatment while under the protective supervision of the State; (b) protection from unnecessary intrusions into the child's emotional wellbeing once the State has established a special relationship with that child; . . . [and] (e) treatment and care consistent with the purpose and assumptions of government custody."[65]

Plaintiffs contend that Lana H. has standing to bring a substantive due process claim because while in OCS custody she has been in 32 different placements, including an out-of-state institutional setting where she was exposed to bed bugs, contracted ringworm, and was regularly physically restrained.[66]

---

[63] *B.K.*, 922 F.3d at 968 (quoting *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 844 (9th Cir. 2010)).

[64] *Id.* (citing *Tamas*, 630 F.3d at 845).

[65] Docket 55 at 39-40 (citing Docket 16 at ¶ 269); Docket 55 at 40 & n.191 (first citing *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 251 (5th Cir. 2018) ("[E]gregious intrusions on a child's emotional well-being . . . are constitutionally cognizable."); then citing *Jonathan R. v. Justice*, Case No. 3:19-CV-00710, 2023 WL 184960, at *7 (S.D.W. Va. Jan. 13, 2023) (recognizing substantive due process rights to protection against maltreatment; "protection from unnecessary intrusions into the child's emotional wellbeing while in State custody"; and "treatment and care consistent with the purpose and assumptions of government custody."); and then citing *Wyatt B. by McAllister v. Brown*, Case No. 6:19-CV-00556-AA, 2021 WL 4434011, at *8 (D. Or. Sept. 27, 2021) (recognizing "the right to freedom from maltreatment while under the protective supervision of the state" and "[t]he right to freedom from bias-related violence, abuse and harassment while in state custody")).

[66] Docket 135 at 19 (citing Docket 138-3 (SEALED) at 12-13, 18-19); Docket 202 at 6-7 (citing Docket 138-3 (SEALED) at 11).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 18 of 58

Further, as recently as October 2024, Lana H. was again placed at North Star and has made multiple reports of mistreatment by North Star staff.[67]  Plaintiffs maintain that placement instability, like that experienced by Lana H., "stems from a chronic and systemic lack of community-based placements" in OCS and undisputedly "exposes children to a substantial risk of emotional and psychological deterioration."[68]  Whether Plaintiffs have proven that OCS practices caused any substantive due process injury as set forth in the Amended Complaint goes to the merits, not to standing.  And an injunction requiring OCS to reform its practices to alleviate the alleged harm would redress Lana H.'s injury.  Therefore, the Court finds that Lana H. has shown injury-in-fact, causation, and redressability by a preponderance of the evidence and she therefore has standing to bring the substantive due process claim.[69]

---

[67] Docket 203-3 at 2.

[68] Docket 202 at 6 (citing *Lehman v. Lycoming Cnty. Children's Servs. Agency*, 458 U.S. 502, 513-14 (1982) ("It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current 'home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged.")); *see* Docket 203-2 at 40 (Groh Report) (opining that "[w]ithout a sufficient range of appropriate placement options that align with the [children's] needs . . . child welfare systems create . . . [an] [i]ncreased risk of children being places in institutional settings when they should be in family-based settings . . . leading to children being placed in—and left in—various institutional settings including hospitals, homeless shelters, etc.")).

[69] Plaintiffs have also alleged deprivation of their right to parent-child association pursuant to the First, Ninth, and Fourteenth Amendments.  Docket 16 at ¶¶ 270-76; Docket 55 at 44-47.  The Court does not address standing as to this claim here as Defendants did not challenge standing, instead asserting that "plaintiffs have abandoned Count 2, because their briefing does not even mention the familial association claim or purport to identify any class-wide 'policy' or 'practice' that allegedly violates the alleged right to familial association."  Docket 157 at 15 n.48.  Class certification as to the familial association claim is addressed *infra* at pages 45-46.  The Court notes that Defendants have challenged standing as to the familial association claim in their motion

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 19 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 19 of 58

### iii. Child Welfare Act

Defendants maintain that none of the Named Plaintiffs have standing to bring their CWA claim because the "plaintiffs have not alleged that any named plaintiff is a 'child receiving foster care maintenance payments under the State plan' who has not received a 'case plan'" or "whose case plan lacks 'documentation of the steps the agency is taking to' find an adoptive home or other permanent living arrangement."[70]  Defendants also contend that Plaintiffs have failed to show that OCS violated the "statutory requirement" to file a petition to terminate parental rights in accordance with 42 U.S.C. §§ 671(a)(16), 675(5)(E) as to any Named Plaintiff.[71]  Plaintiffs respond that they "need not show that every single case plan is entirely absent or insufficient" as "the pattern of inadequate case planning is a clear violation of the CWA."[72]

In a prior order, the Court denied Defendants' motion for summary judgment

---

for summary judgment on that claim.  Docket 232 at 36-37.  That motion remains pending before the Court.

[70] Docket 157 at 9-10.  A child is eligible to "receiv[e] foster care maintenance payments under the State plan," and is therefore entitled to a case plan and case review plan pursuant to 42 U.S.C. § 671(a)(16), according to the terms of 42 U.S.C. § 672.  42 U.S.C. § 671(a)(1) (requiring a state to have a plan approved by the Secretary which "provides for foster care maintenance payments in accordance with section 672 . . . .").  Pursuant to § 672, a child is eligible for foster care maintenance payments when, *inter alia*, he has been removed from the home of a relative and placed into foster care according to a judicial determination that staying in the home would be contrary to the child's welfare, the child is the responsibility of the state agency administering the state plan, and the child has been placed in a foster family home.  42 U.S.C. § 672(a)(1)-(2).

[71] Docket 157 at 11.

[72] Docket 202 at 11.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 20 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 20 of 58

as to this claim in part and found that Plaintiffs could pursue a CWA claim based on purported violations of Plaintiffs' rights to "a written case plan that includes a plan to provide safe, appropriate and stable placements," "a written case plan that ensures that the child receives safe and proper care while in foster care and implementation of that plan," "a written case plan that ensures provision of services to parents, children, and foster parents to facilitate reunification, or where that is impossible, the permanent placement of the child and implementation of that plan," "a case review system in which each child has a case plan designed to achieve safe and appropriate foster care placements in the least restrictive and most family-like setting, close to their home community," and "to have a petition to terminate parental rights filed if the child has been in foster care for 15 out of the last 22 months, unless doing so goes against the best interest of the child as documented in the case record, or subject to a statutory exemption."[73]

Here, the case summary for Eleanor T. and Rachel T. indicates that the state court granted temporary custody to OCS in August 2020 and that, by November 2020, both children had been placed with their half-sister, who was a licensed foster parent.[74] The case summary details the foster parent's difficulties receiving foster care payments from OCS and otherwise receiving support from OCS

---

[73] Docket 286 at 15-20.

[74] Docket 138-1 (SEALED) at 1, 5-6, 12, 16.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 21 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 21 of 58

necessary to ensure that both children received appropriate support services.[75] The foster parent also repeatedly asked OCS about getting approval from Rachel T.'s parents for prescribed medications and voiced her concerns regarding visitation with the children's father.[76]  Based on the case summary, Eleanor T. and Rachel T. were and remain eligible to receive foster care maintenance payments because a court placed them in OCS custody, OCS was responsible for the children, and the children were place in a foster family home.

