Marcia Robinson Lowry (*pro hac vice*)
mlowry@abetterchildhood.org
Julia K. Tebor (*pro hac vice*)
jtebor@abetterchildhood.org
Anastasia Benedetto (*pro hac vice*)
abenedetto@abetterchildhood.org
David Baloche (*pro hac vice*)
dbaloche@abetterchildhood.org
**A BETTER CHILDHOOD**
355 Lexington Avenue, Floor 16
New York, NY 10017
Telephone: (646) 795-4456

Elena M. Romerdahl, AK Bar No. 1509072
eromerdahl@perkinscoie.com
**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, AK 99501
Telephone: (907) 279-8561

Mark Regan, AK Bar No. 8409081
mregan@dlcak.org
**DISABILITY LAW CENTER OF ALASKA**
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
Telephone: (907) 565-1002

Galen D. Bellamy (*pro hac vice*)
bellamy@wtotrial.com
Kevin D. Homiak (*pro hac vice*)
homiak@wtotrial.com
**WHEELER TRIGG O'DONNELL LLP**
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: (303) 244-1800

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARY B., et al.<br><br>                          Plaintiffs,<br><br>v.<br><br>KIM KOVOL, Director, Alaska Department of Family and Community Services, in her official capacity, et al.<br><br>                          Defendants. | Case No. 3:22-cv-00129-SLG |

## PLAINTIFFS' TRIAL BRIEF

Plaintiffs submit this trial brief pursuant to Local Rule 39.2. Its organization mirrors the components identified in that Rule.

## I.       OPERATIVE COMPLAINT AND SUBSTANTIVE PRETRIAL ORDERS

- ECF No. 16: Amended Complaint

- ECF No. 55: Order Granting in Part and Denying in Part Defendants' Motion to Dismiss

    o   Denying Defendants' Motion to Dismiss as to:

        ▪   **Claim One.** Violation of substantive due process pursuant to the Fourteenth Amendment: the right to freedom from the foreseeable risk of maltreatment while under the protective supervision of the State; the right to protection from unnecessary intrusions into the child's emotional wellbeing once the State has established a special relationship with that child; the right to treatment and care consistent with the purpose and assumptions of government custody. (*See* ECF No. 16 ¶ 269(a)-(b), (e).)[1]

---

[1] The Court granted Defendants' Motion to Dismiss as to the other substantive due process rights that Plaintiffs alleged. (*See* ECF No. 16 ¶ 269(c)-(d), (f)-(g).)

- **Claim Two.** Deprivation of the right to parent-child association pursuant to the First, Ninth, and Fourteenth Amendments.

- **Claim Three.** Violation of the Adoption Assistance and Child Welfare Act of 1980 ("Child Welfare Act"), 42 U.S.C. § 670, *et seq.*

- **Claims Six and Seven.** Violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act's integration mandate.

  o Granting Defendants' Motion to Dismiss as to:

- **Claim Two.** Deprivation of right to associate with grandparents and siblings pursuant to the First, Ninth, and Fourteenth Amendments.

- **Claim Four.** Violation of Indian Child Welfare Act

- **Claim Five.** Violation of 42 U.S.C. § 672(a).

- **Claims Six and Seven**. Failure to provide reasonable modifications under ¶¶ 306(a), (b), and (d).

- ECF No. 220: Order on Defendants' Motion to Dismiss Out-of-Custody Plaintiffs

  o Granting Defendants' Motion to Dismiss Named Plaintiffs Jeremiah M., Hannah M., Hunter M., David V., George V., Lawrence V., Karen V., Damien V., and Gayle T.

  o The remaining Named Plaintiffs are Mary B., Connor B., Rachel T., Eleanor T., and Lana H.

- ECF No. 286: Order on Defendants' Motion for Summary Judgment on Count Three

  o Denying Defendants' Motion for Summary Judgment as to:

- A written case plan that includes a plan to provide safe, appropriate and stable placements, 42 U.S.C. §§ 671(a)(16), 675(1)(A);

- A written case plan that ensures that the child receives safe and proper care while in foster care and implementation of that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

- A written case plan that ensures provision of services to parents, children, and foster parents to facilitate reunification, or where that is impossible, the permanent placement of the child and implementation of that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

- A case review system in which each child has a case plan designed to achieve safe and appropriate foster care placements in the least restrictive and most family-like setting, close to their home community. 42 U.S.C. §§ 671(a)(16), 675(5)(A); and

- The right to have a petition to terminate parental rights filed if the child has been in foster care for 15 out of the last 22 months, unless doing so goes against the best interest of the child as documented in the case record, or subject to a statutory exemption. 42 U.S.C. § 675(5)(E).