The case summary for Lana H. indicates that she was placed in foster care in May 2018.[77]  The summary details numerous placements for Lana H., with frequent moves between foster families and frequent admittances to North Star from May 2018 to August 2020.[78]  In August 2020, Lana H. was sent to a treatment center in Texas, where she stayed until the summer of 2021.[79]  Once Lana H. returned to Alaska, she again was moved to several different foster families.[80] She was also moved to a hospital, a youth detention center, and a youth shelter.[81]  In November 2022, Lana H. was placed at a residential treatment facility in Ohio,

---

[75] Docket 138-1 (SEALED) at 6, 18-22.

[76] Docket 138-1 (SEALED) at 20-22.

[77] Docket 138-3 (SEALED) at 2.

[78] Docket 138-3 (SEALED) at 3-9.

[79] Docket 138-3 (SEALED) at 9.

[80] Docket 138-3 (SEALED) at 10-12.

[81] Docket 138-3 (SEALED) at 12-15.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 22 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 22 of 58

where staff used physical restraints against her on several occasions.[82]  In January 2023, a potential foster placement began raising concerns with OCS about Lana H.'s care.[83]  A caseworker had not met with Lana H. since August 2022.[84]  In June 2023, Lana H. was discharged from the facility in Ohio and placed in a foster home in Alaska.[85]  In July 2023, Lana H. was moved to a homeless shelter.[86]  In September 2023, Lana H. was placed with another foster family, who worked on getting her support at school and appropriate medical care.[87]  At that time, Lana H. appeared to be relatively stable.[88]  In October 2024, Lana H.'s doctor recommended a higher level of care, and OCS placed Lana H. back at North Star.[89]

The case summary for Lana H. shows that she was placed in OCS custody in 2018 and that she has been at numerous licensed foster families.  As such, Lana H. was and remains eligible to receive foster care maintenance payments because a court placed her in OCS custody, OCS was responsible for her care, and she

---

[82] Docket 138-3 (SEALED) at 17.

[83] Docket 138-3 (SEALED) at 17-19.

[84] Docket 183-3 (SEALED) at 18.

[85] Docket 138-3 (SEALED) at 22.

[86] Docket 183-3 (SEALED) at 22.

[87] Docket 138-3 (SEALED) at 23.

[88] Docket 138-3 (SEALED) at 24-25.

[89] Docket 203-3 (SEALED) at 2.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 23 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 23 of 58

was placed in numerous foster family homes. Further, Lana H.'s time in OCS custody has been unstable, she has been moved out of the state twice, and she has most recently been removed from a foster placement into North Star. Therefore, Lana H. has presented evidence that OCS practices violate her rights to "a written case plan that includes a plan to provide safe, appropriate and stable placements," "a written case plan that ensures that the child receives safe and proper care while in foster care and implementation of that plan," "a written case plan that ensures provision of services to parents, children, and foster parents to facilitate reunification, or where that is impossible, the permanent placement of the child and implementation of that plan,"[90] and "a case review system in which each child has a case plan designed to achieve safe and appropriate foster care placements in the least restrictive and most family-like setting, close to their home community."[91]

The case summary for Mary B. indicates that she entered OCS custody in March 2019, and a "few months" later, she was placed with a licensed foster family.[92] Mary B. remained with that foster family for over two years, until September 2021, when she was placed with her maternal grandmother for seven

---

[90] Docket 16 at ¶ 279(c)-(e).

[91] Docket 16 at ¶ 279(f).

[92] Docket 138-4 (SEALED) at 2-3.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 24 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 24 of 58

months.[93]   In February 2022, Mary B. was then placed with her uncle Carl, who was working on becoming a licensed foster parent during this time but the summary does not indicate whether OCS made a final determination on his license application.[94]   In September 2024, Mary B. was moved to the same foster family as her brother Connor B.[95]  As of 2024, parental rights had not been terminated.[96]  As such, Mary B. was and remains eligible to receive foster care maintenance payments because a court placed her in OCS custody, OCS was responsible for her care, and she was placed in numerous foster family homes.  Further, OCS did not file a petition for termination of parental rights during Mary B.'s time at her initial foster family, where she was placed for over two years—more than the 22 months triggering the statutory requirement.  Defendants do not point to evidence showing that OCS determined that termination of parental rights was not in the best interests of Mary B.  The Court finds that Mary B. has presented evidence that OCS violated her "right to have a petition to terminate parental rights filed if the child has been in foster care for 15 out of the last 22 months, unless doing so goes

---

[93] Docket 138-4 (SEALED) at 3-7.

[94] Docket 138-4 (SEALED) at 7-10.

[95] Docket 203-3 (SEALED) at 1.

[96] Docket 138-4 (SEALED) at 9-10; *see* Docket 203-3 (SEALED) at 1.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 25 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 25 of 58

against the best interest of the child as documented in the case record, or subject to a statutory exemption."[97]

Whether Plaintiffs have proven that OCS practices deprived them of rights pursuant to the CWA goes to the merits, not to standing. And an injunction requiring OCS to reform its practices to alleviate the alleged harm would redress the Named Plaintiffs' injuries. Therefore, the Court finds that Eleanor T., Rachel T., Lana H., and Mary B. have shown injury-in-fact, causation, and redressability by a preponderance of the evidence and Named Plaintiffs therefore have standing to bring their CWA claim.

### b. Rule 23(a)

The Court now considers whether Plaintiffs have met their burden of proof for certification of the General Class and ADA Subclass pursuant to Rule 23(a)'s four prerequisites: numerosity, commonality, typicality, and adequacy of representation. Of these prerequisites, Defendants contend that Plaintiffs fail to show commonality, typicality, and adequacy of representation.[98]

### i. Numerosity

"To satisfy the numerosity requirement a proposed class must be 'so numerous that joinder of all members is impracticable.' For purposes of this requirement, 'impracticability does not mean impossibility, but only the difficulty or

---

[97] Docket 16 at ¶ 279(g).

[98] Docket 157 at 2.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 26 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 26 of 58

inconvenience of joining all members of the class.'"[99]  While "[t]here is no specific number of class members required, . . . proposed classes of less than fifteen are too small while classes of more than sixty are sufficiently large."[100]

The proposed General Class consists of approximately 2,500 children who are currently in OCS custody.[101]  The ADA Subclass consists of approximately 1,842 children with disabilities who are in OCS custody.[102]  The Court finds that both classes are sufficiently large, over 1,000 children each, and that joinder of all members would be impracticable.  Therefore, Plaintiffs have met the numerosity requirement as to the General Class and the ADA Subclass.

### ii. Commonality

"A class satisfies Rule 23's commonality requirement if there is at least one question of fact or law common to the class."[103]  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the

---

[99] *Johnson*, 72 F.4th at 886 (internal quotation marks omitted) (first quoting Fed. R. Civ. P. 23(a)(1); and then quoting *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)).

[100] *Id.* (first citing *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980); and then citing *Harik v. Cal. Teachers Ass'n*, 326 F.3d 1042, 1051-52 (9th Cir. 2003)).

[101] Docket 135 at 23-24 (citing Docket 136-9 (showing 2,492 children in out-of-home care as of October 2024)).

[102] Docket 135 at 24 (citing Docket 136-25 (Suh Decl.) (explaining how number of children in OCS custody with disabilities was calculated as of January 1, 2024)).  Defendants dispute that there are 1,842 children in OCS custody with disabilities.  Defendants maintain that the spreadsheet from which Plaintiffs derived that number shows 1,300 unique child identification numbers, but some children have multiple diagnoses.  Docket 157 at 40 n.164.