○ Granting Defendants' Motion for Summary Judgment as to:

- Placement in the least restrictive and most family-like setting, closest to their home community that conforms to nationally recommended professional standards, 42 U.S.C. §§ 671(a)(16), 675(5)(A); and

- Access to quality services to protect his or her safety and health, 42 U.S.C. § 671(a)(22).

- ECF No. 362: Order Denying Defendants' Motion for Summary Judgment on Counts Six and Seven (ADA and Rehabilitation Act)

- ECF No. 336: Order on Plaintiffs' Motion for Class Certification

○ Certifying a General Class of all children for whom OCS has or will have legal responsibility and who are or will be in the legal and physical custody of OCS, as to Plaintiffs' substantive due process claim (Claim 1) and Child Welfare Act claim (Claim 3) only.

○ Certifying an ADA Subclass of children who are or will be in foster care and experience physical, cognitive, and psychiatric disabilities, as to Plaintiffs' ADA and Rehabilitation Act claims (Claims 6 & 7) only.

## II.    PENDING MOTIONS

- ECF No. 232: Defendants' Motion for Summary Judgment on Counts One and Two (Substantive Due Process)

- ECF No. 339: Plaintiffs' Motion in Limine to Admit Plaintiffs' Rule 1006 Summaries of Child Welfare Case Files as Evidence

- ECF No. 340: Plaintiffs' Motion in Limine to Require Defendants to Produce Post-Discovery Evidence

- ECF No. 342: Plaintiffs' Motion to Exclude Evidence Within the Scope of a Prior Assertion of Privilege

- ECF No. 343: Defendants' Motion to Exclude Attorney Summaries of Case Files

- ECF No. 347: Defendants' Motion in Limine to Admit Rule 1006 Charts

## III. DESCRIPTION OF CLAIMS

Plaintiffs allege that Defendants violated their constitutional substantive due process rights and their federal statutory rights under the ADA, the Rehabilitation Act, and the Child Welfare Act.

With respect to substantive due process, Plaintiffs allege that Defendants' acts and omissions place foster children at a substantial risk of harm of which the Defendants are aware, or should have been aware because the risk is longstanding, pervasive, well-documented, and expressly noted by officials in the past; and that Defendants failed to take reasonable or proportionate steps to reduce the risk of harm.

With respect to the ADA and Rehabilitation Act claims, Defendants failed to timely deliver behavioral healthcare and other disability-related, community-based services needed to avoid unnecessary placement changes, or placement at psychiatric hospitals, residential care facilities, and other institutional settings.

With respect to the Child Welfare Act, Plaintiffs allege that Defendants violated the following provisions:

- "[A] written case plan that includes a plan to provide safe, appropriate and stable placements," 42 U.S.C. §§ 671(a)(16), 675(1)(A);

- "[A] written case plan that ensures that the child receives safe and proper care while in foster care and implementation of that plan," *id.* §§ 671(a)(16), 675(1)(B);

- "[A] written case plan that ensures provision of services to parents, children, and foster parents to facilitate reunification, or where that is impossible, the permanency placement of the child and implementation of that plan," *id.* §§ 671(a)(16), 675(1)(B);

- "[A] case review system in which each child has a case plan designed to achieve safe and appropriate foster care placements in the least restrictive and most family-like setting, close to their home community," *id.* §§ 671(a)(16), 675(5)(A); and

- "[T]o have a petition to terminate parental rights filed if the child has been in foster care for 15 out of the last 22 months, unless doing so goes against the best interest of the child as document in the case record, or subject to statutory exemption," *id.* § 675(5)(E).

## IV. EVIDENCE SUPPORTING PLAINTIFFS' CLAIMS

### A. Evidence supporting Substantive Due Process claim (General Class)

***Chronically Understaffed and Overburdened Workforce.*** The evidence will show that unmanageable caseworker workloads, chronic understaffing, and high turnover expose foster children to a substantial risk of serious harm. This evidence includes, but is not limited to:

- Federal and state reports;[2]

---

[2] Federal and state reports generally consist of Child and Family Services Reviews (CFSR), Program Improvement Plans (PIP), CFSR Workbooks, Adoption and Foster Care Analysis and Reporting System (AFCARS), Child Welfare Outcomes Report Data, U.S. Department of Justice Report and related materials, Child and Family Services Plans, Annual Progress and Services Reports (APSR), Regional Quality Assurance Reviews, Annual Reports to the Legislature, Staff Surveys, Foster Parent Surveys, Alaska Citizen Review Panel (CRP)

- OCS Staff surveys;

- Testimony of OCS and DFCS senior executive officials;[3]

- Internal OCS emails;

- Testimony of Plaintiffs' Expert Alicia Groh;

- Testimony of current and former foster parents and children;

- Workload studies performed by OCS;

- OCS Scorecards; and

- OCS Caseload Data.