[103] *Johnson*, 72 F.4th at 887 (citation omitted).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 27 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 27 of 58

resolution of the litigation."[104]  And yet, "[e]ven a single [common] question will do."[105]  "Class members' claims must depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke."[106]  "[T]o assess whether the putative class members share a common question, the answer to which will resolve an issue that is central to the validity of each one of the class member's claims, we must identify the elements of the class member's case-in-chief."[107]  Plaintiffs must show that they are entitled to class certification as to each claim.[108]

### 1. General Class

Plaintiffs contend that they raise numerous common issues of law and fact.[109]  Plaintiffs focus on five systemic OCS practices that they allege violate their constitutional and statutory rights: "overly high caseloads and inadequate staffing"; "lack of adequate and appropriate placements"; "failure to ensure timely permanency"; "failure to provide sufficient services"; and "failure to adequately

---

[104] *Id.* (emphasis in original) (quoting *Wal-Mart Stores*, 564 U.S. at 350).

[105] *Wal-Mart Stores*, 564 U.S. at 359 (alterations in original) (internal quotation marks and citation omitted).

[106] *Johnson*, 72 F.4th at 887 (alterations, internal quotation marks, and citation omitted).

[107] *B.K.*, 922 F.3d at 968 (quoting *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014).

[108] *Id.* at 977 & n.6 ("Only a separate class certification analysis, recognizing the difference between the due process claims and the Medicaid claim as we have explained in this opinion, and making factual findings in conformity with that legal framework, will ensure that 'after a rigorous analysis, . . . the prerequisites of Rule 23(a) have been satisfied.'" (quoting *Wal-Mart*, 564 U.S. at 350-51)).

[109] Docket 135 at 25-27.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 28 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 28 of 58

case plan."[110] These practices, Plaintiffs contend, are the "glue" holding the class together and they are either "unlawful as to every [class member] or they are not."[111]

Defendants disagree that Plaintiffs have shown commonality because, in Defendants' view, Plaintiffs have not identified any specific, uniformly applied official policy or well-defined practice that is the cause of the harm identified by Plaintiffs.[112] Further, Defendants maintain that Plaintiffs have not shown a class-wide applicability of the purported OCS practices.[113]

### a. Substantive Due Process Claim

To show a substantive due process violation, Plaintiffs must prove "(1) an objectively substantial risk of harm, and (2) the official's subjective awareness of that risk."[114] Plaintiffs contend that "Defendants' failure to lower caseloads and to support, train, and retain caseworkers are policies and practices that create a substantial risk of harm"; Defendants' "failure to maintain an adequate array of placements exposes foster children to significant risks of harm";[115] and

---

[110] Docket 135 at 27-54.

[111] Docket 135 at 25 (alteration in original) (first quoting *B.K.,* 922 F.3d at 969; and then citing *Parsons*, 754 F.3d at 678).

[112] Docket 157 at 13, 15, 20, 26, 30, 33.

[113] Docket 157 at 20-21, 26-27, 30, 33, 35.

[114] *B.K.*, 922 F.3d at 968.

[115] Docket 135 at 37-38.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 29 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 29 of 58

"Defendants' failure to prioritize reunification, adoption, and permanency planning places children at substantial risk of harm."[116]

In support of these claims, Plaintiffs rely on their expert's report, in which the expert opines that "[e]vidence from OCS itself and from multiple reports from Alaska's Citizen Review Panel (CRP) across many years demonstrates that OCS has an ongoing, problematic issue with caseloads for workers being too high without making significant improvements and having a very high rate of worker turnover."[117] Plaintiffs' expert relied on OCS data showing that nearly half of OCS caseworkers have a caseload of at least 31 families, which could include multiple children, while the Child Welfare League of America and the Council on Accreditation recommends a caseload of 12-15 children.[118] Indeed, Alaska law mandates a cap of 13 families per OCS caseworker.[119] Further, Plaintiffs point to a 2023 Annual Progress and Services Report stating that "[s]taffing issues in both Fairbanks and Anchorage likely contributed to delays in initiation of reports [of child maltreatment]" and investigations into reports of child maltreatment were not timely

---

[116] Docket 135 at 49.

[117] Docket 136-70 at 20.

[118] Docket 136-70 at 20; *see* Docket 136-25 at ¶ 5 (Suh Decl.) (explaining methodology for calculating caseloads using OCS data).

[119] Alaska Stat. § 47.14.112(a)(4) (requiring OCS to prepare a staffing report if it is unable "to ensure that the average statewide caseload is not more than 13 families for each worker"); Docket 136-15 at 2 (2023 Annual Report to the Legislature on Caseloads, Staffing, Recruitment, Retention, & the Impacts on Child Welfare Outcomes describing that OCS is above the "[House Bill] 151 mandated cap of 13 cases").

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 30 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 30 of 58

initiated in over a quarter of cases in 2023.[120] Plaintiffs also note that OCS does not track or investigate claims of maltreatment by children placed in a group home, institutional facility, emergency shelter, or other alternative placement; therefore, rates of maltreatment, in Plaintiffs' view, are likely higher than the 1.09% reported.[121]

As to Plaintiffs' claim that OCS has a practice of failing to "maintain and develop an adequate number and range of foster placements" which "increases the likelihood that children endure institutionalization, placement instability, or inappropriate settings like homeless shelters, OCS offices, and hotels,"[122] Plaintiffs point to evidence that the number of available foster homes has decreased from 2017 to 2023 and there are more children in foster care than available placements.[123] Plaintiffs' expert opined that

> A major driver of placement instability is not having sufficient placement options that are aligned with the needs and characteristics of children in out-of-home care. When workers are put in the position of needing to find any available placement for a child, rather than being able to choose among several placement options and determine which would be the best fit, children often get moved

---

[120] Docket 136-20 at 8-9.

[121] Docket 135 at 33-34 (first citing Docket 136-86; and then citing Docket 136-76 at 38 (Donahue Dep.) ("We would not record that as a protective services report, because that is not an allegation of maltreatment of a caregiver to the child in a family home. So it would be whatever licensing authority oversees that investigation would have that record.")).

[122] Docket 135 at 39 (citing Dockets 136-38, 136-43, 136-48, Docket 136-51 (internal OCS emails)); *see also* Docket 136-59 (email from guardian ad litem).

[123] Docket 135 at 39 (citing Docket 136-72 at 18 (showing a decrease from 1,265 in 2019 to 879 in 2023 in OCS-licensed non-child-specific foster and foster group homes)).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 31 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 31 of 58

quickly from one placement to another, creating additional chaos and transitions for the child.[124]

Plaintiffs' expert recounted that the case files for Mary B. and Lana H. indicated that they were not receiving appropriate placements and services.[125]  Overall, Plaintiffs' expert calculated that "[n]early 18% of children experience five or more placements, meaning the child is having to move many times and adjust to new environments, new caregivers, and potentially entirely new communities and areas of the state—or outside of Alaska—throughout their time in out-of-home care."[126] Plaintiffs also point to evidence that OCS is not providing foster families with adequate support, and Plaintiffs' expert opined that "a common major driver for foster parents deciding to stop being foster parents is the lack of communication and responsiveness from workers."[127]  Further, Plaintiffs' expert determined that there were "extensive delays and confusion in the process for getting Mary B.'s uncle licensed to become a foster parent, and as a result, the family received no financial assistance," and Mary B.'s sister told OCS that she was very concerned about having enough money to buy food.[128]  Rachel T.'s foster parent also

---

[124] Docket 136-70 at 43.

[125] Docket 136-70 at 45-47.

[126] Docket 136-70 at 44.