***Inadequate Supply of Foster Homes.*** The evidence will show that the lack of foster homes and Defendants' systematic failure to recruit, train, support, and retain foster parents poses a substantial risk of serious harm to foster children. This evidence includes, but is not limited to:

- Federal and state reports;

- Testimony of senior OCS and DFCS executive officials;

- Foster parent surveys;

---

Annual Reports and related materials, Court Improvement Project (CIP) Survey, Performance Scorecards, Alaska Ombudsman Reports, Placement Search and Support Unit Quality Assurance Report; Legislative Audit Reports.

[3] The OCS Statewide Executive Team consists of Director Kim Guay, Deputy Director Kim Swisher, Division Operations Manager Travis Erickson, Administrative Operations Manager Sandra DeHart Mayor, Social Services Program Administrator Sarah Abramczyk, Social Services Program Administrator Tandra Donahue. Senior Leadership at DFCS includes Director Kim Kovol and Deputy Director Clinton Lasley. All of these witnesses are expected to testify. To prevent duplicative testimony, Plaintiffs will call only those executives necessary to prove their prima facie case. Plaintiffs will solicit supplemental testimony from other senior executive officials on cross-examination.

PLAINTIFFS' TRIAL BRIEF
*Mary B., et al., v. Kim Kovol, et al*.; Case No.: 3:22-cv-00129-SLG
Page 7 of 28
Case 3:22-cv-00129-SLG    Document 371    Filed 08/04/25    Page 7 of 28

- Internal OCS emails;

- Testimony of Plaintiffs' Expert Alicia Groh;

- Testimony of youth facility supervisor Forrest Clough;

- Testimony of current and former foster parents and children; and

- OCS data.

**Physical, Mental, and Behavioral Health Services**. The evidence will show that Defendants' failure to provide timely and appropriate physical, mental, and behavioral health services poses a substantial risk of serious harm to foster children. This evidence includes, but is not limited to:

- Federal and state reports;

- Internal OCS emails;

- Reports relating to the Department of Justice investigation;

- Testimony of senior executive officials;

- Testimony of current and former foster parents and children;

- Testimony of Lacey Centeno and Kristen Moore, leadership of OCS's Mental and Medical Health Unit;

- Testimony of Plaintiffs' Expert Alicia Groh;

- Testimony of Plaintiffs' Expert Anne Farina;

- Internal OCS Documents (*see, e.g.,* Statewide Placement Search Flowchart); and

- Other external reports (*see, e.g.,* Alaska Hospital and Healthcare Association Report).

***Deficient Data Management and Technology.*** The evidence will show that Defendants' continued reliance on an end-of-life system and its ongoing failure to equip caseworkers with basic technological tools poses a substantial risk of serious harm to foster children and renders OCS structurally incapable of complying with its constitutional and statutory obligations. The evidence includes but is not limited to:

- Federal and state reports;

- Internal OCS emails;

- Reports of OCS consultants;

- Testimony of senior executive officials;

- Testimony Plaintiffs' expert Alicia Groh;

- Information from the Governor's Operating Budgets; and

- Internal OCS reports.

***High Risk of Maltreatment in Care.*** The evidence will show that Alaska's rate of maltreatment of children while they are in care is one of the highest in the United States. Even so, this rate is under representative because OCS fails to investigate and track maltreatment for foster children in institutions. OCS reports to the federal government the rate of maltreatment based solely on that rate in foster homes. The evidence includes but is not limited to:

- Federal and state reports; and

- Testimony of OCS senior executive officials.

In sum, the evidence will show that these structural failures that result from the acts and omissions of Defendants—caseworker turnover, lack of placements and placement support, failures to provide community-based services and placements, failure to investigate and prevent maltreatment in foster care, and defunct technology and information management system—have mutually reinforcing effects that directly impact child safety and case outcomes. Examples abound:

- Infrequent, untimely, and inadequate caseworker visits threaten child safety and delay permanency;

- Untimely and inadequate investigations into reports of abuse and neglect result in above average maltreatment rates;

- Untimely and inadequate case planning and failure to include children and parents in the case planning process causes permanency delays as well as failures and delays in providing necessary services.

- Delayed permanency and prolonged foster care detention causes further trauma and emotional harm to foster children; and

- Chronic placement instability causes worsening mental health, behavioral regression, and severed familial and community ties.

## B. Evidence Supporting Child Welfare Act Claim (General Class)

The evidence will show that Defendants' practices systematically violate the class's rights to CWA-compliant case plans, a CWA-compliant case review system, and a CWA-compliant procedure for ensuring petitions to terminate parental rights are filed in the enumerated circumstances.[4] The evidence to support this claim includes but is not limited to:

---

[4] 42 U.S.C. §§ 671(a)(16), 675(1)(A), (B) (written case plan); *id*. §§ 671(a)(16), 675(5)(A) (case review system); *id*. § 675(5)(E) (termination of parental rights).