[127] Docket 136-70 at 53 (relying on OCS's Child and Family Services Plan ("CFSP") for 2025-2029, which included results from a 2024 survey of foster parents showing that just under half of foster parents reported receiving monthly contact with their caseworker and that 42% of foster parents reported not being able to reach their caseworker when needed).

[128] Docket 136-70 at 54.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 32 of 58

communicated with OCS that she was having difficulty getting medication approved by Rachel T.'s parents and an OCS caseworker's notes reflect that OCS was not providing the foster parent with support.[129] Plaintiffs also contend that "OCS fails to track service providers or waitlists, leaving caseworkers unaware of the adequacy or availability of services," which leads to long waitlists and exacerbates children's "emotional and developmental challenges."[130]

Finally, in support of their assertion that OCS has a practice of "leaving children without the essential services and case plans needed for reunification or other permanent placement," Plaintiffs point to the Child and Family Services Plan ("CFSP") for 2020 to 2024, in which OCS recognized that it was not in substantial conformity with its goal to timely create and document permanency goals, primarily due to workforce vacancy and turnover rates and high caseloads.[131] Plaintiffs' expert opined that "[h]igh caseloads reduce the amount of time and attention that workers can devote to individual children on their caseload, which is detrimental to meeting children's needs while in out-of-home care and can impede and delay permanency."[132] Further, an OCS review of cases of children who had been in OCS custody for 24 months revealed that the most prevalent issue causing

---

[129] Docket 136-70 at 55.

[130] Docket 202 at 22-23 (citing Docket 203-10 at 82, 84-85 (Centeno Dep.)).

[131] Docket 135 at 46-47.

[132] Docket 136-70 at 18.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 33 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 33 of 58

permanency delays was "multiple caseworkers being assigned to cases," and "for each new caseworker assignment, permanency was delayed for the family by at least three months."[133]  A lack of parental engagement and untimely termination of parental rights petitions also contributed to permanency delays.[134]

Defendants contend that "what the plaintiffs describe as policies and practices are in fact stubbornly challenging workforce conditions faced by all employers in Alaska."[135]  As to the sufficiency of placements, Defendants maintain that the purported failure to make available adequate and appropriate placements "is not a 'policy' or 'practice' of OCS" because "OCS cannot force Alaskans to serve as foster families, and OCS cannot create institutional placements that do not exist."[136]  Finally, Defendants maintain that "permanency delays are also not the product of OCS policies or practices."[137]

In *B.K. v. Snyder*, the Ninth Circuit affirmed class certification in a challenge to a state foster care system's "state-wide policies and practices" that allegedly

---

[133] Docket 136-22 at 2.

[134] Docket 136-22 at 2.

[135] Docket 157 at 16-17 (quoting Docket 159-2 at 29 (Groh Dep.)) (Plaintiffs' expert agreeing that it is "not a practice or a policy that OCS pursues" that has caused inadequate staffing).

[136] Docket 157 at 22 (quoting Docket 159-2 at 44 (Groh Dep.)) (Plaintiffs' expert testifying that she was not aware of "any policies and procedures that OCS follows that . . . contribute to the lack of placements").

[137] Docket 157 at 27.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 34 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 34 of 58

violated "rights to due process under the Fourteenth Amendment."[138] In *B.K.*, the plaintiffs sought class certification in a lawsuit against the Arizona Department of Child Safety ("DCS") and the Arizona Health Care Cost Containment System ("AHCCCS"), the two agencies responsible for administering health care and other services to children in foster care in Arizona.[139] B.K., the only remaining named plaintiff at the class certification appeal stage of the litigation, alleged that the defendant agencies had violated her due process rights under the Fourteenth Amendment because "she ha[d] been deprived of necessary health care, separated from her siblings, deprived of family contact, and placed in inappropriate care environments."[140] B.K. sought certification of a general class comprised of "[a]ll children who are or will be in the legal custody of DCS due to a report or suspicion of abuse or neglect."[141]

In support of the class certification motion, B.K. relied on the complaint, data from DCS "to show how DCS was failing to deliver timely health care to foster children; expert reports . . . [opining] that Arizona's foster care system put children

---

[138] *B.K.*, 922 F.3d at 964.

[139] *Id.* at 962-63. DCS was responsible for "investigating reports of abuse and neglect, establishing foster care placements, working with law enforcement, maintaining permanency, and providing treatment to families" and investigated "reports of threats to child safety and may remove children from their homes by superior court order, consent of the child's guardian, or where clearly necessary to protect the child because exigent circumstances exist." *Id.* at 963 (internal quotation marks and citation omitted).

[140] *Id.* at 964.

[141] *Id.* at 965.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 35 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 35 of 58

in grave risk of harm by failing to provide adequate care; and independent investigative reports, deposition testimony, and DCS/AHCCCS policy and educational materials."[142] As class representative, B.K. "supported her claim . . . with excerpts from her DCS file that, if interpreted and credited as the plaintiffs contended, could tend to show she has been kept in inappropriate home settings and has serious unmet mental and physical healthcare needs."[143]

The district court certified the general class, finding that "the due process claims could be litigated class-wide as to the General Class . . . by answering whether the alleged statewide policies and practices were unconstitutional, following [the Ninth Circuit's] reasoning in *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014)."[144] The defendant agencies appealed.

On appeal, the Ninth Circuit "identif[ied] the elements" of B.K.'s "two due process claims on behalf of the General Class": "(1) an objectively substantial risk of harm, and (2) the official's subjective awareness of that risk."[145] The Court held that, "[b]ased on the nature of the plaintiffs' due process claims and the scope of the class certified, the district court here did not abuse its discretion by determining

---

[142] *Id.* at 964.

[143] *Id.*

[144] *Id.* at 965.

[145] *Id.* at 968 (citation omitted).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 36 of 58

that commonality exists."[146]   The Ninth Circuit explained that it had "previously recognized in the Eighth Amendment context that a state's policies and practices can expose all persons within its custody to a substantial risk of harm, which is the legal standard required by this due process claim."[147]   Specifically,

> In *Parsons v. Ryan*, [the Ninth Circuit] held that a class of "all prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the ADC [Arizona Department of Corrections]" had sufficient commonality because "[t]he putative class . . . members thus all set forth numerous common contentions whose truth or falsity can be determined in one stroke: whether the specified statewide policies and practices to which they are all subjected by ADC expose them to a substantial risk of harm. . . . The "policies and practices [we]re the 'glue' that h[eld] together the putative class," because "either each of the policies and practices is unlawful as to every inmate or it is not."[148]

The *B.K.* Court held that the reasoning in *Parsons* applied to B.K.'s case and that "[t]he district court properly grounded its commonality determination in the constitutionality of statewide policies and practices, which is a 'common question of law or fact' that can be litigated in 'one stroke.'"[149]   The district court had identified numerous statewide practices that affected the general class, including "overuse of congregate care for children with unmet mental needs; . . . excessive

---

[146] *Id.*

[147] *Id.*

[148] *Id.* at 968-69 (all alterations except first alteration in original) (quoting *Parsons*, 754 F.3d at 678).