- Federal and state reports;

- Testimony of senior executive officials

- Testimony of Plaintiffs' expert Alicia Groh; and

- OCS Data and Internal Reports.

### C.     Evidence Supporting ADA and Rehabilitation Act Claims (ADA Subclass)

The evidence will show that Defendants' systematic failure to provide children with mental health disabilities in foster care with necessary community-based services and placements results in unnecessary institutionalization and increased risk of institutionalization. The evidence to support this claim includes but is not limited to:

- Federal and state reports;

- Testimony of senior executive officials,

- Testimony of Lacey Centeno and Kristen Moore;

- Testimony of Plaintiffs' Expert Alicia Groh;

- Testimony of Plaintiffs' Expert Anne Farina;

- Internal OCS Documents, such as the Statewide Placement Search Flowchart); and

- External Reports, such as the Alaska Hospital and Healthcare Association Report.

## V.     DISCUSSION OF RELEVANT LEGAL AUTHORITY

### A.     Substantive Due Process (Claim 1)

To state a claim for a substantive due process violation under § 1983, Plaintiffs must demonstrate that (1) they were deprived of a cognizable constitutional right, (2) the State

PLAINTIFFS' TRIAL BRIEF
*Mary B., et al., v. Kim Kovol, et al.*; Case No.: 3:22-cv-00129-SLG

acted with "deliberate indifference" to the protected right, and (3) the policies or practices complained of were the direct cause of the constitutional deprivation. *M.D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 248 (5th Cir. 2018).

i.    *The Substantive Due Process Right*

The Due Process Clause of the Fourteenth Amendment provides that: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. When the state involuntarily deprives a person of their liberty through placement in foster care,[5] "the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being" and "to provide for his basic human needs." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). Basic human needs include, at minimum, "food, clothing, shelter, medical care, and reasonable safety." *Id*. The state must not only provide these basic human needs, it must also take the necessary actions to secure them. *See Youngberg v. Romeo*, 457 U.S. 307, 318-19 (1982). When a state takes an individual into custody and fails to provide these basic needs, it violates the Due Process Clause of the Fourteenth Amendment. *See DeShaney*, 489 U.S. at 200.

This Court previously recognized certain rights that "'fall on the basic needs end of the spectrum': '(a) freedom from the foreseeable risk of maltreatment while under the protective supervision of the State; (b) protection from unnecessary intrusions into the child's emotional wellbeing once the State has established a special relationship with that

---

[5] *See generally Lipscomb v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992).

child; . . . [and] (e) treatment and care consistent with the purpose and assumptions of government custody.'" (ECF No. 336 at 18 (collecting cases).) Defendants violated each of these rights.

ii.  *Deliberate Indifference*

Both the objective and subjective components of deliberate difference are met here.[6]

To satisfy the objective component, Plaintiffs must show that they face "a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[I]t does not matter whether the risk comes from a single source or multiple sources." *Id.* at 843. Rather, "multiple policies or practices" can "combine" to create a substantial risk of serious harm. *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1192 (M.D. Ala. 2017); *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004) ("Conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone. . . .").

Plaintiffs need not have suffered an *actual* harm—they need only show that they face a substantial *risk* of serious harm. *Farmer*, 511 U.S at 845 ("'One does not have to await the consummation of threatened injury to obtain preventive relief.'" (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923)); *see also Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them[,]" and "a remedy for unsafe conditions need not await a tragic

---

[6] Plaintiffs argue in their opposition to Defendants' Summary Judgment Motion on Counts One and Two that this Court should apply the professional judgment or objectively unreasonable standard instead of the deliberate indifference standard. (ECF No. 283 at 16-19.)

event"). And Plaintiffs need not show that the risk applies equally across the class; only that the risk has general application to the class. *See DG v. Devaughn*, 594 F.3d 1188, 1201 (10th Cir. 2010); *see also Parsons v. Ryan*, 754 F.3d 657, 684 (9th Cir. 2014).

To satisfy the subjective standard, Plaintiffs must show that Defendants know foster children "face a substantial risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. This knowledge can be inferred from "circumstantial evidence" *id*. at 842, and a deliberately indifferent state of mind can be inferred "from the fact that the risk of harm is obvious," *Hope v. Pelzer*, 536 U.S. 730, 738 (2002). It can also be inferred if the risk is "longstanding, pervasive, well-documented, or expressly noted by [State] officials in the past," and "the circumstances suggest that [Defendants]" were exposed to that information. *Farmer*, 511 U.S. at 842–43. It is "obvious" that, "when workloads exceed caseworker bandwidth, caseworkers are not able to effectively safeguard children's health and well-being." *M.D.*, 907 F.3d at 265; *M.D., ex rel. Stukenberg v. Perry*, 294 F.R.D. 7, 44 (S.D. Tex. 2013) ("The Court finds the relationship between caseworkers' workloads and class members' safety persuasive. Caseworkers are, in effect, these children's fire alarms. They are the first and best mechanism to ensure the class members' safety, i.e., to ensure that the child is not suffering any harm or abuses. A caseworker that is so overburdened that she cannot visit the children she is responsible for to keep apprised of their well-being, or if she cannot build enough of a rapport to do so effectively, cannot fulfill this function. The same is true if the caseworker cannot identify suitable, stable placements for the children in her care, necessitating frequent placement moves.") *D.G. ex rel. Strickland v. Yarbrough*, 278 F.R.D. 635, 646