[149] *Id.* at 969 (quoting *Wal-Mart*, 564 U.S. at 350).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 37 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 37 of 58

caseworker caseloads; . . . [and] failure to document 'safety assessments.'"[150]  The

Ninth Circuit held that "[r]egardless whether any of these policies are ultimately

found unconstitutional such that the plaintiffs prevail on the merits, their

constitutionality can properly be litigated in a class setting."[151]

Like in *B.K.*, the Named Plaintiffs in this case allege that certain OCS-wide

practices—"failure to lower caseloads and to support, train, and retain

caseworkers," "failure to maintain an adequate array of placements," and "failure

to prioritize reunification, adoption, and permanency planning"—place children in

the General Class at a substantial risk of harm.[152]  These practices are similar

enough to those alleged in *B.K.* for the Court to find that Plaintiffs have indeed

identified OCS practices.  And like in *B.K.*, the Named Plaintiffs rely on an expert

report, OCS data, OCS reports, OCS internal emails, and information from the

Named Plaintiffs' case files to demonstrate that commonality exists as to their due

process claim by a preponderance of the evidence.  The Court therefore finds that,

"[r]egardless whether any of these policies are ultimately found unconstitutional

such that the plaintiffs prevail on the merits, their constitutionally can properly be

litigated in a class setting."[153]  As such, the Court concludes that Plaintiffs have

---

[150] *Id.*

[151] *Id.*  The *B.K.* Court also noted that the defendants "[did] not seriously dispute the adequacy of the General Class in this regard."  *Id.*

[152] Docket 135 at 37-38, 49.

[153] *B.K.*, 922 F.3d at 969.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 38 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 38 of 58

established a common question—whether OCS practices place Plaintiffs at a substantial risk of harm—as to their substantive due process claim.[154]

Defendants contend that "[n]either *B.K.* nor *Parsons* clearly distinguished between 'policy' or 'practice' and a challenge or problem facing a defendant's programs or services," as the defendants in *B.K.* "[did] not seriously dispute the adequacy of the General Class in" regard to commonality and therefore, "the Ninth Circuit had no occasion to address whether these were in fact 'statewide practices.'"[155] However, the Arizona agencies at issue in *B.K.*, and OCS in this case, are responsible for children in the custody of their respective states. Therefore, OCS practices apply to any child within OCS custody, regardless of where the child lives within Alaska or even in a placement outside Alaska. And the Court does not find a meaningful distinction between an OCS practice and an OCS program or service for the purpose of determining commonality.

### b. CWA Claim

Plaintiffs assert CWA claims challenging the legality of OCS's case review system and provision of written case plans.[156] Specifically, Plaintiffs CWA claim asserts purported violations of Plaintiffs' rights to:

---

[154] *See Parsons*, 754 F.3d at 685 (holding that commonality satisfied because "here there is only a single answer to questions such as 'do ADC staffing policies and practices place inmates at a risk of serious harm?'").

[155] Docket 157 at 13 n.43.

[156] Docket 16 at ¶ 279(c)-(g); Docket 286 at 21 (dismissing CWA claims alleged at Docket 16 ¶ 279(a)-(b)).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 39 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 39 of 58

a written case plan that includes a plan to provide safe, appropriate and stable placements, 42 U.S.C. §§ 671(a)(16), 675(1)(A);

a written case plan that ensures that the child receives safe and proper care while in foster care and implementation of that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

a written case plan that ensures provision of services to parents, children, and foster parents to facilitate reunification, or where that is impossible, the permanent placement of the child and implementation of that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

a case review system in which each child has a case plan designed to achieve safe and appropriate foster care placements in the least restrictive and most family-like setting, close to their home community. 42 U.S.C. §§ 671(a)(16), 675(5)(A);[157] and

the right to have a petition to terminate parental rights filed if the child has been in foster care for 15 out of the last 22 months, unless doing so goes against the best interest of the child as documented in the case record, or subject to a statutory exemption. 42 U.S.C. § 675(5)(E).[158]

---

[157] In their motion for class certification, Plaintiffs contend that Defendants' "failure to maintain an adequate array of placements" violates Plaintiffs' right to "placement in a safe setting that is the least restrictive (most family like) and most appropriate setting available," "in close proximity to the parents' home" and "consistent with the best interest and special needs of the child." Docket 135 at 38 (citing 42 U.S.C. § 675(5)(A); 42 U.S.C. § 622(b)(8)(A)(iii)). By prior order, this Court dismissed Plaintiffs' CWA claim premised on an individual purported right to "placement in the least restrictive and most family-like setting, closest to their home community that conforms to nationally recommended professional standards." Docket 286 at 18 (quoting Docket 16 at ¶ 279(a)). However, the Court found that Plaintiffs have an enforceable right to a case review system that provides a procedure for assuring that each child has a case plan designed to achieve safe and appropriate foster care placements in the least restrictive and most family-like setting, close to their home community. Docket 286 at 17-18.

[158] Docket 16 at ¶ 279(c)-(g). As explained in the Court's prior order, the provision regarding the timeline for filing termination of parental rights petitions is within the case review system part of the statute. The right, therefore, is to a case review system that assures that a termination petition is timely filed under certain circumstances. Docket 286 at 19.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 40 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 40 of 58

Specifically, Plaintiffs allege that "Defendants are failing to timely create and update case plans and fail to adequately include family members and children, when appropriate, in case planning."[159] Plaintiffs also maintain that Defendants have "repeatedly failed to meet" their burden to "ensure that every child in foster care receives the necessary services to support reunification with their biological family" or "to create a case plan that facilitates a permanent and alternative placement."[160] Plaintiffs attribute this failure to Defendants' workforce challenges, including high caseloads and staff shortages; delays in terminating parental rights and noncompliance with 42 U.S.C. § 675(5)(E), which requires the State to file a termination of parental rights petition when a child has spent 15 of the preceding 22 months in state custody unless certain exceptions apply; and failure to provide "the necessary services to support reunification with their biological family."[161]

In their response, Defendants maintain that "permanency delays are also not the product of OCS policies or practices" and that OCS complies with § 675(5)(E) "in most cases."[162]  In Defendants' view, "this issue is highly

---

[159] Docket 135 at 55.

[160] Docket 135 at 46 (citing 42 U.S.C. §§ 671(a)(16), 675(1)(E)).  Although Plaintiffs cite § 675(1)(E),  that specific provision was not referred to in the CWA claims raised in Plaintiffs' Amended Complaint.  Docket 16 at ¶ 279(c)-(g) (citing 42 U.S.C. §§ 671(a)(16), 675(1)(A), 675(1)(B), 675(5)(A), 675(5)(E)).

[161] Docket 135 at 46-49.

[162] Docket 157 at 27.  According to Defendants, OCS is in compliance with the statute in 82.1% of cases.  Docket 157 at 29.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 41 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 41 of 58

individualized and does not affect putative class members equally."[163]  Regarding the sufficiency of services available to children in OCS custody, Defendants assert that OCS is not a service provider; rather, OCS "identif[ies] and facilitate[s] access to services provided in the private sector" and "plaintiffs do not critique OCS's efforts in this regard; their claim is simply that Alaska lacks adequate community-based services."[164]  Further, Defendants assert that Plaintiffs "have not shown that gaps in Alaska's community-based services affect all members of the general class in the same way" and note that Plaintiffs' "expert recognized that service availability varies across communities and that some foster children can access the services they need near home."[165]  And Defendants contend that Plaintiffs have not identified an OCS policy or practice responsible for the alleged case planning failures and that alleged deficiencies in case planning do not affect all class members.[166]

 In support of their case review system and case plan claim, Plaintiffs rely on a 2017 Child and Family Services Review, which noted as a "prevalent concern[]

---

[163] Docket 157 at 30.

[164] Docket 157 at 30-31.

[165] Docket 157 at 33 (citing Docket 159-2 at 39 (Groh Dep.) (agreeing that service availability in Alaska varies from place to place and some children can get the services they need in their home communities)).