(N.D. Okla. 2011) ("It is fairly easy to 'connect the dots' between . . . excessive caseloads . . . [and] resulting harm or risk of harm to children."); *LaShawn A. v. Dixon*, 762 F. Supp. 959, 996 (D.D.C. 1991) ("defendants have failed to protect these plaintiffs from harm—whether physical, psychological, or emotional—by failing to place plaintiffs appropriately, failing to prepare case plans, failing to monitor placements, and failing to ensure permanent homes, among other things. . . . social workers are unable to closely monitor families or make regular visits to the children for whom they are responsible. . . . The risk of harm to these children . . . is unacceptable."); *id.* at 997 n.30 (1991) (noting that the result would have been the same under the deliberate indifference standard).

The "mere presence of remedial measures" is not a defense. *Webb v. Livingston*, 618 F. App'x 201, 209 n.7 (5th Cir. 2015).[7] Defendants cannot rely on mitigation measures that have nothing more than a "negligible impact" on the danger posed to foster care children. *Laube v. Haley*, 234 F. Supp. 2d 1227, 1251 (M.D. Ala. 2002). And "patently ineffective gestures purportedly directed towards remedying objectively unconstitutional conditions do not prove a lack of deliberate indifference"—"they demonstrate it." *Coleman v. Wilson*, 912 F. Supp. 1282, 1319 (E.D. Cal. 1995). Defendants must instead implement mitigation measures that "adequate[ly]" address the risk of harm. *Webb*, 618 F. App'x at

---

[7] *See also, e.g., M.D.*, 907 F.3d at 261 ("The State contends that DFPS has taken several steps to address the risks associated with high caseloads, including hiring more caseworkers, employing secondary workers and support staff, and initiating a new program to improve caseworker training. Under the circumstances, none of these steps constitute a 'reasonable' response to the systemic issues."); *Gates*, 376 F.3d at 340-41 (affirming findings of deliberate indifference despite efforts to abate risks posed by high temperatures); *Ball v. LeBlanc*, 792 F.3d 584, 595-96 (5th Cir. 2015) (same).

PLAINTIFFS' TRIAL BRIEF
*Mary B., et al., v. Kim Kovol, et al*.; Case No.: 3:22-cv-00129-SLG
Page 15 of 28
Case 3:22-cv-00129-SLG    Document 371    Filed 08/04/25    Page 15 of 28

209 n.7. What Defendants have *not* done "in the face of the substantial risk of harm is also relevant to" whether they are deliberately indifferent. *Cole v. Collier*, No. 4:14-CV-1698, 2017 WL 3049540, at *42 (S.D. Tex. July 19, 2017); *see also M.D.*, 907 F.3d at 256-69 (deliberate indifference proven where Texas knew high caseloads and insufficient monitoring and oversight "pose a significant safety risk for foster children" yet had "not taken reasonable steps to cure" the problem).

Geographic conditions are not a defense either. *See, e.g.*, *Ruiz v. Estelle*, 503 F. Supp. 1265, 1289 (S.D. Tex. 1980) (finding deliberate indifference despite social and geographic barriers to recruitment, including "isolated rural communities . . . often lacking adequate housing, particularly for families"); *James v. Wallace*, 406 F. Supp. 318, 325 (M.D. Ala. 1976) (same). For example, temperature extremes make it more difficult for certain states to maintain constitutional conditions of confinement, but these geographic conditions are not a defense against deliberate indifference. *Compare Fife v. Crist*, 380 F. Supp. 901, 908 (D. Mont. 1974) (failure to protect prisoners against extreme winter conditions in Montana), *with Graves v. Arpaio*, 623 F.3d 1043, 1049 (9th Cir. 2010) (failure to protect prisoners against scorching summer months in Arizona). A state is not judged by its harsh geographic conditions; it is judged by its response to those conditions.