[166] Docket 157 at 34-35 (citing Docket 159-2 at 47 (Groh Dep.) (testifying that "the performance on the engagement of children and family and case planning varies quite a bit across the state"); Docket 159-1 at 68 (Rubin report showing that in 2023, the rates of cases with current case plans varied from 89% in Anchorage to 46% in the western region, with an overall rate of 82%)).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 42 of 58

Case 3:22-cv-00129-SLG Document 336 Filed 06/25/25 Page 42 of 58

across the state, delayed permanency goal establishment, inadequate assessments of and appropriate service provision to parents and foster parents, and lack of engagement in case planning."[167] Plaintiffs also rely on their expert's report, which noted that "from 2021 to 2023, OCS failed to complete case plans within the first 60 days for more than 57% of cases," and "after 180 days, case plans still weren't completed for at least 10% of cases."[168] Further, Plaintiffs point to Alaska's 2020-2024 Final Annual Progress and Services Report, which showed that, in 2023, 48% of cases were rated a strength in child and family involvement in case planning, and 56% of cases were rated a strength in caseworker visits with child.[169] Plaintiffs also cite data showing that caseworkers missed nearly three-fourths of visits with parents and over one-third of visits with foster children in 2023.[170] The case summary for Mary B. demonstrates nearly year-long gaps between caseworker home visits.[171] And Plaintiffs allege that "OCS fails to track service providers or waitlists, leaving caseworkers unaware of the adequacy or availability of services."[172]

---

[167] Docket 135 at 55 (quoting Docket 136-1 at 6).

[168] Docket 135 at 55; Docket 203-2 at 59 (Groh Report).

[169] Docket 135 at 56 (citing Docket 136-20 at 21-22).

[170] Docket 135 at 57 (citing Docket 136-25 at ¶¶ 20, 23 (Suh Decl.) (explaining methodology for analyzing data)).

[171] Docket 138-4 (SEALED) at 5-8 (describing caseworker home visits in October 2021, June 2022, April 2023, and July 2024).

[172] Docket 202 at 23 (citing Docket 203-10 at 84 (Centeno Dep.) (testifying that OCS does not track wait lists for services); Docket 203-18 (Mayes Dep.) (testifying that no one person is

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 43 of 58

As to their termination of parental rights claim, Plaintiffs point to data showing that, in 2024, of children who had been in OCS custody for 15 of the preceding 22 months, over half had not had parental rights terminated nor was a compelling reason documented indicating termination was not appropriate in the child's case.[173] The case summaries for Mary B. and Connor B. also indicate that, as of 2024, parental rights had not been terminated.[174] Plaintiffs also note that neither Mary B. or Connor B. have achieved legal permanency and they have been in OCS custody for over four and a half years.[175] Additionally, the case summary for Rachel T. and Eleanor T. demonstrates that, in July 2022, the children's foster parent was waiting on a change of venue and termination of parental rights petition; the termination petition was filed in September 2022, at which point the children had been in OCS custody for over two years.[176]

The Court finds that Plaintiffs have established by a preponderance of the evidence that common questions exist—whether OCS practices systematically violate the putative class's rights to a CWA-compliant case review system, CWA-

---

responsible for maintain a list or database of services that are available for children in OCS custody)).

[173] Docket 135 at 48 (citing Docket 136-20 at 27-28 (Final 2020-2024 Annual Progress and Services Report showing 1,924 children in OCS custody for 15 of the preceding 22 months, of whom 19% had parental rights terminated, 25.5% had compelling reasons against termination documented, and 54.5% had neither)).

[174] Docket 138-4 (SEALED) at 12-13; Docket 203-3 (SEALED) at 1.

[175] Docket 202 at 21-22 (citing Docket 138-4 (SEALED) at 10-13; Docket 203-3 (SEALED) at 1.

[176] Docket 138-1 (SEALED) at 21-23.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 44 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 44 of 58

compliant case plans, and the timely filing of petitions to terminate parental rights. Like in *B.K.*, Plaintiffs have identified system-wide issues that they allege deprive them of their rights under the CWA.[177] "Regardless whether any of these policies are ultimately found [unlawful] such that the plaintiffs prevail on the merits, their [legality] can properly be litigated in a class setting."[178] As such, Plaintiffs have established commonality as to their CWA claim.

### c. Familial Association Claim

Defendants maintain that "plaintiffs have abandoned Count 2, because their briefing does not even mention the familial association claim or purport to identify any class-wide 'policy' or 'practice' that allegedly violates the alleged right to familial association."[179] Plaintiffs reply that they need not "show common practices for every issue," and that Plaintiffs can demonstrate "failure to maintain the relationship between children and their parents."[180]

While Plaintiffs need not show a common question of law or fact as to every issue, they must show at least one common question of law or fact as to each

---

[177] *B.K.*, 922 F.3d at 969 (alleging harm from statewide practices such as "overuse of congregate care for children with unmet mental needs; . . . excessive caseworker caseloads; . . . [and] failure to document 'safety assessments.'").

[178] *Id.*

[179] Docket 157 at 15 n.48.

[180] Docket 202 at 14 n.13 (citing information about Gayle T. and 2023 Annual Progress and Service Report showing "Alaska was only at 68% in terms of the relationship of child in care with a parent, with the Anchorage area at only 39%").

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 45 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 45 of 58

claim.[181]  On the very limited briefing on Count 2 in Plaintiff's reply, the Court finds that Plaintiffs have not demonstrated by a preponderance of the evidence that there are common questions of law or fact as to their familial association claim. Therefore, the Court denies class certification as to Plaintiffs' familial association claim.[182]

## 2.  ADA Subclass

"[U]nder the integration mandate of the ADA . . . a plaintiff need only show that the challenged state action creates a serious risk of institutionalization."[183] Plaintiffs maintain that the common question of law and fact satisfying the commonality requirement for the ADA Subclass is:

> Whether Defendants have failed to timely deliver behavioral healthcare and other disability-related community-based services needed to avoid unnecessary placement changes, or placement at psychiatric hospitals, residential care facilities, and other institutional settings.[184]

---

[181] *B.K.*, 922 F.3d at 968 ("[T]o assess whether the putative class members share a common question, the answer to which will resolve an issue that is central to the validity of each one of the class member's claims, we must identify the elements of the class member's case-in-chief." (quoting *Parsons*, 754 F.3d at 676))

[182] In their opposition to a motion not addressed in this order, Plaintiffs assert that "the proper disposition would be to grant Plaintiffs leave to amend their motion for class certification, not to dismiss them outright."  Docket 283 at 50.  Motions for class certification were due on November 15, 2024.  Docket 164 at 2. If Plaintiffs seek to amend their class certification motion, they must move to modify the scheduling order.  *See* Fed. R. Civ. P. 16(b)(4).

[183] *M.R. v. Dreyfus*, 697 F.3d 706, 734 (9th Cir. 2012).