Nor can Defendants point to a lack of funding or Legislative inaction to avoid liability. *See Cole*, 2017 WL 3049540, at *43 ("[But] [e]ven if the remedies ordered would be 'fiscally catastrophic' for TDCJ, . . . the Fifth Circuit has held that inadequate resources can never be an adequate justification for depriving any person of his constitutional rights." (quotations omitted).). Defendants' obligation "to eliminate existing unconstitutionalities

does not depend upon what the Legislature may do, or upon what the Governor may do." *Wyatt v. Aderholt*, 503 F.2d 1305, 1315 (5th Cir. 1975); *see Cooper v. Aaron*, 358 U.S. 1, 15-16 (1958) ("[The agency cannot] assert their own good faith as a legal excuse for delay in implementing the constitutional rights of respondents, when vindication of those rights was rendered difficult or impossible by the actions of other state officials."). "The Constitution does not put a price on constitutional rights, in terms . . . of time or money." *Ensley Branch, N.A.A.C.P. v. Seibels*, 31 F.3d 1548, 1574 (11th Cir. 1994). The Constitution must be enforced, regardless of these challenges.

### iii. Causation

To establish causation, the Plaintiffs need only show that "the entity's 'policy or custom' . . . played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted). Although Plaintiffs must "identify, with particularity, the policies or practices they allege cause the constitutional violation, and demonstrate a 'direct causal link'[,] . . . court[s] may properly consider how individual policies or practices interact with one another within the larger system." *M.D.*, 907 F.3d at 255. The Supreme Court has adopted a totality of circumstances approach to causation when the State's policies or practices "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 364 (1981); *id.* at 362-63 (Brennan J., concurring). Other courts have applied this approach in the foster care context, too. *See M.D.*, 907 F.3d at 255.

## B. The ADA (Claim Six) and Rehabilitation Act (Claim Seven)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The "integration regulation" requires public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). In *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 593 (1999), the Court "interpreted the failure to provide Medicaid services in a community-based setting as a form of discrimination on the basis of disability" in violation of the ADA. *Townsend v. Quasim*, 328 F.3d 511, 516-17 (9th Cir. 2003).

"[T]o state a violation of the integration mandate . . ., a plaintiff need only show that the challenged state action creates a serious risk of institutionalization." *M.R. v. Dreyfus*, 697 F.3d 706, 734 (9th Cir. 2012); *see also Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161, 1170-71 (N.D. Cal. 2009) ("[T]he *risk* of institutionalization is sufficient to demonstrate a violation of [the ADA]."). For example, it is sufficient if the deprivation of community-based placements and services creates a risk that children will be (1) *placed* in an institution without a medical justification, or (2) *retained* in an institutional setting after their condition has stabilized and the treatment team has determined that it is no longer medically necessary for the child to remain in the institution. *See, e.g.*, *M.R.*, 697 F.3d at 706 (placement); *Townsend*, 328 F.3d at 517 (placement); *Olmstead*, 527 U.S. at 593, 597, 600 (retention).

"[T]o comply with the integration mandate, states must implement reasonable modifications to avoid unnecessary institutionalization or isolation, at least where the modifications do not fundamentally alter the state's program or activity." (ECF No. 55 at 68 (citations omitted).) The fundamental-alteration defense "allow[s] the State to show that, in the allocation of available resources, immediate relief for the plaintiffs would be inequitable, given the responsibility the State has undertaken for the care and treatment of a large and diverse population of persons with mental disabilities." *Olmstead*, 527 U.S. at 604. "But budgetary concerns do not alone sustain a fundamental alteration defense." *M.R.*, 697 F.3d at 736 (collecting cases); *see also Fisher v. Oklahoma Health Care Auth.*, 335 F.3d 1175, 1183 (10th Cir. 2003) ("If every alteration in a program or service that required the outlay of funds were tantamount to a fundamental alteration, the ADA's integration mandate would be hollow indeed."). The State must show beyond mere speculation that reallocating funds would disadvantage other disabled populations. *Id.* at 737 (finding it dispositive that "DSHS did not identify specific programs that would necessarily be cut if all or part of the challenged regulation were preliminarily enjoined, nor was counsel able to identify such programs at oral argument").

## C. The Child Welfare Act (Claim Three)

As this Court has held, Defendants were required to provide Plaintiffs the following:

- A written case plan that includes a plan to provide safe, appropriate and stable placements, 42 U.S.C. §§ 671(a)(16), 675(1)(A);

PLAINTIFFS' TRIAL BRIEF
*Mary B., et al., v. Kim Kovol, et al.*; Case No.: 3:22-cv-00129-SLG
Page 19 of 28
Case 3:22-cv-00129-SLG    Document 371    Filed 08/04/25    Page 19 of 28

- A written case plan that ensures that the child receives safe and proper care while in foster care and implementation of that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

- A written case plan that ensures provision of services to parents, children, and foster parents to facilitate reunification, or where that is impossible, the permanent placement of the child and implementation of that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

- A case review system in which each child has a case plan designed to achieve safe and appropriate foster care placements in the least restrictive and most family-like setting, close to their home community. 42 U.S.C. §§ 671(a)(16), 675(5)(A); and

- The right to have a petition to terminate parental rights filed if the child has been in foster care for 15 out of the last 22 months, unless doing so goes against the best interest of the child as documented in the case record, or subject to a statutory exemption. 42 U.S.C. § 675(5)(E).