[184] Docket 135 at 57.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 46 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 46 of 58

Defendants contend that Plaintiffs have not shown commonality as to the ADA Subclass because Plaintiffs' allegation is "untethered from any contention about an OCS policy or practice."[185] Defendants maintain that "OCS is a child protection agency, not a provider of behavioral health services or other healthcare services" and "disabled foster children . . . are not affected equally by the dearth of specialized services in Alaska communities."[186] Defendants note that "only a narrow class of disabilities—those involving serious mental health and behavioral challenges—lead to institutionalization, or even risk of increased placement changes" and that "three of the four disabled named plaintiffs who are still in OCS custody—Rachel T., Eleanor T., and Connor B.—have received the services they need while remaining in the same foster placement throughout their entire time in care."[187]

In support of their claim, Plaintiffs cite a 2022 U.S. Department of Justice report that found that Alaska's foster care system "is heavily biased toward institutions, and key services and supports are often unavailable to children in their communities," forcing "many children with behavioral health disabilities who are appropriate for community-based services . . . to endure unnecessary and unnecessarily long admissions to psychiatric hospitals and psychiatric residential

---

[185] Docket 157 at 36.

[186] Docket 157 at 36.

[187] Docket 157 at 36-37 (citing Docket 162-1 at 2-8, 28-34).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 47 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 47 of 58

treatment facilities" in violation of the ADA.[188]  Plaintiffs state that, in 2023, 505 children in OCS custody were placed in institutions.[189]  Plaintiffs also point to emails between OCS staff, particularly an email regarding one child in OCS custody who had been "waiting for seven months for appropriate mental health treatment and support for their developmental delays."[190]  According to Plaintiffs, "[i]nstead of securing the appropriate care, OCS continued to push for the child to be kept in a hospital ill-equipped for their needs, despite concerns from the Clinical Supervisor of the Behavioral Urgent Response Team, who said, 'I feel this is becoming unethical to have him remain here, where we are not only not helping him, but likely exacerbating his symptoms.'"[191]  In another email, the Director of the Alaska Department of Family and Community Services identified "the lack of appropriate placements, both acute and long-term" as the "biggest challenge," including "a lack of providers in rural Alaska that results in earlier removal and difficulty returning home" and "a lack of services for specialized mental health issues; autism, sexualized behaviors, eating disorders, TBI, etc."[192]  Plaintiffs also

---

[188] Docket 135 at 57-58 (quoting Docket 136-78 at 2); *see* Docket 135 at 58-59 (highlighting additional findings from the 2022 Department of Justice report).

[189] Docket 135 at 58 (citing Docket 136-25 at ¶¶ 16-17 (Suh Decl.) (explaining methodology for analyzing data)).

[190] Docket 135 at 60.

[191] Docket 135 at 60 (quoting Docket 136-54 at 5-6).  Plaintiffs contend that the Clinical Supervisor at OCS sent this email, but it appears to the Court from the email chain that the email was sent from a staff member at the Alaska Native Tribal Health Consortium.  Docket 136-54 at 5-6.

[192] Docket 135 at 60-61;Docket 136-53 at 1.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 48 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 48 of 58

maintain that "[t]he repeated inability to track service providers, identify waitlists, or provide necessary services in a timely and adequate manner . . . put[s] children at risk of unnecessary institutionalization."[193]  Plaintiffs contend that "[w]hile each child in the ADA Subclass may have unique physical, mental health, or safety needs, the Court is not required 'to determine the effect of those policies and practices upon any individual class member (or class members) or to undertake any other kind of individualized determination.'"[194]  That is because "Plaintiffs' claim is rooted in the *risk* of unnecessary institutionalization—a claim that is relevant to all foster children who require behavioral health services, not just those with specific disabilities."[195]

Based on the foregoing, the Court finds that Plaintiffs have shown by a preponderance of the evidence that a common question—whether OCS's practices place children with disabilities at serious risk of unnecessary institutionalization—exists as to the ADA Subclass.[196]

---

[193] Docket 202 at 28-29.

[194] Docket 135 at 61 (quoting *Parsons*, 754 F.3d at 678).

[195] Docket 202 at 28 (emphasis in original).

[196] *See Parsons*, 754 F.3d at 685 (holding that commonality satisfied because "here there is only a single answer to questions such as 'do ADC staffing policies and practices place inmates at a risk of serious harm?'").

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 49 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 49 of 58

### iii. Typicality

"Typicality asks whether 'the claims or defenses of the representative parties are typical' of the class."[197] "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."[198] "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."[199]

Plaintiffs maintain that they have satisfied the typicality requirement because they have "allege[d] many OCS policies and practices that violate their constitutional and federal statutory rights and cause them harm" and the Ninth Circuit has previously held that typicality was satisfied in similar circumstances.[200] Plaintiffs point to *Parsons* and *B.K.*[201] In *Parsons*, the plaintiffs were inmates in the custody of the state's corrections department challenging the department's staffing policies and practices.[202] The Ninth Circuit held that typicality was satisfied

---

[197] *Johnson*, 72 F.4th at 888 (quoting Fed. R. Civ. P. 23(a)(3)).

[198] *Parsons*, 754 F.3d at 685 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

[199] *B.K.*, 922 F.3d at 970 (quoting *Parsons*, 754 F.3d at 685).

[200] Docket 135 at 62.

[201] Docket 135 at 62.

[202] *Parsons*, 754 F.3d at 685.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 50 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 50 of 58

because "[e]ach declares that he or she is being exposed, like all other members of the putative class, to a substantial risk of serious harm by the challenged [] policies and practices."[203]  In *B.K.*, the Ninth Circuit reasoned that

> B.K. is a child in Arizona's custody. The members of the General Class are children who are or will be in Arizona's custody. B.K. has demonstrated, not merely through allegations but through raw data, expert reports, deposition testimony, and DCS materials, that she is subject to statewide policies and practices that apply equally to every member of the class. By defining her claim based on the risk of harm caused by these policies — a cognizable constitutional injury under our precedent — B.K. has demonstrated that class members have similar injuries, based on conduct that is not unique to her, and caused by the same injurious course of conduct.[204]

Like the plaintiff in *B.K.*, Named Plaintiffs in this case were in OCS custody at the time of the filing of the class certification motion, and both the General Class and the ADA Subclass are children who are or will be in OCS custody.  Further, as detailed above, Plaintiffs rely on more than mere allegations to demonstrate that Named Plaintiffs are subject to statewide practices "that apply equally to every member of the class."[205]  As to the substantive due process claim, by "defining [their] claim[s] based on the risk of harm caused by these policies — a cognizable constitutional injury under our precedent — [Named Plaintiffs have] demonstrated that class members have similar injuries, based on conduct that is not unique to

---

[203] *Id.*

[204] *B.K.*, 922 F.3d at 969.

[205] *Id.*

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 51 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 51 of 58

[them], and caused by the same injurious course of conduct."[206] Named Plaintiffs have also demonstrated typicality as to their CWA claim, as Plaintiffs have presented evidence that OCS policies and practices systemically deprive children in OCS custody of their rights under the CWA. Similarly, Named Plaintiffs in the ADA Subclass have presented evidence that OCS practices place them as a significant risk of institutionalization, which is a cognizable injury under Ninth Circuit precedent, and the injury is caused by the same alleged OCS practices. Therefore, the Court finds that Plaintiffs have shown typicality by a preponderance of the evidence as to the General Class on Plaintiffs' substantive due process and CWA claims and as to the ADA Subclass on Plaintiffs' ADA claim.