(*See generally* ECF No. 286.)

Alaska opted to receive federal funds and designated OCS as the single state agency responsible for administering Alaska's Child Welfare Act plan. 42 U.S.C. § 671(a)(2). "Nothing required [Alaska] to opt in to the [Child Welfare Act] program, but once it agreed to take federal dollars, it is bound to comply with federally imposed conditions." *Cal. All. of Child & Family Servs. v. Allenby*, 589 F.3d 1017, 1022 (9th Cir. 2009) (unpublished) (citation omitted). "As a general rule, a state that accepts federal funds with conditions attached must strictly comply with those conditions," and substantial compliance will not be good enough." *Id.* Even if "substantial compliance" is acceptable "in some circumstances," even an 80 percent average does not "substantially comply with the [Child Welfare Act]." *Id.* at 1023 ("80 percent isn't even close, and the State makes no serious argument that it is." ).

### D. Remedies

#### i. Injunctive Relief

To be entitled to a permanent injunction, plaintiffs must, in addition to proving a constitutional violation, demonstrate "(1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Edmo v. Corizon, Inc*., 935 F.3d 757, 784 (9th Cir. 2019).

#### a. Plaintiffs Are Suffering Irreparable Injuries that Cannot Be Adequately Remedied Through Damages

The evidence demonstrates that class members are exposed to an ongoing systemic risk of serious harm in violation of their constitutional rights that will continue unabated absent a permanent injunction. "Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm." *Nelson v. NASA*, 530 F.3d 865, 882 (9th Cir. 2008); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *see also, e.g.*, *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ*., 82 F.4th 664, 695 (9th Cir. 2023) (First Amendment); *Edmo*, 935 F.3d at 798 (Eighth Amendment); *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (Fourteenth Amendment). Here, the alleged

constitutional violation constitutes irreparable injury. And neither the ongoing risk of harm nor the likelihood of future injury can be remedied by money damages.

The evidence also demonstrates that class members are exposed to an ongoing risk of institutionalization that will continue unabated absent a permanent injunction. Exacerbation of mental and physical conditions and risk of institutionalization amount to irreparable injury. *See M.R*, 697 F.3d at 733.

Plaintiffs need not show that the state action they seek to enjoin is the "exclusive" or "primary" cause of the injury. *Id*. at 728; *Brown v. Plata*, 563 U.S. 493, 525 (2011) (affirming prisoner reduction injunction even though unconstitutional conditions of confinement were caused by factors in addition to overcrowding, including "chronic and worsening budget shortfalls, a lack of political will in favor of reform, inadequate facilities, and systemic administrative failures"). Nor must Plaintiffs prove that an injunction would eliminate every factor contributing to the risk of harm or institutionalization. Plaintiffs need only show that "'exacerbation of the current . . . situation and additional suffering [could] be avoided'" through an injunction. *M.R.*, 697 F.3d at 728 (quoting *Harris v. Bd. of Supervisors*, 366 F.3d 754, 766 (9th Cir. 2004)); *Plata*, 563 U.S. at 524 (affirming prisoner reduction injunction even though "reducing crowding in the prisons would not entirely cure the violations").

### b. The Balance of the Equities Favors a Permanent Injunction

The burden on Plaintiffs of the continued operation of an unconstitutional child welfare system outweighs any administrative burdens that OCS may shoulder in correcting a constitutionally defective system. Courts cannot permit the perpetuation of

Case 3:22-cv-00129-SLG    Document 371    Filed 08/04/25    Page 22 of 28

unconstitutional conduct simply because the remedy "may be administratively awkward, inconvenient, and even bizarre in some situations and may impose burdens on some." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 28 (1971); *Plata*, 563 U.S. at 511 ("Courts nevertheless must not shrink from their obligation to enforce the constitutional rights of all 'persons,'" and "may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration.").

Moreover, Defendants cannot dodge their constitutional duties by arguing that budgetary restrictions make implementation of injunctive relief untenable. *See Wilson*, 501 U.S. at 311 n.2 (White, J., concurring) ("Among the lower courts, 'it is well established that inadequate funding will not excuse the perpetuation of unconstitutional conditions of confinement.'") (collecting cases); *Milliken v. Bradley*, 433 U.S. 267, 289 (1977) ("[F]ederal courts [can] enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury."); *Watson v. City of Memphis*, 373 U.S. 526, 537 (1963) ("[I]t is obvious that vindication of conceded constitutional rights cannot be made dependent upon any theory that it is less expensive to deny than to afford them.").