### iv. Adequacy of Representation

Pursuant to Federal Rule of Civil Procedure 23(a)(4), plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry is addressed by answering two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"[207] "[T]he adequacy-of-representation

---

[206] *Id.*

[207] *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir 2023) (quoting *Hanlon*, 150 F.3d at 1020).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 52 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 52 of 58

requirement is satisfied as long as one of the class representatives is an adequate class representative."[208]

Regarding the first inquiry, Named Plaintiffs seek an injunction to remedy alleged violations of their, and other class members', constitutional and statutory rights. The Court does not perceive, and Defendants do not identity, any potential conflicts of interest between Named Plaintiffs and their counsel and the other class members. As to whether Named Plaintiffs and their counsel will vigorously prosecute this action on behalf of the class, the history of this litigation thus far demonstrates that Named Plaintiffs and counsel have vigorously litigated this suit and will continue to do so. Defendants have filed numerous pretrial motions, including motions to dismiss, motion to disqualify next friends and opposition to substitution of next friends, and several motions for summary judgment.[209] Named Plaintiffs have opposed each motion.[210] And the record demonstrates that Plaintiffs have been actively pursuing extensive discovery in this case. The Court therefore finds that Named Plaintiffs and their counsel will vigorously prosecute this action on behalf of the class.[211] Named Plaintiffs have established by a

---

[208] *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001).

[209] *See* Dockets 23, 97, 119, 210, 232, 320.

[210] *See* Dockets 104, 147, 149, 163, 222, 283.

[211] *Cf. Kim*, 87 F.4th at 1002-03 (9th Cir. 2023) (holding that named plaintiff did not vigorously prosecute suit on behalf of class members when named plaintiff did not conduct extensive discovery and waived objections to arbitration in response brief).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 53 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 53 of 58

preponderance of the evidence that they will fairly and adequately protect the interests of the class.[212]

### c.  Rule 23(b)(2)

"Rule 23(b)(2) requires that 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'"[213]  "The key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'"[214]  The "primary role" of Rule 23(b)(2) "has always been the certification of civil rights class actions."[215]

Plaintiffs maintain that they have satisfied Rule 23(b) because "[t]he injunctive relief sought . . . focuses on class-wide reforms to Defendants' conduct, through policies and practices," and their Complaint "identifies the urgent need for

---

[212] Defendants contend that the Named Plaintiffs have not shown adequacy because their next friends' "connection to the case is so minimal that the litigation cannot be controlled by knowledgeable plaintiffs or their representatives, but only by attorneys."  Docket 157 at 41-45. The Court has already substantively addressed Defendants' argument by prior order and above regarding Plaintiffs' Motion to Substitute Next Friends.  Docket 220; *supra* Discussion Section I. Because the Court has determined that Named Plaintiffs are represented by appropriate next friends, the Court disagrees with Defendants that Plaintiffs have not shown adequacy of representation.

[213] *Parsons*, 754 F.3d at 686.

[214] *B.K.*, 922 F.3d at 971 (quoting *Wal-Mart*, 564 U.S. at 360).

[215] *Parsons*, 754 F.3d at 686.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 54 of 58

Case 3:22-cv-00129-SLG    Document 336    Filed 06/25/25    Page 54 of 58

injunctions to decrease overly high caseloads and ensure adequate caseworker staffing, ensure timely permanency, establish higher case-planning standards, enhance both the quantity and quality of foster placements in Alaska, and provide adequate services to children, to decrease the risk of risk of unnecessary institutionalization."[216] Defendants disagree; in their view, "plaintiffs cannot identify the 'general contours' of an injunction that may remedy the alleged class-wide harm because they cannot identify any 'official policy' or 'well-defined practice' of OCS that causes the alleged class-wide injury."[217]

In *B.K.*, the Ninth Circuit held that plaintiffs—alleging that Arizona's child foster care system violated their substantive due process rights— "brought unified claims that 'a specified set of centralized [DCS] policies and practices of uniform and statewide application' have placed them at a substantial risk of harm" and therefore "[a] single, indivisible injunction ordering state officials to abate those policies and practices 'would provide relief to each member of the class,' thus satisfying Rule 23(b)(2)."[218] The *B.K.* court rejected the defendants' argument that "no injunction could in the general class because different foster children face different potential harms, thus having different competing interests, and thus needing different injunctive relief." The Court reasoned that "plaintiffs will only be

---

[216] Docket 135 at 66; *see* Docket 16 at 91-94.

[217] Docket 157 at 48.

[218] *B.K.*, 922 F.3d at 971.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 55 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 55 of 58

entitled to injunctive relief if such relief is necessary to redress the constitutional violations they actually prove at trial."[219]   The *B.K.* court also rejected the defendants' argument that abating the purportedly unconstitutional policies would be impossible with limited funds; on this point, the Court reasoned that "the district court could enjoin DCS to hire more caseworkers in order to meet health care delivery deadlines in a manner that ensures the plaintiffs receive timely medical evaluations and care."[220]

In this case, as noted above, Plaintiffs' claims are similar to those in *B.K.*: Plaintiffs have alleged that certain OCS practices create a substantial risk of harm in violation of their substantive due process rights and violate their CWA rights as to the General Class and that certain OCS practices create a significant risk of unnecessary institutionalization as to the ADA Subclass.[221]   And like in *B.K.*, Plaintiffs seek an injunction that they maintain would remedy deficient OCS practices, including remedying case worker shortages.

The Court finds that Plaintiffs have shown by a preponderance of the evidence that if Plaintiffs prove that injunctive relief is necessary to address constitutional or statutory violations that they prove at trial, a single injunction would provide relief to each member of the class, satisfying Rule 23(b)(2).

---

[219] *Id.*

[220] *Id.*

[221] *Supra* pages 29-50.

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 56 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 56 of 58

## IV. Motion to Amend

The Court has also considered Plaintiffs' Motion to Amend Motion for Class Certification and Appointment of Class Counsel at Docket 324 and the associated briefing.[222] Upon consideration of the requirements for appointing class counsel pursuant to Federal Rule of Civil Procedure 23(g)(1), the Court grants the motion. The Court will not permit the addition of class counsel to serve as a basis to continue trial in this matter or to otherwise delay the proceedings.

## CONCLUSION

In light of the foregoing, the Court GRANTS Plaintiffs' Motion to Substitute Next Friends at Docket 255. Bonnie Yazzie is substituted at the next friend for Mary B. and Connor B. Justin Lazenby is substituted as next friend for Lana H.

Next, the Court GRANTS Defendants' Motions to Supplement at Docket 228 and Docket 297.

Further, the Court GRANTS Plaintiffs' Motion for Class Certification, certifying two classes as follows:

- A General Class of all children for whom OCS has or will have legal responsibility and who are or will be in the legal and physical custody of OCS.[223]

    o The General Class is certified as to Plaintiffs' substantive

---

[222] Docket 333; Docket 334.

[223] Docket 16 at ¶ 28(a).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 57 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 57 of 58

due process claim (Claim 1) and CWA claim (Claim 3) only.[224]

- An ADA Subclass of children who are or will be in foster care and experience physical, cognitive, and psychiatric disabilities.[225]

    - The ADA Subclass is certified as to Plaintiffs' ADA and Rehabilitation Act claims (Claims 6 & 7) only.

Lastly, the Court GRANTS Plaintiffs' Motion to Amend Motion for Class Certification and Appointment of Class Counsel at Docket 324. The Court hereby appoints Plaintiffs' counsel, including Kevin Homiak and Galen Bellamy of Wheeler Trigg O'Donnell LLP, as class counsel in this matter.

DATED this 25th day of June, 2025, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[224] The General Class is not certified as to the familial association claim (Claim 2).

[225] Docket 16 at ¶ 28(d).

Case No. 3:22-cv-00129-SLG, *Mary B., et al. v. Kovol, et al.*
Order on Class Certification and Related Motions
Page 58 of 58

Case 3:22-cv-00129-SLG     Document 336     Filed 06/25/25     Page 58 of 58