The Ninth Circuit has "several times held that the balance of hardships favors beneficiaries of public assistance who may be forced to do without needed medical services over a state concerned with conserving scarce resources." *M.R.*, 697 F.3d at 737 (collecting cases). And in *M.R.*, the Court held that the risk of institutionalization for even a few service beneficiaries outweighed "'the State's interest in balancing the competing needs of a host

of different state-sponsored social service programs that currently provide aid to a diverse group of medically and financially disadvantaged state residents'." *Id.* at 725.

    *ii.*    *Scope of Injunctive Relief*

Having found a constitutional violation and determined that Plaintiffs are entitled to injunctive relief, the district court must ensure that the injunction is tailored "to correct . . . the condition that offends the Constitution." *Swann*, 402 U.S. at 16.

Because "[t]he scope of injunctive relief is dictated by the extent of the violation established," the question in systemic reform litigation is whether the violation is "widespread enough to justify system wide relief." *Armstrong v. Davis*, 275 F.3d 849, 870 (9th Cir. 2001) (quoting *Lewis v. Casey*, 518 U.S. 343, 359 (1996)). "System-wide relief is required if the injury is the result of violations of a statute or the constitution that are attributable to policies or practices pervading the whole system (even though injuring a relatively small number of plaintiffs) . . . ." *Id.* (quoted in *M.R.*, 697 F.3d at 738).

Finally, a properly tailored injunction is not "invalid simply because it will have collateral effects." *Plata*, 563 U.S. at 531. Moreover, a remedy that necessarily requires the expenditure of state funds to achieve compliance fits the "prospective-compliance exception" to the Eleventh Amendment prohibition against money damages against the state. *Milliken*, 433 U.S. at 289; *Cal. All. of Child & Family Servs. v. Wagner*, 425 F. App'x 660, 662 (9th Cir. 2011) (unpublished) (quoting *Nat. Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 422 (9th Cir. 1996)) ("A district court may enjoin state officials from future violations of a federal statute, 'even if it might require substantial outlay of funds from the state treasury'").

## VI.  SUMMARY OF ANTICIPATED EVIDENTIARY ISSUES

### A.  Anticipated Questions Regarding Exhibits

In the hopes of identifying issues early enough to raise them in motions in limine or this brief, Plaintiffs sent an initial list of proposed exhibits to Defendants on June 30, 2025. Defendants declined to provide their own list of exhibits or to respond to Plaintiffs' list before the court-ordered deadline. The parties will therefore exchange exhibit lists on August 11, 2025, per the Court's Order. While Defendants refused to provide information regarding their specific objections before the Court-ordered date, Plaintiffs expect that there may be various evidentiary arguments over various issues, including third party reports and hearsay.

### B.  Expert Testimony

The Court denied the parties' motions to exclude expert testimony without prejudice to renewal during trial. (ECF No. 332 at 4.) Plaintiffs anticipate that parties will, per the Court's invitation, "voir dire each witness as to his or her qualifications before the witness may testify as to any opinion." (*Id.*)

### C.  Rule 1006 Summaries

On July 28, 2025, Plaintiffs sent several proposed Rule 1006 summaries to Defendants. The parties' negotiations regarding these summaries are ongoing, but Plaintiffs expect that there will be various arguments regarding whether Plaintiffs' Rule 1006 summaries meet the requirements of that rule and/or are admissible.

**D.      Motions in Limine**

The parties filed several motions in limine, listed above, all of which discuss evidentiary issues and disagreements between the parties.

DATED: August 4, 2025

Respectfully submitted,
/s/ *Marcia Robinson Lowry*
Marcia Robinson Lowry (*pro hac vice*)
mlowry@abetterchildhood.org
Julia K. Tebor (*pro hac vice*)
jtebor@abetterchildhood.org
Anastasia Benedetto (*pro hac vice*)
abenedetto@abetterchildhood.org
David Baloche (*pro hac vice*)
dbaloche@abetterchildhood.org
**A BETTER CHILDHOOD**
420 Lexington Avenue
Room 2035
New York, NY 10017
Telephone: (646) 795-4456

Elena M. Romerdahl, AK Bar No. 1509072
eromerdahl@perkinscoie.com
**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, AK 99501
Telephone: (907) 279-8561

Mark Regan, AK Bar No. 8409081
mregan@dlcak.org
**DISABILITY LAW CENTER OF ALASKA**
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
Telephone: (907) 565-1002

Galen D. Bellamy (*pro hac vice*)
bellamy@wtotrial.com
Kevin D. Homiak (*pro hac vice*)
homiak@wtotrial.com
**WHEELER TRIGG O'DONNELL LLP**
370 17th Street, Suite 4500
Denver, CO 80202
Telephone: (303) 244-1800

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2025, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in Case No. 3:22-cv-00129-SLG who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Marcia Robinson Lowry*
Marcia Robinson Lowry